Allen Patatanyan (State Bar No. 210586)
   *allen@westcoasttriallawyers.com*
Neama Rahmani (State Bar No. 223819)
   *nr@westcoasttriallawyers.com*
Ronald L. Zambrano (State Bar No. 255613)
   *ron@westcoasttriallawyers.com*
WEST COAST EMPLOYMENT LAWYERS, APLC
350 South Grand Avenue, Suite 3325
Los Angeles, California 90071
Telephone: (213) 927-3700
Facsimile: (213) 927-3701
*filings@westcoasttriallawyers.com*

Attorneys for Plaintiffs, JERICHO
NICOLAS, et al. and Other Similarly
Situated and Aggrieved Employees

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERICHO NICOLAS an individual, et al., On Behalf of Themselves and All Others Similarly Situated and Aggrieved;<br><br>        Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC, a Delaware Corporation; and DOES 1 through 10,<br><br><br>        Defendants. | CASE NO.:<br><br><br>**CLASS ACTION COMPLAINT FOR DAMAGES, PENALTIES, ATTORNEYS FEES, AND INJUNCTIVE RELIEF FOR, *INTER ALIA*, LABOR CODE WAGE AND HOUR VIOLATIONS**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jericho Nicolas Juan Montalvo, Gary Baumgarten, Christine Tringali, Carlos Alvarez, Rick Anderson, Kamal Suri, Jorge Jimenez, Jaime Del Real, Lisette Castillo, Benjamin Laney, Kelly Clifton, Eric Calvillo Hernandez, Steven Robert Callahan, William Fredrick Hooper, Juan Jamarron, Mark Glinoga, Richard Trujillo, David Kim, Marcos Montes, Barton Lasheem, Michael Kramer, Dora Waters, Kevin Neely, Rolando Vega, Shamar Drew, Zuleyma Torres, Gerardo Madrigal, Sevak Vartanpour, Claudia Duque, Timothy Kershaw, Kevin Byler, Yhon Lara, Yazmine, Royal Gatson and Majd Isikandafi (collectively referred to as "Plaintiffs") on behalf of themselves and acting for the interests of other current and former employees, allege as follows:

## NATURE OF THE ACTION

1.      This is a wage and hour class action pursuant to California Code of Civil Procedure § 382, on behalf of Plaintiffs and all individuals working or having worked as "ride-share drivers" ("Class Members") for Defendant UBER TECHNOLOGIES, INC., (hereinafter "UBER" or "DEFENDANT EMPLOYER") within the State of California.

2.      Plaintiffs are informed and believe and, based thereon allege, that the Class Members consist of approximately 50,000-75,000 current and former UBER employees who worked as UBER "ride-share drivers" and who opted out of the arbitration provision.

3.      From at least April 2018, when the *Dynamex* decision was issued by the California Supreme Court, and continuing to the present, and pursuant to company policy and/or practice and/or direction, UBER failed to pay Plaintiffs and other Class Members minimum wage and/or overtime, and UBER did not reimburse for work-related expenses, such as mileage and cell phone usage.

4.      From at least April 2018 and continuing to the present, and pursuant to company policy and/or practice and/or direction, UBER intentionally misclassified

Plaintiffs and other Class Members as independent contractors when they were employees under the law.

5.     From at least April 2018 and continuing to the present, and pursuant to company policy and/or practice and/or direction, for certain Plaintiffs and other Class Members, UBER failed to: (1) provide final paychecks immediately upon involuntary termination or within 72 hours of voluntary separation; (2) pay final wages at the location of employment; and (3) include all wages due in the final paychecks.

6.     Plaintiffs, on behalf of themselves and all Class Members, bring this action pursuant to California Labor Code §§ 201, 203, 226, 226.8, 510, 1197, 2082, 2998 et seq., California Code of Regulations, Title 8, § 11050, and Industrial Welfare Commission Wage Order No. 4, for unpaid wages, penalties, injunctive and other equitable relief, and reasonable attorneys' fees and costs.

7.     Plaintiffs, on behalf of themselves and all Class Members, pursuant to Business & Professions Code §§ 17200-17208, also seek injunctive relief, restitution, and other available relief for the violations alleged in this Complaint.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 et. seq.  This action arises under the Class Action Fairness Act ("CAFA") because at least one Class Member is a citizen of a different state than the Defendants, the amount in controversy exceeds $5,000,000.00, exclusive of interests and costs, and none of the exceptions of the CAFA apply. Furthermore, jurisdiction is proper in this Court because the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and the dispute is between citizens of different States.

9.     This Court has personal jurisdiction over UBER because UBER conducts business in California, is headquartered in California, and because the events or transactions giving rise to this action occurred within California.

