1  GIBSON, DUNN & CRUTCHER LLP
   THEANE EVANGELIS, SBN 243570
2    tevangelis@gibsondunn.com
   HEATHER RICHARDSON, SBN 246517
3    hrichardson@gibsondunn.com
   BRANDON J. STOKER, SBN 277325
4    bstoker@gibsondunn.com
   SAMUEL ECKMAN, SBN 308923
5    seckman@gibsondunn.com
6  333 South Grand Avenue
   Los Angeles, CA 90071-3197
7  Telephone:  213.229.7000
   Facsimile:  213.229.7520
8

9  Attorneys for Defendant
   UBER TECHNOLOGIES, INC.

10

11             **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13

14  JERICHO NICOLAS, *et al.*, individually       CASE NO. 4:19-cv-08228-PJH
    and on behalf of all others similarly
15  situated,                                     **DEFENDANT'S NOTICE OF MOTION
                                                  AND MOTION TO COMPEL
16                  Plaintiffs,                   ARBITRATION; MEMORANDUM OF
                                                  POINT AND AUTHORITIES IN
17        v.                                      SUPPORT THEREOF**

18  UBER TECHNOLOGIES, INC.,                      Hearing Date:   April 15, 2020
                                                  Hearing Time:   9:00 a.m.
19                  Defendant.                    Hearing Place:  Courtroom 3
                                                  Judge:          Hon. Phyllis J. Hamilton

20

21

22

23

24

25

26

27

28

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2

**PLEASE TAKE NOTICE THAT** on April 15, 2020, at 9:00 a.m. or as soon as the matter may

3

be heard before the Honorable Phyllis J. Hamilton in Courtroom 3 of the United States District Court

4

for the Northern District of California in the Oakland Courthouse, Third Floor, 1301 Clay Street,

5

Oakland, California, Defendant Uber Technologies, Inc. ("Uber") will and does move this Court for an

6

order: (1) compelling arbitration on an individual basis of the claims of Plaintiffs Jericho Nicolas, Juan

7

Montalvo, Gary Baumgarten, Christine Tringali, Carlos Alvarez, Rick Anderson, Kamal Suri, Jorge

8

Jimenez, Jaime Del Real, Lisette Castillo, Benjamin Laney, Kelly Clifton, Eric Calvillo Hernandez,

9

Steven Robert Callahan, Juan Jamarron, Richard Trujillo, Marcos Montes, Barton Lasheem, Dora

10

Waters, Rolando Vega, Shamar Drew, Zuleyma Torres, Sevak Vartanpour, Claudia Duque, Timothy

11

Kershaw, Kevin Byler, Yhon Lara, Royal Gaston, Majd Iskandafi, Alexi Vinnik, Bryant Castaneda,

12

Christine Economos, Carlos Torres, Christopher Campana, Gustavo Candelo, James Sparks, Jason

13

Casas, Jose Contreras, Juan Castro, Kamal Suri,[1] Karen Y. Alvarez, Syed Naqvi, Wayne Merritt,

14

Williams Ramirez, Laura Alvarado Hernandez, and Sherif Bebawy (collectively, "Plaintiffs"), who are

15

subject to agreements to arbitrate their disputes with Uber; and (2) staying all civil court proceedings

16

pending completion of such arbitration. This motion is brought on the ground that Plaintiffs' claims

17

against Uber are subject to a valid and enforceable arbitration agreement that requires Plaintiffs to

18

arbitrate their claims on an individual basis only.

19

Uber's motion is based on this Notice of Motion and Motion, the accompanying Memorandum

20

of Points and Authorities, the concurrently filed Declaration of Brad Rosenthal, any other matters of

21

which the Court may take judicial notice, other documents on file in this action, and any oral argument

22

of counsel.

23

Dated: March 5, 2020            GIBSON, DUNN & CRUTCHER LLP

24

By:  _____*/s/ Theane Evangelis*_____
            Theane Evangelis

25

26

Attorneys for Defendant UBER TECHNOLOGIES, INC.

27

28

[1]  Plaintiffs' First Amended Complaint lists Kamal Suri's name twice but does not suggest these are different people.

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 1

      A.    The 2015 Technology Services Agreement ................................................ 2

      B.    The 2019 Technology Services Agreement ................................................ 4

      C.    This Litigation ........................................................................................... 6

III.  ARGUMENT ...................................................................................................... 7

      A.    Plaintiffs Agreed to Arbitrate Any Disputes With Uber. ........................... 8

      B.    The FAA Requires Bilateral Arbitration of Plaintiffs' Claims. ................. 9

      C.    The Class Action Waiver is Valid and Enforceable. ................................ 13

      D.    Plaintiffs Waived Their Right to Bring Representative Actions. ............... 14

            1.    The *Iskanian* rule is not a rule of general applicability. .................. 16

            2.    *Epic Systems* demonstrates that the *Iskanian* rule stands as an obstacle
                  to the accomplishment of the FAA's objectives. ............................ 17

      E.    All Other Questions Are Reserved For Arbitration. ................................. 19

            1.    The Technology Services Agreement is a valid arbitration agreement
                  that covers this dispute. ................................................................. 20

                  a)    There exists a valid agreement to arbitrate between Uber
                        and Plaintiffs. ........................................................................ 20

                  b)    The Arbitration Provision covers this dispute. ........................ 21

      F.    This Action Should Be Stayed Pending Arbitration. ................................ 22

IV.   CONCLUSION ................................................................................................. 23

i

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Cases**                                                                Page(s)

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
   513 U.S. 265 (1995) ................................................................................8

*American Express Co. v. Italian Colors Restaurant*,
   570 U.S. 228 (2013) ........................................................................14, 16

*Amiri v. Cox Communications California, LLC*,
   272 F.Supp.3d 1187 (C.D.Cal. 2017)......................................................19

*Arias v. Super. Ct.*,
   46 Cal.4th 969 (2009) ........................................................................18, 19

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ................................................................................13

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ................................................................................22

*Bruster v. Uber Techs., Inc.*,
   188 F. Supp. 3d 658 (N.D. Ohio 2016) ....................................................7

*Carey v. Uber Techs., Inc.*,
   2017 WL 1133936 (N.D. Ohio Mar. 27, 2017) ........................................7

*Cavallo v. Uber Techs., Inc.*,
   2017 WL 2362851 (D.N.J. May 31, 2017) ..............................................7

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001)......................................................................10, 11, 12

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) ..................................................................................10

*Concepcion*, 563 U.S. at 339................................................................14, 16, 22

*Congdon v. Uber Techs., Inc.*,
   226 F. Supp. 3d 983 (N.D. Cal. 2016) .....................................................7

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)..................................................................................9

*Delgado v. Marketsource, Inc.*,
   2019 WL 1904216 (N.D.Cal. Apr. 29, 2019) ........................................19

*Doctor's Associates, Inc. v. Casarotto*,
   517 U.S. 681 (1996)................................................................................21

*Epic Sys. Corp. v. Lewis*,
   138 S.Ct. 1612 (2018) ...............................................................................1, 9, 14, 15, 16, 17, 18, 19

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995) ...............................................................................................................20

*Fridman v. Uber Techs., Inc.*,
   18-cv-02815-HSG, 2019 WL 1385887 (N.D. Cal. Mar. 27, 2019) ..................................7

*Gadson v. SuperShuttle International*,
   2011 WL 1231311 (D. Md. Mar. 30, 2011)....................................................................12

*Gilbert Ents. v. Amazon.com*,
   No. 19-cv-2453-DMG, 2019 WL 6481697 (C.D. Cal. 2019)........................................23

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) ........................................................................................................14

*Gonzales v. Emeritus Corp.*,
   407 F.Supp.3d 862 (N.D. Cal. 2019) .......................................................................15, 23

*Gray v. Uber, Inc.*,
   362 F.Supp.3d 1242 (M.D. Fla. 2019) ...........................................................................7

*Grice v. Uber Techs., Inc.*,
   2020 WL 497487, at *7 (C.D. Cal. Jan .7, 2020)....................................................12, 13

*Heller v. Rasier*,
   2020 WL 413243 (C.D. Cal. Jan. 7, 2020) ...............................................................12, 13

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
   139 S.Ct. 524 (2019) ......................................................................................................17

*In re Holl*,
   925 F.3d 1076 (9th Cir. 2019).......................................................................................21

*Huff v. Securitas Security Services USA, Inc.*,
   23 Cal.App.5th 745 (2018)..............................................................................................19

*Iskanian v. CLS Transportation L.A., LLC*,
   59 Cal.4th 348 (2014) ...........................................................................................15, 16, 17

*JetBlue Airways Corp. v. Stephenson*,
   931 N.Y.S.2d 284 (N.Y. App. Div. 2011) ....................................................................12

*Johnmohammadi v. Bloomingdale's, Inc.*,
   755 F.3d 1072 (9th Cir. 2014)........................................................................................23

iii

Gibson, Dunn &
Crutcher LLP

*Johnson v. Uber Techs., Inc.*,
   2018 WL 4503938 (N.D. Ill. Sept. 20, 2018) ...................................................................7

