Allen Patatanyan (State Bar No. 210586)
　*allen@westcoasttriallawyers.com*
Neama Rahmani (State Bar No. 223819)
　*nr@westcoasttriallawyers.com*
Ronald L. Zambrano (State Bar No. 255613)
　*ron@westcoasttriallawyers.com*
WEST COAST EMPLOYMENT LAWYERS, APLC
350 South Grand Avenue, Suite 3325
Los Angeles, California 90071
Telephone: (213) 927-3700
Facsimile: (213) 927-3701
*efilings@westcoasttriallawyers.com*

Attorneys for Plaintiffs, JERICHO NICOLAS, et al. and Other Similarly Situated and Aggrieved Employees

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERICHO NICOLAS an individual, et al., On Behalf of Themselves and All Others Similarly Situated and Aggrieved;<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC, a Delaware Corporation; and DOES 1 through 10,<br><br>Defendants. | CASE NO.: 4:19-cv-08228-PJH<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Hearing Date:　May 27, 2020<br>Hearing Time:　9:00 am<br>Hearing Place:　Courtroom 3<br>Judge:　Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 5 |
| II. | BACKGROUND | 5 |
| | A. Each Plaintiff Opted Out Of Arbitration | **Error! Bookmark not defined.** |
| III. | LEGAL STANDARD ON A MOTION TO COMPEL ARBITRATION | 12 |
| IV. | ARGUMENT | 12 |
| | A. Plaintiffs Opted Out in Fact and By Operation of Law | 12 |
| | B. Uber's 2019 Agreement Terminates the 2015 Agreement | 14 |
| | C. Uber's arbitration provisions are procedurally and substantively unconscionable | 15 |
| |    1. Procedural Unconscionability | 16 |
| |    2. Substantive Unconscionability | 17 |
| V. | CONCLUSION | 18 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*A & M Produce Co. v. FMC Corp.*,
 135 Cal. App. 3d 473 (1982) ................................................................................. 15, 16

*Ajamian v. CantorC02e, L.P.*,
 203 Cal. App. 4th 771 (2012). ........................................................................................ 11

*Armendariz v. Found. Health Psychcare Servs.*,
 *Inc.* 24 Cal. 4th 83 (2000) ............................................................................................... 15

*AT&T Mobility LLC v. Concepcion*,
 131 S. Ct. 1740 (2011) ..................................................................................................... 14

*Baltazar v. Forever 21, Inc.*,
 62 Cal. 4th 1237 (2013) ................................................................................................... 15

*Chavarria v. Ralphs Grocery Co.*,
 733 F.3d 916 (2013) ......................................................................................................... 12

*Circuit City Stores, Inc. v. Adams*,
 20020 279 F.3d 889 (2002) ............................................................................................. 14

*Connell v. Higgins*,
 170 Cal. 541, 556 (1915). ................................................................................................ 13

*Cox v. Ocean View Hotel Corp.*,
 533 F. 3d 1114 (2008) ...................................................................................................... 14

*First Options of Chicago, Inc., v. Kaplan*,
 514 U.S. 938 (1995) .......................................................................................................... 14

*Guzman v. Visalia Community Bank*,
 71 Cal. App. 4th. (1999) .................................................................................................. 12

*Kinney v. United Healthcare Service, Inc*,
 70 Cal. App. 4th at 1329 (1999) ..................................................................................... 16

*Mercuro v. Superior Court*,

| | |
|---|---|
| 96 Cal. App. 4th 167 (2002) | 16 |
| *Perry v. Thomas,* | |
| 482 U.S. 483 (1987) | 14 |
| *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC,* | |
| 55 Cal. 4th 223 (2012) | 15 |
| *Romo v. Y–3 Holdings, Inc.,* | |
| 87 Cal. App. 4th 1153 (2000) | 12 |
| *See Engalla v. Permanente Med. Grp., Inc.,* | |
| 15 Cal. 4th 951 (1997) | 11 |
| *Sonic–Calabasas A, Inc. v. Moreno* | |
| 57 Cal. 4th 1109, 163 Cal. Rptr. 3d 269 (2013) | 15 |
| *Suh v. Superior Court,* | |
| 181 Cal. App. 4th 1504 (2010) | 17 |
| *Urbino v. Orkin Services of California, Inc.,* | |
| 882 F. Supp. 2d 1152 (2011) | 14 |

