1  GIBSON, DUNN & CRUTCHER LLP
   THEANE EVANGELIS, SBN 243570
2    tevangelis@gibsondunn.com
   HEATHER RICHARDSON, SBN 246517
3    hrichardson@gibsondunn.com
   BRANDON J. STOKER, SBN 277325
4    bstoker@gibsondunn.com
   SAMUEL ECKMAN, SBN 308923
5    seckman@gibsondunn.com
6  333 South Grand Avenue
   Los Angeles, CA 90071-3197
7  Telephone: 213.229.7000
   Facsimile: 213.229.7520
8
   Attorneys for Defendant
9  UBER TECHNOLOGIES, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERICHO NICOLAS, *et al.*, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>　　　　　　Defendant. | CASE NO. 4:19-cv-08228-PJH<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Action filed:　December 18, 2019<br>Trial Date:　　None Set<br>Judge:　　　　Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 2 |
| | A. With the Exception of Their PAGA Claim, Plaintiffs Fail to Allege Any Claims That Are Not Precluded by the *O'Connor* Settlement. | 2 |
| | B. All of Plaintiffs' Claims Also Fail for Independent Reasons. | 4 |
| | 1. Plaintiffs Fail to Allege Facts to Support Their Claim That Uber Did Not Timely Pay Wages (Count I). | 4 |
| | 2. Plaintiffs Fail to Allege Facts to Support Their Minimum Wage and Overtime Claims (Counts II, V, and VI). | 6 |
| | 3. There Is No Private Right of Action for Failure to Maintain Required Records (Count III). | 7 |
| | 4. Plaintiffs Fail to Allege Facts That Support Their Wage Statements Claim (Count IV). | 8 |
| | 5. Plaintiffs Fail to Allege a Viable Predicate Violation to Support Their UCL and PAGA Claims (Counts VII and VIII). | 10 |
| | 6. Plaintiffs Fail to Allege Compliance with PAGA's Procedural Prerequisites (Count VIII). | 10 |
| | 7. There Is No Private Cause of Action for Plaintiffs' Willful Misclassification Claim and, Even if There Were, Plaintiffs Fail to Allege Facts to Support This Claim (Count IX). | 11 |
| III. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarez v. Hyatt Regency Long Beach*,
   2009 WL 10673222 (C.D. Cal. Aug. 6, 2009)...............................................................................5

*Arias v. Super. Ct.*,
   46 Cal. 4th 969 (2009) ................................................................................................................7

*Aschroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................1, 2, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................................1, 3

*Broam v. Bogan*,
   320 F.3d 1023 (9th Cir. 2003) .....................................................................................................4

*Byrd v. Masonite Corp.*,
   2016 WL 756523 (C.D. Cal. Feb. 25, 2016) ...............................................................................8

*Caliber Bodyworks, Inc. v. Super. Ct.*,
   134 Cal. App. 4th 365 (2005) ....................................................................................................10

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013).....................................................................................................3

*Colopy v. Uber Techs. Inc.*,
   2019 WL 6841218 (N.D. Cal. Dec. 16, 2019) ............................................................................6

*Hoffman v. Constr. Protective Servs., Inc.*,
   293 F. App'x 462 (9th Cir. 2008) ................................................................................................9

*K Tech. Commc'ns, Inc. v. Time Warner Cable, Inc.*,
   2012 WL 13012672 (C.D. Cal. Feb. 21, 2012) ...........................................................................4

*Kellgren v. Petco Animal Supplies, Inc.*,
   2013 WL 12076473 (S.D. Cal. Sept. 13, 2013) ........................................................................11

*Kemp v. Int'l Bus. Machines Corp.*,
   2010 WL 4698490 (N.D. Cal. Nov. 8, 2010) ..............................................................................8

*Kim v. Reins Int'l California, Inc.*,
   18 Cal. App. 5th 1052 (2017) ...................................................................................................10

*Kim v. Reins Int'l California, Inc.*,
   9 Cal. 5th 73 (2020) ..................................................................................................................10

*Krauss v. Wal-Mart, Inc.*,
   2019 WL 6170770 (E.D. Cal. Nov. 20, 2019).............................................................................8

