UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JERICHO NICHOLAS, et al.,

             Plaintiffs,

     v.

UBER TECHNOLOGIES, INC.,

             Defendant.

Case No.  19-cv-08228-PJH

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION AND GRANTING MOTION TO DISMISS**

Re: Dkt. Nos. 17, 19, 20

Before the court is defendant Uber Technologies, Inc.'s ("defendant") motion to compel arbitration (Dkt. 17) and motion to dismiss (Dkt. 19). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby **GRANT IN PART** and **DENIES IN PART** defendant's motion to compel arbitration and **GRANTS** defendant's motion to dismiss with leave to amend.

## BACKGROUND

Defendant develops and maintains a technology platform that connects riders with ride-share drivers through a mobile-device application (the "Uber App"). Dkt. 9 (First Amended Complaint ("FAC")) ¶ 15. Plaintiffs comprise 48 persons seeking to certify a class "on behalf of [themselves] and all individuals working or having worked as 'ride-share drivers'" for defendant within California from April 2018 to present and who opted out of an applicable arbitration provision. Id. ¶¶ 1, 55.[1]

---

[1] Jericho Nicolas, Juan Montalvo, Gary Baumgarten, Christine Tringali, Carlos Alvarez, Rick Anderson, Kamal Suri, Jorge Jimenez, Jaime Del Real, Lisette Castillo, Benjamin Laney, Kelly Clifton, Eric Calvillo Hernandez, Steven Robert Callahan, Juan Jamarron, Mark Glinoga, Richard Trujillo, Marcos Montes, Barton Lasheem, Dora Waters, Kevin

At core, plaintiffs allege that, since the California Supreme Court's decision in Dynamex Operations West v. Superior Court, 4 Cal. 5th 903 (2018) and the California state legislature's passage of Labor Code §2750.3, defendant has unlawfully classified plaintiffs as "independent contractors" rather than "employees." Id. ¶¶ 21-54. Based upon that alleged practice of misclassification, all plaintiffs assert claims for the following:

- Violation of California Labor Code §§ 201-04, 218.5, and 218.6 premised upon defendant's failure to pay timely earned wages during employment and upon separation of employment. Id. ¶¶ 65-74.

- Violation of §§ 1182.12, 1194, 1194.2, 1197, and Industrial Welfare Commission ("IWC") Wage Order No. 4-2001 § 3(A) premised upon defendant's failure to pay minimum wages. Id. ¶¶ 75-84.

- Violation of § 1174.5 and Wage Order No. 4 § 7 premised upon defendant's failure to maintain required records. Id. ¶¶ 85-88.

- Violation of § 226 premised upon defendant's failure to provide accurate wage statements. Id. ¶¶ 89-94

- Violation of Title 29 U.S.C. § 206 (the Fair Labor Standards Act ("FLSA")) premised upon defendant failure to pay minimum wages. Id. ¶¶ 95-100.

- Violation of Title 29 U.S.C. § 2017 and Title 29 C.F.R. § 778.106 premised upon defendant's failure to pay overtimes wages. Id. ¶¶ 101-09.

- Violation of California Business and Professions Code §§ 17200, *et. seq.* (Unfair Business Practices Act), premised upon the above referenced violations. Id. ¶¶ 110-19.

- California Labor Code § 2698, *et. seq.* (Private Attorney General Act ("PAGA")) seeking civil penalties as an "aggrieved employee" for the above referenced

Neely, Rolando Vega, Shamar Drew, Zuleyma Torres, Sevak Vartanpour, Claudia Duque, Timothy Kershaw, Kevin Byler, Yhon Lara, Royal Gaston, Majd Iskandafi, Alexi Vinnik, Alexis Gonzalez, Bryant Castaneda, Christine Economos, Carlos Torres, Christopher Campana, Gustavo Candelo, James Sparks, Jason Casas, Jose Contreras, Juan Castro, Kamal Suri, Karen Y. Alvarez, Syed Naqvi, Wayne Merritt, Williams Ramirez, Laura Alvarado Hernandez, Sherif Bebawy. FAC ¶ 11.

violations of the California Labor Code.  Id. ¶¶ 120-30.

- Violation of California Labor Code § 2750.3 for misclassification of their employment status.  Id. ¶¶ 131-35.

Plaintiffs purport to bring each of these claims on both a direct and representative basis.  Id. ¶¶ 65-135.  For purpose of the motion to dismiss, the court will accept all well-pled allegations in the FAC as true.  The court will detail such allegations (or lack thereof) as necessary in its analysis below.

A.    The Subject Motions

On March 5, 2020, defendant filed the two subject motions in response to the FAC.  In its Rule 12(b)(6) motion to dismiss, defendant seeks to dismiss all claims against it by three particular plaintiffs, Mark Glinoga, Kevin Neely, and Alexis Gonzalez (collectively, the "MTD plaintiffs").  Dkt. 19 at 2.

In its motion to compel arbitration, defendant asks that this court send all of the above-referenced claims with respect to each of the remaining plaintiffs (collectively, the "MTC plaintiffs") to arbitration on an individual basis.  Dkt. 17 at 2.  Defendant bases the latter motion upon arbitration provisions included in two different agreements assented to by each MTC plaintiff as specified below, namely the 2019 Technology Services Agreement ("2019 TSA") and the 2015 Technology Services Agreement ("2015 TSA").  Antecedent to that request, defendant also asks that, with limited exceptions, that the court send all questions concerning the enforceability of the 2019 TSA's and 2015 TSA's arbitration provisions to the arbitrator for determination.  The court will detail each agreement's provisions as necessary in its analysis below.

