GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
HEATHER RICHARDSON, SBN 246517
  hrichardson@gibsondunn.com
BRANDON J. STOKER, SBN 277325
  bstoker@gibsondunn.com
SAMUEL ECKMAN, SBN 308923
  seckman@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERICHO NICOLAS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>                    Defendant. | CASE NO. 4:19-cv-08228-PJH<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:    October 7, 2020<br>Hearing Time:    9:00 a.m.<br>Hearing Place:   Courtroom 3<br>Judge:              Hon. Phyllis J. Hamilton |

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 7, 2020 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Phyllis J. Hamilton in Courtroom 3 of the United States District Court for the Northern District of California in the Oakland Courthouse, Third Floor, 1301 Clay Street, Oakland, California, Defendant Uber Technologies, Inc. will and hereby does move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiffs' Second Amended Complaint ("SAC") with respect to Plaintiffs Mark Glinoga, Kevin Neely, and Alexis Gonzalez.  The SAC should be dismissed because it fails to state a plausible claim on which relief can be granted.

Uber's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

Dated: August 28, 2020

GIBSON, DUNN & CRUTCHER LLP

By:  _/s/ Theane Evangelis_
Theane Evangelis

Attorneys for Defendant UBER TECHNOLOGIES, INC.

1

2

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND............................................. 2

III.    LEGAL STANDARD ........................................................................................... 5

IV.     ARGUMENT ........................................................................................................ 6

        A.      Plaintiffs Fail To Allege Facts To Support Their Claim That Uber Did Not
                Timely Pay Wages (Count I). ...................................................................... 6

        B.      Plaintiffs Fail To Allege Facts To Support Their Minimum Wage And
                Overtime Claims (Counts II, V, and VI)...................................................... 8

        C.      There Is No Private Right Of Action For Failure To Maintain Required
                Records (Count III). ................................................................................... 10

        D.      Plaintiffs Fail To Allege Facts To Support Their Wage Statements Claim
                (Count IV). ................................................................................................ 10

        E.      Plaintiffs Fail To Allege A Viable Predicate Violation To Support Their UCL
                And PAGA Claims (Counts VII and VIII). ................................................ 11

        F.      Plaintiffs Fail To Allege Compliance With PAGA's Procedural Prerequisites
                (Count VIII). ............................................................................................. 12

        G.      There Is No Private Cause Of Action For Plaintiffs' Willful Misclassification
                Claim And, Even If There Were, Plaintiffs Fail To Allege Facts To Support
                This Claim (Count IX). .............................................................................. 13

V.      CONCLUSION................................................................................................... 15

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT - CASE NO. 4:19-cv-08228-PJH

Gibson, Dunn &
Crutcher LLP

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Amador-Stewart v. Snooze HiC LLC*,
   2019 WL 4599837 (S.D. Cal. Sept. 23, 2019) ...........................................................9, 10

5

6

*Archila v. KFC U.S. Props., Inc*.,
   420 F. App'x 667 (9th Cir. 2011) ...................................................................................12

7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................................5, 6

8

9

*Barajas v. Carriage Servs., Inc.*,
   2019 WL 6699737 (N.D. Cal. Dec. 9, 2019) ...................................................................9

10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 554 (2007) .......................................................................................................1, 5

11

12

*Byrd v. Masonite Corp.*,
   2016 WL 756523 (C.D. Cal. Feb. 25, 2016) ...................................................................11

13

14

*Colopy v. Uber Techs., Inc.*,
   2020 WL 3544982 (N.D. Cal. June 3, 2020) ..................................................................14

15

*Cordell v. PICC Lines Plus LLC*,
   2016 WL 4702654 (N.D. Cal. Sept. 8, 2016) .................................................................10

16

17

*Cousins v. Lockyer*,
   568 F.3d 1063 (9th Cir. 2009)...........................................................................................5

18

19

*Feao v. UFP Riverside, LLC*,
   2017 WL 2836207 (C.D. Cal. June 29, 2017) ................................................................10

20

*Heck v. Heavenly Couture, Inc.*,
   2017 WL 4476999 (S.D. Cal. Oct. 6, 2017) .....................................................................9

21

22

*Ileto v. Glock*,
   349 F.3d 1191 (9th Cir. 2003)...........................................................................................5

23

24

*Kellgren v. Petco Animal Supplies, Inc.*,
   2013 WL 12076473 (S.D. Cal. Sept. 13, 2013) ..............................................................15

25

*Landers v. Quality Communications*, *Inc.*,
   771 F.3d 638 (9th Cir. 2014)........................................................................................9, 10

26

27

*Lee v. Postmates Inc.*,
   2018 WL 6605659 (N.D. Cal. Dec. 17, 2018) ................................................................13

28

Gibson, Dunn &
Crutcher LLP

ii

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT - CASE NO. 4:19-cv-08228-PJH

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Magadia v. Wal-Mart Associates, Inc.*,
   384 F. Supp. 3d 1058 (N.D. Cal. 2019) ......................................................................11

*Nicholas v. Uber Techs., Inc.*,
   2020 WL 4039382 (N.D. Cal. July 17, 2020).................................................................5

*Noe v. Superior Court*,
   237 Cal. App. 4th 316 (2015) ....................................................................................13

*Ohio v. American Express Co.*,
   138 S.Ct. 2274 (2018) ................................................................................................2

*Partida v. Stater Bros. Markets*,
   2019 WL 1601387 (C.D. Cal. Feb. 19, 2019)..............................................................7

*Perez v. DNC Parks & Resorts at Asilomar, Inc.*,
   2019 WL 5618169 (E.D. Cal. Oct. 31, 2019) ............................................................6, 7