10.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the U.S. District Court for the Northern District of California because UBER maintains its headquarters in the City of San Francisco, County of San Francisco, and UBER conducts significant business in this District.

## PARTIES

11.     The named Plaintiffs Jericho Nicolas, Juan Montalvo, Gary Baumgarten, Christine Tringali, Carlos Alvarez, Rick Anderson, Kamal Suri, Jorge Jimenez, Jaime Del Real, Lisette Castillo, Benjamin Laney, Kelly Clifton, Eric Calvillo Hernandez, Steven Robert Callahan, William Fredrick Hooper, Juan Jamarron, Mark Glinoga, Richard Trujillo, David Kim, Marcos Montes, Barton Lasheem, Michael Kramer, Dora Waters, Kevin Neely, Rolando Vega, Shamar Drew, Zuleyma Torres, Gerardo Madrigal, Sevak Vartanpour, Claudia Duque, Timothy Kershaw Kevin Byler, Yhon Lara, Yazmine, Royal Gatson and Majd Isikandafi are each a natural person and a citizen of the State of California.

12.     Defendant UBER TECHNOLOGIES, INC. (hereinafter "UBER" or "DEFENDANT EMPLOYER") is, and at all times herein mentioned, was a Delaware corporation, with the capacity to sue and to be sued, and doing business, with the same principal place of business located at 1455 Market Street, #400, San Francisco, California 94103.

13.     The true names and capacities of the Defendants named herein as DOES 1 through 10, inclusive, whether individual, corporate, partnership, association, or otherwise, are unknown to Plaintiffs who therefore sue these Defendants by such fictitious names.  Plaintiffs will request leave of court to amend this Complaint to allege their true names and capacities at such time as they are ascertained.

14.     Plaintiffs are informed and believe and, thereon allege, that each of the Defendants herein were at all times the agent, employee, or representative of each remaining Defendant and were at all times herein acting within the scope and

purpose of said agency and employment. Plaintiffs further allege that as to each Defendant, whether named or referred to as a fictitious name, supervised, ratified, controlled, acquiesced in, adopted, directed, substantially participated in, and/or approved the acts, errors, or omissions, of each remaining Defendant.

### GENERAL ALLEGATIONS

15.     Defendant UBER developed and maintains a technology platform that connects riders with ride-share drivers, such as Plaintiffs and all Class Members herein, through an application on their respective mobile devices.

16.     UBER charges the rider a fee and uses a portion of the money collected from the rider to pay Plaintiffs and all Class Members herein.

17.     UBER's business model is inextricably linked to the work of Plaintiffs and all Class Members herein transporting the riders, as UBER collects money from a rider after the rider utilizes a Plaintiff or Class member through UBER's application.

18.     Without the Class Members' work in transporting paying-riders, UBER would not exist as it is known today.

19.     Since the inception of UBER's ride-sharing service, Class Members have been treated as independent contractors so that they are not entitled to any of the protections an employee would have under California law.

20.     In April 2018, the California Supreme Court, in the now-infamous *Dynamex* decision, ruled that companies must successfully meet the three prong "ABC" test in order to lawfully classify someone as an independent contractor for purposes of Wage Order claims. *Dynamex Operations West v. Superior Court,* 4 Cal.5th 903 (2018); see also *Garcia v. Border Transportation Group, LLC,* 28 Cal. App. 5th 558 (2018). The ABC test requires an employer to prove the following to justify "independent contractor" classification: (A) the worker is free from the control and direction of the hiring entity in the performance of the work, both under the contract for the performance of the work and in fact; (B) the worker performs

work that is outside the usual course of the hiring entity's business; and (C) the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity.  *See Dynamex*, at 958-963.

21.    On September 18, 2019, California Governor Gavin Newsom signed Assembly Bill 5 ("AB5"), commonly referred to as the "gig worker law." AB5 codified *Dynamex*'s ABC Test under the soon-to-be-added Labor Code § 2750.3, creating a rebuttable presumption that a worker is an employee unless the test is met, and explicitly exempted certain trades and professions.  Neither the Class Members or ride-share companies, like UBER, were exempted under AB5.[1]

22.    Leading up to AB5's passage, UBER declared it would continue to treat its drivers, like Plaintiffs and Class Members herein, as independent contractors after AB5 becomes law: "just because the [ABC] test is hard does not mean [UBER] will not be able to pass it."[2]

23.    Since the April 2018 *Dynamex* decision, and after not being exempt from AB5, UBER continues and will continue to treat Plaintiffs and Class Members as independent contractors despite UBER's inability to meet the ABC test.