*Johnston v. Uber Techs., Inc.*,
   2019 WL 4417682 (N.D. Cal. Sept. 16, 2019) .................................................................7

*Kowalewski v. Samandarov*,
   590 F. Supp. 2d 477 (S.D.N.Y. 2008) ...........................................................................12

*Lamour v. Uber Techs., Inc.*,
   2017 WL 878712 (S.D. Fla. Mar. 1, 2017) ......................................................................7

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) ...........................................................................................1, 13, 18

*Lathan v. Uber Techs., Inc.*,
   266 F. Supp. 3d 1170 (E.D. Wisc. 2017) .........................................................................7

*Lee v. Postmates Inc.*,
   2018 WL 6605659 (N.D. Cal. Dec. 17, 2018) ...............................................................13

*Lee v. Uber Techs., Inc.*,
   208 F. Supp. 3d 886 (N.D. Ill. 2016) ..............................................................................7

*Levin v. Caviar, Inc.*,
   146 F. Supp. 3d 1146 (N.D. Cal. 2015) ....................................................................13, 22

*Litty v. Merrill Lynch & Co., Inc.*,
   2014 WL 5904904 (C.D.Cal. Nov. 10, 2014) ................................................................19

*Long v. Provide Commerce, Inc.*,
   245 Cal.App.4th 855 (2016)............................................................................................22

*Magana v. Doordash, Inc.*,
   343 F. Supp. 3d 891 (N.D. Cal. 2015) .....................................................................1, 13, 23

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
   89 Cal.App.4th 1042 (2001)............................................................................................21

*Mays v. Wal-Mart Stores, Inc.*,
   2018 WL 6264992 (C.D.Cal. Nov. 1, 2018) ..................................................................19

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)........................................................................................21, 22

*Micheletti v. Uber Techs., Inc.*,
   213 F. Supp. 3d 839 (W.D. Tex. 2016) ...........................................................................7

iv

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003)................................................................................15

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016)..............................................................1, 7, 9, 20, 22

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)............................................................................................8, 20

*Mumin v. Uber Techs., Inc.*,
    239 F. Supp. 3d 507 (E.D.N.Y. 2017) ..................................................................7

*Mwithiga v. Uber Techs., Inc.*,
    376 F.Supp.3d 1052 (D. Nev. 2019) .....................................................................7

*New Prime Inc. v. Oliveira*,
    139 S.Ct. 532 (2019) .........................................................................................10

*O'Connor v. Uber Techs., Inc.*,
    904 F.3d 1087 (9th Cir. 2018)..........................................................................7, 13

*Okereke v. Uber Techs., Inc.*,
    2017 WL 6336080 (D. Mass. June 13, 2017) ...................................................7, 9, 22

*Olivares v. Uber Techs., Inc.*,
    2017 WL 3008278 (N.D. Ill. July 14, 2017).........................................................7

*Ortiz v. CVS Caremark Corporation*,
    2014 WL 1117614 (N.D.Cal. Mar. 19, 2014).......................................................19

*PacifiCare Health Sys., Inc. v. Book*,
    538 U.S. 401 (2003)............................................................................................20

*Pelayo v. Platinum Limousine Servs., Inc.*,
    2015 WL 9581801 (D. Haw. Dec. 30, 2015).........................................................12

*Peng v. Uber Techs., Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) ....................................................................7

*Raines v. Coastal Pacific Food Distributors, Inc.*,
    23 Cal.App.5th 667 (2018)..................................................................................19

*Raphael v. Tesoro Refining and Marketing Co. LLC*,
    2015 WL 5680310 (C.D.Cal. Sept. 25, 2015).......................................................19

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010) .........................................................................................1, 8, 9, 20

Gibson, Dunn & Crutcher LLP

v

*Richemond v. Uber Techs., Inc.*,
   263 F. Supp. 3d 1312 (S.D. Fla. 2017) .........................................................................7

*Rimel v. Uber Techs., Inc.*,
   246 F. Supp. 3d 1317 (M.D. Fla. 2017) ........................................................................7

*Sakkab v. Luxottica Retail N.A., Inc.*,
   803 F.3d 425 (9th Cir. 2015).................................................................................15, 18

*Salazar v. McDonald's Corp.*,
   2017 WL 88999 (N.D.Cal. Jan. 5, 2017) ....................................................................19

*Sanchez v. Valencia Holding Co.*,
   61 Cal. 4th 899 (2015) ................................................................................................21

*Scaccia v. Uber Techs., Inc.*,
   2019 WL 2476811 (S.D. Ohio June 13, 2019) ...................................................7, 9, 12

*Sena v. Uber Techs., Inc.*,
   2016 WL 1376445 (D. Ariz. Apr. 7, 2016)...................................................................7

*Siebert v. Amateur Athletic Union*,
   422 F. Supp. 2d 1033 (D. Minn. 2006) .......................................................................22

*Singh v. Uber Techs., Inc.*,
   939 F.3d 210 (3d Cir. 2019).........................................................................................12

*Souran v. Grubhub Holdings, Inc.*,
   No. 16-cv-6720-CRN, Dkt. No. 150 (E.D. Ill. June 14, 2019) ...................................13

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010)....................................................................................................13

*Suarez v. Uber Techs., Inc.*,
   2016 WL 2348706 (M.D. Fla. May 4, 2016) ...............................................................7

*Swift v. Zynga Game Network, Inc.*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011) ........................................................................22

*Uhl v. Komatsu Forklift Co., Ltd.*,
   512 F.3d 294 (6th Cir. 2008)........................................................................................9

*Vargas v. Delivery Outsourcing, LLC*,
   2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ..............................................................13

*Varon v. Uber Techs., Inc.*,
   2016 WL 1752835 (D. Md. May 3, 2016) ....................................................................7

vi

*Webber v. Uber Techs., Inc.*,
  2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) ................................................................. 7

*Whitworth v. SolarCity Corp.*,
  336 F.Supp.3d 1119 (N.D. Cal. 2018) ................................................................ 15, 23

*Zawada v. Uber Techs., Inc.*,
  2016 WL 7439198 (E.D. Mich. Dec. 27, 2016) ............................................................. 7

**Statutes**

9 U.S.C. §§ 1–4 ..................................................................... 6, 9, 10, 11, 13, 22

Code Civ. Proc. § 382 ................................................................................................ 19

Jones Act, 46 U.S.C. § 30104 *et seq.* ......................................................................... 11

Lab. Code, § 2699 ....................................................................................................... 18

Motor Carrier Act of 1935 § 203(b), Pub. L. No. 74-255, 49 Stat. 543, 545 ...................... 12

Railway Labor Act, 45 U.S.C. § 151 ........................................................................... 11

**Rules**

Fed. R. Civ. P. 23(a)(1)–(4) ....................................................................................... 19

**Other Authorities**

*Transportation Statistics Annual Report*, U.S. DEPT' OF TRANSP.,
  BUREAU OF TRANSP. STATISTICS (2018) .................................................................. 10

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
CASE NO. 4:19-CV-08228-PJH

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

## **I.     INTRODUCTION**

3

Plaintiffs are independent transportation providers who contract with Uber to generate leads for

4

their businesses.  Like the vast majority of people who contract with Uber, Plaintiffs agreed to resolve

5

any disputes with Uber in arbitration and on an individual basis.  In breach of this agreement, Plaintiffs

6

now bring a putative class action against Uber in federal court.

7

Plaintiffs' attempt to evade their commitment to arbitrate disputes with Uber should be rejected.

8

Because the arbitration agreements delegate questions of arbitrability to the arbitrator, the Court's only

9

role here is to confirm that the parties have arbitration agreements and then to compel individualized

10

arbitration.  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *e.g.*, *Mohamed v. Uber*

11

*Techs., Inc.*, 848 F.3d 1201, 1208–12 (9th Cir. 2016).  The arbitration agreements at issue apply broadly

12

to "all disputes between" drivers and Uber, including any dispute "arising out of or related to [drivers']

13

relationship with the Company" or arising "under state or federal wage-hour laws," and thus cover

14

every claim asserted in this litigation.  As the United States Supreme Court has recently reiterated,

15

under the Federal Arbitration Act ("FAA"), courts must enforce arbitration agreements according to

16

their terms.  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415–19 (2019); *Epic Sys. Corp. v. Lewis*,

17

138 S. Ct. 1612, 1619 (2018).  And the FAA preempts and overrides any barriers to enforcement.

18

Accordingly, the Court should compel Plaintiffs to arbitrate their claims on an individual basis

19

as the arbitration agreement's plain language requires, and stay this action pursuant to the FAA during

20

the pendency of arbitration.  *See, e.g.*, *Magana v. Doordash, Inc.*, 343 F. Supp. 3d 891, 901–02 (N.D.

21

Cal. 2015) (Hamilton, J.).