**Statutes**

| | |
|---|---|
| 9 U.S.C. §§ 1-2 | 12, 13, 14 |
| Code Civ. Proc. § 1549 | 15 |
| Code Civ. Proc. § 1644 | 14 |
| Code Civ. Proc. § 1281 | 12, 13 |
| Code Civ. Proc. § 382 | 5 |

## I. INTRODUCTION

Plaintiffs hereby respond to Defendant's Motion to Compel Arbitration ("Motion") and respectfully request the Court to deny the Motion because;

    (1) all named Plaintiffs have properly opted out of the arbitration provisions of Defendant's 2019 Technology Service Agreement;

    (2) defendant's 2019 Technology Service Agreement terminates all prior agreements; and

    (3) the arbitration provisions are procedurally and substantively unconscionable and, therefore, unenforceable.

This is a wage and hour class action pursuant to California Code of Civil Procedure § 382, on behalf of Plaintiffs and all individuals working or having worked as "ride-share drivers" ("Class Members") for Defendant UBER TECHNOLOGIES, INC., (hereinafter "UBER") within the State of California. Plaintiffs are informed and believe and, based thereon allege, that the Class Members consist of approximately 50,000-75,000 current and former UBER employees who worked as UBER "ride-share drivers." Plaintiffs, on behalf of themselves and all Class Members, file this Motion in Opposition to Defendant's Motion to Compel Arbitration.

## II. BACKGROUND

To begin using the UBER App and connect with riders, a driver must enter into a license agreement called the Technology Services Agreement. *See* Mtn. to Compel Arbitration ("Mtn."), 2:3-4. The original Agreement (hereinafter "2015 Agreement"), which included an arbitration provision that applied to Plaintiffs, was in effect on or about December 11, 2015 through November 24, 2019. *See* Mtn. 2:4-5. On or about November 25, 2019, UBER updated its terms of use in an amended Technology Services Agreement (hereinafter "2019 Agreement"). *See* Declaration of Brad Rosenthal in Support of Defendant Uber Technologies, Inc's Motion to Compel Arbitration, ("Decl. Rosenthal"), 4:17-24.

Plaintiffs' in this action were presented with the 2019 Agreement, which included an arbitration provision. *See* Mtn. 5:6-11. Relying on the arbitration provision in the 2019 Agreement, Plaintiffs acted to opt out of arbitration. *See* Declaration of Ronald Zambrano in

Support of Opposition to Motion to Compel Arbitration, ("Decl. Zambrano), Exhibits A-AC, which are true and correct copies of Plaintiffs' emails to optout@uber.com. Despite this action, UBER argues Plaintiffs are bound by arbitration.

### A. UBER Acknowledged the Opt Out Emails

Defendant's motion to compel arbitration is meritless because each plaintiff opted out of the arbitration provisions of the 2019 Agreement. First, UBER does not assert Plaintiffs **Kevin Neely**, **Alexis Gonzalez**, and **Mark Glinoga** failed to opt out of the arbitration agreement. *See* Mtn. 2:21-22, 4:11-13. Ergo, the dispute for these three Plaintiffs is not subject to arbitration.

As for the rest of the named Plaintiffs, all opted out of the arbitration agreement, as set forth here: On or about November 30, 2019 and January 14, 2020, Plaintiff **Laura Alvarado Hernandez** opted-out of arbitration via e-mail and included her phone number, her city of residence and her intention to opt-out of arbitration. *See* Decl. Zambrano, Exhibit A. On or about November 30, 2019, **Laura Alvarado Hernandez**, received confirmation of her opt-out e-mail upon submission. *Id*.

On or about December 13, 2019, Plaintiff **Carlos Alvarez** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number. *See* Decl. Rosenthal 8:5-7.

On or about December 14, 2019 Plaintiff **Karen Y. Alvarez** opted out of arbitration via e-mail by stating her intention to opt-out of arbitration and included her phone number and received confirmation of her opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit B.