*Landers v. Quality Commc'ns, Inc.*,
 771 F.3d 638 (9th Cir. 2014)...........................................................................................1, 6

*Lee v. Postmates Inc.*,
 2018 WL 6605659 (N.D. Cal. Dec. 17, 2018).........................................................................11

*Magadia v. Wal-Mart Assocs., Inc.*,
 384 F. Supp. 3d 1058 (N.D. Cal. 2019)...................................................................................9

*Mays v. Wal-Mart Stores, Inc.*,
 -- F. App'x --, 2020 WL 1277642 (9th Cir. Mar. 17, 2020)....................................................9

*Partida v. Stater Bros. Markets*,
 2019 WL 1601387 (C.D. Cal. Feb. 19, 2019)..........................................................................5

*Perez v. DNC Parks & Resorts at Asilomar, Inc.*,
 2019 WL 5618169 (E.D. Cal. Oct. 31, 2019)..........................................................................5

*Peterson v. Alaska Commc'ns Sys. Grp., Inc.*,
 2013 WL 12204839 (D. Alaska Mar. 27, 2013).....................................................................11

*Price v. Starbucks Corp.*,
 192 Cal. App. 4th 1136 (2011) ..............................................................................................10

*Rangel v. PLS Check Cashers of Cal., Inc.*,
 899 F.3d 1106 (9th Cir. 2018)..................................................................................................2

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
 442 F.3d 741 (9th Cir. 2006)....................................................................................................2

*Rosset v. Hunter Eng'g Co.*,
 2014 WL 3569332 (N.D. Cal. July 17, 2014).........................................................................11

*Soratorio v. Tesoro Refining & Mktg. Co.*,
 2017 WL 8220415 (C.D. Cal. Sept. 11, 2017).........................................................................5

*Tan v. GrubHub, Inc.*,
 171 F. Supp. 3d 998 (N.D. Cal. 2016) ...............................................................................7, 10

*Thomas v. Home Depot USA, Inc.*,
 527 F. Supp. 2d 1003 (N.D. Cal. 2007) .................................................................................10

*Velasco v. Elliot*,
 2018 WL 6069009 (N.D. Cal. Nov. 20, 2018).........................................................................6

*Villalpando v. Exel Direct Inc.*,
 2014 WL 1338297 (N.D. Cal. Mar. 28, 2014).......................................................................11

*Yucesoy v. Uber Techs., Inc.*,
  2015 WL 6955140 (N.D. Cal. Nov. 10, 2015) ...........................................................................7

*ZB, N.A. v. Super. Ct.*,
  8 Cal. 5th 175 (2019) ..............................................................................................................10

**Statutes**

Cal. Lab. Code § 2699.3 ...........................................................................................................10, 11

Cal. Lab. Code § 2750.3 ..................................................................................................................4

## I. INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC") alleges that Defendant Uber Technologies, Inc. ("Uber") misclassified them and similarly situated transportation providers as independent contractors since at least April 2018 and, consequently, violated various California wage-and-hour laws. But while the FAC is full of legal conclusions, oftentimes parroting the language of the relevant statutes, it is bereft of any *factual* allegations to support Plaintiffs' claims. To take just one example, although Plaintiffs allege that Defendants violated California overtime law by "failing and refusing to pay Plaintiffs and Class Members overtime compensation … for work performed in excess of forty (40) hours per workweek" (FAC ¶ 105), the FAC does not identify a single Plaintiff who *actually* worked in excess of 40 hours per week. As the Supreme Court has made clear, such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (same); *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641–46 (9th Cir. 2014) ("Under *Twombly*, a complaint that offers 'label and conclusions, . . . a formulaic recitation of the elements of a cause of action[,]' or 'naked assertion[s]' devoid of 'further factual enhancement' will not suffice" to state a claim, and wage and hour plaintiffs must therefore "present[]" specific factual assertions that are more than "generalized allegations asserting violations" or "conclusory allegations that merely recite the statutory language."). This failure to plead facts from which the Court may plausibly infer a violation of California law infects every aspect of the FAC.