B.    The Earlier O'Connor Action and Its Resulting Class Settlement

On September 13, 2019, Judge Chen issued an order finally approving a settlement agreement reached in O'Connor v. Uber Technologies, Inc., 13-cv-03826-EMC, a consolidated action in this district "alleging that [defendant] misclassifies its drivers as independent contractors rather than as employees." O'Connor v. Uber Techs., Inc., 2019 WL 4394401, at *1 (N.D. Cal. Sept. 13, 2019), aff'd, 2019 WL 7602362 (9th

3

1   Cir. Dec. 20, 2019), cert. denied sub nom. Mendel v. Uber Techs. Inc., 2020 WL 2621861

2   (U.S. May 26, 2020).  In that order, the O'Connor court explained the scope of the

3   approved agreement as follows:

4           "The Settlement Agreement covers 'all Drivers in California and
            Massachusetts who have used the Uber App at any time since
5           August 16, 2009, up to and including February 28, 2019, and
            who have validly opted out of arbitration or for whom Uber has
6           no record of acceptance of an arbitration agreement. Excluded
            from the Settlement Class are . . . (ii) Persons who timely and
7           properly excluded themselves from the Settlement Class as
            provided in this Settlement Agreement . . . Docket No. 926
8           ('Sett. Agmt.') ¶ 96.

9                                          . . .

10          [T]he Settlement Agreement contains an expansive release
            provision, requiring Class Members to release 'any and all'
11          claims 'based on or reasonably related to the claims asserted
            in' O'Connor and Yucesoy [the consolidated action] . . . while
12          also requiring the Plaintiffs to file amended complaints
            expanding the causes of action to include all claims related to
13          the alleged misclassification of drivers as independent
            contractors.
14
                                           . . .
15
            However, unlike the First Proposed Settlement, this Settlement
16          Agreement does not include any PAGA claims and would not
            release any PAGA claims. . . .  Nor does the Settlement
17          Agreement purport to resolve the key underlying dispute
            whether Uber drivers are employees or independent
18          contractors." O'Connor, 2019 WL 4394401, at *1.

19          The O'Connor court did not enumerate or otherwise detail in that order the scope

20   of the claims released.  In support of their motion to dismiss, defendant asks that this

21   court take judicial notice of the settlement agreement finally approved in O'Connor (the

22   "O'Connor Settlement"), Dkt. 20, which plaintiffs did not oppose.  The court will consider

23   this agreement as necessary in its analysis below.  ASARCO, LLC v. Union Pac. R.R.

24   Co., 765 F.3d 999, 1008 n.2 (9th Cir. 2014) ("Because the settlement agreement was

25   filed with the bankruptcy court and is a publicly available record, it is properly subject to

26   judicial notice, and thus may be considered on a Rule 12(b)(6) motion to dismiss.").

27

28

**DISCUSSION**

**A.    Legal Standard**

      **1.    Motion to Compel Arbitration**

Any party bound to an arbitration agreement that falls within the scope of the Federal Arbitration Act ("FAA"), Title 9 U.S.C. §§ 1, *et. seq.*, may bring a motion to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3-4; Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004).  The FAA requires the court to compel arbitration of issues covered by the arbitration agreement.  Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985).

In ruling on a motion to compel arbitration under the FAA, the district court's role is typically limited to determining whether (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable. Lifescan, 363 F.3d at 1012; Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If the answers are yes, the court must enforce the agreement. Lifescan, 363 F.3d at 1012.

Regarding whether an agreement exists to arbitrate, the "first principle" that underscores the U.S. Supreme Court's arbitration decisions is that "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." Granite Rock Co. v. Int'l B'hd of Teamsters, 561 U.S. 287, 299 (2010); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Thus, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.*" Granite Rock, 561 U.S. at 297 (emphasis in the original).

Regarding the validity of the agreement, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, state contract defenses may be applied to invalidate arbitration clauses if those defenses apply to contracts generally. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996); Circuit City

United States District Court
Northern District of California

1    Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002).

2           Regarding the scope of the agreement, "any doubts concerning the scope of

3    arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp.

4    v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). Nevertheless, a motion to compel

5    arbitration should be denied if "it may be said with positive assurance that the arbitration

6    clause is not susceptible of an interpretation that covers the asserted dispute." AT&T

7    Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 650 (1986).

8           **2.      Rule 12(b)(6) Motion to Dismiss**

9           A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

10   alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Rule 8

11   requires that a complaint include a "short and plain statement of the claim showing that

12   the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), dismissal "is

13   proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege

14   sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953,

15   959 (9th Cir. 2013).  While the court is to accept as true all the factual allegations in the

16   complaint, legally conclusory statements, not supported by actual factual allegations,

17   need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint

18   must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell

19   Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007).

20          As a general matter, the court should limit its Rule 12(b)(6) analysis to the

21   contents of the complaint, although it may consider documents "whose contents are

22   alleged in a complaint and whose authenticity no party questions, but which are not

23   physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th

24   Cir. 2005); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("a court can consider a

25   document on which the complaint relies if the document is central to the plaintiff's claim,

26   and no party questions the authenticity of the document"). The court may also consider

27   matters that are properly the subject of judicial notice, Lee v. City of L.A., 250 F.3d 668,

28   688–89 (9th Cir. 2001), exhibits attached to the complaint, Hal Roach Studios, Inc. v.

1  Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents

2  referenced extensively in the complaint and documents that form the basis of the

3  plaintiff's claims, No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding

4  Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

5       Lastly, a district court "should grant the plaintiff leave to amend if the complaint

6  can possibly be cured by additional factual allegations," however, dismissal without such

7  leave "is proper if it is clear that the complaint could not be saved by amendment."

8  Somers, 729 F.3d at 960.

9  **B.**    **Analysis**

10      **1.**    **Motion to Compel Arbitration**

11       The MTC plaintiffs advance the following three arguments in opposition to

12  defendant's motion to compel arbitration: (1) the 2019 TSA's arbitration provision does

13  not apply because the MTC plaintiffs effectively opted out of that provision; (2) the 2019

14  TSA's arbitration provision "terminated" their 2015 TSA counterpart; and (3) in any event,

15  both TSAs' arbitration provisions are unconscionable and, thus, unenforceable.  The

16  court addresses each of these arguments below.

17      **a.**    **The MTC Plaintiffs Agreed to the TSAs**

18       In its opening brief, defendant submitted the declaration of its Director of Strategic

19  Operational Initiatives, Brad Rosenthal ("Rosenthal"), who is responsible for creating and

20  implementing defendant's company initiatives.  Dkt. 18 at 2 ¶ 2.  In his declaration,

21  Rosenthal states the following:

22          "As a result of my position with Uber, I have access to Uber's

23          electronic databases, which reflect the dates and times that
Drivers assent to Uber's TSAs.  . . . I have reviewed Uber's

24          electronic databases to determine whether Plaintiffs agreed to
and confirmed their agreement with Rasier's [a defendant

25          affiliate] 2015 TSA and Uber 's 2019 TSA during their sign-in
process."  Id. at 6 ¶ 18.