*Price v. Starbucks Corp.*,
   192 Cal. App. 4th 1136 (2011) ..................................................................................11

*Romano v. SCI Direct, Inc.*,
   2017 WL 8292778 (C.D. Cal. Nov. 27, 2017)..............................................................13

*Rosset v. Hunter Eng'g Co.*,
   2014 WL 3569332 (N.D. Cal. July 17, 2014)...............................................................13

*Soratorio v. Tesoro Refining & Marketing Co.*,
   2017 WL 8220415 (C.D. Cal. Sept. 11, 2017)..............................................................7

*Suarez v. Bank of America Corp.*,
   2018 WL 2431473 (N.D. Cal. May 30, 2018) ..............................................................10

*Tan v. Grubhub, Inc.*,
   171 F. Supp. 3d 998 (N.D. Cal. 2016) .....................................................................9, 11

*Thomas v. Home Depot USA Inc.*,
   527 F. Supp. 2d 1003 (N.D. Cal. 2007) .....................................................................12

*Thurman v. Bayshore Transit Mgmt., Inc.*,
   203 Cal. App. 4th 1112 (2012) ..................................................................................14

*Varsam v. Lab Corp. of Am.*,
   120 F. Supp. 3d 1173 (S.D. Cal. Aug 3, 2015)..........................................................12, 13

*Velasco v. Elliot*,
   2018 WL 6069009 (N.D. Cal. Nov. 20, 2018).............................................................8, 9

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT - CASE NO. 4:19-cv-08228-PJH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3      *Villalpando v. Exel Direct Inc.*,
4          2014 WL 1338297 (N.D. Cal. Mar. 28, 2014)................................................................13

5      *Wilson v. Hewlett-Packard Co.*,
           668 F.3d 1136 (9th Cir. 2012)...............................................................................15

6      *Yucesoy v. Uber Techs., Inc.*,
7          2015 WL 6955140 (N.D. Cal. Nov. 10, 2015).............................................................9

8      **Statutes**

9      Cal. Lab. Code § 203 ...............................................................................................7

10     Cal. Lab. Code § 226(e)(1) .........................................................................................11

11     Cal. Lab. Code § 226.8(i)(4) .......................................................................................15

12     Cal. Lab. Code § 2699.3(a)(1)(A)................................................................................12

13     Cal. Lab. Code § 2699.3(a)(2)(A) (superseded June 27, 2016) ............................................12

14     Cal. Lab. Code § 2699.3(a)(2)(A)................................................................................12

15     Cal. Lab. Code § 2750.3(j)..........................................................................................14

16     **Other Authorities**

17     Legis. Counsel's Dig., Assem. Bill. No. 5 (2019-2020 Reg. Sess.) ......................................14

18

19

20

21

22

23

24

25

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

For nearly a year, Plaintiffs have failed to adequately plead wage-and-hour claims arising out of Defendant Uber Technologies, Inc.'s alleged misclassification of independent transportation providers who use the Uber smartphone application (the "Uber App") to generate leads for their businesses.  Although the vast majority of Plaintiffs were compelled to arbitrate their claims, those few remaining Plaintiffs who are not bound to arbitrate try once more to salvage their case.  Now in their third attempt, Plaintiffs still fall short, and the Court should again dismiss their claims—this time with prejudice.

In dismissing the First Amendment Complaint ("FAC"), the Court found that Plaintiffs' "allegations are a mix of conclusory and 'a formulaic recitation of the elements of a cause of action,' both of which the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) expressly characterized as insufficient to state a claim." Dkt. 36 at 19.  The court cited two reasons for its conclusion.  First, "none of the MTD plaintiffs allege[d] that they used the Uber App after February 28, 2019," prior to which all claims were released in a class settlement.  *Id.*  Second, "plaintiffs' allegations that defendant failed to pay the requisite wages, overtime, and reimbursements, or to provide the plaintiffs with their final paychecks since February 28, 2019 are insufficient to push the alleged violation from the realm of 'possible' to the 'plausible.'" *Id.*

Plaintiffs respond with six new paragraphs—copy-and-pasted throughout their complaint—that still fail to satisfy the standard outlined in *Twombly*.  For the most part, these new allegations address only the first of the two grounds cited in this Court's order dismissing the FAC.  *See*, *e.g.*, Second Amended Complaint ("SAC") ¶ 55 ("Since March 1, 2019, Plaintiffs … have been working as UBER drivers by use of the UBER application.").  And to the extent Plaintiffs purport to address the Court's second ground for dismissing the FAC, the claims are still woefully inadequate.  For example, some of Plaintiffs' new allegations expressly contradict prior allegations that remain in the SAC.  *Compare id.* ¶ 43 ("For all relevant times, Plaintiffs and Class Members worked about 40 hours per week, sometimes more, sometimes less."), *with id.* ¶ 118 ("During the entirety of his employment, Plaintiff GLINOGA worked approximately 60 hours per week on average …, Plaintiff GONZALES worked

approximately 50 to 60 hours per week . . . , [and] Plaintiff NEELY worked approximately 45 hours per week."). And the SAC continues to omit any meaningful details about such basic matters as when each Plaintiff began using the Uber App, whether and when they stopped using the Uber App, and the amount they were paid—all critical to plausibly alleging wage-and-hour violations.