### ***PLAINITFF'S AND CLASS MEMBERS ARE UBER'S EMPLOYEES***

24.    **Plaintiffs Are Not Free of the Control & Direction of UBER in the Performance of Work.**

25.    For all relevant times, without any input from Class Members, UBER controls and directs the terms and conditions of the Class Members work

---

[1] California Legislature, *Assembly Bill 5: employees and independent contractors*, "Today's Law As Amended." https://leginfo.legislature.ca.gov/faces/billCompareClient. xhtml?bill_id=201920200AB5 (accessed Oct. 31, 2019).

[2] Uber Newsroom, "Update on AB5," Sept. 12, 2019, https://www.uber.com/ newsroom/ab5-update/ (accessed Oct. 31, 2019).

equipment, work environment, the way work is performed, and the manner in which drivers behave towards riders.

26.    For all relevant times, UBER controls and directs the performance of work of Class Members by way of minimum vehicle requirements for vehicles a driver can utilize before allowing access to riders through its application. Specifically, UBER has the following vehicle requirements:

- 15-year-old vehicle or newer
- 4-door vehicle
- Good condition with no cosmetic damage
- No commercial branding
- Pass a vehicle inspection.[3]

27.    For all relevant times, UBER controls and directs the performance of work of Class Members by way of minimum cosmetic guidelines for vehicles a ride-share driver can utilize before allowing access to riders through its application.  Specifically, UBER prohibits:

- Full-body wraps containing advertisements, or any large ads
- Holes in exterior
- Taxi decals or taxi-style paint
- Significant damage to interior (torn seats, large permanent stains, strong permanent odors)
- Paint Oxidation
- Different colored hoods/doors
- Aftermarket modifications
- Window tinting must be within acceptable California regulations.[4]

28.    For all relevant times, UBER  controls and directs the performance of work by determining the minimum experience for Class Members in that they all

---

[3] "Vehicle Requirements," https://www.uber.com/drive/los-angeles/vehicle-requirements/ (accessed Oct. 30, 2019.)
[4] *Id.*

must "meet the minimum age to drive in [their] city; [and] [h]ave at least one year of licensed driving experience in the US (3 years if you are under 23 years old)."[5]

29.     For all relevant times, UBER controls and directs the performance of work of Class Members by requiring successfully passing a background check.[6] Upon information and belief, UBER will not allow a driver to work as its ride-share driver if the background check reveals either of the following: (1) any major moving violations within the last seven years; (2) more than three minor moving violations in the last three years; or (3) a criminal conviction within the last seven years for a felony, violent crime, or sexual offense.[7]

30.     For all relevant times, UBER controls and directs the performance of work of ride-share drivers by requiring a vehicle used by a Class Member to have a certain level of cleanliness.[8]

31.     For all relevant times, UBER controls and directs the performance of work of Class Members by setting limits on how long a ride-share driver can drive as an UBER driver before UBER will have the application go "offline" for a driver.[9]

32.     For all relevant times, UBER controls and directs the performance of work of ride-share drivers by requiring its drivers to provide a 5-star experience

---

[5]   "Driver Requirements,' https://www.uber.com/us/en/drive/requirements/
[6]   *Id*.

[7]   "What Disqualifies Drivers During an Uber Background Check," https://www.ridester.com/uber-background-check/ (accessed Oct. 31, 2019.)

[8]   "Keeping Your Vehicle Clean," https://help.uber.com/partners/article/ keeping-your-vehicle-clean?nodeId=39695c4b-aafa-443a-a99f-1567d7215db6. (accessed Oct. 31, 2019.)

[9]   "Driver Time," https://help.uber.com/partners/article/driving-time?nodeId=c8785b5d-e2eb-42be-8c99-000d111e06d0.  (accessed Oct. 31, 2019.)

by maintaining high standards of quality that can be taught by UBER approved services.[10]

33.    **Plaintiffs Do Not Perform Work Outside the Usual Course of UBER's Business.**

34.    For all relevant times, UBER's usual course of business is the transportation of people.  In UBER's own words:

> What started as a way to tap a button to get a ride has led to billions of moments of human connection as people around the world go all kinds of places in all kinds of ways with the help of our technology . . . ***Transportation isn't the only thing we're changing*** through our technology.[11]  On-demand transportation technology is our core service, and the app that connects driver-partners and riders is what makes it all possible.[12]

35.    For all relevant times, Plaintiffs and all other Class Members work within UBER's usual course of business of the transportation of people by driving UBER's customers from place to place.

36.    **Plaintiffs Do Not Have an Independently Established Trade, Occupation, or Business of Ride-Sharing.**

37.    For all relevant times, Plaintiffs and all other Class Members do not provide ride-share services "independently" of their relationship with UBER.