22

## **II.     BACKGROUND**

23

Uber is a technology company that connects individuals in need of transportation ("riders")

24

with independent transportation providers searching for passengers ("drivers").[2]  Decl. of Brad

25

Rosenthal ("Rosenthal Decl.") ¶ 5.  Uber provides its technology through a smartphone application

26

(the "Uber App"), which drivers can license for a service fee.  *Id.* ¶ 5.  Rasier-CA, LLC ("Rasier") is

27

_____

[2]  "Drivers" is used herein as a shorthand, but it does not describe all transportation providers.  Because

28

a transportation provider may engage another worker to drive his or her vehicle, transportation
providers do not necessarily drive themselves.

an affiliate of Uber, which historically entered into agreements with drivers who use the Uber App in California.  *Id.* ¶ 6.

To begin using the Uber App to connect with riders, a driver must enter into a license agreement called the Technology Services Agreement.  Between December 11, 2015 and November 24, 2019, upon logging onto the Uber App for the first time, a driver was presented with a screen titled "TERMS AND CONDITIONS" that stated:  "Please review and agree to the documents below."  Rosenthal Decl. ¶ 9.  Immediately below this text was a hyperlink to the 2015 Technology Services Agreement.  *Id.* After the driver had reviewed the Agreement, the Uber App prompted the driver to click "YES, I AGREE."  *Id.*  The driver was then taken to a second screen where he was asked to confirm his acceptance.  *Id.* ¶ 10.  The 2015 Technology Services Agreement was then delivered to the driver's online portal, where he could review it at his leisure.  *Id.* ¶ 17.

Uber updated its Technology Services Agreement on November 25, 2019.  See Rosenthal Decl. ¶ 12.  Beginning on November 25, 2019, when new and existing drivers first log onto the Uber App, they are presented with a screen titled, "TERMS AND CONDITIONS" that states:  "Please review and agree to the documents below."  *Id.* ¶ 13.  Clicking that hyperlink opens the 2019 Technology Services Agreement.  *Id.*  Like the 2015 Technology Services Agreement, after a driver has reviewed the 2019 Technology Services Agreement, he must click a button labeled "YES, I AGREE" and then confirm his acceptance on a subsequent screen.  *Id.* ¶¶ 13, 14.  The 2019 Technology Services Agreement is also delivered to a driver's online portal, so he can review it at his leisure.  *Id.* ¶ 17.

A.    **The 2015 Technology Services Agreement**

All but one[3] of the Plaintiffs in this action accepted the version of the Technology Services Agreement updated on December 11, 2015 (the "2015 Agreement").  Rosenthal Decl. ¶¶ 19–66. The first page of this agreement advised them in bold, capitalized letters that it contained an arbitration agreement (the "Arbitration Provision"):

**IMPORTANT: PLEASE NOTE THAT TO USE THE UBER SERVICES, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW.**

---

[3] Uber is not moving to compel arbitration of claims asserted by Mark Glinoga because he signed neither the 2015 nor 2019 Agreements.  Rosenthal Decl. ¶ 41.

**PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS, EXCEPT AS PROVIDED IN SECTION 15.3, THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION. . . .**

*Id.* Ex. 1 at 1.

The Arbitration Provision states that Uber and drivers agree to submit virtually all disputes to bilateral arbitration:

> **Except as it otherwise provides, the Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before any forum other than arbitration . . . . [T]his Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial . . . .**

> Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to all disputes between You and the Company or Uber, . . . including but not limited to any disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including . . . . disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, termination, harassment and claims arising under the . . . Fair Labor Standards Act . . . and state statutes, if any, addressing the same or similar subject matters . . . .

*Id.* § 15.3(i) (emphasis in original).  The Arbitration Provision also contains a clause delegating gateway questions of arbitrability to the arbitrator, including any disputes relating to the "enforceability, revocability or validity of the Arbitration Provision."  *Id.*

Another provision, entitled "Class Action Waiver," states:

> **You and the Company agree to resolve any dispute that is in arbitration on an individual basis only, and not on a class, collective action, or representative basis ("Class Action Waiver").  The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than on an individual basis. The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on a class, collective, or representative basis.**

*Id.* § 15.3(v).

Similarly, the parties agreed not to pursue representative claims under California's Private Attorneys General Act ("PAGA"), and to pursue all claims "in arbitration on an individual basis only." *Id.* § 15.3(v).

Gibson, Dunn &
Crutcher LLP

The Arbitration Provision afforded drivers an unfettered right to opt out of arbitration for 30 days after accepting the 2015 Agreement simply by sending an email to Uber:

> Your Right To Opt Out Of Arbitration
>
> **Arbitration is not a mandatory condition of your contractual relationship with the Company.  If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision . . . .**
>
> **Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision.  You have the right to consult with counsel of your choice concerning this Arbitration Provision.  You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.**

*Id.* § 15.3(viii).

With the exception of Kevin Neely and Alexis Gonzalez,[4] who exercised their right to opt out of the Arbitration Provision in the 2015 Agreement (*see* Rosenthal Decl. ¶¶ 42, 54), none of the other Plaintiffs who accepted the 2015 Agreement opted out of the Arbitration Provision.  *Id.* ¶¶ 19–41, 43–53, 55–66.

**B.    The 2019 Technology Services Agreement**

Most Plaintiffs[5] also accepted a version of the Technology Services Agreement updated on November 25, 2019 (the "2019 Agreement").  Rosenthal Decl. ¶ 12.  Like the prior version, the 2019 Agreement includes a broad Arbitration Provision that states in bold font:

> **IMPORTANT:  PLEASE REVIEW THIS ARBITRATION PROVISION CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH**

---

[4]  Uber is not moving to compel arbitration of claims asserted by Plaintiffs Kevin Neely and Alexis Gonzalez because they opted out of the arbitration provisions in the 2015 Agreement. Rosenthal Decl. ¶¶ 42, 54.  Alexis Gonzalez also opted out of the arbitration provisions in the 2019 Agreement. *Id.* ¶ 42. Kevin Neely has not accepted the 2019 Agreement, because his last trip using the Uber App was on August 6, 2019.  *Id.* ¶ 54.

[5]  These Plaintiffs include Laura Alvarado Hernandez, Carlos Alvarez, Karen Alvarez, Rick Anderson, Sherif Bebawy, Kevin Byler, Eric Calvillo Hernandez, Christopher Campana, Gustavo Candelo, Jason Casas, Bryant Castaneda, Juan Castro, Kelly Clifton, Jose Contreras, Jaime Del Real, Shamar Drew, Claudia Duque, Christine Economos, Royal Gaston, Alexis Gonzalez, Majd Iskandafi, Jorge Jimenez, Timothy Kershaw, Benjamin Laney, Yhon Lara, Barton Lasheem, Wayne Merritt, Juan Montalvo, Syed Naqvi, Jericho Nicolas, Williams Ramirez, James Sparks, Kamal Suri, Zuleyma Torres, Carlos Torres, Christine Tringali, Richard Trujillo, Sevak Vartanpour, Rolando Vega, Alexi Vinnik, and Dora Waters.  Rosenthal Decl. ¶¶ 19–22, 24–25, 27–31, 33–40, 42–43, 45–51, 53, 55–66.

4

Gibson, Dunn &
Crutcher LLP

**THE COMPANY ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION, EXCEPT AS PROVIDED BELOW. YOU MAY CHOOSE TO OPT OUT OF THIS ARBITRATION PROVISION BY FOLLOWING THE BELOW INSTRUCTIONS. . . .**

*Id.* Ex. 2 § 15.2.  The Arbitration Provision in the 2019 Agreement applies to virtually all disputes that could arise between drivers and Uber:

> [T]his Arbitration Provision applies to any legal dispute, past, present or future, arising out of or related to your relationship with the Company or relationship with any of its agents, employees, executives, officers, investors, shareholders, affiliates, successors, assigns, subsidiaries or parent companies . . . .   [and] applies to disputes . . . arising out of or related to . . . your contractual relationship with the Company . . . the nature of your relationship with the Company (including, but not limited to, any claim that you are an employee of the Company), . . . compensation, minimum wage, expense reimbursement, overtime, breaks and rest periods, retaliation, discrimination, or harassment and claims arising under the . . . Fair Labor Standards Act . . . .

*Id.*  The Arbitration Provision also contains a delegation clause that commits threshold questions of arbitrability to the arbitrator, including any disputes relating to "the formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision."  *Id.*

Two other provisions, entitled "Class Action Waiver" and "Representative Action Waiver," provides that the parties will resolve "any dispute in arbitration on an individual basis only, and not on a class or collective basis on behalf of others."  *Id.* §§ 15.2.4–15.2.5.

As in the 2015 Agreement, the Arbitration Provision affords drivers a right to opt out of arbitration for 30 days after accepting the 2019 Agreement by sending an email to Uber:

> If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision . . . . To do so, within 30 days of the date that this Agreement is electronically accepted by you, you must send an electronic email from the email address associated with your driver-partner account to optout@uber.com, stating your intent to opt out of this Arbitration Provision, as well as your name, the phone number associated with your driver-partner account, and the city in which you reside. . . .