On or about December 8, 2019 Plaintiff **Rick Anderson** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and city of residence and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit C.

On or about November 29, 2019 Plaintiff **Sherif Bebawy** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and city of residence and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit D.

On or about December 16, 2019 Plaintiff **Kevin Byler** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number. *See* Decl. Rosenthal 7:21-23.

On or about November 27, 2019 Plaintiff **Eric Calvillo-Hernandez** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and city of residence. *See* Decl. Rosenthal 8:5-7.

On or about December 23, 2019 Plaintiff **Christopher Campana** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit E.

On or about December 13, 2019 Plaintiff **Gustavo Candelo** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and received confirmation of his opt-out e-mail upon submission. On or about January 23, 2019, Plaintiff Gustavo Candelo sent a supplemental e-mail to opt-out of arbitration which included his city of residence and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit F.

On or about December 18, 2019 Plaintiff **Jason Casas** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number. *See* Decl. Rosenthal 8:23-25.

On or about December 21, 2019 Plaintiff **Bryant Castaneda** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number. On or about January 16, 2019, Plaintiff Bryant Castaneda sent a supplemental e-mail to opt-out of arbitration which included his city of residence. *See* Decl. Rosenthal 9:4-5.

On or about December 24, 2019, Plaintiff **Juan Castro** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and city of residence and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit G.

On or about December 13, 2019 Plaintiff **Kelly Clifton** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number. *See* Decl.

Rosenthal 9:17-19.

On or about December 17, 2019 Plaintiff **Jose Contreras** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit H.

On or about December 13, 2019 Plaintiff **Jaime Del Real** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number. *See* Decl. Rosenthal 10:4-5.

On or about December 16, 2019 Plaintiff **Shamar Drew** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number. *See* Decl. Rosenthal 10:9-11.

On or about November 29, 2019 Plaintiff **Claudia Duque** opted out of arbitration via e-mail by stating her intention to opt-out of arbitration and included her phone number and city of residence and received confirmation of her opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit I.

On or about December 10, 2019 Plaintiff **Christine Economos** opted out of arbitration via e-mail by stating her intention to opt-out of arbitration and included her phone number and city of residence. *See* Decl. Rosenthal 10:22-23.

On or about December 17, 2019 Plaintiff **Royal Gaston** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit J.

On or about November 29, 2019 Plaintiff **Majd Iskandafi** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and city of residence and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit K.

On or about December 16, 2019 Plaintiff **Jorge Jimenez** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number. *See* Decl. Rosenthal 12:2-3.

On or about December 15, 2019 Plaintiff **Timothy Kershaw** opted out of arbitration via

e-mail by stating his intention to opt-out of arbitration and included his phone number and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit L.

On or about December 13, 2019 Plaintiff **Benjamin Laney** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number. *See* Decl. Rosenthal 12:14-15.

On or about December 16, 2019 Plaintiff **Yhon Lara** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit M. On or about December 31, 2019, Plaintiff Yhon Lara sent a supplemental e-mail to opt-out of arbitration which included his city of residence. *Id*.

On or about December 15, 2019 Plaintiff **Barton Lasheem** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit N.

On or about December 18, 2019 Plaintiff **Wayne Merritt** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and city of residence. *See* Decl. Rosenthal 13:6-7.

On or about December 13, 2019 Plaintiff **Juan Montalvo** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit O.

On or about December 21, 2019 Plaintiff **Syed Naqvi** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit P.

On or about December 15, 2019 Plaintiff **Jericho Nicolas** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number. *See* Decl. Rosenthal 14:7-9.

On or about December 13, 2019 Plaintiff **Williams Ramirez** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit Q.

On or about December 18, 2019 Plaintiff **James Sparks** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number. *See* Decl. Rosenthal 14:21-23. On or about January 13, 2020, Plaintiff James Sparks sent a supplemental e-mail to opt-out of arbitration which included his city of residence and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit R.

On or about December 14, 2019 Plaintiff **Kamal Suri** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number. On or about February 5, 2020, Plaintiff Kamal Suri sent a supplemental e-mail to opt-out of arbitration which included his city of residence. *See* Decl. Rosenthal 15:2-3.