*First*, Plaintiffs attempt to evade the preclusive effect of a prior Class Action Settlement and Release (the "*O'Connor* Settlement") on the ground that it releases claims only through February 28, 2019, whereas the FAC asserts claims from April 2018 to the present day. Opp'n at 3–6. But Plaintiffs overlook the fact that the FAC does not allege any facts suggesting that Uber violated California's wage-and-hour law *after* February 28, 2019—in fact, the FAC does not allege that a single Plaintiff even *used* the Uber App after that date. Plaintiffs endeavor to cure this pleading defect with a declaration from Plaintiffs Marcos Montes and Royal Gaston, who purportedly began to use the Uber App in March and May of 2019, respectively, but that effort is fruitless because Uber's Motion to Dismiss was brought *only with respect to* Plaintiffs Mark Glinoga, Kevin Neely, and Alexis Gonzalez

because all other Plaintiffs, including Messrs. Montes and Gaston, are bound to arbitrate their claims. Mot. at 1 & n.1.

*Second*, as indicated above, Plaintiffs fail to plead facts that state a cognizable claim with respect to each of the FAC's nine counts. Plaintiffs lean heavily on the black-letter rule that "the Court 'accept[s] the factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party'" (Opp'n at 3), but this misses the central shortcoming of the FAC: It alleges *no* facts, only legal conclusions. And as the Supreme Court has emphasized, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."). Moreover, Plaintiffs do not meaningfully grapple with the fact that several of their claims do not afford a private cause of action; although they note that the Private Attorneys General Act ("PAGA") may provide a vehicle through which they may enforce the substantive protections in those provisions of the California Labor Code, this does not salvage Plaintiffs' claims to the extent they are brought *directly* under those provisions.

## II.     ARGUMENT

### A.    With the Exception of Their PAGA Claim, Plaintiffs Fail to Allege Any Claims That Are Not Precluded by the *O'Connor* Settlement.

As detailed in Uber's motion to dismiss, the *O'Connor* Settlement released each of Plaintiffs' claims with the exception of their PAGA claim. Mot. at 6–9. Plaintiffs do not appear to dispute that they are bound by the *O'Connor* Settlement or that the Settlement purports to release all misclassification and wage-and-hour claims asserted in the FAC except those brought under PAGA.[1] Instead, they dispute only the extent to which the *O'Connor* Settlement releases claims *after* February 28, 2019. *See, e.g.*, Opp'n at 4 ("[T]he settlement has no effect for violations, like here, post the claim

---

[1] Plaintiffs assert, without any meaningful explanation, that "the *O'Connor* Settlement was not a final judgment on the merits." Opp'n at 4. The Ninth Circuit has squarely held otherwise. *See, e.g.*, *Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106, 1110 (9th Cir. 2018) ("It is well-settled that a class settlement resulting in final judgment is sufficient to meet the 'final and on the merits' element of res judicata, and is as conclusive a bar as a judgment rendered after trial.") (quotation marks and quotation omitted); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (same under federal law).

Gibson, Dunn & Crutcher LLP

period in the *O'Connor* Settlement Agreement; i.e., post February 2019."); *id.* at 5 ("continued violations of California law following the time period of the *O'Connor* Settlement Agreement are actionable…. Thus, the *O'Connor* settlement cannot, as a matter of law, encompass claims after February 28, 2019 up until present day."); *id.* at 12 ("Plaintiffs' underlying claims for the period beginning March 1, 2019 to present day have not been settled in any prior settlement agreement that encompassed Plaintiffs' claims.").

Even if Plaintiffs were correct that the *O'Connor* Settlement does not bar claims that arose after February 28, 2019, it does not help them because the FAC is entirely devoid of any plausible factual allegations from which the Court could infer that their claims arose outside the period covered by the *O'Connor* Settlement. In fact, the FAC does not allege that any of the Plaintiffs even used the Uber App after February 28, 2019. *See* FAC ¶ 11 (alleging only that each Plaintiff is "a natural person and a citizen of the State of California); *see also* Mot. at 5. A blanket allegation that Uber violated California's wage-and-hour laws "[f]rom at least April 2018" (FAC ¶ 4), where claims during a substantial portion of that period are barred by the *O'Connor* Settlement, is not sufficient to "nudge[] [Plaintiffs'] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570; *see also In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("[P]laintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true." (citation omitted)).