26       Based on his review, Rosenthal states that all MTC plaintiffs assented to the 2019

27  TSA, Id. at 6-16, ¶¶ 18-66, except for the following: (1) Baumgarten, id. at 7 ¶ 23; (2)

28  Callahan, id. at 7-8, ¶ 26; (3) Castillo, id. at 9, ¶ 32; (4) Jamaron, id. at 11 ¶ 44; and (5)

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Montes, id. at 13, ¶ 52.  Rosenthal also states that all MTC plaintiffs assented to the 2015

2  TSA.  Id. at 6-16, ¶¶ 18-66.  In their opposition, the MTC plaintiffs did not contest the

3  accuracy of Rosenthal's declaration concerning their respective agreements to the 2019

4  TSA and 2015 TSA.  Dkt. 27 at 12-14.  Accordingly, as specified in the Rosenthal

5  declaration, the court concludes that the MTC plaintiffs entered into and agreed to the

6  2019 TSA and 2015 TSA, including their respective arbitration provisions, in the first

7  instance.

8          **b.**      **The MTC Plaintiffs Failed to Opt Out of the TSAs' Arbitration**

9                  **Provisions**

10      In relevant part, the 2019 TSA's Arbitration Provision states the following:

11        "Agreeing to this Arbitration Provision is not a mandatory

12  condition of your contractual relationship with the Company. If
    you do not want to be subject to this Arbitration Provision, you

13  may opt out of this Arbitration Provision (subject to the pending
    litigation provision in Section 15.2.2, and the limitations set forth

14  in this Section 15.2.8). ***To do so***, within 30 days of the date that
    this Agreement is electronically accepted by you, you must

15  send an electronic email from the email address associated
    with your driver-partner account to optout@uber.com, stating

16  your intent to opt out of this Arbitration Provision, as well as
    your name, the phone number associated with your driver-

17  partner account, and the city in which you reside.

18                             . . .

19        An email sent by your agent or representative (including your
    counsel) shall not be effective. Your email may opt out yourself

20  only, and any email that purports to opt out anyone other than
    yourself shall be void as to any others. Should you not opt out

21  of this Arbitration Provision within the 30-day period, you and
    the Company shall be bound by the terms of this Arbitration

22  Provision." Dkt. 18-2 at 27-28, § 15.2.8 (emphasis added).

23      In its opening brief, defendant asserts that the MTC plaintiffs (without

24  differentiation) did not effectively opt out of the 2019 TSA Arbitration Provision because

25  they failed to comply with various requirements in the above section.  Dkt. 17 at 14-15.

26  The MTC plaintiffs opposed that contention.  To support their opposition, they submit the

27  declaration of their counsel, Ronald Zambrano ("Zambrano").  In his declaration,

28  Zambrano states which of the above requirements only some of the MTC plaintiffs

1  complied with and attaches a similar set of purported emails.  Dkt. 26 at 2-6, ¶¶ 3-32.

2  The MTC plaintiffs do not otherwise contest the various shortcoming identified by

3  defendant concerning each MTC plaintiff's notice.  Dkt. 27 at 12-14.  Instead, the MTC

4  plaintiffs argue that defendant made an "offer" to opt out and each MTC plaintiff, through

5  their words and conducts (even if imperfect), accepted that offer.  Id.  The MTC plaintiffs

6  then rhetorically dismiss any noncompliance with the technical requirements of the opt

7  out procedures as "trivial defects" and, if relied upon to compel arbitration, "exalting form

8  over substance."  Id. at 13-14.

9          The court declines the MTC plaintiffs' invitation to dismiss as procedural niceties

10  the requirements for opting out that are plainly set forth in the TSAs.  Based on the

11  court's tedious review of the declarations and exhibits filed, defendant is correct that 28 of

12  the MTC plaintiffs who entered the 2019 TSA failed to effectively opt out of its arbitration

13  provisions.[2]  As the Ninth Circuit has previously recognized, compliance with such

14  procedures matters.  Mohamed v. Uber Techs., Inc., 848 F.3d 1201, 1211 (9th Cir. 2016)

15  ("While we do not doubt that it was more burdensome to opt out of the arbitration

16  provision by overnight delivery service than it would have been by e-mail, the contract

17  bound Uber to accept opt-outs from those drivers who followed the procedure it set

18  forth.").  The MTC plaintiffs' offer-and-acceptance theory of opt out does not salvage its

19  ineffectiveness.  That theory is not supported by anything more than citation to general

20  principles of contract formation.  Dkt. 27 at 12-13.  While acceptance of an offer might be

21  determined by objectively reasonable communications of such intent, plaintiff fails to cite

22  any binding authority that such a theory may obviate the plain and particular procedures

23  agreed to between the parties to exercise a contractual option.  This court declines to

24  recognize the viability of such a theory and will, instead, opt to follow the well-established

25  principles of contract interpretation that require it to give a contract's plain language its

26  _____

27  [2] Those MTC plaintiffs include the following: Alvarado-Hernandez, C. Alvarez, K. Alvarez,
Byler, Campana, Candelo, Casas, Castaneda, Castro, Clifton, Contreras, Del Real,

28  Drew, Gaston, Jimenez, Kershaw, Laney, Lara, Laksheem, Montalvo, Naqvi, Nicolas,
Ramirez-Hernandez, Sparks, Suri, Trujillo, Vartanpour, and Waters.

United States District Court
Northern District of California

United States District Court
Northern District of California

ordinary meaning.  Thus, defendant and each of the 28 MTC plaintiffs listed at footnote 2 "shall be bound by the terms of this Arbitration Provision."  Dkt. 18-2 at 28, § 15.2.8.  As a result, the court orders these MTC plaintiffs to arbitration with defendant.