This Court warned Plaintiffs of the consequences of further inadequate pleadings when it dismissed the FAC: "Failure to remedy the factual defects in the MTD plaintiffs' claims—including, without limitation, those identified above—will result in their dismissal with prejudice." Dkt. 36 at 24. Nevertheless, Plaintiffs made only the most superficial attempt to address the FAC's shortcomings. Because this attempt plainly fails to state facts that give rise to a plausible inference that a violation has occurred, the Court should dismiss the SAC with prejudice.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Uber is a technology company that develops multi-sided platforms that connect service providers with customers. Multi-sided "platform[s] offer[] different products or services to two different groups who both depend on the platform to intermediate between them." *Ohio v. American Express Co.*, 138 S. Ct. 2274, 2280 (2018). Uber's largest platform, and the one under attack in this litigation (the "Rides platform"), operates like a digital marketplace that connects individuals in need of transportation ("riders") with individuals who provide transportation services ("drivers"). SAC ¶ 15.

On December 18, 2019, Plaintiffs filed this putative class action alleging that Uber misclassified drivers as independent contractors and, in doing so, violated various federal and state wage-and-hour laws. According to their First Amended Complaint, Plaintiffs sued on behalf of "[a]ll persons who worked as ride-share drivers for UBER (hereinafter referred to as 'Ride-share drivers'), from April 2018 to the present, who opted out of the arbitration provision." FAC ¶ 55. The FAC asserted nine counts, including (1) failure to timely pay earned wages (*id.* ¶¶ 65–74); (2) failure to pay minimum wages under California law (*id.* ¶¶ 75–84); (3) failure to properly maintain records (*id.* ¶¶ 85–88); (4) failure to provide accurate wage statements (*id.* ¶¶ 89–94); (5) failure to pay minimum wages under federal law (*id.* ¶¶ 95–100); and (6) failure to pay overtime under federal law (*id.* ¶¶ 101–09). Based on these alleged violations of state and federal law, Plaintiffs also alleged derivative claims under (7) California's Unfair Competition Law ("UCL") (*id.* ¶¶ 110–19), and (8) California's Private

Attorneys General Act ("PAGA") (*id.* ¶¶ 120–30).   Finally, Plaintiffs asserted a claim for (9) misclassification under California Labor Code section 2750.3. *Id.* ¶¶ 131–35.

On March 5, 2020, Uber moved to compel arbitration with respect to 45 Plaintiffs who had entered into arbitration agreements with Uber.   Dkt. 17.   On the same day, it filed a motion to dismiss with respect to the remaining three Plaintiffs.   Dkt. 19.   The motion to dismiss asserted two main arguments.   First, it noted that Plaintiffs' claims were barred by a class settlement in *O'Connor v. Uber Technologies, Inc.*, No. 3:13-cv-03826 (N.D. Cal.), which released class members' claims (save for PAGA claims) through February 28, 2019. *Id.* at 6–9.   Second, the motion contended that each of Plaintiffs' claims failed for independent reasons, including that some claims did not provide a private cause of action, while others were not supported by sufficient factual allegations. *Id.* at 9–18.

The Court granted both motions in substantial part. *See* Dkt. 36.   For those Plaintiffs who had agreed to arbitrate, the Court compelled arbitration of their non-PAGA claims and stayed the PAGA claim until arbitration concluded. *Id.* at 23.   For the remaining Plaintiffs, the Court found that the *O'Connor* settlement barred their non-PAGA claims to the extent they arose before February 28, 2019. *Id.* at 24.   Although claims arising after February 28, 2019 were not affected by the *O'Connor* settlement, the Court found that "none of the MTD plaintiffs allege[d] that they used the Uber App after February 28, 2019" and, even if they did, "plaintiffs' allegations that defendant failed to pay the requisite wages, overtime, and reimbursements, or to provide the plaintiffs with their final paychecks since February 28, 2019 are insufficient to push the alleged violation from the realm of 'possible' to the 'plausible.'" *Id.* at 19.   The court made clear that each of these deficiencies independently required dismissal:   "Critical here, the MTD plaintiffs fail to allege any specific instance of any Labor Code violation by defendant against any of them that occurred after February 28, 2019, *much less with the requisite particularity*." *Id.* (emphasis added).   The Court allowed Plaintiffs 28 days to amend their complaint, warning that "[f]ailure to remedy the factual defects in the MTD plaintiffs' claims . . . will result in their dismissal with prejudice." *Id.* at 24.

Plaintiffs have now filed a Second Amended Complaint.   Dkt. 37.   The SAC is, in substance, identical to the FAC, seeking to represent the same putative class of drivers (*id.* ¶ 60), and asserting the

same nine causes of action (*id.* ¶¶ 70–164).  In fact, the only material change Plaintiffs have made is the addition of six new paragraphs, which they copy-and-paste throughout the SAC:

- "Since March 1, 2019, Plaintiffs Mark Glinoga (hereinafter "GLINOGA"), Alexis Gonzales (hereinafter, "GONZALES"), and Kevin Neely (hereinafter "NEELY") (Collectively referred to as "Plaintiffs"), have been working as UBER Drivers by use of the UBER application, use of their own car, and with the use of their own money for maintenance of the vehicle and phone used to carry out their duties for UBER."  SAC ¶ 55; *see also id.* ¶¶ 77, 91, 102.[1]

- "Specifically, GLINOGA, GONZALEZ and NEELY have used Defendant UBER's application since March 1, 2019 to provide the transportation service to UBER customers by turning on Uber's driver app and set the setting so that they can see and accept UBER customer requests for a ride through the UBER application."  SAC ¶¶ 56, 78, 92, 103.

- "In this manner, since March 1, 2019, GLINOGA, GONZALEZ and NEELY have had the application set to "on," waiting for an UBER customer request for long periods of time; often times spending more time waiting for a ride request than driving a customer resulting in the compensation for said ride or rides over the course of a week to come out to less than minimum wage per hour."  SAC ¶¶ 57, 79, 93, 104.