---

[10] "Quality Improvement Courses," https://help.uber.com/partners /article/quality-improvement-courses?nodeId=9deed9cc-6221-43f8-b699-aaf0d0653569; "Understanding Ratings" https://help.uber.com/ partners/article/understanding-ratings?nodeId=fa1eb77f-ad79-4607-9651-72b932be30b7 (accessed Oct. 31, 2019.)

[11] "About," https://www.uber.com/us/en/about/ accessed Oct. 31, 2019.)

[12] "How Uber Works," https://www.uber.com/us/en/about/how-does-uber-work/ (accessed Oct. 31, 2019.)

38.     For all relevant times, Plaintiffs and all other Class Members report their work done exclusively to UBER through the UBER phone application.

39.     For all relevant times, Plaintiffs and all other Class Members managed no people.

40.     For all relevant times, Plaintiffs and Class Members are working for UBER from the time they turn on the application to wait for a ride-share request up until they turn off the application after the last drop off.

41.     For all relevant times, Plaintiffs and Class Members' duties as ride-share drivers did not qualify them as exempt for purposes of the overtime law.

42.     For all relevant times, Plaintiffs and Class Members were entitled to minimum wage for every hour they worked.

43.     For all relevant times, Plaintiffs and Class Members worked about 40 hours per week, sometimes more, sometimes less.

44.     For all relevant times, upon information and belief, Plaintiffs and Class Members were not paid time and a half for any overtime they worked nor were they paid after the paycheck was due, and were underpaid for the hours worked to the extent the pay did not meet the minimum wage requirements.

45.     Under California law, all wages must be paid twice during each calendar month as set forth in Labor Code § 204(a).

46.     Under California law, all nonexempt employees are entitled to time and a half for each hour worked in excess of 40 in a week and double time pay for hours worked over 12 in a day or for every hour after the first eight on the seventh day of work.

47.     Under California law, all employees must be paid at least the minimum wage for every hour worked.

48.     Under California law, employees must be reimbursed for business related expenses.

49.    For all relevant times, Plaintiffs and Class Members were not reimbursed for use of their cell phone in using the UBER application or for mileage they put on their vehicle while carrying out their duties for UBER.

50.    Under California law, all employers must provide wage statements listing twelve specific items as set forth in Labor Code § 226, including the accurate accounting of hours worked.

51.    For all relevant times, Plaintiffs and Class Members were underpaid for hours worked, even to the extent that UBER was not paying the minimum wage.

52.    For all relevant times, Plaintiffs and Class Members were not paid time and a half for all the overtime hours they worked on those periods they received wages late.

53.    For all relevant times, when Plaintiffs and Class Members were fired, UBER failed to provide unpaid wages or commissions in their last paycheck.

54.    To date, UBER has not paid Plaintiffs and Class Members all their wages due and payable to them, in an amount to be proven at trial.

## CLASS ACTION ALLEGATIONS

55.    Plaintiffs bring this action on behalf of themselves and all others similarly situated as a Class Action pursuant to FRCP Rule 23.  Plaintiffs seek to represent a class composed of and defined as follows: "All persons who worked as ride-share drivers for UBER (hereinafter referred to as "Ride-share drivers"), from April 2018 to the present, who opted out of the arbitration provision."

56.    Excluded from the class is any UBER employee or worker that did not work as a ride-share driver, as well as those that did not opt out of the arbitration provision.

57.    This action has been brought and may properly be maintained as a Class Action under FRCP 23 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

1

**A.      Numerosity**

2

58.      The potential members of the Class as defined are so numerous or

3

many that joinder of all the members of the Class is impracticable.  While the

4

precise number of Class Members has not been determined at this time, Plaintiffs

5

are informed and believe, and on that basis allege, that UBER currently employs,

6

and during the relevant time periods employed, over 50,000 Ride-share drivers.

7

**B.      Commonality**

8

59.      There are questions of law and fact common to the Class that

9

predominate over any questions affecting only individual Class Members.  These

10

common questions of law and fact include, without limitation and subject to

11

possible further amendment:

12

(a) Whether UBER intentionally misclassified the Class as

13

independent contractors after April 2018, in violation of

14

Labor Code § 226.8 and *Dynamex*;

15

(b) Whether Defendants' policy or practice of not paying

16

Plaintiffs overtime compensation for the hours they

17

worked over 40 in a workweek or eight hours in a day is

18

illegal under Labor Code §§ 510, 1194, and Wage Order

19

No. 4-2001 § 3(A);

20

(c) Whether Defendants' policy or practice of not paying ride-

21

share drivers all their wages due in their final paychecks

22

immediately upon involuntary termination or when 72

23

hours notice was provided before voluntary resignation, is

24

unlawful under Labor Code §§ 201, 202 and/or 203;

25

(d) Whether Defendants' policy or practice of not paying ride-

26

share drivers of at least minimum wage is a violation of

27

Labor Code §§ 1194 and 1197;