*Id.* § 15.2.8.  All Plaintiffs who have accepted the 2019 Agreement sent emails to Uber purporting to opt out of the Arbitration Provision in the 2019 Agreement.  Rosenthal Decl. ¶¶ 19–22, 24–25, 27–31, 33–40, 42–43, 45–51, 53, 55–66.  Certain of those emails were not effective opt-outs because they failed to comply with the requirements in Section 15.2.8.  Some, for instance, failed to include the driver's name, phone number, and city of residence (*id.* ¶¶ 20–21, 25, 28, 30, 34–37, 40, 45–47, 49,

51, 53, 55–56, 62–63, 66 & Exs. 4–5, 8, 10, 12, 15–18, 21, 24–26, 28, 30–31, 33–34, 40–41, 44);

or contained no text whatsoever explaining the purpose of the email (*id.* ¶ 63 & Ex. 41).

Even if a driver opted out of the Arbitration Provision in the 2019 Agreement, the opt-out

provision states that the driver remains bound by any *existing* arbitration agreement in effect when the

driver accepted the 2019 Agreement:

> If you opt out of this Arbitration Provision and at the time of your receipt of this
> Agreement you were bound by an existing agreement to arbitrate disputes arising out of
> or related to your use of the Uber Services and Driver App, that existing arbitration
> agreement will remain in full force and effect.

*Id.* § 15.2.8.

## C.    This Litigation

Notwithstanding the Arbitration Provisions in their 2015 and 2019 Agreements, Plaintiffs filed

this putative class action on December 18, 2019, Dkt. 1, and filed their First Amended Complaint

("FAC") on January 6, 2020, Dkt. 9.  Plaintiffs reside in California and seek to represent "all persons

who worked as ride-share drivers for Uber . . . from April 2018 to present, who opted out of the

arbitration provision."  Dkt. 9 ¶ 55.  Plaintiffs allege that Uber misclassified drivers as independent

contractors rather than employees, and assert individual and representative claims for: (1) unpaid wages

under California Labor Code §§ 201, 202, 203, 204, 218.5, and 218.6; (2) unpaid minimum wages

under California Labor Code §§ 1182.12, 1194, 1194.2, 1197, and Wage Order No. 4-2001 § 3(A);

(3) failure to maintain records under California Labor Code § 1174.5 and Wage Order No. 4, § 7;

(4) failure to provide accurate wage statements under California Labor Code § 226; (5) unpaid

minimum wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206; (6) unpaid overtime

under the FLSA, 29 U.S.C. § 207; 29 CFR § 778.106; (7) unfair competition under California Business

and Professions Code § 17200; (8) penalties under California's PAGA statute; and (9) injunctive relief

under California Labor Code § 2750.3.  Dkt. 9, ¶¶ 65–135.

### III.    ARGUMENT

The Court should hold Plaintiffs to their contractual obligations by compelling them to arbitrate their claims on an individual basis.[6]  *See* 9 U.S.C. § 4 (requiring courts to compel arbitration "in accordance with the terms of the agreement").  This dispute is governed by the FAA, which applies to arbitration provisions in contracts, like the Technology Services Agreement, that "evidenc[e] a transaction involving commerce."  *Id.* § 2.  Because the Arbitration Provision contains a delegation clause, all questions regarding its validity and scope, except with respect to the Class Action Waiver and Representative Action Waiver, are reserved for the arbitrator.  *Rent-A-Center*, 561 U.S. at 68–70.  Dozens of courts have enforced the Arbitration Provision and compelled drivers to arbitrate their claims on an individual basis, and Plaintiffs can offer no reason to depart from this overwhelming consensus.[7]

---

[6]  Uber is concurrently moving to dismiss the claims of three Plaintiffs who are not bound by an agreement to arbitrate disputes with Uber.  If the Court determines that any Plaintiff is not required to arbitrate his or her claims on an individual basis, Uber reserves its right to move to dismiss that Plaintiff's claims.

[7]  *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094–95 (9th Cir. 2018); *Mohamed*, 848 F.3d at 1208; *Johnston v. Uber Techs., Inc.*, 16-cv-03134-EMC, 2019 WL 4417682, *2–6 (N.D. Cal. Sept. 16, 2019); *Scaccia v. Uber Techs., Inc.*, 2019 WL 2476811, at *3–5 (S.D. Ohio June 13, 2019), *report and recommendation adopted*, 2019 WL 4674333 (S.D. Ohio Sept. 25, 2019); *Fridman v. Uber Techs., Inc.*, 18-cv-02815-HSG, 2019 WL 1385887, at *4–6 (N.D. Cal. Mar. 27, 2019); *Mwithiga v. Uber Techs., Inc.*, 376 F. Supp. 3d 1052, 1057–62 (D. Nev. 2019); *Gray v. Uber, Inc.*, 362 F. Supp. 3d 1242, 1244–46 (M.D. Fla. 2019); *Johnson v. Uber Techs., Inc.*, 2018 WL 4503938, at *3–6 (N.D. Ill. Sept. 20, 2018); *Webber v. . Uber Techs., Inc.*, 2018 WL 10151934 at *2–6 (C.D. Cal. Sept. 5, 2018); *Okereke v. Uber Techs., Inc.*, 2017 WL 6336080, at *6 (D. Mass. June 13, 2017); *Zawada v. Uber Techs., Inc.*, 2016 WL 7439198, at *10 (E.D. Mich. Dec. 27, 2016), *aff'd*, 727 F. App'x 839 (6th Cir. 2018); *Suarez v. Uber Techs., Inc.*, 2016 WL 2348706, at *4 (M.D. Fla. May 4, 2016), *aff'd*, 688 F. App'x 777 (11th Cir. 2017); *Lathan v. Uber Techs., Inc.*, 266 F. Supp. 3d 1170, 1174 (E.D. Wis. 2017); *Olivares v. Uber Techs., Inc.*, 2017 WL 3008278, at *3 (N.D. Ill. July 14, 2017); *Cavallo v. Uber Techs., Inc.*, 2017 WL 2362851, at *9–10 (D.N.J. May 31, 2017); *Rimel v. Uber Techs., Inc.*, 246 F. Supp. 3d 1317, 1325–26 (M.D. Fla. 2017); *Carey v. Uber Techs., Inc.*, 2017 WL 1133936, at *8 (N.D. Ohio Mar. 27, 2017); *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 522–26 (E.D.N.Y. 2017); *Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 52–58 (E.D.N.Y. 2017); *Lamour v. Uber Techs., Inc.*, 2017 WL 878712, at *13–14 (S.D. Fla. Mar. 1, 2017); *Richemond v. Uber Techs., Inc.*, 263 F. Supp. 3d 1312, 1317 (S.D. Fla. 2017); *Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 986–87 (N.D. Cal. 2016); *Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839, 845–49 (W.D. Tex. 2016); *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 891–94 (N.D. Ill. 2016); *Bruster v. Uber Techs., Inc.*, 188 F. Supp. 3d 658, 663–64 (N.D. Ohio 2016); *Varon v. Uber Techs., Inc.*, 2016 WL 1752835, at *6 (D. Md. May 3, 2016); *Sena v. Uber Techs., Inc.*, 2016 WL 1376445, at *3–7 (D. Ariz. Apr. 7, 2016).

Gibson, Dunn & Crutcher LLP

## A.    Plaintiffs Agreed to Arbitrate Any Disputes With Uber.

With only three exceptions,[8] all Plaintiffs in this action accepted the Arbitration Provision in the 2015 Agreement and were bound by those Arbitration Provisions if and when they were presented with the 2019 Agreement.  *See* discussion *supra* pp. 2–5.

Most Plaintiffs sent emails to Uber purporting to opt out of the Arbitration Provision in the 2019 Agreement.  Although Uber contests the adequacy of some of those opt-outs (because, as discussed *supra* pp. 5–6, they fail to comply with the requirements of the 2019 Agreement), these attempted opt-outs are irrelevant here.

To the extent Plaintiffs' opt-outs were effective as to the 2019 Agreement, they did not terminate the parties' *existing* agreements to arbitrate all disputes pursuant to the Arbitration Provision in prior versions of the Technology Services Agreement.  The opt-out provision in the 2019 Agreement expressly reflects the parties' intent to preserve existing agreements to resolve disputes through arbitration:

> If you opt out of this Arbitration Provision and at the time of your receipt of this Agreement *you were bound by an existing agreement to arbitrate* disputes arising out of or related to your use of the Uber Services and Driver App, *that existing arbitration agreement will remain in full force and effec*t.

*Id.* § 15.2.8 (emphases added).

Pursuant to this provision, opting out of the Arbitration Agreement in the 2019 Agreement simply signifies that a driver declined to arbitrate disputes pursuant to the *modified* terms of the 2019 Agreement; any "existing arbitration agreement"—*i.e.*, the Arbitration Provision in the 2015 Agreement—"remain[s] in full force and effect" for disputes "arising out of or related to [a driver's] use of the Uber Services and Driver App."  *Id.*  Because Plaintiffs remain bound by an arbitration agreement (*see* discussion *supra* pp. 2–6), their claims must be arbitrated.