On or about December 17, 2019 Plaintiff **Carlos Torres** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and city of residence and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit S.

On or about November 29, 2019 Plaintiff **Zuleyma Torres** opted out of arbitration via e-mail by stating her intention to opt-out of arbitration and included her phone number and city of residence and received confirmation of her opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit T.

On or about December 13, 2019 Plaintiff **Christine Tringali** opted out of arbitration via e-mail by stating her intention to opt-out of arbitration and included her phone number and city of residence. *See* Decl. Rosenthal 15:20-21.

On or about December 16, 2019 Plaintiff **Richard Trujilo** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit U.

On or about December 13, 2019 Plaintiff **Dora Waters** opted out of arbitration via e-mail by stating her intention to opt-out of arbitration and included her phone number. *See* Decl. Rosenthal 16:24-25.

On or about November 29, 2019 Plaintiff **Alexi Vinnik** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and city of

residence and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit V.

On or about November 29, 2019 Plaintiff **Rolando Vega** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and city of residence. *See* Decl. Rosenthal 16:12-13.

On or about December 13, 2019 Plaintiff **Sevak Vartanpour** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit W.

On or about December 13, 2019 Plaintiff **Steven Robert Callahan** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number. *See* Decl. Zambrano, Exhibit AB.

On or about December 13, 2019 Plaintiff **Juan Jamarron** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit X.

On or about December 13, 2019 Plaintiff **Marcos Montes** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit Y.

On or about January 16, 2020 Plaintiff **Lisette Castillo** opted out of arbitration via e-mail by stating her intention to opt-out of arbitration and included her phone number and city of residence. *See* Decl. Zambrano, Exhibit AC.

On or about December 13, 2019 Plaintiff **Gary Baumgarten** opted out of arbitration via e-mail by stating his intention to opt-out of arbitration and included his phone number and received confirmation of his opt-out e-mail upon submission. *See* Decl. Zambrano, Exhibit Z.

As UBER acknowledged the opt out of the Plaintiffs, the present action are not subject to the arbitration agreement and, therefore, cannot be compelled to arbitrate their claims. For these reasons, the Court should deny UBER to compel arbitration.

//

//

## III. LEGAL STANDARD ON A MOTION TO COMPEL ARBITRATION

The party attempting to enforce an arbitration agreement bears the burden of proving that a valid arbitration agreement exists and covers the claims at issue. *See Engalla v. Permanente Med. Grp., Inc.,* 15 Cal. 4th 951, 971 (1997). It is undisputed here that the Court has jurisdiction to determine arbitrability of the dispute, not an arbitrator. *See Ajamian v. CantorC02e, L.P.*, 203 Cal. App. 4th 771, 782 (2012). Under both the Federal Arbitration Act and the California Arbitration Act, state law contract principles apply to determine whether the parties formed a valid arbitration agreement. *See* 9 U.S.C. § 2; Cal. Civ. Pro. § 1281; see also *Chavarria v. Ralphs Grocery Co.,* 733 F.3d 916, 926-27 (2013); *Romo v. Y–3 Holdings, Inc.*, 87 Cal. App. 4th 1153, 1158–59 (2000); *Craig v. Brown & Root, Inc.,* 84 Cal. App. 4th 416, 420 (2000). Here, UBER has not met its burden to prove the Plaintiffs are bound by a valid agreement to arbitrate. Specifically, UBER failed to establish that the Plaintiffs consented to and are bound to arbitrate.

## IV. ARGUMENT

The Court should deny Defendant's Motion because: (1) Plaintiffs properly opt-ed out of the relevant arbitration provision; (2) UBER's Agreement terminates the 2015 Agreement; and (3) UBER's arbitration provisions are procedurally and substantively unconscionable and, therefore, unenforceable.