Plaintiffs' argument that the *O'Connor* Settlement cannot bar the claims here "because the present case involves additional Plaintiffs who are not entitled to the benefit of the application of res judicata" (Opp'n at 5) misunderstands the scope of the instant motion to dismiss. In particular, Plaintiffs assert that Marcos Montes and Royal Gaston did not begin using the Uber App until March 2019 and May 2019, respectively, and thus are not bound by the *O'Connor* Settlement. *Id.* at 6. But as Uber clearly explained in the motion, "[a]ll but three named Plaintiffs agreed to arbitrate their disputes with Uber," and so "Uber brings this motion to dismiss *only with respect to* the three Plaintiffs who are not bound to arbitrate—Mark Glinoga, Kevin Neely, and Alexis Gonzalez." Mot. at 5 n.3 (emphasis added). Although Uber "reserves the right to move to dismiss the claims of the remaining Plaintiffs,"

including Messrs. Montes and Gaston, "should the Court hold that those claims are not subject to arbitration," Uber has not yet so moved. *Id.* at 1 n.1. In any event, Plaintiffs cannot cure the deficiencies in the FAC with declarations appended to their Opposition concerning when certain Plaintiffs used the Uber App because, "'[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.'" *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (emphasis in original); *see also K Tech. Commc'ns, Inc. v. Time Warner Cable, Inc.*, 2012 WL 13012672, at *2 (C.D. Cal. Feb. 21, 2012) ("[T]he court is limited to ruling on Defendant's 12(b)(6) Motion based on the facts alleged in the Complaint, and thus may not consider declarations and exhibits filed with Plaintiff's Opposition to Defendant's Motion to Dismiss.").

Consequently, the Court should dismiss each of the claims asserted in the FAC, with the sole exception of the PAGA claim, which was exempted from the *O'Connor* Settlement.[2]

**B.     All of Plaintiffs' Claims Also Fail for Independent Reasons.**

Even absent Plaintiffs' failure to plead claims that are not barred by the *O'Connor* Settlement, the Court should still dismiss each cause of action asserted in the FAC. Plaintiffs' barebones recitation of the elements of each claim contained in the FAC is precisely the sort of conclusory pleading that courts reject under *Twombly* and *Iqbal*, and Plaintiffs offer no response to the voluminous caselaw dismissing claims pleaded in nearly identical fashion. Moreover, several of Plaintiffs' claims do not even afford a private right of action.

**1.     Plaintiffs Fail to Allege Facts to Support Their Claim That Uber Did Not Timely Pay Wages (Count I).**

Plaintiffs assert that the FAC alleges facts sufficient to state a claim for failure to timely pay wages because "Plaintiffs allege that 'Plaintiffs and Class Members were not properly paid pursuant to the requirements of Labor Code § 201, 202, and 204 and thereby seek the unpaid wages,'" and "further

---

[2] Plaintiffs contend that "[a]nother claim that was not included in the *O'Connor* settlement is violation of AB5 (Labor Code § 2750.3) since the latter did not exist at the time the former was approved." Opp'n at 5. But the *O'Connor* Settlement indisputably released *misclassification* claims. *See* Mot. at 8 & n.4. Moreover, AB5 merely codified the misclassification standard adopted by the California Supreme Court "[i]n April 2018 . . . in the now-infamous *Dynamex* decision." FAC ¶ 20.

allege that 'to date, for example, Defendants have not paid Plaintiffs all earned wages.'" Opp'n at 7. But as Uber explained in its Motion, courts routinely dismiss such claims where, as here, "plaintiff alleges merely that 'DEFENDANTS have willfully failed to pay accrued wages and other compensation to PLAINTIFF and CLASS MEMBERS in accordance with California Labor Code §§ 201 and 202' and then parrots 'the language of the applicable statutory provisions and does not provide any supporting factual allegation.'" *Perez v. DNC Parks & Resorts at Asilomar, Inc.*, 2019 WL 5618169, at \*9 (E.D. Cal. Oct. 31, 2019) (citation omitted). Rather, a plaintiff asserting a claim for failure to timely pay wages must allege, for example, "facts describing the date of her own purported termination, the date she received her own final paycheck, its amount, or the amount she purportedly should have received." *Partida v. Stater Bros. Markets*, 2019 WL 1601387, at \*7 (C.D. Cal. Feb. 19, 2019). Plaintiffs neither attempt to distinguish these cases nor offer countervailing caselaw finding allegations like those in the FAC sufficient. Indeed, they do not cite any cases to support their claim that they have adequately pleaded a claim for failure to timely pay wages.[3]