That then leaves the remaining MTC plaintiffs who either did not assent to the 2019 TSA in the first instance or did effectively opt out of the 2019 TSA's arbitration provision.[3]  As previously noted, each of these MTC plaintiffs agreed to the 2015 TSA and, incidentally, its arbitration provision.  Dkt. 18 at 6-16, ¶¶ 18-66.  In his declaration, Rosenthal also stated that each of the plaintiffs did *not* opt out of that provision.  Id. at 6-16, ¶¶ 23, 26, 32, 44, 52, 22, 24, 27, 38, 39, 43, 50, 59-61, 65.  Aside from the inaccurate assertion that defendant "fails to present evidence of any plaintiffs' agreement to the 2015 [TSA]," Dkt. 27 at 15, the MTC plaintiffs failed to contest Rosenthal's declaration on these points.

Related to these factual matters, the 2019 TSA arbitration provision states the following:

> "If you opt out of this Arbitration Provision and at the time of your receipt of this Agreement you were bound by an existing agreement to arbitrate disputes arising out of or related to your use of the Uber Services and Driver App, that existing arbitration agreement will remain in full force and effect." (emphasis added).  Dkt. 18-2 at 28 § 15.2.8

Put simply, this section provides that, despite any opt out of the 2019 TSA's arbitration provision, any existing agreement to arbitrate disputes concerning use of the Uber App remains binding.  The MTC plaintiffs' characterization of the 2019 TSA § 13.5's "Entire Agreement" provision, Dkt. 27 at 15, does not change this interpretation.  That section clarifies that the 2019 TSA's superseding effect upon any prior agreement does not extend to any prior arbitration agreement between the parties.  Dkt. 18-2 at 19, § 13.5 ("Entire Agreement. . . . *Notwithstanding the foregoing*, if you opt out of the arbitration

---

[3] Those MTC plaintiffs include the following: Baumgarten, Callahan, Castillo, Jamaron, and Montes, as well as Anderson, Bebawy, Calvillo-Hernandez, Duque, Economos, Iskandafi, Merritt, C. Torres, Z. Torres, Tringali, Vinnik, and Vega.

provision set forth in Section 15.2 below**,** then any prior arbitration agreement between the parties ***shall remain in full force and effect***.") (emphasis added).  The court therefore concludes that defendant and these remaining MTC plaintiffs are nonetheless bound to the 2015 TSA's arbitration provision.  As a result, the court orders the remaining MTC plaintiffs to arbitration with defendant.

### c.   The Arbitration Provision Delegates Issues concerning Its Enforceability and Validity to the Arbitrator

In relevant part, the 2019 TSA's arbitration provision includes the following:

> "This Arbitration Provision applies to all claims whether brought by you or the Company, except as provided below. This Arbitration Provision requires all such claims to be resolved only by an arbitrator through final and binding individual arbitration and not by way of court or jury trial.  Except as provided below regarding the Class Action Waiver and Representative Action Waiver, ***such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision,*** including the formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision."  Dkt. 18-2 at 21-22, § 15.2.1 (emphasis added).[4]

The United States Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  Rent-A-Center., W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010).  The Rent-A-Center Court has squarely held that a provision in an arbitration agreement that "delegates resolution" of whether such an "[a]greement is unconscionable" qualifies as a "gateway" question.  Id. at 68. The Court explained that the arbitrability of such threshold questions "merely reflect[s] the principle that arbitration is a matter of contract . . . [a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement

---

[4] Based on the court's review, the 2019 TSA arbitration provision appears substantially similar in scope to its 2015 counterpart.  Dkt. 18-1 at 18-19, § 15.3(i).  The parties do not appear to dispute otherwise.  To simplify, then, the court will reference only the 2019 TSA's arbitration provisions.

just as it does on any other." Id. at 69-70.

The Court, however, qualified that the validity of a delegation provision is not necessarily immune from judicial review prior to its enforcement. Id. at 71-72 ("If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4 . . . § 2 operates on the specific 'written provision' to 'settle by arbitration a controversy' that the party seeks to enforce."). Rather, a party may challenge the validity of a delegation provision, ***provided that*** such challenge is specifically aimed at that provision—a general attack on the validity of the arbitration agreement will not suffice. Id. at 72 ("Accordingly, unless [plaintiff-respondent] challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.").

Indeed, the Rent-A-Center Court held that such a general attack was insufficient to prevent the district court from sending threshold issues of arbitrability to arbitration. Id. at 72-76. When reviewing the district court briefing on the arbitrability of the claims at issue in that case, the Court noted that "[plaintiff] opposed the motion [to compel arbitration] on the ground that 'the arbitration agreement in question is clearly unenforceable in that it is unconscionable,'" id. at 66, and that "[n]owhere in his opposition to [defendant's] motion to compel arbitration did he even mention the delegation provision," id. at 72. On this basis, the Court found that "[t]he District Court correctly concluded that [plaintiff] challenged only the validity of the contract as a whole," id. at 72, and, thus, reversed the Ninth Circuit in its reversal of the district court "on the question of who (the court or arbitrator) had the authority to decide whether the Agreement is enforceable," id. at 66-67, 76.

Here, Rent-A-Center controls. In their opposition, plaintiffs challenge the conscionability of only the arbitration provision in general. Dkt. 27 at 15-18. The core of plaintiffs' procedural conscionability attack is that "[t]he 2015 and 2019 Agreements'

United States District Court
Northern District of California

arbitration provisions were non-negotiable as it applied to Plaintiffs . . .   because of the gross inequality of bargaining power between UBER and its ride-share drivers." Id. at 17. The core of plaintiff's substantive consciability attack is that defendant's use of "contractual tricks" to obtain plaintiffs' "consent" to arbitrate their claims is "the epitome of one-sided." Id.  Neither of these attacks criticize the consciability of the arbitration provisions' delegation clause specifically.  Given that plaintiffs "challenged only the validity of the [arbitration provisions] as a whole," the court must treat those provisions' delegation clause as "valid under § 2 and must enforce it under §§ 3 and 4," thereby "leaving any challenge to the validity of the Agreement as a whole for the arbitrator." Rent-A-Center, 561 U.S. at 72.  Accordingly, except as carved out by that clause regarding the validity of the class and representative action waivers, the court orders that all questions concerning the arbitrability of the claims in this action—including those concerning the arbitration provisions' consciability—be determined by the arbitrator.  In the event the arbitrator decides that those provisions are enforceable, the arbitrator may consider the merits of plaintiffs' non-PAGA claims.