- "Also, since March 1, 2019, GLINOGA, GONZALEZ and NEELY regularly had the UBER application on, waiting for and providing for UBER customers for over 8 hours a day, after having done this function 40 hours in a week.  In the instances where GLINOGA, GONZALEZ and NEELY earned enough to meet minimum wage for 40 hours of work in a week, they were not paid time and half for hours worked in excess of 40 hours in a week (i.e., over time pay of time and half)."  SAC ¶¶ 58, 80, 105.

- "Since March 1, 2019, in waiting for and providing rides for UBER customers while using UBER's application . . . , GLINOGA, GONZALEZ and NEELY used their own phone, paid for the cell phone service necessary to access UBER's application, drove their own car to carry out their duties as a UBER ride share driver in waiting for, picking up and driving UBER customers to their requested locations, and paid for gas and maintenance of their respective cars used in their duties and obligations for UBER.  Since March 1, 2019, the foregoing activities' costs in carrying out their ride-share/transportation function on UBER's behalf were borne respectively by GLINOGA, GONZALEZ, and NEELY, none of which has been reimbursed by UBER to date."  SAC ¶ 59; *see also id.* ¶ 161 (alleging "approximately $1,000 to $2,000 total spent per month, out of pocket on work-related expenditures").

- "Specifically, Plaintiffs GLINOGA, GONZALES, and NEELY have been driving for Defendants prior to March 1, 2019 continuing up to and until approximately March of 2020.  During the entirety of his employment, Plaintiff GLINOGA worked approximately 60 hours per week on average but was only paid by Defendants for approximately 30 of those hours on average.  During the entirety of his employment, Plaintiff GONZALES worked approximately 50 to 60 hours per week but was paid by Defendants for approximately 40 to 42 of those hours on average.  During the entirety of his employment, Plaintiff NEELY worked approximately 45 hours per week but was only paid by Defendants for approximately 25 of those hours on average.  As such, Plaintiffs GLINOGA,

---

[1]  The SAC is inconsistent in how it spells Plaintiff Alexis Gonzalez's name.

GONZALES, and NEELY were not earning minimum wage." SAC ¶ 118; *see also id.* ¶ 130.

Notably, the SAC does not allege any facts regarding the three Plaintiffs *individually* beyond their names, California residence, and approximate time spent logged onto (but not necessarily driving through) the Uber App each week.  For example, the SAC alleges that Plaintiffs have collectively used the Uber App "since March 1, 2019"—coincidentally, the day after the *O'Connor* settlement date (Dkt. 36 at 24)—but does not provide any details about when each one signed up to use the Uber App. Similarly, the SAC asserts that Plaintiffs collectively used the Uber App "up to and until approximately March of 2020" (SAC ¶ 59), but does not say when or under what circumstances each stopped using the Uber App.  Even where the SAC alleges Plaintiff-specific facts regarding the number of hours they spent logged onto the Uber App and the number of hours for which they were purportedly compensated, it does not allege their hours spent driving riders or their actual hourly compensation—critical details in assessing whether they were denied minimum wage or overtime.

## III.   LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint." *Nicholas v. Uber Techs., Inc.*, 2020 WL 4039382, at *4 (N.D. Cal. July 17, 2020) (*quoting Ileto v. Glock*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003)).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" meaning that a plaintiff must "plead[] factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (9th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  While a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Similarly, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts follow a two-step approach when evaluating the plausibility of a complaint.  First, the court pares all conclusory statements and allegations from the complaint, *Twombly*, 550 U.S. at 555;

and second, the court reviews the complaint's remaining factual allegations to determine whether they "plausibly" entitle the plaintiff to relief, or whether they raise a "mere possibility of misconduct," *Iqbal*, 556 U.S. at 678–80.

## IV.   ARGUMENT

Plaintiffs' Second Amendment Complaint does not remedy the myriad pleading deficiencies that infected each of their prior complaints.  Rather, the few new allegations contained therein are, in turns, contradictory, conclusory, and unresponsive.  As a result, the Court should dismiss the SAC with prejudice—just as it warned Plaintiffs it would do.

### A.   Plaintiffs Fail To Allege Facts To Support Their Claim That Uber Did Not Timely Pay Wages (Count I).

In support of their claim that Uber has failed to timely pay earned wages during employment and upon separation of employment, Plaintiffs offer the conclusory assertion that "Plaintiffs and Class Members were not properly paid pursuant to the requirements of Labor Code §§ 201, 202, and 204" and "[t]o date, for example, Defendants have not paid Plaintiffs all earned wages."  SAC ¶ 76.  Crucially, however, Plaintiffs do not allege which (if any) of them no longer have a relationship with Uber,[2] the reason the relationship ended, and when they were paid during their relationship and after its termination.  These are the same deficiencies Uber previously identified, and upon which this Court based its prior order dismissing the FAC.  *See* Dkt. 36 at 19 ("[P]laintiffs' allegations that defendant failed to … provide the plaintiffs with their final paychecks since February 28, 2019 are insufficient to push the alleged violation from the realm of 'possible' to the 'plausible.'").  Indeed, courts routinely dismiss claims that lack such factual development.  *See, e.g.*, *Perez*, 2019 WL

---

[2]   At times, Plaintiffs suggest that they continue to use the Uber App.  *See, e.g.*, SAC ¶ 77 ("Since March 1, 2019, Plaintiffs GLINOGA, GONZALES, NEELY *have been working* as Uber drivers.") (emphasis added); *id.* ¶ 78 (alleging that Plaintiffs "*have used* Defendant UBER's application *since March 1, 2019*") (emphases added).  Elsewhere, they state that they "have been driving for Defendants . . . up to and until approximately March of 2020" (*id.* ¶¶ 112, 118, 130, 160), without definitively saying whether (or when) each Plaintiff's relationship with Uber *ended*.  Even if the SAC could be read to allege that Plaintiffs no longer have a relationship with Uber, it still fails to state a claim for the reasons stated above, and because Plaintiffs fail to allege whether they were terminated or quit—a crucial shortcoming considering that a "plaintiff cannot seek relief under both §§ 201 and 202, as plaintiff could not have both resigned and been terminated at the same time."  *Perez v. DNC Parks & Resorts at Asilomar, Inc.*, 2019 WL 5618169, at *9 (E.D. Cal. Oct. 31, 2019).