28

(e) Whether Plaintiffs and the members of the Class are entitled to equitable relief pursuant to Business & Professions Code §§ 17200, et seq;

(f) Whether Defendants violated Labor Code §§ 226 by not providing accurate pay stubs;

(g) Whether Defendants violated California law including but not limited to California Industrial Welfare Commission ("IWC") Wage Order Nos. 4-2001, 4-2000, and 4-1998 by not keeping accurate time records;

(h) Whether Plaintiffs and/or the Class Members are entitled to injunctive relief;

(i) The nature and extent of class-wide injury and the measure of damages, restitution penalties, or other monetary relief owed; and

(j) Whether Defendants violated the Unfair Business Practices Act (Bus. & Prof. § 17200) by violating the laws alleged to have been violated in this Complaint.

## C.        <u>Typicality</u>

60.    Plaintiffs' and all other Class Members' claims are typical of the claims of the Class.  Plaintiffs and all members of the Class sustained injuries and damages arising out of and caused by Defendants' common course of conduct and policies in violation of laws, regulations that have the force and effect of law and statutes as alleged herein.  Plaintiffs' and all other Class Members' claims are thereby representative of and co-extensive with the claims of the class.  Plaintiffs' and all other Class Members' claims are typical of the claims of the members of the Class because they were hourly-paid employees who, like the other members of the Class, sustained damages and losses arising out of the Defendants' unlawful conduct, which includes, but is not limited to, the following: repeatedly failing to pay – or

indeed ever pay – hours reported worked; failing to provide accurate wage statements; failing to pay bi-monthly in a timely manner; failing to pay Plaintiffs and Class Members all wages due immediately upon involuntary termination; and failing to include all wages in said final paychecks.

**D.**     **Adequacy of Representation**

61.     Plaintiffs are members of the Class, do not have any conflicts of interest with other Class Members, and will prosecute the case vigorously on behalf of the Class.  Counsel representing Plaintiffs are competent and experienced in litigating large employment class actions, including wage and overtime class actions.  Plaintiffs will fairly and adequately represent and protect the interests of the Class Members.

**E.**     **Superiority of Class Action**

62.     A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.  Each Class Member has been damaged or suffered injury and is entitled to recovery by reason of Defendants' illegal policies and/or practices including but not limited to failing to pay – or indeed ever pay -- overtime compensation to its employees;  failing to pay minimum wage; failing to provide accurate wage statements; and failing to pay Plaintiffs and Class Members all wages due immediately upon involuntary termination, within 72 hours of voluntary resignation, paying said final wages at the place of employment, and including all wages in said final paychecks.  Class Action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

63.     Class Action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are

likely to be encountered in the management of this action that would preclude maintenance as a Class Action.

64.    Plaintiffs bring this action on behalf of themselves and on behalf of others similarly situated current employees and former employees, including but not limited to all individuals "contracted," but legally employed, as "Ride-share drivers," pursuant to Code of Civil Procedure § 382 and as Class Claims.  The Class of employees that Plaintiffs seek to represent includes all individuals employed as a "Ride-share drivers":

        (a) Who were misclassified as independent contractors;

        (b) Who did not receive overtime compensation; and/or

        (c) Who did not receive minimum wages; and/or

        (d) Who did not receive payment of wages on a timely, bi-monthly manner; and/or

        (e) Who did not receive accurate wage statements; and/or

        (f) Who were not timely paid all wages owed upon involuntary termination, or within 72 hours of voluntary resignation, at the place of employment; and/or

For the reasons alleged in this Complaint, this action should be certified as a Class Action.

## FIRST CAUSE OF ACTION

**(Individual and Representative Claim for**

**Failure to Pay Timely Earned Wages During Employment and**

**Upon Separation of Employment in Violation of**

**California Labor Code §§ 201, 202, 203, 204, 218.5, and 218.6)**

**(Against Defendant UBER and Does 1-10)**

65.  Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

66.  Pursuant to Labor Code § 201, "if an employer discharges an

employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

67.   Pursuant to Labor Code § 202, "if an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

68.   Labor Code § 203 provides, in pertinent part: "If an employer willfully fails to pay, without abatement or reduction, ... any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days. ..."

69.   Pursuant to Labor Code § 204, "all wages … earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays."

70.   Pursuant to Labor Code §§ 218.5 and 218.6, an action may be brought for the nonpayment of wages and fringe benefits.

71.   Plaintiffs and Class Members were not properly paid pursuant to the requirements of Labor Code §§ 201, 202, and 204 and thereby seek the unpaid wages.  To date, for example, Defendants have not paid Plaintiffs all earned wages.