---

[8]   Two Plaintiffs named in this action, Kevin Neely and Alexis Gonzalez, opted out of the Arbitration Provision in both the 2015 and 2019 Agreements.  *See* Rosenthal Decl. ¶¶ 42, 55.  Another Plaintiff, Mark Glinoga, agreed to neither the 2015 nor 2019 Agreement.  *Id.* ¶ 41.

Gibson, Dunn &
Crutcher LLP

**B.      The FAA Requires Bilateral Arbitration of Plaintiffs' Claims.**

The FAA "reflects the fundamental principle that arbitration is a matter of contract."  *Rent-A-Center*, 561 U.S. at 67.  Seeking to "overcome judicial hostility to arbitration agreements," the statute embodies a "liberal federal policy favoring arbitration."  *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 272 (1995); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Because the statute is designed to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," courts must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration."  *Moses H. Cone*, 460 U.S. at 22, 24–25.

The "primary substantive provision of the Act" is Section 2.  *Rent-A-Center*, 561 U.S. at 67 (quotation marks omitted).  Section 2 provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 2 "requires courts to enforce [arbitration agreements] according to their terms."  *Rent-A-Center*, 561 U.S. at 67; *accord Epic Systems*, 138 S. Ct. at 1621.  "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Consistent with these principles, Plaintiffs' claims should be arbitrated pursuant to the plain and unambiguous terms of the Arbitration Provision.

The FAA governs this dispute because the Technology Services Agreement, which contains the Arbitration Provision, "involv[es] commerce."  9 U.S.C. § 2; Rosenthal Decl. ¶¶ 8, 12, Exs. 1–2; *see, e.g.*, *Mohamed*, 848 F.3d at 1207–08 (analyzing enforceability of Uber's arbitration agreement under the FAA); *Okereke*, 2017 WL 6336080, at *6; *Scaccia*, 2019 WL 2476811, at *5.  The FAA also governs this dispute because the Arbitration Provision explicitly *says* that it does.  *Id.* Ex. 1 §§ 15.1, 15.3(i); Ex. 2 §§ 15.1, 15.2.  Courts have enforced arbitration agreements under the FAA where the agreement stipulates to the statute's application.  *See, e.g.*, *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 302–03 (6th Cir. 2008).

Gibson, Dunn &
Crutcher LLP

The narrow exemption in Section 1 of the FAA—which applies to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1—does not apply to Plaintiffs.  To begin, the Technology Services Agreement is not a "contract[] of employment"; it is a *license agreement* to use Uber's technology.  The Agreement states that Uber is a "technology services provider that does not provide transportation services." Rosenthal Decl. Ex. 1 at 1; *id.* Ex. 2 at 1.  Pursuant to its terms, Uber does not pay Plaintiffs to give rides to passengers; instead, the Agreement provides Plaintiffs with a license to use the Uber App to "seek, receive and fulfill on-demand requests for transportation services" from riders, at the time and place of Plaintiffs' choosing.  *Id.* Ex. 1 at 1 & § 1.13; *id.* Ex. 2 at 1 & 1.22.  Plaintiffs "retain the sole right to determine when and for how long [to] . . .utilize the Driver App," and Plaintiffs *pay Uber* a service fee for use of Uber's technology only if they choose to accept a rider's request.  *Id.* Ex. 1 at § 4.1; *id.* Ex. 2 at § 4.  Because the Technology Services Agreement is not an "agreement to perform work," *see New Prime Inc. v. Oliveira*, 139 S.Ct. 532, 539–40 (2019), it is not a "contract of employment" within the meaning of Section 1.

Further, Section 1 does not apply to Plaintiffs because the "class of workers" to which they belong is not "engaged in foreign or interstate commerce."  9 U.S.C. § 1.  As the Supreme Court has explained, the phrase "*engaged in* commerce" in Section 1 is "understood to have a *more limited* reach."  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001)  (emphases added).  Section 1 must "be read to give effect to the terms 'seamen' and 'railroad employees,' and should itself be controlled and defined by reference to the enumerated categories of workers which are recited just before it."  *Id.*  Consequently, the residual clause of Section 1 applies only to classes of workers that are engaged in foreign or interstate commerce *in a manner similar to* seamen and railroad employees.  With that background, it is clear that Plaintiffs do not fall within the Section 1 exemption for several reasons.

*First*, unlike seamen and railroad employees, the work performed by Plaintiffs is not inherently interstate.  Plaintiffs belong to a class of workers consisting of passenger-car drivers who offer personal transportation services using a variety of platforms, including, for example, app-based technologies licensed by companies like "Uber and Lyft" that "connect riders to drivers."  *See 2018 Transportation*

10

*Statistics Annual Report*, U.S. Dep't of Transp., Bureau of Transp. Statistics, https://www.bts.gov/sites/bts.dot.gov/files/docs/browse-statistical-products-and-data/transportation-statistics-annual-reports/TSAR-Full-2018-Web-Final.pdf (last visited Mar. 5, 2020) at 1-13 (Box 1-A). But Plaintiffs do not even *allege* that they are engaged in interstate commerce. And for good reason— as a class, drivers' trips are relatively brief and cover short distances. *See id.* at 1-13 (reporting that "most trips" performed by drivers using ride-sourcing apps like Uber and Lyft "are relatively short within urban core areas"). Like other similar apps, the Uber App facilitates primarily short-distance trips within a particular city or metro area. *See* Rosenthal Decl. ¶ 5 ("The Uber Apps are primarily used for short-distance trips within one of the 150 cities in which Uber is available."); *id.* Ex. 1 § 1.10 (the Technology Services Agreement expressly provides that individuals are "enabled by the Driver App to receive requests for Transportation Services" within their *own* "*city or metro areas*" (emphasis added); *id.* Ex. 2. § 1.19 (same); *see also id.* ¶ 7 (data for trips fulfilled using the Uber App between 2015 and 2019 confirm that the average trip covered a distance of only 6 miles and lasted approximately 16 minutes). Drivers who use the Uber App and similar apps are also regulated locally, *see id.* ¶ 5, unlike railroad employees and seamen, who are regulated at the federal level, *see, e.g.*, Railway Labor Act, 45 U.S.C. § 151 *et seq.*; Jones Act, 46 U.S.C. § 30104 *et seq.*

*Second*, Section 1 was not intended to exclude classes of workers from arbitration altogether, but rather to preserve *other*, *industry-specific* arbitration regimes that had been fashioned at the time the FAA was enacted. And there is no such regime for passenger-car drivers who offer personal transportation services. The Supreme Court has observed that "Congress excluded 'seamen' and 'railroad employees' from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering [those] specific workers." *Circuit City*, 532 U.S. at 121. Crucially, *no* federal arbitration regime covering workers like Plaintiffs was in place or even imminent when the FAA was enacted. And when Congress did pass legislation respecting motor carriers 10 years later, it specified that "[n]othing in this part . . . shall be construed to include . . . taxicabs, or other motor vehicles performing a bona fide taxicab service . . . on a regular route or between fixed termini." Motor Carrier Act of 1935 § 203(b), Pub. L. No. 74-255, 49 Stat. 543, 545. Applying the Section 1 exemption to workers like Plaintiffs would immunize those workers from *all*

11

federal arbitration laws—unlike seamen and railroad employees, who were exempted from the FAA only because they were covered by a *different* federal arbitration regime.

Third, Plaintiffs do not belong to a class of workers subject to the Section 1 exemption because they transport *passengers*—not goods.  In *Circuit City*, the Supreme Court resolved a split between the Ninth Circuit, which held that the Section 1 exemption applied to *all* contracts of employment, and "[m]ost Courts of Appeals," which limited the exemption to "transportation workers . . . '*actually engaged in the movement of goods in interstate commerce*.'"  532 U.S. at 112 (emphasis added). The Supreme Court adopted the latter position, concluding that the Section 1 exemption reflected "Congress' demonstrated concern with transportation workers and their necessary role *in the free flow of goods*."  *Id.* at 121.  Most courts that have addressed this question post-*Circuit City* have followed this reasoning and concluded that the Section 1 exemption does not apply to workers who, like Plaintiffs, transport only people.  *See, e.g.*, *Grice v. Uber Techs., Inc.*, 2020 WL 497487, at *7 (C.D. Cal. Jan .7, 2020) ("intrastate transportation of *passengers*" is not "an activity 'within the flow of interstate commerce' within the meaning of Section 1 of the FAA"); *accord Heller v. Rasier*, 2020 WL 413243, *7 (C.D. Cal. Jan. 7, 2020); *Scaccia*, 2019 WL 2476811, at *4.[9]

Because Plaintiffs engage primarily in intrastate transportation within a single municipal area, they are not "engaged in foreign or interstate commerce"—and certainly not in the same manner as "railroad employees and seamen."  9 U.S.C. § 1.  Accordingly, the Court should join every other court in the Ninth Circuit in rejecting Section 1's application to workers in the gig economy.  *See, e.g.*, *Grice*, 2020 WL 497487 at *5–9 (concluding that drivers who use the Uber App do not fall within Section 1's exemption); *Heller*, 2020 WL at *5–9 (same); *Lee v. Postmates Inc.*, 2018 WL 6605659, *6–7 (N.D.