### A. Plaintiffs Opted Out in Fact and By Operation of Law

Traditional state contract law applies to the validity and enforceability of UBER's alleged arbitration agreement. *See* 9 U.S.C. § 2; Cal. Civ. Pro. § 1281. "The interpretation of the purported acceptance or rejection of an offer is a question of fact . . . [T]he test of the true meaning of an acceptance . . . is what a reasonable person in the position of the parties would have thought it meant." *Guzman v. Visalia Community Bank,* 71 Cal. App. 4th. (1999). "Acceptance of an offer, which may be manifested by conduct as well as by words, must be expressed or communicated by the offeree to the offeror." *Russell v. Union Oil Co*. 7 Cal. App. 3d 110, 114. (1970).

Here, under the 2019 Agreement, UBER made an ***offer*** to its ride-share drivers to opt-out of the arbitration of claims within 30 days of accepting new terms and conditions for being UBER

drivers. *See* Mtn. 5:19-22. The specific instruction to do so was by way of an electronic message from the email address associated with their UBER account to optout@uber.com, stating their intent to opt out of this arbitration provision, as well as providing their name, the phone number associated with their account, and the city they live in. *See id*. So, in contractual terms, UBER offered each ride-share driver (like Plaintiffs herein) the option to opt-out of the arbitration provision. The manner of acceptance of this opt-out offer was performance of two reasonable steps: (1) an email communicating the intent to opt-out; and (2) the opt-out email communication be sent within 30 days. Therefore, where a driver emailed their intent to opt out within 30 days, UBER and the driver agreed that the arbitration provision was no longer a term or condition of their working relationship. There could be no more reasonable interpretation of this contract from the position of the parties.

As set forth substantively above, each Plaintiff sent UBER an email expressing their desire to opt-out within 30 days of accepting the new terms and conditions. *See* Exhs. "A-AC", Decl. Zambrano. Plaintiffs' performance legally constituted acceptance of UBER's offer, forming a legally enforceable contract where both UBER and Plaintiffs are no longer subject to the arbitration provision. *See Union Oil Co.* 7 Cal. App. 3d 110, 114.

Exalting form over substance, UBER ostensibly argues Plaintiffs did not complete performance, and thus the offer was not accepted, merely because of the omission of a phone number and/or a city of residence in the opt-out emails. *See* Mtn. 5:25-28. UBER cites no authority for this underlying legal premise. Plaintiffs posit their timely emails communicating their intent to opt-out is full performance of terms because "the words of a contract are to be understood in their ordinary and popular sense." Cal. Civ. Code § 1644. The ordinary sense of UBER's invitation for drivers to email their intent to opt-out reasonably requires a timely email expressing same. The manner of performance beyond this should not be pedantically overcomplicated as a matter of law. Substantial performance means that there has been no willful departure from the terms of the contract, and no omission of any of its essential parts, and that the contractor has in good faith performed all of its substantive terms. If so, he will not be held to have forfeited his right to a recovery by reason of trivial defects or imperfections in the work

performed. *Connell v. Higgins* 170 Cal. 541, 556 (1915). Thus, Plaintiffs timely opt-out emails substantially perform the intent of the parties. i.e., opt out in a timely way.

Does the lack of a phone number or city of residence prevent UBER from understanding a drivers' timely communication expressing their desire to opt out of the arbitration provision? Is UBER so befuddled by these omissions that it cannot grasp the meaning of these emails? This hyperbolic exercise illustrates the absurdity of UBER's position that a missing city or phone number waters down the legal consequence of Plaintiffs' timely opt-out emails.

Moreover, UBER acknowledged by email the receipt of Plaintiffs' opt-out communications. *See* Decl. Zambrano at Exhs. "A" – "AC." This conduct demonstrates UBER's contemporaneous satisfaction of performance by the Plaintiffs.