On the contrary, Plaintiffs focus their attention on defending the allegation that Uber's purported failure to timely pay wages was *willful*. *See* Opp'n at 7. Of course, scienter is irrelevant if Plaintiffs have not adequately alleged a predicate claim, as is the case here. And although Plaintiffs note that "'[w]illful failure to pay' does not require a malicious purpose to defraud workers of wages, but merely an intentional failure or refusal to perform an act that is required to be done'" (*id.*), they have *not* alleged facts that, if proven, would show such an intentional failure or refusal. Plaintiffs point to their allegation that "Defendants [failed to timely pay wages] with the **intent to** secure for themselves a discount on their indebtedness and/or with **intent to** annoy, harass, oppress, hinder, delay and/or defraud Plaintiffs" (*id.* (citing FAC ¶ 72)), but such "unadorned allegation[s], without more, do[] not plausibly suggest willfulness," *Soratorio v. Tesoro Refining & Mktg. Co.*, 2017 WL 8220415, at \*3 (C.D. Cal. Sept. 11, 2017).

---

[3] Plaintiffs have not even pled facts to support an inference that they have *standing* to bring such a claim because they do not identify which Plaintiffs, if any, have ended their relationship with Uber. *See Alvarez v. Hyatt Regency Long Beach*, 2009 WL 10673222, at \*4 (C.D. Cal. Aug. 6, 2009) (holding that plaintiffs "do not have standing to bring the third cause of action for failure to timely pay wages after the termination of employment" where "none of the three plaintiffs have been terminated").

Accordingly, the Court should dismiss Count I for failure to state a claim.

### 2. Plaintiffs Fail to Allege Facts to Support Their Minimum Wage and Overtime Claims (Counts II, V, and VI).

Plaintiffs also have not pleaded any facts to support their minimum-wage and overtime claims. They do not dispute that *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014), is controlling. Nor do they dispute that *Landers* holds that "'a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek,'" but instead must "'be able to specify at least one workweek in which they worked in excess of forty hours and were not paid overtime wages.'" Opp'n at 8 (quoting *Landers*, 771 F.3d at 644–46). Yet Plaintiffs confusingly insist that the "FAC more than satisfies the *Landers* 'given workweek' standard" because "Plaintiffs allege that UBER failed 'to pay Plaintiffs and Class Members overtime compensation at the rates required by the FLSA, 29 U.S.C. § 207 for work performed in excess of forty (40) hours per workweek.'" *Id.* at 10 (quoting FAC ¶ 55); *see also id.* ("Plaintiffs satisfied the requirements of *Landers*" by "alleg[ing] that 'Class Members including Plaintiffs have not been paid minimum wages for all hours suffered or permitted to work in violation of the minimum wages for all hours.'"). Plaintiffs fail to explain the disconnect between these conclusory allegations and the *Landers* standard.

To be sure, Plaintiffs "are not required to plead the specific total number of unpaid overtime hours worked in order to state a plausible claim," nor must they "allege a *specific* workweek during which they worked more than forty hours and did not receive overtime pay." Opp'n at 9. But this is a red herring, as Uber has never asserted otherwise. Rather, Uber merely contends that Plaintiffs must be able to allege that they were denied minimum wage or overtime during a "given week" by, for example, "estimating the length of [their] average workweek during the applicable period and the average rate at which [they were] paid." *Landers*, 771 F.3d at 645. Because Plaintiffs have failed to plead any such factual allegations, these claims should be dismissed. Indeed, "[c]omplaints alleging far greater detail than the one at issue here have been found insufficiently pled." *Colopy v. Uber Techs. Inc.*, 2019 WL 6841218, at *9 (N.D. Cal. Dec. 16, 2019); *see also Velasco v. Elliot*, 2018 WL 6069009, at *4 (N.D. Cal. Nov. 20, 2018) (dismissing complaint where plaintiff alleged that "Monday through