> ### d.      The Court Stays Litigation of the MTC Plaintiffs' PAGA Claim Pending Arbitration
>
> #### i.      The MTC Plaintiffs May Pursue Their PAGA Claim in This Court

As previously stated, the 2019 TSA arbitration provision does not confer an arbitrator with the authority to decide questions concerning the validity of its class action waiver (§ 15.2.4) or its representative action waiver (§ 15.2.5).  Dkt. 18-2 at 22 § 15.2.1. The Arbitration Provision expressly limits such authority to the court.  Id. at 25 § 15.2.4, 26 § 15.2.5.  As an initial matter, the MTC plaintiffs fail to make any argument that the class action waiver is invalid or that any ordered arbitration should not proceed on a bilateral, non-class basis.  Dkt. 27 at 12-18.  Regardless, even if they had, the United States Supreme Court in AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011) was clear that such waivers are enforceable when holding that the FAA preempted the

United States District Court
Northern District of California

California Supreme Court's <u>Discover Bank</u> rule.  563 U.S. at 352.  Accordingly, the court finds the 2019 TSA Arbitration Provision's class action waiver enforceable and orders the MTC plaintiffs to arbitration on an individual basis.  Validity of that waiver aside, the MTC plaintiffs allege a PAGA claim against defendant.  FAC ¶¶ 120-130.  Accordingly, the court must still decide whether § 15.2.5 of the 2019 TSA arbitration provision qualifies as a valid waiver of the MTC plaintiffs' PAGA claim.

In its opening brief, defendant acknowledges the California Supreme Court's decision in <u>Iskanian v. CLS Transportation L.A.., LLC</u>, 59 Cal. 4th 348 (2014) that an agreement's purported waiver of an individual's ability to bring a PAGA claim is invalid and that the FAA does not preempt a prohibition on the enforceability of such waivers. Dkt. 17 at 24.  Defendant further acknowledges that the Ninth Circuit agreed with that decision in <u>Sakkab v. Luxottica Retail N.A., Inc.</u>, 803 F.3d 425 (9th Cir. 2015).  <u>Id.</u>

In support of its position that the representative action waiver in the 2019 TSA arbitration provision is enforceable, defendant directly addresses the controlling effect of that precedent.  Stated simply, defendant argues that the <u>Iskanian</u> rule "predates" the United States Supreme Court's decision in <u>Epic Systems Corp. v. Lewis</u>, 138 S. Ct. 1612 (2018), which "effectively overrule[s]" <u>Iskanian</u> because <u>Epic Systems</u>'s reasoning "undercuts" the rule's rationale in a "clearly irreconcilable" way.  <u>Id.</u> at 24-28.  In a glaring omission, the MTC plaintiffs neglect any argument in response.

While the court appreciates defendant's reasoning in support of its position on the post-<u>Epic Systems</u> viability of the <u>Iskanian</u> rule, it remains bound to expressly applicable precedent by the Ninth Circuit.  Significantly, as recent as June 2019, the Ninth Circuit in <u>Blair v. Rent-A-Center, Inc.</u>, 928 F.3d 819 (9th Cir. 2019) reaffirmed its approval of the <u>Iskanian</u> rule as "a generally applicable contract defense" and "not depriv[ing] the parties of the benefits of arbitration" when considering a related rule set forth by the California Supreme Court in <u>McGill v. Citibank, N.A.</u>, 2 Cal. 5th 945 (2017).  928 F.3d at 827-828 ("The <u>McGill</u> rule, like the <u>Iskanian</u> rule, is a generally applicable contract defense. . . . Our decision in <u>Sakkab</u> is squarely on point.  The <u>McGill</u> rule, like the <u>Iskanian</u> rule, does

14

United States District Court
Northern District of California

1    not deprive parties of the benefits of arbitration.").  The Ninth Circuit in <u>Blair</u> characterized

2    the <u>Iskanian</u> rule as "bar[ring] contractual waiver in any fora of representative claims

3    under California's Private Attorney General Act."  <u>Id.</u> at 826.  It is clear to this court that

4    the Ninth Circuit was aware of the United States Supreme Court's decision in <u>Epic</u>

5    <u>Systems</u> because it cited that case.  928 F.3d at 825.  Perhaps the Ninth Circuit's recent

6    reaffirmation of <u>Iskanian</u> is, on an analytical level, mistaken.  But that's not for this court

7    to decide.  Accordingly, to the extent the MTC plaintiffs adequately allege a cognizable

8    PAGA claim, such claim was not waived by either TSA's arbitration provision and thus

9    remains properly before this court.[5]

10                   **ii.      The Arbitration Provisions Require a Stay of Litigation of**

11                              **the MTC Plaintiffs' PAGA Claim**

12                   In relevant part, the 2019 TSA Arbitration Provision provides the following:

13                        "You agree that any representative claim that is permitted to
                          proceed in a civil court of competent jurisdiction must be stayed
14                        pending the arbitration of your dispute regarding the nature of
                          your relationship with the Company and any claim you bring on
15                        your own behalf for individualized relief." Dkt. 18-2 at 26 §
                          15.2.5.
16

17                   Defendant did not file an alternative motion to dismiss the MTC plaintiffs' PAGA

18    claims. In its opening brief, defendant requests that "if the Court determines that [the

19    MTC plaintiffs'] PAGA claims cannot be waived or arbitrated on an individual, non-

20    representative basis, any representative claims that must be litigated in court must—

21    pursuant to the Arbitration Provision in the parties' agreements—be stayed pending

22    completion of any individual claims in arbitration." Dkt. 17 at 31.  Plaintiff failed to oppose

23    this request.  Accordingly, the court will stay any further litigation of the MTC plaintiffs'

24    PAGA claim pending completion of the MTC plaintiffs' arbitrable claims.

25

26

27    ───────────────────
      [5] The court makes no decision about the MTC plaintiffs' ability (or inability) to seek the
28    sort of public injunction contemplated in <u>McGill</u> and <u>Blair</u> as relief for any of the claims
      subject to arbitration.  The parties failed to provide any briefing on this issue.