Gibson, Dunn &
Crutcher LLP

5618169, at *9 (dismissing claim where "plaintiff alleges merely that 'DEFENDANTS have willfully failed to pay accrued wages and other compensation to PLAINTIFF and CLASS MEMBERS in accordance with California Labor Code §§ 201 and 202' and then parrots 'the language of the applicable statutory provisions and does not provide any supporting factual allegations'"); *Partida v. Stater Bros. Markets*, 2019 WL 1601387, at *7 (C.D. Cal. Feb. 19, 2019) ("The Court finds that Plaintiff's allegations are insufficient to survive dismissal.  Plaintiff does not provide facts describing the date of her own purported termination, the date she received her own final paycheck, its amount, or the amount she purportedly should have received.").

Moreover, Plaintiffs fail to state a claim for *willful* failure to pay wages.  *See* Cal. Lab. Code § 203 ("If an employer willfully fails to pay, without abatement or reduction . . . , any wages of an employee who is discharged or quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.").  To support this claim, Plaintiffs plead only that they "are informed and believe and based thereon allege that Defendants willfully failed to pay Plaintiffs' wages in the form of minimum wage and overtime . . . after Plaintiffs' demand," and that they "are informed and believe and based thereon allege that Defendants did this with intent to secure for themselves a discount on their indebtedness and/or with intent to annoy[,] harass, oppress, hinder, delay and/or defraud Plaintiffs."  SAC ¶ 81.  This is the exact same allegation pleaded in the FAC. *See* FAC ¶ 72.  And it is still plainly inadequate under well-established caselaw.  *See, e.g.*, *Soratorio v. Tesoro Refining & Marketing Co.*, 2017 WL 8220415, at *3 (C.D. Cal. Sept. 11, 2017) ("Plaintiff, contending that he adequately pled willfulness, points solely to his allegation that '[a]lthough Plaintiff and certain members of the proposed CLASS brought these issues of untimely payment upon separation of employment with [Tesoro], all such complaints proved fruitless.'  This unadorned allegation, without more, does not plausibly suggest willfulness.  The SAC offers no information about when Plaintiff and 'certain members of the proposed class' complained, how they complained (*e.g.*, in-person, telephone, email), who they complained to, or the response(s) they received.").

Accordingly, this Court should dismiss Count I of the SAC.

**B.**   **Plaintiffs Fail To Allege Facts To Support Their Minimum Wage And Overtime Claims (Counts II, V, and VI).**

Plaintiffs' claims for failure to pay minimum wages and overtime fare no better.  While they have added new allegations that purport to address some of the pleading deficiencies in the FAC, those allegations still fall well short of plausibly stating a claim.

*First*, Plaintiffs fail to plausibly allege the number of hours they spent working.  Although they assert that "Plaintiff GLINOGA worked approximately 60 hours per week on average," "Plaintiff GONZALES worked approximately 50 to 60 hours per week on average," and "Plaintiff NEELY worked approximately 45 hours per week on average" (SAC ¶ 118), their allegations elsewhere in the SAC *contradict* these assertions (*see, e.g.*, *id.* ¶ 43 ("For all relevant times, Plaintiffs and Class Members worked about 40 hours per week, sometimes more, sometimes less.")).  In any event, Plaintiffs do not allege *facts* to support their conclusory estimates.  One court recently dismissed minimum-wage and overtime claims where the plaintiff "d[id] not plead facts sufficient to support his estimate of an 'average [of] five hours a week of overtime,'" explaining that "[h]is conclusory pleading concerning when he 'usually' arrived at and returned to defendants' yard, his hours 'on average' working on Saturdays, and his estimate of five hours per week of overtime 'on average,' are insufficient, without more, to state a claim."  *Velasco v. Elliot*, 2018 WL 6069009, at *5 (N.D. Cal. Nov. 20, 2018).  Plaintiffs allege far less here.

Moreover, it is unclear how Plaintiffs calculated these hours.  It appears that they are counting all time logged onto the Uber App as hours "worked," alleging that they "have had the application set to 'on,' waiting for an UBER customer request for long periods of time; often times spending more time waiting for a ride request than driving a customer *resulting in the compensation for said ride or rides over the course of a week to come out to less than minimum wage per hour*."  SAC ¶ 57 (emphasis added); *see also id.* ¶¶ 79, 93, 104.  But Judge Chen dismissed identical claims under identical circumstances, finding that the plaintiff failed to plausibly allege minimum-wage or overtime violations where he did not explain "why [his] hours logged into the Uber app should be considered compensable time."  *Yucesoy v. Uber Techs., Inc.*, 2015 WL 6945140, at *3 (N.D. Cal. Nov. 10, 2015); *see also Tan v. Grubhub, Inc.*, 171 F. Supp. 3d 998, 1008–09 (N.D. Cal. 2016)

(acknowledging that "'an employee's on call or standby time may require compensation'" depending on "'the extent of the employer's control,'" but concluding that plaintiff failed to state a claim where "[t]here are no allegations about . . . how many assignments Plaintiffs or drivers typically receive during each shift, or what, if anything, Plaintiffs and drivers may engage in during their shifts when they are not responding to a delivery assignment"); *Velasco*, 2018 WL 6069009, at *4 ("The allegations do not indicate what hours between 8:00 a.m. and 6:00 p.m. are considered hours of work for which Mr. Velasco might be owed compensation and what hours would be unpaid time attributed to, for example, lunch or breaks.").