72.   Plaintiffs and Class Members are informed and believe and based thereon allege that Defendants willfully failed to pay Plaintiffs' wages pursuant to the requirements of Labor Code §§ 201, 202, and 204, after Plaintiffs' demand, and therefore Plaintiffs are entitled the associated unpaid wages and waiting time penalties.  Plaintiffs are informed and believe and based thereon allege that Defendants did this with the intent to secure for themselves a discount on their indebtedness and/or with intent to annoy harass, oppress, hinder, delay and/or

defraud Plaintiffs.

73.   Plaintiffs and Class Members have been deprived of their rightfully earned wages as a direct and proximate result of Defendants' failure and refusal to pay said compensation and for the reasons alleged in this Complaint.

74.   Plaintiffs and Class Members request the unpaid wages, waiting time penalties, interest, attorneys' fees, costs, damages, and other remedies in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

**(Individual and Representative Claim for**

**Failure to Pay Minimum Wages in Violation of**

**California Labor Code §§ 1182.12, 1194,**

**1194.2, 1197, and Wage Order No. 4-2001 § 3(A))**

**(Against Defendant UBER and Does 1-10)**

75.   Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

76.   Pursuant to Labor Code §§ 1182.12, 1194, 1194.2, and 1197, it is unlawful for a California employer to suffer or permit an employee to work without paying wages for all hours worked, as required by the applicable Industrial Welfare Commission ("IWC") Wage Order.

77.   During all times relevant, IWC Wage Order No. 4-2001, governing the "Professional, Technical, Clerical, Mechanical and Similar Occupations" industry, applied to Plaintiffs and the Class members' employment with Defendants.

78.   Pursuant to Wage Order 4, section 2(K), "hours worked" include the time during which an employee is "suffered or permitted to work, whether or not required to do so."

79.   IWC Wage Order No. 4-2001, § 4 (A), requires every employer to pay each employee minimum wages not less than $11.00 per hour effective January 1, 2018, $12.00 per hour effective January 1, 2019, and $13.00 per hour effective

January 1, 2019 to the present time.

80.   During all times relevant, Class Members including Plaintiffs have not been paid minimum wages for all hours suffered or permitted to work in violation of the minimum wage provisions of California Labor Code §§ 1182.12, 1194, 1194.2, and 1197, and IWC Wage Order No. 4-2001, § 4 (A).

81.   Labor Code § 1194.2, subdivision (a) provides that, in an action to recover wages because of the payment of a wage less than the minimum wage fixed by IWC Wage Orders, an employee is entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

82.   Class Members, including Plaintiffs, should have received minimum wages in a sum according to proof during all times relevant to this action.

83.   Defendants have intentionally failed and refused, and continue to fail and refuse, to pay Class Members, including Plaintiffs, minimum wages for all time suffered or permitted to work.

84.   Plaintiffs, on behalf of themselves and the Class, request the recovery of the unpaid minimum wages, waiting time penalties, liquidated damages, interest, attorneys' fees, and costs in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

**(Individual and Representative Claim for**

**Failure to Maintain Required Records in Violation of**

**California Labor Code § 1174.5 and Wage Order No. 4, § 7**

**(Against UBER and Does 1-10)**

85.   Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

86.   At all times relevant herein, IWC Wage Order No. 4, § 7 requires every employer to maintain time records showing when the employee begins and ends each shift and payroll records

87.   Plaintiffs are informed and believe and based thereon allege that during

all times relevant to the Class Period, Defendants failed to comply with § 7 of IWC Order 4-2001 and with Labor Code § 1174 by failing to maintain certain records which employers are required to maintain, including but not limited to, records of hours worked, meal periods provided to each employee, and overtime worked, and wages paid.

88.  For the reasons alleged in this Complaint, Plaintiffs seek any and all available remedies in an amount to be proven at trial including but not limited to damages, attorneys' fees and costs, and interest.

**FOURTH CAUSE OF ACTION**

**(Individual and Representative Claim for**

**Penalties for Violations of California Labor Code § 226 for**

**Failure to Provide Accurate Wage Statements)**

**(Against UBER and Does 1-10)**

89.  Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

90.  Plaintiffs allege that Labor Code § 226 subdivision (a) requires, in pertinent part, that "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing: (1) gross wages earned; (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of § 515 or any applicable order of the Industrial Welfare Commission; (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item; (5) net wages earned; (6) the inclusive dates of the period for which the employee is paid; (7) the name of the

employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement; (8) the name and address of the legal entity that is the employer; and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. . ." (Labor Code § 226 subdivision (a)).

91.   Upon information and belief, during all times relevant to this action, debt collectors, including Plaintiffs, never received any wage statement with all required information set forth under Labor Code § 226 from Defendants, and Plaintiffs suffered damages from not receiving wage statements.