---

[9]   *See also Pelayo v. Platinum Limousine Servs., Inc.*, 2015 WL 9581801, at *12 n.6 (D. Haw. Dec. 30, 2015), *abrogated on other grounds*, *Campbell v. City of L.A.*, 903 F.3d 1090 (9th Cir. 2018) (finding that limousine drivers do not fall within Section 1 because they "are not seamen, railroad employees, or otherwise engaged in the movement of goods in interstate commerce"); *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 483–84 (S.D.N.Y. 2008) ("the involvement of physical goods" is an "indispensable element to being 'engaged in commerce in the same way that seamen and railroad workers are'"); *JetBlue Airways Corp. v. Stephenson*, 931 N.Y.S.2d 284, 286–87 (N.Y. App. Div. 2011) (same as to passenger airline pilots); *Gadson v. SuperShuttle International*, 2011 WL 1231311 (D. Md. Mar. 30, 2011), *vacated on other grounds*, *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173 (4th Cir. 2013) (same as to airport shuttle drivers); *but see Singh v. Uber Techs., Inc.*, 939 F.3d 210, 220–24 (3d Cir. 2019).

Cal. Dec. 17, 2018) (same as to local food delivery drivers); *Vargas v. Delivery Outsourcing, LLC*, 2016 WL 946112, at *3 (N.D. Cal. Mar. 14, 2016) (local luggage delivery drivers); *Magana*, 343 F. Supp. 3d at 899 (local delivery drivers); *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1152–55 (N.D. Cal. 2015) (same); *see also Souran v. Grubhub Holdings, Inc.*, No. 16-cv-6720-CRN, Dkt. No. 150, at 3–4 (E.D. Ill. June 14, 2019) (same).

## C.   The Class Action Waiver Is Valid and Enforceable.

Although the Arbitration Provision is binding and enforceable, it expressly excludes from its scope any questions regarding the enforceability of the parties' class action waiver, which are for the Court to decide.  Rosenthal Decl. Ex. 1 § 15.3(i) (excepting Class Action Waiver from delegation clause); *accord id.* Ex. 2 § 15.2.1 (same).  To remain faithful to the parties' agreement, the Court should enforce the Agreement's class waiver and order the parties to individual arbitration.  *See O'Connor*, 904 F.3d at 1094 (enforcing class waiver in the Arbitration Provision).

In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), the Supreme Court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."  *Id.* at 684; *accord Lamps Plus*, 139 S. Ct. at 1415, 1418–19 (holding that courts may not compel parties to arbitrate in any manner that is "markedly different from . . . traditional individualized arbitration" and that "interferes with [the] fundamental attributes of arbitration"—informality, speed, and cost-efficiency—unless the parties expressly agreed to do so).  Far from agreeing to class treatment or class arbitration, the parties here expressly prohibited class claims.  And in *Concepcion*, the Supreme Court affirmed the enforceability of class waivers in FAA-governed arbitration agreements, reaffirming the bedrock principle that arbitration agreements must be enforced as written.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011).  The Court held that the California Supreme Court's rule restricting enforcement of class action waivers was preempted by the FAA because it interfered with the fundamental attributes of arbitration and created a scheme inconsistent with the FAA.  *See id.*  The Supreme Court also explained that class arbitration was inconsistent with the fundamental attributes of arbitration as contemplated by the FAA.  *Id.* at 348.

Gibson, Dunn & Crutcher LLP

Likewise, in *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013), the Supreme Court reiterated that courts "must 'rigorously enforce'" arbitration agreements according to their terms, including terms that "specify with whom [the parties] choose to arbitrate their disputes." *Id.* at 233 (citations omitted). The Court reversed the Second Circuit and enforced a class action waiver in an arbitration agreement, ruling that a waiver in an FAA-governed arbitration agreement is enforceable, even if the plaintiff's costs of individually arbitrating a claim exceed the potential individual recovery. *Id.* at 236–39. Most recently, the Supreme Court held that the NLRA does not override class action waivers in an arbitration agreement because "[i]n the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms— including terms providing for *individualized* proceedings." *Epic Systems*, 138 S. Ct. at 1619 (emphasis added). In doing so, the Court observed that it had "held decades ago that an identical collective action scheme (in fact, one borrowed from the FLSA) does not displace the Arbitration Act or prohibit individualized arbitration proceedings." *Id.* at 1626 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991)) (emphasis in original).

Consistent with this long line of precedent favoring individual arbitration, the Court should require Plaintiffs to arbitrate on an individual basis pursuant to the Class Action Waiver. That provision provides: "You and the Company agree to resolve any dispute that is in arbitration on an individual basis only, and not on a class, collective action, or representative basis." Rosenthal Decl. Ex. 1 § 15.3(v); *accord id.* Ex. 2 § 15.2.4. The Class Action Waiver is explicit that that arbitration must proceed on a non-class basis, and that is how the Court should order the parties to proceed. *See supra* pp. 6–7 & n.4 (collecting cases that have enforced the Arbitration Provision).

**D.     Plaintiffs Waived Their Right to Bring Representative Actions.**

The Arbitration Provision likewise reserves for the Court the authority to determine the enforceability of the parties' PAGA Waiver in the 2015 Agreement and the Representative Action Waiver in the 2019 Agreement. Rosenthal Decl. Ex. 1 § 15.3(v) ("the validity of the PAGA Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator"); *accord id.* Ex. 2 § 15.2.1 (excepting Representative Action Waiver from delegation clause). Pursuant to those provisions, Plaintiffs agreed not to bring representative actions "on behalf of others," and instead to

14

arbitrate any claims—including under California's PAGA statute—on "an individual basis only." Rosenthal Decl. Ex. 1 § 15.3(v), Ex. 2 § 15.2.5.

To be sure, the California Supreme Court in *Iskanian v. CLS Transportation L.A., LLC*, 59 Cal. 4th 348 (2014), held that (1) "an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy," and (2) "the FAA does not preempt a state law that prohibits waiver of PAGA representative actions in an employment contract." *Id.* at 360; *see Sakkab v. Luxottica Retail N.A., Inc.*, 803 F.3d 425, 430–40 (9th Cir. 2015) (holding that FAA does not preempt California Supreme Court's holding in *Iskanian*).  *Iskanian*, however, predates and was abrogated by *Epic Systems*, is wrongly decided, and does not govern here.

In *Epic Systems*, the Supreme Court held that the FAA "seems to protect *pretty absolutely*" parties' right to "specify the rules that would govern their arbitrations, indicating their intention to use individualized" proceedings.  138 S. Ct. at 1621 (emphasis added).  Following *Epic Systems*, the FAA preempts any state-law rule that invalidates arbitration agreements if (1) the rule is not a generally applicable contract defense, but instead applies only to arbitration or derives its meaning from the fact that an arbitration agreement is at issue; or (2) the rule stands as an obstacle to the FAA's objectives. *Id.* at 1612, 1622.  The *Iskanian* rule is preempted on both grounds, *Sakkab* has been effectively overruled, and the Court should decline to follow either case.[10]  *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (when a "court of last resort" has "undercut the theory or reasoning underlying prior circuit precedent in such a way that the cases are clearly irreconcilable . . . . district courts should consider themselves bound by the intervening higher authority").

---

[10]   The Court in *Gonzales v. Emeritus Corp.*, 407 F. Supp. 3d 862, 868–68 (N.D. Cal. 2019), and *Whitworth v. SolarCity Corp.*, 336 F. Supp. 3d 1119, 1122–23 (N.D. Cal. 2018), concluded that *Epic Systems* did not overrule *Sakkab* on the grounds that a representative action waiver would result in fewer penalties collected on behalf of the state and fail to effect the public policy embedded in PAGA to deter and punish Labor Code violations.  Those rulings are contrary to *Epic Systems*.  California's PAGA is a state statute that has been interpreted in *Iskanian* and *Sakkab*, on public policy grounds, to nullify an employee's contractual promise to not bring a representative action, and create a state public policy that an employee has an unwaivable right to bring representative claims.  But in *Epic Systems*, that is precisely what the employees argued the National Labor Relations Act bestowed:  an unwaivable right to collective activity, in the form of class or collective actions.  138 S. Ct. at 1624–26.  The Supreme Court rejected an analogous "policy argument" that a class or collective action right should be read into the NLRA to promote enforcement of wage and hour laws.  *Id.* at 1632.

15

Gibson, Dunn & Crutcher LLP

1        **1.      The *Iskanian* rule is not a rule of general applicability.**

2        The FAA's savings clause "permits agreements to arbitrate to be invalidated by 'generally

3   applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply

4   only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."

5   *Concepcion*, 563 U.S. at 339; *accord Epic Systems*, 138 S. Ct. at 1622.