**B. Uber's 2019 Agreement Terminates the 2015 Agreement**

In deciding whether to enforce an arbitration agreement, the court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Cox v. Ocean View Hotel Corp.* 533 F. 3d 1114, 1119, (2008); see also 9 U.S.C. § 2; *Urbino v. Orkin Services of California*, *Inc.* 882 F. Supp. 2d 1152 (2011). Determining the validity of an arbitration agreement is a question of contract interpretation and thus governed by state law. *Circuit City Stores, Inc. v. Adams,* 20020 279 F.3d 889, 892 (2002); see also *First Options of Chicago, Inc., v. Kaplan* 514 U.S. 938, 944 (1995). While the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA") maintains a policy that favors the enforcement of arbitration agreements, *AT&T Mobility LLC v. Concepcion* 131 S. Ct. 1740, 1746 (2011); see also *Circuit City Stores* 279 F. 3d at 889, 892 (2002), that policy does not apply to a court's preliminary determination whether any agreement to arbitrate exists. *Perry v. Thomas* 482 U.S. 483, 492 (1987). "A contract is an agreement to do or not to do a certain thing" Cal. Civ. Code § 1549, and contract elements include parties capable of contracting, their mutual consent, a lawful object, and sufficient consideration. *Id.* at §§ 1S50, 1565.

Here, the 2019 Agreement states:

**13.5** Entire Agreement. Except as provided below, this Agreement, including all Supplemental Terms, constitutes the entire agreement and understanding of the parties with respect to its subject matter and replaces and supersedes all

prior or contemporaneous agreements or undertakings regarding such subject matter…. Notwithstanding the foregoing, if you opt out of the arbitration provision set forth in Section 15.2 below, then any prior arbitration agreement between the parties shall remain in full forces and effect.

**14.** Existing Agreements. This Section 14 only applies if you were party to a 2015 Agreement effective immediately prior to the Effective Time:14.1   2015 Agreement. Except as provided in Section 15 below, you and the applicable Uber Subsidiary hereby terminate such 2015 Agreement (except as provided in Section 12.3 of the 2015 Agreement), effective as of the Effective Time. "Effective Time" means the date and time on which the Agreement is accepted by you.

Section 13.5 of the 2019 Agreement states that even if Plaintiffs opt-out of the 2019 arbitration provision, Plaintiffs are still subject to any existing Arbitration Provision, i.e. the 2015 Agreement.  At the same time, sections 13.5 and 14 of the 2019 Agreement provide that the 2019 Agreement "replaces," "supersedes," and specifically terminates the 2015 Agreement. In other words, UBER cannot use the 2015 Agreement to bind Plaintiffs to arbitration because the 2019 Agreement terminated the 2015 Agreement. The termination of the 2015 Agreement became effective when Plaintiffs accepted the 2019 Agreement. Subsequently, all Plaintiffs opted out of arbitration because they acted in reliance on the arbitration provision in the 2019 Agreement. Plaintiffs did not show mutual consent to be bound to arbitration of their disputes with UBER. In fact, Plaintiffs showed lack of consent to arbitrate when they took steps to opt out.  Therefore, UBER has failed to show a valid agreement to arbitrate between Plaintiffs and itself exists.

Moreover, UBER fails to present evidence of any Plaintiffs' agreement to the 2015 agreement. A contract's terms must be consented to after they are communicated. *See* Cal. Civ. Pro § 1565.  There is no evidence that drivers starting after 2015 consented to a 2015 agreement. There is no evidence that any of the named Plaintiffs' agreed to the 2015 agreement. Based thereon, Plaintiffs respectfully ask the Court find the 2015 arbitration agreement does not apply to the present dispute.

    **C.**     **Uber's arbitration provisions are procedurally and substantively unconscionable**

Under California law, "'unconscionability has both a "procedural" and a "substantive"

element,' the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Armendariz v. Found. Health Psychcare Servs., Inc.* 24 Cal. 4th 83 (2000) quoting *A & M Produce Co. v. FMC Corp.* 135 Cal. App. 3d 473 (1982). Both substantive and procedural unconscionability must be present for a court to find a contract unconscionable, but "they need not be present in the same degree." *Id.* Recently, the California Supreme Court has emphasized that "unconscionability requires a substantial degree of unfairness *beyond 'a simple old-fashioned bad bargain.'*" *Baltazar v. Forever 21, Inc.* 62 Cal. 4th 1237 (2013) quoting *Sonic–Calabasas A, Inc. v. Moreno* 57 Cal. 4th 1109, 163 Cal. Rptr. 3d 269, 311 P.3d 184, 202 (2013). Rather, unconscionable contracts are those that are "so one-sided as to 'shock the conscience.'" *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC* 55 Cal. 4th 223 (2012).