6
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 4:19-CV-08228-PJH

Gibson, Dunn & Crutcher LLP

Friday, Mr. Velasco usually checked into work at approximately 8:00 am at the Defendant's yard and returned or ended his work day at between 4:00 and 6:00 pm. Mr. Velasco further alleges that on average he worked for six hours two Saturdays a month and on that basis, alleges that he estimates he worked on average five hours a week of overtime" (internal quotation marks, alterations, and citations omitted)); *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1006–07 (N.D. Cal. 2016) (dismissing claims where plaintiffs alleged their weekly wages "fell below minimum wage during several weeks … since he began working for GrubHub in 2015" and "that Plaintiffs and other drivers have regularly worked more than 8 or even 12 hours in a day and 40 hours per week without receiving overtime pay" and one "worked approximately [45] hours and was not paid at time-and-a-half for the hours in excess of forty"); *Yucesoy v. Uber Techs., Inc.*, 2015 WL 6955140, at *3 (N.D. Cal. Nov. 10, 2015) (dismissing complaint where plaintiff "calculates that in some weeks (including the week of June 16, 2015), considering the hours he was logged in to receive ride requests from Uber, and after deducting the cost of his car and gas expenses, the amount he received for his work driving for Uber came to less than the Massachusetts minimum wage of $9.00 per hour").

### 3. There Is No Private Right of Action for Failure to Maintain Required Records (Count III).

Plaintiffs do not dispute that Labor Code section 1174 does not provide a private right of action for failure to maintain required records. Instead, they note that "because Plaintiffs' FAC asserts a claim under the PAGA as the eight[h] cause of action, Plaintiffs indeed have a private right of action for several portions of the Labor Code, including failure to maintain required records under section 1174(d)." Opp'n at 10–11. But whether Plaintiffs have stated a claim in their *eighth* cause of action under *PAGA* is wholly distinct from the question whether they have stated a claim in their *third* cause of action under section 1174 *directly*. Indeed, as the California Supreme Court has noted, the very point of PAGA is to allow for private enforcement of Labor Code provisions that do not directly allow for private enforcement. *See Arias v. Super. Ct.*, 46 Cal. 4th 969, 980 (2009) ("The Legislature declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest

to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations."). Irrespective of whether PAGA provides a vehicle for private parties to vindicate section 1174, then, this Court should dismiss Plaintiffs' claim asserted directly under that provision—as numerous courts have already done. *See* Mot. at 12 (collecting cases).

Even assuming that there is some vehicle by which Plaintiffs can assert this claim, it still should be dismissed because Plaintiffs fail to adequately plead any violation of section 1174. Plaintiffs "cannot 'unlock the doors of discovery' regarding [Defendant's] record-keeping without providing some specific facts that would assure the court that there is some plausible basis for liability." *Kemp v. Int'l Bus. Machines Corp.*, 2010 WL 4698490, at *4 (N.D. Cal. Nov. 8, 2010) (quoting *Iqbal*, 556 U.S. at 678); *see also Krauss v. Wal-Mart, Inc.*, 2019 WL 6170770, at *4 (E.D. Cal. Nov. 20, 2019) (dismissing with prejudice plaintiffs' section 1174 claims). Plaintiffs' FAC does not contain a single specific fact regarding Uber's alleged failure to maintain records. Instead, Plaintiffs simply assert that "Plaintiffs are informed and believe and based thereon allege that during all times relevant to the Class Period, Defendants failed to comply with § 7 of IWC Order 4-2001 and with Labor Code § 1174 by failing to maintain certain records which employers are required to maintain . . . ." FAC ¶ 87. This falls well short even of the allegations found to be insufficiently specific in *Kemp*. There, the court dismissed a section 1174 claim because the only fact the plaintiff alleged was that "[p]laintiff has been unable to obtain payroll records from any central location in California or from the establishment at which he is employed showing his total hours worked daily and all wages paid. Upon information and belief, no such centralized records exist in the state of California." 2010 WL 4698490, at *4. The court found that "[s]uch an allegation does not demonstrate beyond a highly speculative level that [Defendant] may actually be engaged in unlawful record-keeping practices." *Id.* So, too, here. This Court should therefore dismiss Plaintiffs' section 1174 claim.