1

2        **2.      Motion to Dismiss**

3        **a.      The <u>O'Connor</u> Settlement Precludes the MTD Plaintiffs' Non-**
         **PAGA Claims as Presently Alleged**

4        "Res judicata, or claim preclusion, applies when three requirements are satisfied:

5   (1) the prior proceeding resulted in a final judgment on the merits; (2) the present action

6   involves substantively the same claims or causes of action as the prior proceeding; and

7   (3) the party to be precluded was a party or in privity with a party to the prior proceeding."

8   <u>Raquedan v. Centerplate of Del. Inc.</u>, 2018 WL 3368820, at *5 (N.D. Cal. July 10, 2018).

9        In their opposition to defendant's opening brief's contention that the <u>O'Connor</u>

10  Settlement precludes their non-PAGA claims, the MTD plaintiffs argue the following: (1)

11  that settlement did not result in a final judgment, Dkt. 28 at 8; (2) it fails to encompass

12  wage violations after February 28, 2019 up until present day, as well as their PAGA

13  claim, <u>id.</u>; and (3) the present action involves plaintiffs who were not parties to that

14  settlement because it includes persons "who began working for UBER after February 28,

15  2019," <u>id.</u> at 10-11.

16       In its reply, defendant argues the following: (1) well-established Ninth Circuit

17  authority recognizes that settlement agreements qualify as final judgment for purpose of

18  claim preclusion, Dkt. 32 at 7 n.1; and (2) despite the MTD plaintiff's suggestion, the FAC

19  does not include any alleged wage violation that occurred ***after*** February 28, 2019, <u>id.</u> at

20  8, and (3) plaintiff's attempt to include a declaration from a non-MTD plaintiff is irrelevant,

21  <u>id.</u> at 8, and, in any event, improper on a motion to dismiss, <u>id.</u> at 9.

22       Here, the court agrees with defendant that the <u>O'Connor</u> Settlement precludes all

23  the MTD plaintiffs' non-PAGA claims as presently alleged.  The court addresses each of

24  the MTD plaintiffs' arguments in turn.

25       ***First***, for purpose of claim preclusion, the <u>O'Connor</u> Settlement qualifies as a final

26  judgment.  In his September 13, 2019 order finally approving that settlement, Judge Chen

27  expressly stated the following:

28            "The Settlement Agreement and this Order ***are binding on,***

*and have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings*: (i) that encompass the Named Plaintiffs' General Released Claims and that are maintained by or on behalf of the Named Plaintiffs . . . and (ii) *that encompass the Settlement Class Members' Released Claims and Authorized Claimants' Released Claims and that are maintained by or on behalf of any Settlement Class Member who has not been excluded from the Settlement Class as provided in the Opt-Out List approved by this Order* and/or his or her heirs . . . regardless of whether the Settlement Class Member previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Settlement Class Members' Released Claims, *and even if such Settlement Class Member never received actual notice of the Action or this proposed Settlement*."[6] (emphasis added).

In its opening brief, defendant cited this exact language from Judge Chen's order and plaintiff failed to proffer any argument explaining how or why its disclosures failed to qualify as a final judgment on such claims. Accordingly, the court rejects plaintiffs' first argument and concludes that the O'Connor Settlement qualifies as final judgment for purpose of the claims alleged in that action. This conclusion is in line with well-established Ninth Circuit authority. Rangel v. PLS Check Cashers of California, Inc., 899 F.3d 1106, 1110 (9th Cir. 2018) ("It is well-settled that a class settlement resulting in final judgment is sufficient to meet the 'final and on the merits' element of res judicata, and 'is as conclusive a bar as a judgment rendered after trial.' . . . That a settlement may not specifically resolve liability as to all released claims is immaterial. For res judicata purposes, all that matters is that a claim was in fact settled, rather than reserved for future litigation, such that it was in some sense within the judgment approving of the class settlement."); Rein v. Providian Fin. Corp., 270 F.3d 895, 903 (9th Cir. 2001) ("A judicially approved settlement agreement is considered a final judgment on the merits.").

*Second*, while the court agrees that "[c]laim preclusion generally does not bar claims that are predicated on events that postdate the filing of the initial complaint," Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc., 140 S. Ct. 1589, 1596 (2020),

---

[6] O'Connor v. Uber Techs., Inc., 2019 WL 4394401, at *10 (N.D. Cal. Sept. 13, 2019), aff'd, 2019 WL 7602362 (9th Cir. Dec. 20, 2019), cert. denied sub nom. Mendel v. Uber Techs. Inc., 2020 WL 2621861 (U.S. May 26, 2020).

United States District Court
Northern District of California

plaintiff fails to provide any non-conclusory allegations that defendant committed any Labor Code violations with respect to the MTD plaintiffs after February 28, 2019.  In its opening brief, defendant pinpointed this exact shortcoming, which plaintiff responded to by only summarily asserting that:

> "[The] FAC alleges violations beginning from at least April of 2018 . . . through present. . . . Therefore, the time period beginning in April of 2018 covers plaintiffs ongoing claims of wage and hour violations that continued after February 28, 2019 and are still occurring to this day.  The FAC alleges that [defendant] continues to misclassify employee drivers, such as plaintiff and putative class members, as independent contractors post February 2019."  Dkt. 28 at 9-10.

To support that argument, plaintiff cites only paragraphs 3-5, 23, and 133.  Those allegations provide the following:

- "From at least April 2018 . . . continuing to the present . . . [defendant] failed to pay Plaintiffs and other class members minimum wage and/or overtime, and [defendant] did not reimburse for work-related expenses." FAC ¶ 3.

- Defendant "intentionally misclassified Plaintiffs and other class members as independent contractors when they were employees under the law." Id. ¶ 4.

- "[F]or certain Plaintiffs and other class members, [defendant] failed to: (1) provide final paychecks immediately upon involuntary termination or within 72 hours of voluntary separation; (2) pay final wages at the location of employment; and (3) include all wages due in the final paycheck." Id. ¶ 5.

- "Since the April 2018 Dynamex decision, and after not being exempt from AB5, [defendant] continues and will continue to treat plaintiffs and class members as independent contractors despite [defendant's] inability to meet the ABC test." Id. ¶ 23.