*Second*, Plaintiffs fail to adequately allege what they were paid for their time worked.  As the Ninth Circuit has explained, "[a] plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period *and the average rate at which she was paid*." *Landers v. Quality Communications*, *Inc.*, 771 F.3d 638, 645 (9th Cir. 2014) (emphasis added). Allegations concerning a plaintiff's actual pay are critical because "an employer's failure to compensate an employee for any particular hours worked does not necessarily violate the minimum wage" laws so long as "the total wage paid to an employee in any given workweek divided by the total hours worked that week equals or exceeds the applicable minimum wage."  *Heck v. Heavenly Couture, Inc.*, 2017 WL 4476999, at *4 (S.D. Cal. Oct. 6, 2017); *see also Barajas v. Carriage Servs., Inc.*, 2019 WL 6699737, at *1–2 (N.D. Cal. Dec. 9, 2019) (dismissing minimum-wage claims where plaintiff alleged that she was not paid for all time worked, but her hourly rate still exceeded the statutory minimum wage); *Amador-Stewart v. Snooze HiC LLC*, 2019 WL 4599837, at *4 (S.D. Cal. Sept. 23, 2019) (dismissing claims where plaintiff "allege[d] that the federally-mandated wage was $7.25, but does not say what she was paid, or provide any other facts giving rise to a reasonable inference that she was paid less than that").  Here, Plaintiffs merely offer a conclusory recitation of the statutory elements:  "During all times relevant, Class Members including Plaintiffs have not been paid minimum wages for all hours suffered or permitted to work."  SAC ¶ 80; *see also id.* ¶ 51 ("For all relevant times, Plaintiffs and Class Members were underpaid for hours worked, even to the extent that UBER was not paying the minimum wage.").

1   As this Court emphasized in dismissing the very same claims in the FAC, "'the plausibility of

2   a claim is context-specific,'" and "'with the pleading of more specific facts, the closer the complaint

3   moves toward plausibility.'"  Dkt. 36 at 19 (quoting *Landers*, 771 F.3d at 645).  In this context,

4   where the Court has already chastised Plaintiffs for "fail[ing] to allege any specific instance of any

5   Labor Code violation . . . with the requisite particularity" (*id.*), the contradictions and omissions in

6   the SAC do not sufficiently move the complaint "toward plausibility."  Accordingly, the Court should

7   dismiss Counts II, V, and VI.

### C. There Is No Private Right Of Action For Failure To Maintain Required Records (Count III).

9   Plaintiffs allege that "Defendants failed to comply with § 7 of IWC Order 4-2001 and with

10  Labor Code § 1174 by failing to maintain certain records which employers are required to maintain"

11  (SAC ¶ 101), seeking "any and all available remedies" (*id.* ¶ 106).  But there are *no* available

12  remedies for this alleged violation because the Labor Code does not provide a private right of action

13  to enforce these provisions.  Because "[t]he plain language of section 1174 suggests that employers

14  must maintain records for inspection by the Labor Commission, not by individual employees," courts

15  have uniformly held that plaintiffs "ha[ve] no private right of action directly under the Labor Code

16  for violation of section 1174(d)."  *Cordell v. PICC Lines Plus LLC*, 2016 WL 4702654, at *10 (N.D.

17  Cal. Sept. 8, 2016); *see also Suarez v. Bank of America Corp.*, 2018 WL 2431473, at *10 (N.D. Cal.

18  May 30, 2018) ("There is no private right of action under Labor Code section 1174."); *Feao v. UFP*

19  *Riverside, LLC*, 2017 WL 2836207, at *8 (C.D. Cal. June 29, 2017) ("The Court therefore agrees that

20  Plaintiff's section 1174(d) claim fails as a matter of law because it does not provide for a private

21  cause of action.").  Count III of the SAC should therefore be dismissed.

### D. Plaintiffs Fail To Allege Facts To Support Their Wage Statements Claim (Count IV).

24  As with their other claims, Plaintiffs fail to provide anything more than conclusory allegations

25  regarding their wage statements claim.  Although they assert that they "have not once received any

26  wage statement with all required information set forth under Labor Code § 226" (SAC ¶ 112), and

27  "suffered damages from not receiving wage statements" (*id.* ¶ 110), Plaintiffs do not identify which

28  wage statements are allegedly deficient, how they were deficient, or what injuries they sustained as a

result.  This is insufficient to state a claim.  *See Byrd v. Masonite Corp.*, 2016 WL 756523, at *3 & n.6 (C.D. Cal. Feb. 25, 2016) (dismissing wage statement claim where "Plaintiff does not identify a single deficient wage statement" but rather "alleges only: 'Defendants have intentionally and willfully failed to provide Plaintiff and other class members with complete and accurate wage statements.  The deficiencies include, but are not limited to: the failure to include the total number of hours worked by Plaintiff and the other class members'").

Additionally, while Plaintiffs "seek damages, penalties, costs and attorneys' fees pursuant to Labor Code § 226 subdivision (e)" (SAC ¶ 113), that provision allows recovery only for "[a]n employee suffering injury as a result of a *knowing and intentional failure* by an employer to comply with subdivision (a)" (Cal. Lab. Code § 226(e)(1) (emphasis added)).  Plaintiffs, however, do not make even a conclusory allegation that Uber's alleged failure to provide accurate wage statements was knowing and voluntary.  The SAC therefore fails to state a claim.  *See Magadia v. Wal-Mart Associates, Inc.*, 384 F. Supp. 3d 1058, 1080 (N.D. Cal. 2019) ("To state a claim for failure to provide accurate . . . wage statements, Plaintiffs must show that (1) Wal-Mart failed to provide compliant wage statements under Cal. Lab. Code § 226(a), (2) Wal-Mart's failure to do so was 'knowing and intentional,' and (3) Plaintiffs were injured as a result.").