92.   Plaintiffs allege that, on numerous occasions, an exact amount by which will be proven at trial, Defendants violated various provisions of § 226, including but not limited to subdivisions (a)(1), (a)(2), (a)(4), (a)(5), (a)(6), (a)(7), (a)(8), and (a)(9) by failing to provide Plaintiffs accurate itemized statement in writing showing: (1) gross wages earned; (2) total hours worked by the employee; (3) all deductions; (4) net wages earned; (5) the inclusive dates of the period for which the employee is paid; (6) the name of the employee; (7) the name and address of the legal entity that is the employer; and (8) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

93.   For Defendants' misconduct as alleged in this Complaint, Plaintiffs seek damages, penalties, costs and attorneys' fees pursuant to Labor Code § 226 subdivision (e) in an amount to be proven at trial.

94.   For Defendants' misconduct as alleged herein, Plaintiffs seek injunctive relief and attorneys' fees and costs pursuant to § 226 subdivision (g) in an amount to be proven at trial.

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIFTH CAUSE OF ACTION

### (Individual and Representative Claim

### Failure to Pay Required Minimum Wages in Violation of

### Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206)

### (Against UBER and Does 1-10)

95.    Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

96.    At all times relevant, Defendants have willfully and intentionally failed to pay Plaintiffs and Class Members minimum wage as required by 29 U.S.C. § 206.

97.    Defendants engaged in this practice throughout the three-year statute of limitations that applies to this action pursuant to 29 U.S.C. § 255.

98.    Therefore, at all times relevant, Defendants operated under and continue to operate under a common policy and plan of willfully, regularly, and repeatedly failing and refusing to pay minimum compensation at the rates required by the California Law, currently $12.00 per hour.

99.    As alleged herein, Defendants do not pay Plaintiffs and Class Members a regular wage.  As a result, Defendants have failed to comply with 29 U.S.C. § 206 in that they have failed to timely pay at least minimum wages for all hours worked to the Plaintiffs and Class Members.

100.  As a result of the unlawful acts of Defendants, Plaintiffs and Class Members and all FLSA Plaintiffs who opt-in are entitled to recovery in the amounts of their respective unpaid minimum wages, liquidated damages, prejudgment interest, attorneys' fees and costs, and any other relief the Court deems just and proper pursuant to FLSA, 29 U.S.C. § 216(b).

//

//

//

1

## SIXTH CAUSE OF ACTION

2

### (Individual and Representative Claim Failure to Pay Required Overtime

3

### Wages in Violation of FLSA, 29 U.S.C. § 207; 29 CFR §778.106)

4

### (Against UBER and Does 1-10)

5       101.   Plaintiffs re-allege and incorporate by reference the foregoing

6   allegations as though set forth herein.

7       102.   At all times relevant, Defendants employed and continue to employ

8   "employee[s]" within the meaning of FLSA, 29 U.S.C. § 203.

9       103.   However, Defendants have willfully and intentionally engaged in a

10  widespread pattern and practice of violating the provisions of the FLSA by failing

11  to pay Plaintiffs and Class Members overtime wages as required by 29 U.S.C. §

12  207.

13      104.   Defendants engaged in this practice throughout the three-year statute

14  of limitations that applies to this action pursuant to 29 U.S.C. § 255.

15      105.   Therefore, at all times relevant, Defendants operated under and

16  continue to operate under a common policy and plan of willfully, regularly, and

17  repeatedly failing and refusing to pay Plaintiffs and Class Members overtime

18  compensation at the rates required by the FLSA, 29 U.S.C. § 207 for work

19  performed in excess of forty (40) hours per workweek to which they were and are

20  entitled.

21      106.   Pursuant to 29 CFR § 778.106, Defendants are required to pay

22  overtime compensation earned in a workweek on the regular pay day for the

23  period in which such workweek ends.  When the correct overtime compensation

24  cannot be calculated until after the regular payday, then the FLSA requires that the

25  overtime payment be made as soon after the regular payday as is practicable, but

26  no later than the next pay day after the computation can be made.

27      107.   As alleged herein, Defendants do not pay Plaintiffs and Class

28  Members overtime.  As a result, Defendants have failed to comply with California

Labor Code § 510 in that they fail to timely pay overtime wages to Plaintiffs and Class Members.

108.  At all times relevant, Defendants have also operated under and continue to operate under a common policy and plan of willfully, regularly, and repeatedly failing and refusing to pay overtime compensation at the rates required by Labor Code § 510.

109.  As a result of the unlawful acts of Defendants, Plaintiffs and all FLSA Class Members who opt-in are entitled to recovery in the amounts of their respective unpaid overtime wages, liquidated damages, prejudgment interest, attorneys' fees and costs, and any other relief the Court deems just and proper.