6        The *Iskanian* rule is not a generally applicable contract defense.  Rather, the California Supreme

7   Court created the rule to further public policy and help employees vindicate state-law labor violations.

8   *Iskanian*, 59 Cal. 4th at 360; *id.* at 384 (holding that PAGA waivers violate public policy because

9   "whether or not an individual claim is permissible under the PAGA, a prohibition of *representative*

10  claims frustrates the PAGA's objectives").  But courts cannot override arbitration agreements to further

11  a state statutory scheme.  Only a clearly contrary congressional command can override the FAA.  *See*

12  *Epic Systems*, 138 S. Ct. at 1627–28; *Concepcion*, 563 U.S. at 343 ("nothing in [the FAA] suggests an

13  intent to preserve state-law rules").  Even Justice Kagan agreed in *Italian Colors* that vindication of

14  state law cannot displace the FAA:  "We have no earthly interest (quite the contrary) in vindicating [a

15  state] law.  Our effective-vindication rule comes into play only when the FAA is alleged to conflict

16  with another *federal* law."  570 U.S. at 252 (Kagan, J., dissenting).

17       Nor may courts use "public policy" as a justification to invalidate arbitration agreements.  *Epic*

18  *Systems*, 138 S. Ct. at 1623 ("Just as judicial antagonism toward arbitration before the Arbitration Act's

19  enactment manifested itself in a great variety of devices and formulas declaring arbitration against

20  public policy, . . . we must be alert to new devices and formulas that would achieve much the same

21  result today").  Moreover, a state cannot create a rule that "a contract is unenforceable *just because it*

22  *requires bilateral arbitration.*"  *Id.* (emphasis added).  It is irrelevant how well-intentioned the rule is,

23  or whether it applies to all contracts generally.  If the rule precludes individual arbitration, it is

24  preempted.  *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 531 (2019) ("[Courts]

25  may not rewrite the [FAA] simply to accommodate . . . policy concern[s].").

26       Indeed, *Epic Systems* held that even a federal statute embodying important federal policy

27  interests cannot override private arbitration agreements governed by the FAA.  The U.S. Supreme

28  Court assumed arguendo that the NLRA created a federal right to collective action, and was based on

important policy goals of vindicating federal labor laws. *Epic Systems*, 138 S. Ct. at 1627. Nonetheless, the Court held that the alleged NLRA rule was not a generally applicable contract defense, nor did it constitute a clear congressional command to displace the FAA. *Id.* The Court held that the FAA required courts to enforce individual arbitration agreements, despite a federal statutory scheme and federal policy to the contrary. *Id.* at 1632. Surely, then, a rule based on a state statutory scheme and state public policy cannot displace the FAA.

The FAA applies with particular force to this case because the parties voluntarily agreed that the Arbitration Provision is governed by the FAA. Rosenthal Decl. Ex. 1 §§ 15.1, 15.3(i); Ex. 2 §§ 15.1, 15.2. Unlike in *Iskanian*, where the PAGA waiver under consideration was a "condition of employment" and not bargained for (59 Cal. 4th at 360; *id.* at p. 383 (employer may not "eliminate this choice" to bring a PAGA action "altogether"); *id.* at 384 (employer may not "compel[]" PAGA waiver)), here, arbitration was not a mandatory condition of Plaintiffs' contract with Uber. Indeed, Uber offered Plaintiffs the option to opt out of arbitration, but they declined to do so. *See supra* pp. 2–6. And Plaintiffs' PAGA claims are not waived in their entirety; rather, Plaintiffs agreed not to bring PAGA claims *on behalf of the government*. The government can still bring those claims, along with anyone else who opted out of or is not otherwise bound by the Arbitration Provision. Thus, the FAA compels courts to honor the parties' agreement.

### 2. *Epic Systems* demonstrates that the *Iskanian* rule stands as an obstacle to the accomplishment of the FAA's objectives.

*Epic Systems* confirms the *Iskanian* rule is preempted for the independent reason that it stands as an obstacle to accomplishing the FAA's objectives of enforcing arbitration agreements according to their terms. 138 S. Ct. at 1622. In *Epic Systems*, the U.S. Supreme Court implicitly approved the dissenting opinion in *Sakkab*, where Ninth Circuit Judge N. Randy Smith explained why the *Iskanian* rule interferes with individual arbitration, and serves as an obstacle to accomplishing the FAA's objectives:

> [B]y (a) preventing parties from crafting arbitration agreements to limit the arbitration only to individual claims and (b) allowing *ex post* demand for the arbitration of representative PAGA actions, the *Iskanian* rule forces the parties to lose the benefits of arbitration and frustrates the purposes of the FAA. The *Iskanian* rule burdens arbitrations in the same three ways identified in *Concepcion*: it makes the process

17

Gibson, Dunn & Crutcher LLP

slower, more costly, and more likely to generate procedural morass; it requires more formal and complex procedure; and it exposes the defendants to substantial unanticipated risk.

803 F.3d at 444 (Smith, J., dissenting.)  Echoing Judge Smith's reasoning, the Supreme Court held in *Epic Systems* that the FAA preempts laws that change the "fundamental" nature of "traditional arbitration" by sacrificing its principal advantages of informality, speed, low cost, and decreased risk. 138 S.Ct. at 1623.

PAGA actions do exactly that.  Under PAGA, labor regulators are entitled to notice of the action and the opportunity to intervene in the proceedings (Cal. Lab. Code § 2699.3(a)); damages are calculated for each pay period for each aggrieved employee for each Labor Code violation (*id.* § 2699, subd. (f)(2)); and all employees are bound by the judgment (*Arias v. Super. Ct.*, 46 Cal. 4th 969, 986 (2009)).  This serves only to increase complexity and cost.  *See Lamps Plus*, 139 S. Ct. at 1415 ("Class arbitration is not only markedly different from the 'traditional individualized arbitration' contemplated by the FAA, it also undermines the most important benefits of that familiar form of arbitration.").

Moreover, PAGA slows the process by requiring the named plaintiff to notify the state Labor and Workforce Development Agency 60 days before filing suit (Lab. Code, § 2699.3, subd. (a)(1)(A)), and requiring courts to approve any PAGA settlement (*id.* § 2699, subd. (l)–(2)).  And it inevitably entails a procedural morass—PAGA actions entail a host of individualized findings about the absent aggrieved employees the named plaintiff seeks to represent.  Thus, like class and collective arbitration, the *Iskanian* rule "sacrifice[s] the principal advantage of arbitration—its informality." *Epic Systems*, 138 S. Ct. at 1623.

The pressure to settle even the least meritorious PAGA claims is particularly acute because PAGA lacks traditional mechanisms for protecting defendants' due process rights.  Unlike class actions, a PAGA plaintiff need not demonstrate that his claim affects numerous employees, that common issues predominate across employees, that his claims are typical of others' claims, or that he adequately represents other employees.  *See Arias v. Super. Ct.*, 46 Cal. 4th 969, 986 (2009); Fed. R. Civ. P. 23(a)(1)–(4); Cal. Civ. Proc. Code § 382.  But the dangers to defendants go beyond the lack of traditional class action safeguards—an employee aggrieved by one Labor Code violation may sue for

18

Gibson, Dunn &
Crutcher LLP

any other Labor Code violation, even unrelated violations that did not affect him personally.  *See, e.g.,*

*Huff v. Securitas Security Services USA, Inc.*, 23 Cal. App. 5th 745, 761 (2018); *Raines v. Coastal*

*Pacific Food Distributors, Inc.*, 23 Cal. App. 5th 667, 680 (2018).

Indeed, some courts have stricken PAGA claims due to the same unmanageability issues that plague class actions.[11]  Others have held that, while PAGA cases present significant manageability concerns, PAGA lacks the protections of Rule 23 and cannot be stricken on manageability alone.[12] At bottom, PAGA involves the procedural morass of class actions with few of the formal protections— exactly the type of protracted, expensive litigation the FAA allows parties to avoid.  *Epic Systems*, 138 S.Ct. at 1623.

**E.      All Other Questions Are Reserved for Arbitration.**

The Supreme Court has "recognized that parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."   *Rent-A-Center*, 561 U.S. at 68–69 (quotation marks omitted).  Like "any other" provision in an arbitration agreement, these "delegation provision[s]" must be "enforce[d] . . . according to their terms."  *Id.* at 67–68, 70.

Here, the Arbitration Provision contains a clear and unmistakable delegation provision stating that all disputes "relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision . . . . shall be decided by an Arbitrator and not by a court."  Rosenthal Decl. Ex. 1 § 15.3(i); *accord id.* Ex. 2 § 15.2.1.  The Ninth Circuit in *Mohamed* already concluded that a nearly identical Arbitration Provision in the Technology Services Agreement "clearly and unmistakably delegated the question of arbitrability to the arbitrator," and courts "are required to enforce these agreements 'according to their terms.'"  848 F.3d at 1208–12.