In this case, UBER gave its ride-share drivers no meaningful opportunity to opt-out of arbitration. Under the 2019 Agreement, UBER terminated the 2015 Agreement, but at the same time bound Plaintiffs to the 2015 Agreement. UBER has not explained the function of Plaintiffs' opt out of the 2019 Agreement. In reading UBER's motion, Plaintiffs are left with no understanding of what, if anything, they opted out of when they acted in reliance on the 2019 Agreement's arbitration provision and messaged their intent to opt out of arbitration. As it stands, UBER has failed to provide Plaintiffs an opportunity to opt out of arbitration and, therefore, are attempting to bind Plaintiffs to an adhesive provision. As discussed *supra*, UBER's arbitration provision is unconscionable because it is adhesive.

1. **Procedural Unconscionability**

An agreement is procedurally unconscionable if there is gross inequality of bargaining power between the parties. The procedural aspect of the unconscionability analysis focuses on the manner in which the agreement was negotiated and, typically, on "the oppressiveness of the stronger party's conduct." *Kinney v. United Healthcare Service, Inc,* 70 Cal. App. 4th at 1329 (1999); *Mercuro v. Superior Court* 96 Cal. App. 4th 167, 174 (2002). "Oppression arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice." *A&M Produce Co. v. FMC Corp.* 135 Cal. App. 3d 473, 486 (1982).

Section 13.5 of the 2019 Agreement states that even if Plaintiffs opt-out of the 2019 arbitration provision, Plaintiffs are still subject to any existing Arbitration Provision, i.e. the 2015 Agreement. The 2015 Agreement also states that even if this agreement is modified, it does not create a renewed opportunity to opt out of arbitration. The reasonable inference is that this clause in the 2015 and 2019 Agreements bound Plaintiffs to arbitration, no matter how many times UBER changed its terms and conditions. UBER made sure it remained in control of how disputes would be resolved between ride-share drivers and itself. The 2015 and 2019 Agreements' arbitration provisions were non-negotiable as it applied to Plaintiffs. No real negotiation took place or could have possibly taken place in regard to being subjected to arbitration even if UBER changed its terms. As such, the agreement was procedurally unconscionable because of the gross inequality of bargaining power between UBER and its ride-share drivers.

### 2. Substantive Unconscionability

"Substantive unconscionability focuses on 'the actual terms of the agreement and evaluates whether they create such 'overly harsh' or 'one-sided' results as to 'shock the conscience'." *Suh v. Superior Court* 181 Cal.App.4th 1504, 1515 (2010).

The arbitration provision found in the 2015 and 2019 Agreement is particularly harsh towards ride-share drivers in that, even if Plaintiffs were well-versed in legal and contractual terminology, they would not understand the terms they are bound by. Within the four corners of the 2019 Agreement, Plaintiffs interpreted the plain meaning of the terms to replace and supersede any prior agreement. A lay person's reasonable interpretation of the 2019 Agreement, especially in the context of a ride-share driver attempting to use an application to connect with potential riders, could not be expected to be more than understanding the plain meaning of a contract's terms. The argument that ride-share drivers consented to arbitrate their claims based on complicated contractual tricks of referring to previous agreements while simultaneously terminating those same agreements is the epitome of one-sided. To be bound to UBER's preferred terms, regardless of agreement amendments and actions clearly communicating intent not to be bound, is substantially unconscionable.

//

Accordingly, Plaintiffs respectfully ask the Court to find the provision binding drivers in 2019 to a 2015 arbitration agreement as procedurally and substantively unconscionable, and thus unenforceable against the Plaintiffs.

## V. CONCLUSION

In sum, all Plaintiffs properly opted out of the 2019 arbitration provision, and cannot be subject to a 2015 arbitration provision. As such, Plaintiffs respectfully ask the Court to deny UBER's motion to compel arbitration.

Dated: April 16, 2020          WEST COAST EMPLOYMENT LAWYERS, APLC

By: _____
Ronald L. Zambrano
Attorneys for Plaintiffs and Class Members,
NICHOLAS JERICHO, et al.