### 4. Plaintiffs Fail to Allege Facts That Support Their Wage Statements Claim (Count IV).

As Uber explained in its Motion, Plaintiffs' wage statements claim fails because "Plaintiffs do not identify which wage statements are allegedly deficient, how they were deficient, or what injuries they sustained as a result." Mot. at 13 (citing *Byrd v. Masonite Corp.*, 2016 WL 756523, at *3 & n.6

(C.D. Cal. Feb. 25, 2016). In response, Plaintiffs accuse Uber of "tone-deaf[ness]" because "UBER has never provided wage statements to Plaintiffs and the FAC alleges that." Opp'n at 12 (citing FAC ¶ 91). But the FAC does not allege that at all. Rather, the FAC alleges that "Plaintiffs[] never received any wage statement *with all required information set forth under Labor Code § 226*." FAC ¶ 91 (emphasis added). And in the very next paragraph of the FAC, Plaintiffs specifically allege violations of "subdivisions (a)(1), (a)(2), (a)(4), (a)(5), (a)(6), (a)(7), (a)(8), and (a)(9)" (*Id.* ¶ 92)—referencing only eight of the nine categories of information that must be disclosed on a wage statement. The most sensible reading of the FAC, then, is that Plaintiffs allege that they have not received *accurate* wage statements, not that they have not received *any* wage statements.

Furthermore, Plaintiffs do not attempt to explain how the FAC alleges any specific *injury* they suffered from purportedly not receiving "accurate" wage statements. A purely procedural injury cannot suffice to pursue a wage statement claim in federal court. *Mays v. Wal-Mart Stores, Inc.*, -- F. App'x --, 2020 WL 1277642, at *2 (9th Cir. Mar. 17, 2020). Instead, Plaintiffs must allege facts from which this Court could plausibly infer that the specific wage statement violations both "implicate[] the concrete interest that" this law was "designed to protect" and "actually harm[ed], or present[ed] a material risk of harm to, such interests." *Id.* at *1–2. The FAC contains no such allegations. Plaintiffs thus do not dispute that they have failed to adequately plead a claim for inaccurate wage statements.

Meanwhile, Plaintiffs do not respond to Uber's argument that the FAC fails to allege "a knowing and intentional failure" to provide accurate wage statements, as is required to support Plaintiffs' claim seeking damages, penalties, costs, and attorneys' fees under Labor Code section 226(e). *See* Mot. at 13; *see also Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1080 (N.D. Cal. 2019) ("To state a claim for failure to provide accurate . . . wage statements, Plaintiffs must show . . . [defendant's] failure to do so was 'knowing and intentional.'"); *Hoffman v. Constr. Protective Servs., Inc.*, 293 F. App'x 462, 463 (9th Cir. 2008) (the element of a "knowing and intentional" violation for claims under Labor Code § 226 is "required under California law"). This is an essential element of their claim that must be pleaded to survive a motion to dismiss, the omission of which requires dismissal.

### 5. Plaintiffs Fail to Allege a Viable Predicate Violation to Support Their UCL and PAGA Claims (Counts VII and VIII).

Plaintiffs do not dispute that if their underlying causes of action fail, their derivative UCL and PAGA claims must also fail. *See Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1147 (2011); *see also Tan*, 171 F. Supp. 3d at 1011. Because that is the case here, the Court should dismiss these derivative claims.[4]

### 6. Plaintiffs Fail to Allege Compliance with PAGA's Procedural Prerequisites (Count VIII).

Judge Jenkins held in *Thomas v. Home Depot USA, Inc.*, 527 F. Supp. 2d 1003 (N.D. Cal. 2007), that "a party bringing a civil action must plead compliance with [PAGA's] pre-filing notice and exhaustion requirements." *Id.* at 1007; *see also Caliber Bodyworks, Inc. v. Super. Ct.*, 134 Cal. App. 4th 365, 370–71 (2005), *disapproved on other grounds by ZB, N.A. v. Super. Ct.*, 8 Cal. 5th 175 (2019). One of these requirements is that a plaintiff must first give written notice to the LWDA of the alleged violations and wait 60 days for the LWDA to announce whether it will investigate the alleged violations or, if no such notice is given, wait 65 days from the postmark date of notice before bringing suit. Cal. Labor Code § 2699.3(a)(1)–(2).