- "[D]uring all times relevant to this action, Plaintiffs and Class Members, were willfully  misclassified as independent contractors under Labor Code § 2750.3, and they suffered and continue to suffer damages from not being correctly classified as employees; including, but not limited to, failure to receive

1    minimum wage, overtime pay and reimbursements." Id. ¶ 133.

2         These allegations are a mix of conclusory and "a formulaic recitation of the

3    elements of a cause of action," both of which the United States Supreme Court in Bell

4    Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) expressly characterized as insufficient to

5    state a claim. Id. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his

6    'entitlement to relief' requires more than labels and conclusion, and a formulaic recitation

7    of the elements of a cause of action will not do."). Additionally, plaintiffs' allegations that

8    defendant failed to pay the requisite wages, overtime, and reimbursements, id. ¶¶ 3, 133,

9    or to provide the plaintiffs with their final paychecks, id. ¶ 5, since February 28, 2019 are

10   insufficient to push the alleged violation from the realm of "possible" to the "plausible," as

11   required under Ashcroft v. Iqbal, 556 U.S. 662 (2009). Indeed, as the Ninth Circuit has

12   previously remarked, "the plausibility of a claim is 'context-specific' . . . Obviously, with

13   the pleading of more specific facts, the closer the complaint moves toward plausibility."

14   Landers v. Quality Commc'ns, Inc., 771 F.3d 638, 645 (9th Cir. 2014), as amended (Jan.

15   26, 2015). Critical here, the MTD plaintiffs fail to allege any specific instance of any

16   Labor Code violation by defendant against any of them that occurred after February 28,

17   2019, much less with the requisite particularity.

18        Moreover, none of the MTD plaintiffs allege that they used the Uber App after

19   February 28, 2019. Plainly, an allegation of such use is a precondition to state a claim for

20   the alleged labor-related violations. Without it, the court cannot infer that any of them

21   suffered such a violation by defendant after February 28, 2019. In re Century Aluminum

22   Co. Sec. Litig., 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible

23   explanations, only one of which can be true and only one of which results in liability,

24   plaintiffs cannot offer allegations that are 'merely consistent with' their favored

25   explanation but are also consistent with the alternative explanation. . . . Something more

26   is needed, such as facts tending to exclude the possibility that the alternative explanation

27   is true . . . in order to render plaintiffs' allegations plausible within the meaning of Iqbal

28   and Twombly."). Absent plausible non-conclusory allegations that defendant continued

United States District Court
Northern District of California

19

1   the challenged practices past February 28, 2019 **with respect to the MTD plaintiffs**, the

2   court rejects their position that "this action does not involve substantively the same claims

3   . . . as those released in the <u>O'Connor</u> Settlement Agreement," Dkt. 28 at 9-10, and

4   concludes that, as presently alleged, the FAC's non-PAGA claims are materially similar to

5   those settled in <u>O'Connor</u>.

6       **Third**, the MTD plaintiffs' citation to Marcos Montes' ("Montes") and Royal

7   Gaston's ("Gaston") declarations for the fact that they began driving for defendant after

8   February 2019 and, thus, could not have been members of the <u>O'Connor</u> class, Dkt. 28

9   at 11, misses the point.  In its motion, defendant challenges only those claims brought by

10  the MTD plaintiffs.  Dkt. 19 at 2.  The fact that Montes or Gaston (MTC plaintiffs)

11  necessarily fell outside the <u>O'Connor</u> class definition is irrelevant to determine whether

12  the MTD plaintiffs' claims are precluded in this action.

13      Instead, what matters is that the MTD plaintiffs agree that the <u>O'Connor</u> settlement

14  "covers all Drivers in California and Massachusetts who have used the Uber App at any

15  time since August 16, 2009, up to and including February 28, 2019, and who have validly

16  opted out of arbitration or for whom Uber has no record of acceptance of an arbitration

17  agreement,"  Dkt. 28 at 11, alleges that the MTC plaintiffs "are each a natural person and

18  a citizen of the State of California," FAC ¶ 11, and fails to specify that they began driving

19  on or after March 1, 2019.  Given the above, the only reasonable inference for the court

20  to draw is that the MTD plaintiffs each fall within the definition of persons covered by the

21  <u>O'Connor</u> Settlement.  Thus, the court rejects MTD plaintiffs' contention that defendant

22  failed to satisfy the third requirement for triggering the application of claim preclusion to

23  their non-PAGA claims.  Accordingly, the court grants defendant's motion with respect to

24  such claims.[7]

25  _____

26  [7] In its opening brief, defendant cited various district courts for the proposition that neither
    Labor Code §§ 226.8, 2750.3 nor § 1174 provide the MTD plaintiffs with a private right of

27  action for defendant's alleged willful misclassification of their employment status or failure
    to maintain required records.  Dkt. 19 at 18, 22.  The MTD plaintiffs cited authority in

28  support of the contrary position. Dkt. 28 at 15-16, 18. Given the underlying pleading
    deficiencies identified above, the court presently need not weigh-in on whether, as a

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**b.     The MTD Plaintiffs' PAGA Claim Fails as Presently Alleged**

Defendant challenges the MTD plaintiffs' PAGA claim on the following three

grounds: (1) they lack standing to assert this claim; (2) they failed to allege a predicate

violation under the Labor Code and, incidentally, cannot state a cognizable claim for relief

under PAGA; and (3) they failed to allege their compliance with certain procedural

requirements prior to initiating this litigation.  The court analyzes each below.

**i.     The MTD Plaintiffs' May Maintain Standing to Assert Their**

**PAGA Claim**

California Labor Code § 2699 provides the following in relevant part:

> "Notwithstanding any other provision of law, any provision of
> [the California Labor Code] that provides for a civil penalty to
> be assessed and collected by the Labor and Workforce
> Development Agency . . .  for a violation of this code, may, as
> an alternative, be recovered through a civil action brought by
> an aggrieved employee on behalf of himself or herself and
> other current or former employees pursuant to the procedures
> specified in Section 2699.3."  Cal. Lab. Code § 2699(a).

Under that section, an "aggrieved person" means "any person who was employed

by the alleged violator and against whom one or more of the alleged violations was

committed." Cal. Lab. Code § 2699 (c).