### E. Plaintiffs Fail To Allege A Viable Predicate Violation To Support Their UCL And PAGA Claims (Counts VII and VIII).

This Court dismissed the PAGA claim alleged in the FAC because, among other reasons, "plaintiffs failed to provide any non-conclusory allegation that would support a plausible inference that defendant committed a Labor Code violation against them that occurred after February 28, 2019." Dkt. 36 at 22.  For the reasons outlined above, Plaintiffs still fail to plead any predicate Labor Code violation.  As a result, Counts VII and VIII, which allege claims under the UCL and PAGA, should again be dismissed.  *See Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail."); *Tan*, 171 F. Supp. 3d at 1011 (dismissing PAGA claims based on insufficiently stated predicate Labor Code claims).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### F.     Plaintiffs Fail To Allege Compliance With PAGA's Procedural Prerequisites (Count VIII).

In addition to the failure to plead a predicate Labor Code violation, this Court also dismissed Plaintiffs' PAGA claim as alleged in the FAC because "plaintiffs failed to allege that the LWDA provided 'no notice' within 65 days of their notice of defendant's alleged violations to that agency," instead "alleg[ing] only the date that *they* provided the LWDA with such notice."  Dkt. 36 at 23. Plaintiffs purport to remedy this deficiency by adding the allegation that "[n]o notice was provided by the LWDA regarding any intentions to investigate the alleged violations" (SAC ¶ 153), but as this Court noted, PAGA "details *numerous* procedural requirements that an aggrieved employee must comply with prior to bringing a claim" under the statute (Dkt. 36 at 23 (emphasis added)), and Plaintiffs still fail to adequately allege compliance with those other procedural requirements.

Most glaringly, Plaintiffs continue to allege compliance with an *outdated* version of the statute.  *Compare* SAC ¶ 152 (noting a waiting period of 33 days with no notice from the LWDA before an aggrieved employee may commence an action), *with* Cal. Labor Code § 2699.3(a)(2)(A) (superseded June 27, 2016) (same), *and* Cal. Labor Code § 2699.3(a)(2)(A) (requiring a 65-day waiting period before an action may be commenced).  This is important because, in addition to extending the waiting period, the current provision altered the mechanism for providing notice to the LWDA.  While previously a worker was required to give notice to the LWDA by certified mail, the amended PAGA statute requires an aggrieved employee to "give written notice *by online filing* with the [LWDA]."  Cal. Labor Code § 2699.3(a)(1)(A) (emphasis added).  Plaintiffs allege only that they provided written notice by "certified mail to the LWDA" (SAC ¶ 153), which is not sufficient under the current PAGA statute.  Because Plaintiffs have failed to plead compliance with PAGA's pre-filing requirements, this Court should dismiss their PAGA claim.  *See Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007) ("[A] party bringing a civil action must plead compliance with the pre-filing notice and exhaustion requirements.").

Moreover, a plaintiff's notice to the LWDA "must contain 'facts and theories' specific to the plaintiff's principal claims" (*Varsam v. Lab Corp. of Am.*, 120 F. Supp. 3d 1173, 1182 (S.D. Cal. Aug 3, 2015)), and merely listing the allegedly violated Labor Code provisions is insufficient (*Archila v.*

*KFC U.S. Props., Inc*., 420 F. App'x 667, 669 (9th Cir. 2011)).  To demonstrate compliance with this requirement, a plaintiff "should plead what 'facts and theories' . . . have been provided to the LWDA." *Varsam*, 120 F. Supp. 3d at 1183.  Plaintiffs do no such thing.  Instead, they offer only the conclusory allegation that their (procedurally improper) notice "includ[ed] the facts and theories to support the alleged violations."  SAC ¶ 153.  This is plainly inadequate, as Plaintiffs have not provided a single fact or theory contained in their notice to the LWDA.  "Without these sorts of factual details, Plaintiff[s] [are] only asserting a legal conclusion, insufficient to support a claim." *Varsam*, 120 F. Supp. 3d at 1183.

In sum, Plaintiffs fail to allege compliance with the statutorily required procedure for providing notice to the LWDA and fail to adequately plead the content of that notice.  The Court should therefore dismiss Count VIII.

### G. There Is No Private Cause Of Action For Plaintiffs' Willful Misclassification Claim And, Even If There Were, Plaintiffs Fail To Allege Facts To Support This Claim (Count IX).

Lastly, Plaintiffs fail to state a willful misclassification claim for two separate reasons.  *First*, there is no private right of action for willful misclassification under the California Labor Code.  The court observed in *Villalpando v. Exel Direct Inc.*, 2014 WL 1338297 (N.D. Cal. Mar. 28, 2014), that California Labor Code section 226.8, which "provides that '[i]t is unlawful for any person or employer to . . . willful[ly] [misclassify] . . . an individual as an independent contractor' . . . does not reveal a clear legislative intent to create a private right of action under § 226.8." *Id.* at *19.  Other courts have reached the same conclusion.  *See, e.g.*, *Lee v. Postmates Inc.*, 2018 WL 6605659, at *9–10 (N.D. Cal. Dec. 17, 2018) (noting that "[s]everal district court decisions have held that section 226.8 does not create a private right of action" and dismissing that claim with prejudice); *Rosset v. Hunter Eng'g Co.*, 2014 WL 3569332, at *8 (N.D. Cal. July 17, 2014) ("Section 226.8 does not explicitly create a private right of action and neither the legislative history nor the other Labor Code provisions impliedly create one, either."); *Romano v. SCI Direct, Inc.*, 2017 WL 8292778, at *8 (C.D. Cal. Nov. 27, 2017) (finding no private right of action for a violation of section 226.8 and therefore granting motion to dismiss the claim without leave to amend); *Noe v. Superior Court*, 237 Cal. App. 4th 316, 338 (2015) ("There is no language suggesting a private plaintiff may bring a direct

1    action under section 226.8 action [sic] or that a misclassified employee may collect the penalties

2    described within the statute.").