## SEVENTH CAUSE OF ACTION

**(Individual and Representative Claim Under the California**

**Unfair Business Practices Act, California**

**Business and Professions Code §§ 17200, *et seq*.)**

**(Against UBER and Does 1-10)**

110.   Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

111.   Defendants, and each of them, are "persons" as defined under Business and Professions Code § 17021.

112.   Plaintiffs are informed and believe and based thereon allege that Defendants committed the unfair business practices, as defined by Cal. Bus. & Prof. Code § 17200, *et seq*., by violating the laws alleged to have been violated in this Complaint and which allegations are incorporated herein by reference and include, but are not limited to:

      (a)    Defendants' policy or practice of not paying Plaintiffs minimum wages and overtime compensation in violation of California law and FLSA;

      (b)    Defendants' policy or practice of not paying ride-

share drivers all their wages due in their final paychecks immediately upon involuntary termination or when 72 hour notice was provided before voluntary resignation, is unlawful under Labor Code §§ 201, 202 and/or 203;

(c)    Defendants violated Labor Code § 204 by not paying Plaintiffs in a timely fashion;

(d)    Defendants violated Labor Code §§ 226 by not providing accurate pay stubs; and

(e)    Defendants violated California Industrial Welfare Commission ("IWC") Wage Order Nos. 4-2001, 4-2000, and 4-1998 by not keeping accurate time records;

113.    The practices described above were unfair within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq*., because the acts were intentionally performed to harm Plaintiffs.

114.    Plaintiffs are informed and believe, and based thereon allege, that the unlawful, unfair, and fraudulent business practices described above present a continuing threat to members of the public because Defendants continue to operate in the illegal manner as alleged above.

115.    Further, such skirting of the California labor laws presents a threat to the general public in that the enforcement of the labor laws is essential to ensure that all California employers compete equally, and that no California employer receives an unfair competitive advantage at the expense of its employees.

116.    As a result of the above-alleged misconduct, Plaintiffs, on behalf of themselves and Class Members, have been deprived of lawful wages to which they were entitled. Plaintiffs and Class Members have suffered damages, in an amount to be determined according to proof at trial.

117.   The unfair, fraudulent, and unlawful business practices of Defendants are likely to continue because Defendants appear to have a pattern and practice of committing the same type of misconduct as alleged herein.  Therefore, the imposition of a preliminary injunction is justified.

118.   As a direct and proximate result of the above-alleged misconduct, Plaintiffs are entitled to and hereby seek injunctive relief and restitution for, among other things, back pay, and other lost benefits in an amount to be proven at trial from the date *Dynamex* was published to the date of trial.

119.   As a direct and proximate result of the aforesaid acts and conduct of said Defendants, Plaintiffs are entitled to and hereby seek attorneys' fees as permitted by law and as provided for by §1021.5 of the California Code of Civil Procedure.

## **PRAYER**

1.      For damages according to proof, including loss of earnings, deferred compensation, and other employment benefits, and interest thereon;

2.      For interest provided by law including, but not limited to, Civil Code § 3291;

3.      For general unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

4.      For statutory penalties pursuant to California Labor Code §226(e);

5.      For statutory wage penalties pursuant to California Labor Code §§ 1770-1773;

6.      For restitution of unpaid wages to Plaintiff and prejudgment interest from the day such amounts were due and payable;

7.      For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure § 1021.5;

8.      For injunctive relief pursuant to California Business & Professions Code § 17200, et seq.;

9.      For declaratory relief that UBER's ride share drivers, Plaintiffs and Class Members herein, are not independent contractor, but employees, under the *Dynamex* ABC Test;

10.     For costs incurred by Plaintiff, including reasonable attorneys' fees and costs of suit, in obtaining the benefits due to Plaintiffs and for violations of Plaintiffs' civil rights as set forth above; and pursuant to the Labor Code §§ 218.5, 218.6, 226(e), 1194(a), 2699; and California Code of Civil Procedure section 1021.5; and

11.     For such other and further relief as the court deems just and proper.


Dated:  December 18, 2019

WEST COAST TRIAL LAWYERS, APLC

By: _____

Allen Patatanyan
Neama Rahmani
Ronald L. Zambrano
Attorney for Plaintiffs and Class Members,
NICHOLAS JERICHO, et al.




## DEMAND FOR JURY TRIAL

Plaintiffs hereby respectfully demand a jury trial.

Dated:  December 18, 2019          WEST COAST TRIAL LAWYERS, APLC

By: _____

Allen Patatanyan
Neama Rahmani
Ronald L. Zambrano
Attorney for Plaintiffs and Class Members,
NICHOLAS JERICHO, et al.