---

[11]   *See Salazar v. McDonald's Corp.*, 2017 WL 88999, at *7–9 (N.D. Cal. Jan. 5, 2017), *aff'd Salazar v. McDonald's Corp.*, 939 F.3d 1051 (9th Cir. 2019); *Ortiz v. CVS Caremark Corporation*, 2014 WL 1117614, at *3–4 (N.D. Cal. Mar. 19, 2014); *Amiri v. Cox Communications California, LLC*, 272 F. Supp. 3d 1187, 1189 (C.D. Cal. 2017); *Raphael v. Tesoro Refining and Marketing Co. LLC*, 2015 WL 5680310, at *2 (C.D. Cal. Sept. 25, 2015); *Litty v. Merrill Lynch & Co., Inc.*, 2014 WL 5904904, at *3 (C.D. Cal. Nov. 10, 2014).

[12]   *See Delgado v. Marketsource, Inc.*, 2019 WL 1904216, at *4 (N.D. Cal. Apr. 29, 2019); *Mays v. Wal-Mart Stores, Inc.*, 2018 WL 6264992 (C.D. Cal. Nov. 1, 2018).

Gibson, Dunn & Crutcher LLP

Because the FAA governs this dispute, and because the Technology Services Agreement includes a delegation provision, there is no other work for the Court to do but compel arbitration.  *Id.*

### 1. The Technology Services Agreement is a valid arbitration agreement that covers this dispute.

Even if the Court considers questions concerning the scope or enforceability of the Arbitration Provision (it should not), the FAA still requires arbitration.  Two "gateway" issues would determine whether to compel arbitration:  (1) whether there exists a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.  *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *see also Moses H. Cone*, 460 U.S. at 24–25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").  The Technology Services Agreement meets both.

### a) There exists a valid agreement to arbitrate between Uber and Plaintiffs.

"When deciding whether the parties agreed to arbitrate a certain matter," courts generally "should apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Here, California law applies to Plaintiffs' claims because they reside in California, perform their obligations under the Technology Services Agreement in California, and they entered into the Agreements in California.  *See* Dkt. 9 ¶¶ 1, 9, 11; Rosenthal Decl., ¶¶ 5, 8, 12; *id.* Ex. 1 §§ 15.1, 15.3 (electing the FAA and California law); *id.* Ex. 2 §§ 15.1, 15.2 (electing the FAA and "the law pertaining to arbitration agreements of the state where you reside when you entered into this Agreement").

Under California law, a contract is formed electronically when a user receives reasonable notice of its terms and takes action that objectively manifests assent.  *See In re Holl*, 925 F.3d 1076, 1082–85 (9th Cir. 2019) ("Federal courts [applying California law] . . . have recognized the general enforceability of similar online agreements that require affirmative user assent."); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74–80 (2d Cir. 2017) (collecting cases and applying California law); *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 681, 687–88 (1996) (FAA preempts heightened notice requirements for arbitration clauses, such as a state law requiring that notice of arbitration be "typed in underlined capital letters on the first page of the contract"); *Sanchez v. Valencia Holding Co.*,

61 Cal. 4th 899, 914–15 (2015) (rejecting any rule purporting to impose an "obligation to highlight the arbitration clause of [a] contract . . . [or] to specifically call that clause to [another party's] attention" as "preempted by the FAA").

Here, each Plaintiff formed a contract with Uber to arbitrate under state law upon accepting the Technology Services Agreement.  Rosenthal Decl. ¶¶ 19–66; *see Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049–50 (2001) ("[O]rdinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms.").  The terms of the Arbitration Provision were clearly and conspicuously communicated to Plaintiffs.  When Plaintiffs signed up to use the Uber App, they were presented with a hyperlink to the Technology Services Agreement.  *Id.* ¶¶ 9–13.  When they clicked that link, they saw in bold, capital text on the first page of the 2015 Agreement, and again in large, bold text at the beginning of the Arbitration Provision in both the 2015 and 2019 Agreements, that they could opt out.  *Id.* Ex. 1 at 1 & § 15.3; *id.* Ex. 2 § 15.2.  After acceptance, the Agreement was delivered to the Plaintiffs' online portals, where they could review it at any time at their leisure.  *Id.* ¶ 17.

Additionally, Plaintiffs accepted the agreement by *twice* confirming that they reviewed and accepted the Technology Services Agreement.  See Rosenthal Decl. ¶¶ 9–10, 13–14; *see also Meyer*, 868 F.3d at 75 (courts "routinely uphold" agreements when "the user has affirmatively assented to the terms of agreement by clicking 'I agree'"); *id.* at 74, 80 (plaintiff "unambiguously manifested his assent to [a contract that linked to an arbitration provision] as a matter of California law").[13]  These confirmations were clear and conspicuous, see Rosenthal Decl. ¶¶ 9–10, 13–14, and have been repeatedly upheld by courts, *e.g.*, *Meyer*, 868 F.3d at 74–80; *Mohamed*, 848 F.3d at 1207–10; *Okereke*, 2017 WL 6336080, at *6; *see also supra* pp. 6–7 & n.4 (collecting cases).

### b)       The Arbitration Provision covers this dispute.

Because a presumption of arbitrability exists where a contract contains an arbitration agreement, a motion to compel arbitration must be granted when it cannot "be said with positive

---

[13]  *See also, e.g.*, *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910–12 (N.D. Cal. 2011); *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862–63 (2016); *Siebert v. Amateur Athletic Union*, 422 F. Supp. 2d 1033, 1039 (D. Minn. 2006).

assurance that the arbitration [agreement] is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation marks omitted). "Doubts should be resolved in favor of coverage." *Id.* (quotation marks omitted). Here, the Arbitration Provision plainly covers Plaintiffs' misclassification and wage-and-hour claims. It provides that the parties will arbitrate "any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Services," and applies "without limitation [to] disputes arising out of or relating to . . . [each Plaintiff's] relationship with [Uber] . . . [and] disputes regarding any city, county, state or federal wage-hour law." Rosenthal Decl. Ex. 1 §§ 15.2–15.3; *accord id.* Ex. 2 §§ 15.2–15.3. And each of Plaintiffs' causes of action arises out of their relationships with Uber, their use of the Uber App, and Uber's compliance with state and federal laws.

## F.     This Action Should Be Stayed Pending Arbitration.

The FAA provides that if suit is brought "upon any issue referable to arbitration," the court "shall on application of one of the parties stay the trial . . . until such arbitration" is complete. 9 U.S.C. § 3; *Concepcion*, 563 U.S. at 344 (a court must "stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'") (quoting 9 U.S.C. § 3); *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073 (9th Cir. 2014) (Section 3 "direct[s] that the action 'shall' be stayed pending completion of arbitration"). Accordingly, Uber requests that the Court stay this action during the pendency of arbitration. *Magana v. Doordash, Inc.*, 343 F. Supp. 3d 891, 901–02 (N.D. Cal. 2015) (Hamilton, J.) (granting stay "pending arbitration pursuant to the FAA").

Even if the Court determines that Plaintiffs' PAGA claims cannot be waived or arbitrated on an individual, non-representative basis (*but see* discussion *supra* pp. 14–18), any representative claims that must be litigated in court must—pursuant to the Arbitration Provision in the parties' agreements—be stayed pending completion of any individual claims in arbitration. *See* Rosenthal Decl. Ex. 1 § 15.3(v) ("To the extent that there are any claims to be litigated in a civil court of competent jurisdiction because a civil court of competent jurisdiction determines that the PAGA Waiver is unenforceable with respect to those claims, the Parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration."), Ex. 2 § 15.2.5 ("any representative claim that is permitted to proceed in a civil court of competent jurisdiction must be

22

stayed pending the arbitration of your dispute regarding the nature of your relationship with the Company and any claim you bring on your own behalf for individualized relief"); *e.g.*, *Gonzales*, 407 F. Supp. 3d at 868 (staying PAGA claims pending arbitration of individual wage-and-hour claims); *Whitworth*, 336 F. Supp. 3d at 1131 (same); *Gilbert Ents. v. Amazon.com*, No. 19-cv-2453-DMG, 2019 WL 6481697 at *5 (C.D. Cal. Sept. 23, 2019) (same).

## IV.   CONCLUSION

By executing the Arbitration Provision, Plaintiffs have agreed to have an arbitrator adjudicate the claims that they now seek to assert against Uber, as well as all threshold issues related to the validity and enforceability of the Arbitration Provision itself.  As such, the Court should grant Uber's motion to compel arbitration.  Uber further requests that the Court stay the action during the pendency of arbitration.

Dated:  March 5, 2020                               GIBSON, DUNN & CRUTCHER LLP


By:_____*/s/ Theane Evangelis*_____
                          Theane Evangelis

Attorneys for Defendant UBER TECHNOLOGIES, INC.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
CASE NO. 4:19-CV-08228-PJH

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of March, 2020, I filed the foregoing document with this Court using the CM/ECF filing system.  This system sends notifications of such filing and service to all counsel of record.


GIBSON, DUNN & CRUTCHER LLP

By:       */s/ Theane Evangelis*
           Theane Evangelis

Attorneys for Defendant UBER TECHNOLOGIES, INC.