Plaintiffs do not allege compliance with this requirement. Rather, the FAC makes only the bare assertion that "[o]n or about November 1, 2019, Plaintiffs provided written notice by certified mail to the LWDA and to UBER of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations." FAC ¶ 127. But the FAC says nothing about the result of this notice, including whether and when the LWDA responded. Plaintiffs' contention that their "LWDA notice was postmarked November 1, 2019, and the PAGA claim was brought 69 days later through the FAC's filing on January 9, 2020," is unresponsive given their acknowledgement *in the preceding sentence* that "'*if no notice [by the LWDA] is provided* within

---

[4] Uber's Motion cited *Kim v. Reins Int'l California, Inc.*, 18 Cal. App. 5th 1052, 1058–59 (2017), for the proposition that an individual is not an "aggrieved employee" under PAGA if she has released her individual claims in a settlement. The California Supreme Court has since reversed that decision. *See Kim v. Reins Int'l California, Inc.*, 9 Cal. 5th 73 (2020). Importantly, however, this decision does not affect Uber's argument that Plaintiffs lack Article III standing to assert PAGA and UCL claims (*see* Mot. at 14), which Plaintiffs do not address in their Opposition.

65 calendar days of the postmark date of the [Plaintiffs'] notice given pursuant to paragraph (1), the aggrieved employee may commence a civil action.'" Opp'n at 13 (emphasis added and citation omitted). Plaintiffs have not alleged that "no notice" was provided by the LWDA. This is to say nothing of the other pre-filing requirements Plaintiffs failed to address in the FAC. *See, e.g.*, Cal. Lab. Code § 2699.3(1)(A) (requiring "online filing" with the LWDA, as distinct from any form of "mail"). Accordingly, Plaintiffs have not pled compliance with PAGA's pre-filing notice and exhaustion requirements, and so this claim must be dismissed.

### 7. There Is No Private Cause of Action for Plaintiffs' Willful Misclassification Claim and, Even if There Were, Plaintiffs Fail to Allege Facts to Support This Claim (Count IX).

It is well settled under California law that there is no private right of action for a willful misclassification claim under the Labor Code. *See Villalpando v. Exel Direct Inc.*, 2014 WL 1338297, at *19 (N.D. Cal. Mar. 28, 2014); *Lee v. Postmates Inc.*, 2018 WL 6605659, at *9–10 (N.D. Cal. Dec. 17, 2018); *Rosset v. Hunter Eng'g Co.*, 2014 WL 3569332, at *8 (N.D. Cal. July 17, 2014). Rather than argue otherwise, Plaintiffs resort to the same tactic employed with respect to their wage statement claim, which also does not provide a private right of action, by ignoring this fatal defect and insisting that "Plaintiffs, by way of their *PAGA* claim, stand in the shoes of the Attorney General." *See* Opp'n at 13–14 (emphasis added). But as explained above with respect to the wage statement claim, the availability of an alternative vehicle for vindicating their asserted rights under the misclassification statute does not empower them to assert a freestanding willful misclassification claim under that statute directly.

Even if there were a private right of action for willful misclassification, however, Plaintiffs have not adequately alleged the necessary elements for such a claim. Their unsupported contention that a plaintiff need only allege that the misclassification was "intentional," without more (Opp'n at 13–14), has been squarely rejected. *See, e.g.*, *Kellgren v. Petco Animal Supplies, Inc.*, 2013 WL 12076473, at *3 (S.D. Cal. Sept. 13, 2013) (noting that, although plaintiff's complaint alleged that "Defendants have *intentionally*, willfully, and repeatedly" violated the FLSA, it still failed to meet the *Twombly* and *Iqbal* plausibility standards (emphasis added)); *see also Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, 2013

Gibson, Dunn &
Crutcher LLP

WL 12204839, at *4 (D. Alaska Mar. 27, 2013) (conclusory "willfully and intentionally" statements "alone would be insufficient to demonstrate a willful violation").

### III.  CONCLUSION

For the foregoing reasons, this Court should grant Uber's Motion to Dismiss.

Dated:  May 7, 2020                        GIBSON, DUNN & CRUTCHER LLP

By: _____*/s/ Theane Evangelis*_____
                Theane Evangelis

Attorneys for UBER TECHNOLOGIES, INC.