In its opening brief, defendant first contended that the MTD plaintiffs lacked

statutory standing because their released claims under the O'Connor Settlement

prevents them from qualifying as "aggrieved employees."  Dkt. 19 at 20.  To support that

assertion, defendant cited the California Court of Appeal in Kim v. Reins Int'l California,

Inc., 18 Cal. App. 5th 1052 (2017).  Prior to defendant's reply, the California Supreme

Court overruled that decision, deciding that an "aggrieved employee" may include a

person who nonetheless settled his or her personal claims for Labor Code violations. Kim

v. Reins Int'l California, Inc., 9 Cal. 5th 73, 83-84 (2020).  Acknowledging that intervening

authority, defendant then effectively conceded its statutory standing challenge.  Dkt. 32 at

matter of law, those claims may properly be classified as "individual" claims.

15 n.4.  Accordingly, the court will consider only defendant's Article III standing challenge.

In a single paragraph, defendant argues that the MTD plaintiffs "lack Article III standing because they do not have a redressable injury-in-fact."  Dkt. 19 at 21.  To support the absence of such a cognizable injury, defendant cites "the satisfaction and release of [the MTD plaintiffs'] alleged injuries under California Labor Code."  Id.  In its opposition, the MTD plaintiffs do not argue they maintain a cognizable injury to bring a PAGA claim for Labor Code violations that occurred prior to March 1, 2019.  Instead, they only defend their standing to assert such a claim to the extent it is based on violation that occurred on or after that date.  Dkt. 28 at 17 ("Plaintiffs have . . . . constitutional standing to assert their PAGA claim because they are indeed 'aggrieved employees' who plead Labor Code claims outside of the time period of the O'Connor Settlement Agreement.").

Here, the court finds that the only reasonable interpretation of defendant's use of the term "satisfaction and release" is in reference to the O'Connor Settlement.  Given that the MTD plaintiffs do not contend that they maintain standing to assert a PAGA claim for violations occurring prior to March 1, 2019, the parties appear in agreement that the MTD plaintiffs may maintain Article III standing to assert a PAGA claim premised upon a violation that occurred on or after that date.  Accordingly, to the extent the MTD plaintiffs can allege that they suffered post-February 28, 2019 Labor Code violations, the MTD plaintiffs' PAGA claims are not subject to dismissal for lack of standing.

> **ii.      The MTD Plaintiffs Failed to Allege a PAGA Claim**
> **Premised Upon an Actionable Post-February 28, 2019**
> **Labor Code Violation**

As decided in Section B.2.a. above, the MTD plaintiffs failed to provide any non-conclusory allegation that would support a plausible inference that defendant committed a Labor Code violation against them that occurred after February 28, 2019.  In their opposition, the MTD plaintiffs' asserts "[they] have stated plausible claims of relief on each of their predicate claims." Dkt. 28 at 17.  That summary assertion does not remedy the above referenced pleading deficiencies.  Accordingly, the MTD plaintiffs' PAGA claim

United States District Court
Northern District of California

is subject to dismissal on this ground.

### iii.   The MTD Plaintiffs Failed to Allege Compliance with PAGA's Procedural Requirements

California Labor Code § 2699.3 details numerous procedural requirements that an aggrieved employee must comply with prior to bringing a claim under § 2699(a).  Among other conditions, § 2699.3 allows such an employee to initiate a civil action "only after . . . (2)(A) [the LWDA] has notif[ied] the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation within 60 calendar days of the postmark date of the notice received pursuant to paragraph (1) [or] [u]pon receipt of that notice or if no notice is provided within 65 calendar days of the postmark date of the notice given pursuant to paragraph (1)."  Cal. Labor Code § 2699.3(a)(2)(A).  While § 2699.3 does not explicitly state it, courts in this district have recognized that "after exhausting these administrative remedies, a party bringing a civil action must ***plead*** compliance with the pre-filing notice and exhaustion requirements."   Thomas v. Home Depot USA Inc., 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007) (emphasis added) citing Caliber Bodyworks, Inc. v. Superior Court, 134 Cal. App. 4th 365, 385 (2005), disapproved on other grounds by ZB, N.A. v. Superior Court, 8 Cal. 5th 175, 448 P.3d 239 (2019).

Here, the MTD plaintiffs failed to allege that the LWDA provided "no notice" within 65 days of their notice of defendant's alleged violations to that agency.  Rather, they allege only the date that ***they*** provided the LWDA with such notice (November 1, 2019).  FAC ¶ 127.  Accordingly, the MTD plaintiffs' PAGA claim is subject to dismissal on this separate ground as well.

### CONCLUSION

For the above reasons, the court **GRANTS IN PART** and **DENIES IN PART** defendant's motion to compel arbitration with respect to all claims brought by the MTC plaintiffs, except their PAGA claim.  With respect to such claim, the court **STAYS** all further litigation pending completion of the parties' arbitration.  The court **GRANTS**

United States District Court
Northern District of California

1   defendant's motion to dismiss the MTD plaintiffs' claims in their entirety.  To the extent

2   plaintiff premises such claims upon Labor Code violations occurring on or before

3   February 28, 2019, such dismissal is **WITH PREJUDICE**.  To the extent plaintiff premises

4   such claims upon violations occurring after that date, such dismissal is **WITHOUT**

5   **PREJUDICE**.

6        The court allows the MTD plaintiffs **28 days** from the date of this order to file a

7   second amended complaint correcting the deficiencies only in the claims dismissed

8   without prejudice.  In it, the MTD plaintiffs may only proffer amendments that would

9   support a post-February 28, 2019 Labor Code violation.  The court will not entertain any

10  amendment alleging violations that occurred prior to that period.  Failure to remedy the

11  factual defects in the MTD plaintiffs' claims—including, without limitation, those identified

12  above—will result in their dismissal with prejudice.  The MTD plaintiffs may not otherwise

13  amend their complaint absent leave of court or consent of defendant.  Upon the filing of

14  any amended complaint, the MTD plaintiffs must also file a redline clearly demarcating its

15  changes from the existing complaint.

16       **IT IS SO ORDERED.**

17  Dated: July 17, 2020

18                                      /s/ Phyllis J. Hamilton
                                        PHYLLIS J. HAMILTON
19                                      United States District Judge

20

21

22

23

24

25

26

27

28