3          Although Plaintiffs assert their misclassification claim not under California Labor Code

4    section 226.8, but rather section 2750.3 (*see* SAC ¶ 158), "[i]t is well settled that there is a private

5    right of action to enforce a statute 'only if the statutory language or legislative history affirmatively

6    indicates such an intent'" (*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1131–

7    32 (2012)).  Nothing in section 2750.3 evinces any such intent, particularly in light of the

8    aforementioned decisions regarding section 226.8.  On the contrary, section 2750.3 provides that:

> In addition to any other remedies available, an action for injunctive relief to prevent
> the continued misclassification of employees as independent contractors may be
> prosecuted against the putative employer in a court of competent jurisdiction ***by the
> Attorney General or by a city attorney*** of a city having a population in excess of
> 750,000, or by a city attorney in a city and county or, with the consent of the district
> attorney, by a city prosecutor in a city having a full-time city prosecutor in the name of
> the people of the State of California upon their own complaint or upon the complaint
> of a board, officer, person, corporation, or association.

13   Cal. Lab. Code § 2750.3(j) (emphasis added).  This makes sense:  Section 2750.3 was not enacted to

14   create any new rights, but simply to clarify the standard for determining whether a worker is an

15   employee eligible for *pre-existing* rights under California's wage-and-hour laws.  *See* Legis.

16   Counsel's Dig., Assem. Bill. No. 5 (2019-2020 Reg. Sess.) ("The bill would provide that for purposes

17   of the provisions of the Labor Code, the Unemployment Insurance Code, and the wage orders of the

18   Industrial Welfare Commission, a person providing labor or services for remuneration shall be

19   considered an employee rather than an independent contractor unless the hiring entity demonstrates"

20   that certain factor are met).

21         Notably, Plaintiffs did not contend otherwise in their opposition to Uber's motion to dismiss

22   the FAC, arguing instead that "by way of their *PAGA claim*, [they] stand in the shoes of the Attorney

23   General."  Dkt. 28 at 13 (emphasis added); *see also Colopy v. Uber Techs., Inc.*, 2020 WL 3544982,

24   at *3 (N.D. Cal. June 3, 2020) (noting that neither party "contend[s] that [section 2750.3] offers a

25   private right of action").  But the fact that PAGA may provide a cause of action for asserting a willful

26   misclassification claim does not mean that Plaintiffs can bring a freestanding claim directly under

27   section 2750.3.  And as explained above, Plaintiffs' PAGA claim fails for independent reasons.

*Second*, Plaintiffs have not sufficiently pleaded that any misclassification was willful.  To survive a motion to dismiss a willful misclassification claim, a plaintiff must plead facts demonstrating that the defendant "avoid[ed] employee status for an individual by *voluntarily and knowingly* misclassifying that individual as an independent contractor."  Cal. Lab. Code § 226.8(i)(4) (emphasis added).  Plaintiffs' plainly have not done so here.  Although Plaintiffs repeatedly insist that Uber "intentionally misclassified Plaintiffs and other Class Members as independent contractors when they were employees under the law" (SAC ¶ 4), "[n]oticeably absent from the Complaint are any facts which plausibly suggest that [defendant]'s alleged violations were willful" (*Kellgren v. Petco Animal Supplies, Inc.*, 2013 WL 12076473, at *3 (S.D. Cal. Sept. 13, 2013); s*ee also id.* (granting motion to dismiss where plaintiff's allegations that defendant "willfully violated the FLSA" "lack[ed] sufficient factual matter to satisfy the plausibility standard set forth in *Iqbal* and *Twombly*" because it "[c]ontain[ed] no factual allegations demonstrating that Petco showed reckless disregard of whether its alleged conduct was prohibited by the FLSA"); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147–48 (9th Cir. 2012) (affirming dismissal of complaint where plaintiffs' allegations of defendants' knowledge were "merely conclusory")).

For either of these reasons, let alone both, Plaintiffs fail to state a claim for willful misclassification.

## V.  CONCLUSION

All of Plaintiffs' causes of action fail to state a claim because they do not provide a private right of action, lack a viable predicate violation, and/or because the SAC does not contain sufficient factual allegations to establish a plausible right to relief.  Despite the opportunity to amend, Plaintiffs have not cured the numerous fatal deficiencies in their prior complaints.  The Court should therefore dismiss the SAC with prejudice—just as it said it would do when it dismissed Plaintiffs' FAC.  *See* Dkt. 36 at 24.

1

Dated: August 28, 2020

GIBSON, DUNN & CRUTCHER LLP

2

By:   */s/ Theane Evangelis*

3

Theane Evangelis

4

Attorneys for Defendant UBER TECHNOLOGIES, INC.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on this 28th day of August, 2020, I filed the foregoing document with this

3

Court using the CM/ECF filing system.  This system sends notifications of such filing and service to

4

all counsel of record.

5

6

7

GIBSON, DUNN & CRUTCHER LLP

8

By:        _/s/ Theane Evangelis_____

9

Theane Evangelis

10

Attorneys for Defendant UBER TECHNOLOGIES, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT - CASE NO. 4:19-cv-08228-PJH