1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
HEATHER RICHARDSON, SBN 246517
  hrichardson@gibsondunn.com
SAMUEL ECKMAN, SBN 308923
  seckman@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

JERICHO NICOLAS, individually and on
behalf of all others similarly situated,

           Plaintiffs,

      v.

UBER TECHNOLOGIES, INC.,

           Defendant.

CASE NO. 4:19-cv-08228-PJH

**DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFFS'
THIRD AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

Hearing Date:    February 25, 2021
Hearing Time:    1:30 p.m.
Hearing Place:   Courtroom 3
Judge:           Hon. Phyllis J. Hamilton

Gibson, Dunn &
Crutcher LLP

1    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2            **PLEASE TAKE NOTICE THAT** on February 25, 2021 at 1:30 p.m., or as soon thereafter as

3    the matter may be heard before the Honorable Phyllis J. Hamilton in Courtroom 3 of the United States

4    District Court for the Northern District of California in the Oakland Courthouse, Third Floor, 1301

5    Clay Street, Oakland, California, Defendant Uber Technologies, Inc. will and hereby does move this

6    Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing

7    Plaintiffs' Third Amended Complaint ("TAC") with respect to Plaintiffs Mark Glinoga, Kevin Neely,

8    and Alexis Gonzalez.  The TAC should be dismissed because it fails to state a plausible claim on which

9    relief can be granted.

10           Uber's motion is based on this Notice of Motion and Motion, the accompanying Memorandum

11   of Points and Authorities, any other matters of which the Court may take judicial notice, other

12   documents on file in this action, and any oral argument of counsel.

13

14   Dated: January 19, 2021                      GIBSON, DUNN & CRUTCHER LLP

15                                                By:  _____/s/ Theane Evangelis_____

16                                                        Theane Evangelis

17                                                Attorneys for Defendant UBER TECHNOLOGIES, INC.

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED
COMPLAINT - CASE NO. 4:19-cv-08228-PJH

1

# TABLE OF CONTENTS

2

Page

3   I.      INTRODUCTION .................................................................................................. 1

4   II.     FACTUAL AND PROCEDURAL BACKGROUND............................................... 2

5   III.    LEGAL STANDARD ............................................................................................ 5

6   IV.     ARGUMENT ......................................................................................................... 6

7           A.      The Third Amended Complaint Should Be Dismissed Because Plaintiffs Do Not
8                   Plausibly Allege That They Have Been Misclassified.................................................. 6

9                   1.      Plaintiffs Do Not Allege That They Are Employees Under Current
                            California Law, And To The Extent Their Claims Rely On The ABC
10                          Test, They Are Abated. .................................................................................. 7

11                  2.      Plaintiffs Do Not Allege That They Are Employees Under Federal Law. ..... 10

12          B.      The Third Amended Complaint Should Be Dismissed Because Plaintiffs Do Not
                    Plausibly Allege Violations Of The California Labor Code, FLSA, Or UCL. ........... 12

13                  1.      Plaintiffs Fail To Allege Facts To Support Their Claim That Uber Did
14                          Not Timely Pay Wages (Count I)................................................................... 12

15                  2.      Plaintiffs Fail To Allege Facts To Support Their Minimum Wage And
                            Overtime Claims (Counts II, IV, and V)........................................................ 14

16                  3.      Plaintiffs' Contradictory And Inconsistent Allegations Fail To State A
17                          Claim For Failure To Provide Accurate Wage Statements (Count III). ......... 18

18                  4.      Plaintiffs Fail To Allege A Viable Predicate Violation To Support Their
                            UCL Claim (Count VI). ................................................................................. 19

19  V.      CONCLUSION .................................................................................................... 20

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

5
*Air Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014)...................................................................................2, 18

6
*Armour & Co. v. Wantock*,
7
323 U.S. 126 (1944) ....................................................................................................16

8
*Arroyo v. Int'l Paper Co.*,
2020 WL 887771 (N.D. Cal. Feb. 24, 2020)...............................................................19
9

10
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................5, 6

11
*Bell Atlantic Corp. v. Twombly*,
12
550 U.S. 554 (2007) ......................................................................................................5

13
*Bono Enterprises, Inc. v. Bradshaw*,
32 Cal. App. 4th 968 (1995)........................................................................................16
14

15
*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009) ......................................................................................5

16
*Cristler v. Express Messenger Sys., Inc.*,
17
171 Cal. App. 4th 72 (2009).........................................................................................6

18
*Dynamex Operations W., Inc. v. Superior Court*,
4 Cal. 5th 903 (2018) .........................................................................................7, 8, 11
19

20
*Faldi v. U.S. Shale Sols., LLC*,
950 F.3d 269 (5th Cir. 2020) ........................................................................................6

21
*Fitzpatrick v. Tyson Foods, Inc.*,
22
2016 WL 5395955 (E.D. Cal. Sept. 27, 2016) ............................................................10

23
*Flores v. Velocity Express, LLC*,
250 F. Supp. 3d 468 (N.D. Cal. 2017) ........................................................................10
24

25
*Frlekin v. Apple Inc.*,
8 Cal. 5th 1038 (2020) ..........................................................................................15, 16

26
*Futrell v. Payday California, Inc.*,
190 Cal. App. 4th 1419 (2010).....................................................................................11
27

28
*Gilmer v. Alameda-Contra Costa Transit Dist.*,
2010 WL 289299 (N.D. Cal. Jan. 15, 2010)...............................................................17

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3    *Gomez v. Lincare, Inc.*,
4        173 Cal. App. 4th 508 (2009)..................................................................................16

5    *Governing Bd. of Rialto Unified Sch. Dist. v. Mann*,
         18 Cal. 3d 819 (1977) ...............................................................................................7

6    *Graczyk v. Workers' Compensation Appeals Board*,
7        184 Cal. App. 3d 997 (1986).....................................................................................9

8    *Hardin v. Mendocino Cast Dist. Hosp.*,
9        2018 WL 2984834 (N.D. Cal. June 14, 2018) ........................................................19

10   *Hernandez v. Pac. Bell Tel. Co.*,
         29 Cal. App. 5th 131 (2018)................................................................................16, 17

11   *Ileto v. Glock*,
12       349 F.3d 1191 (9th Cir. 2003).....................................................................................5

13   *Lawson v. Grubhub, Inc.*,
14       302 F. Supp. 3d 1071 (N.D. Cal. 2018) ...................................................................11

15   *Local 1605 Amalgamated Transit Union, AFL-CIO v. Cent. Contra Costa Cty. Transit Auth.*,
         73 F. Supp. 2d 1117 (N.D. Cal. 1999) .....................................................................17

16   *McKenna v. WhisperText*,
17       2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) .........................................................19

18   *Nicholas v. Uber Techs., Inc.*,
19       2020 WL 4039382 (N.D. Cal. July 17, 2020)............................................................5

20   *Ohio v. Am. Express Co.*,
         138 S. Ct. 2274 (2018) ...............................................................................................2

21   *Owens v. Local No. 169, Assn. of Western Pulp & Paper Workers*,
22       971 F.2d 347 (9th Cir. 1992)....................................................................................16

23   *Patel v. Nike Retail Services, Inc.*,
         58 F. Supp. 3d 1032 (N.D. Cal. 2014) .....................................................................19

24   *People v. Buycks*,
25       5 Cal. 5th 857 (2018) ..................................................................................................9

26   *Perez v. DNC Parks & Resorts at Asilomar, Inc.*,
27       2019 WL 5618169 (E.D. Cal. Oct. 31, 2019) .........................................................13

28   *Perez v. DNC Parks & Resorts at Sequoia*,
         2020 WL 4344911 (E.D. Cal. July 29, 2020) ..........................................................13

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED
COMPLAINT - CASE NO. 4:19-cv-08228-PJH

<b>TABLE OF AUTHORITIES</b><br>(continued)

<u>Page(s)</u>

*Price v. Starbucks Corp.*,
   192 Cal. App. 4th 1136 (2011)........................................................................20

*Rankin v. Longs Drug Stores Cal., Inc.*,
   169 Cal. App. 4th 1246 (2009)........................................................................7, 8

*Real v. Driscoll Strawberry Assocs., Inc.*,
   603 F.2d 748 (9th Cir. 1979)..........................................................................10

*Rossetti v. Stearn's Prods., Inc.*,
   2016 WL 3277295 (C.D. Cal. June 6, 2016) .................................................8

*S. Serv. Co. v. Los Angeles Cnty.*,
   15 Cal. 2d 1 (1940) .........................................................................................7

*Sec'y of Labor v. Lauritzen*,
   835 F.2d 1529 (7th Cir. 1987).........................................................................11

*Soratorio v. Tesoro Refining & Marketing Co.*,
   2017 WL 8220415 (C.D. Cal. Sept. 11, 2017)...............................................13, 14

*Troester v. Starbucks Corp.*,
   5 Cal. 5th 829 (2018) .....................................................................................16

*Younger v. Superior Court*,
   21 Cal. 3d 102 (1978) ....................................................................................1, 7, 8, 9

*Zipperer v. County of Santa Clara*,
   133 Cal. App. 4th 1013 (2005)........................................................................8, 9

**Statutes**

29 U.S.C. § 207(a)(1)........................................................................................6

Cal. Bus. & Prof. Code § 7451 .........................................................................6, 7

Cal. Labor Code § 201 ......................................................................................13

Cal. Labor Code § 202 ......................................................................................13

Cal. Labor Code § 226(a)(3) ...........................................................................18

Cal. Labor Code § 226(e)(1) ...........................................................................19

Gibson, Dunn & Crutcher LLP

1

2

**TABLE OF AUTHORITIES**
(continued)

3

Page(s)

**Other Authorities**

Cal. Sec'y of State, *Proposition 22—Analysis by the Legislative Analyst*,
https://voterguide.sos.ca.gov/propositions/22/analysis.htm...................................................7, 9, 10

Kate Conger, *Uber and Lyft Drivers in California Will Remain Contractors*, N.Y.
Times (Nov. 4, 2020) ....................................................................................................................5

Libby Mishkin, *Which drivers do the most trips?*, Medium (Sept. 25, 2020),
https://medium.com/uber-under-the-hood/which-drivers-do-the-most-trips-
9c475e99e071 ............................................................................................................................13

Tony Pierce, *Despite AB 5, Uber Drivers Would Rather Quit Than Be Employees*, Los
Angeleno (Sept. 23, 2019), https://losangeleno.com/people/ab-5-uber-drivers/ ..........................12

**Regulations**

29 C.F.R. § 795.105(b) .....................................................................................................................10

29 C.F.R. § 795.105(d) .....................................................................................................................11

29 C.F.R. § 795.105(d)(1)...................................................................................................................11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED
COMPLAINT - CASE NO. 4:19-cv-08228-PJH

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

For the fourth time in a year, Plaintiffs attempt to plead wage-and-hour claims arising out of Defendant Uber Technologies, Inc.'s alleged misclassification of independent transportation providers who use the Uber smartphone application (the "Uber App") to generate leads for their businesses.  But like each of their prior complaints, Plaintiffs' Third Amended Complaint ("TAC") falls woefully short.

Although each of Plaintiffs' claims turns on the assumption that they are employees, the TAC does not allege—or even acknowledge—California voters' recent passage of Proposition 22, which unequivocally establishes that app-based drivers are independent contractors under California law. Given that Plaintiffs filed their TAC more than two months after Proposition 22 was passed, there is no plausible excuse for this omission.  And while Plaintiffs may contend that their claims should be evaluated under the worker classification test that governed prior to Proposition 22's effective date, California caselaw is clear that "an action wholly dependent on statute abates if the statute is repealed without a saving clause before the judgment is final," as happened here.  *Younger v. Superior Court*, 21 Cal. 3d 102, 109 (1978).  At the same time, Plaintiffs do not even attempt to plead that they are employees under the "economic realities" test that governs their claims under the Fair Labor Standards Act ("FLSA").

Even apart from this threshold deficiency, Plaintiffs' wage-and-hour claims fail on the merits. Although the TAC contains new allegations confirming that Plaintiffs' minimum wage and overtime claims are predicated on the compensability of time they spent logged onto the Uber App waiting for a ride request, it fails to establish the legal basis for this assertion—despite the Court's clear admonition that "any amended pleading … identify the authority they rely on to support their position that the time spent waiting between rides qualifies as compensable" and "allege sufficient, non-conclusory facts showing that their alleged waiting time between rides fits within that authority."  Dkt. 43 at 18. Meanwhile, the single new allegation supporting Plaintiffs' claim for failure to timely pay wages states only that Plaintiffs "stopped working" for Uber in March 2020 (TAC ¶ 81), but does not include facts from which the Court can plausibly infer that Plaintiffs' relationship with Uber has *ended*; even if it did, the TAC does not indicate whether that relationship ended as a result of Uber's termination of

Plaintiffs or Plaintiffs' decision to quit.  And Plaintiffs' attempt to salvage their claim for failure to provide accurate wage statements by asserting that they never received *any* wage statement from Uber is legally insufficient because it directly contradicts the allegations in Plaintiffs' prior complaints indicating that Plaintiffs received wage statements that lacked all of the required information.  *See Air Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to 'directly contradict[t] an earlier assertion made in the same proceeding.'") (alteration in original).  Because Plaintiffs fail to state a claim under the California Labor Code or FLSA, their derivative claim under the California Unfair Competition Law ("UCL") necessarily fails, as well.

This Court warned Plaintiffs of the consequences of further inadequate pleadings when it dismissed the FAC:  "Failure to remedy the factual defects in the MTD plaintiffs' claims—including, without limitation, those identified above—will result in their dismissal with prejudice."  Dkt. 36 at 24. It did so again when it dismissed the SAC:  "If plaintiffs fail to either correct the various factual deficiencies in th[eir] claims or follow the steps outlined above with respect to their minimum wage or overtime claims, the court will dismiss the subject claims with prejudice."  Dkt. 43 at 19.  Plaintiffs have made only the most superficial attempt to address their earlier shortcomings, and because this attempt plainly fails to state facts that give rise to a plausible inference that a violation has occurred, the Court should dismiss the TAC with prejudice.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

Uber is a technology company that develops multi-sided platforms that connect service providers with customers.  Multi-sided "platform[s] offer[] different products or services to two different groups who both depend on the platform to intermediate between them."  *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2280 (2018).  The Uber platform under attack in this litigation (the "Rides platform") operates like a digital marketplace that connects individuals in need of transportation ("riders") with individuals who provide transportation services ("drivers").  *See* TAC ¶ 15.

On December 18, 2019, Plaintiffs filed this putative class action alleging that Uber misclassified drivers as independent contractors and, in doing so, violated various federal and state wage-and-hour laws.  According to their First Amended Complaint, Plaintiffs sued on behalf of "[a]ll persons who

worked as ride-share drivers for UBER (hereinafter referred to as 'Ride-share drivers'), from April 2018 to the present, who opted out of the arbitration provision." FAC ¶ 55. The FAC asserted nine counts, including (1) failure to timely pay earned wages (*id.* ¶¶ 65–74); (2) failure to pay minimum wages under California law (*id.* ¶¶ 75–84); (3) failure to properly maintain records (*id.* ¶¶ 85–88); (4) failure to provide accurate wage statements (*id.* ¶¶ 89–94); (5) failure to pay minimum wages under federal law (*id.* ¶¶ 95–100); and (6) failure to pay overtime under federal law (*id.* ¶¶ 101–09). Based on these alleged violations of state and federal law, Plaintiffs also alleged derivative claims under (7) California's Unfair Competition Law (*id.* ¶¶ 110–19), and (8) California's Private Attorneys General Act ("PAGA") (*id.* ¶¶ 120–30). Finally, Plaintiffs asserted a claim for (9) misclassification under California Labor Code section 2750.3. *Id.* ¶¶ 131–35.

On March 5, 2020, Uber moved to compel arbitration with respect to 45 Plaintiffs who had entered into arbitration agreements with Uber. Dkt. 17. On the same day, it filed a motion to dismiss with respect to the remaining three Plaintiffs. Dkt. 19. The Court granted both motions in substantial part. *See* Dkt. 36. For those Plaintiffs who had agreed to arbitrate, the Court compelled arbitration of their non-PAGA claims and stayed the PAGA claim until arbitration concluded. *Id.* at 23. For the remaining Plaintiffs, the Court found that a settlement in *O'Connor v. Uber Technologies, Inc.*, No. 3:13-cv-03826 (N.D. Cal.), barred their non-PAGA claims to the extent they arose before February 28, 2019. *Id.* at 24. Although claims arising after February 28, 2019 were not affected by the *O'Connor* settlement, the Court found that "none of the MTD plaintiffs allege[d] that they used the Uber App after February 28, 2019" and, even if they did, "plaintiffs' allegations that defendant failed to pay the requisite wages, overtime, and reimbursements, or to provide the plaintiffs with their final paychecks since February 28, 2019 are insufficient to push the alleged violation from the realm of 'possible' to the 'plausible.'" *Id.* at 19.

Plaintiffs filed a Second Amended Complaint on August 14, 2020. Dkt. 37. As this Court observed, the SAC "largely rel[ied] on the same allegations proffered in the FAC," adding only "a handful of allegations that [Plaintiffs] then repeat throughout the SAC." Dkt. 43 at 3. The Court concluded that these new allegations still failed to state a claim and therefore dismissed each of the nine counts asserted in the SAC.

1
2
3
4
5
6

The Court dismissed three of Plaintiffs' claims without leave to amend. These included Plaintiffs' claims for failure to maintain required records and for willful misclassification, "because such claims do not provide for a private right of action" (*id.* at 18), and Plaintiffs' PAGA claim, because Plaintiffs "fail[ed] to allege that their notice to the LWDA contained the relevant 'facts and theories' to support the violations at issue" such that "further leave to amend the PAGA claim would be futile" (*id.* at 18–19).

7
8
9
10
11
12
13
14
15
16
17
18

The Court dismissed Plaintiffs' six remaining claims with leave to amend. With respect to their three counts for minimum wage and overtime violations, the Court faulted Plaintiffs for failing to adequately allege that they worked more than 40 hours in a given workweek and were paid less than minimum wage for the hours worked. This was because "plaintiffs' theory is that they worked whenever they had the Uber App set to the 'on' position while waiting to see and accept ride requests," but the SAC "fail[ed] to establish why such time is compensable under California or federal law." *Id.* at 7; *see also id.* at 9–10. Even absent this failing, Plaintiffs did not state a claim for overtime violations because they "allege[d] only the 'average' hours of overtime that [they] worked per week 'during the entirety of [their] employment'" and "d[id] not identify a 'given workweek' that they worked in excess of 40 hours without special compensation." *Id.* at 9. And they did not state a claim for minimum wage violations because they "fail[ed] to allege what they were paid for the time worked," such that the Court could not "infer[] that plaintiff[s] earned less than minimum wage for all the hours at issue." *Id.*

19
20
21
22
23
24
25
26
27

With respect to Plaintiffs' claim for failure to timely pay wages, the Court found that Plaintiffs "d[id] not allege that their purported employment relationship with defendant has, in fact, been terminated." *Id.* at 10. Although some of the SAC's allegations "vaguely suggest[ed] that [their] relationship ended in March 2020," others "impl[ied] that they continue to work as drivers." *Id.* at 10–11. Contradictory and inconsistent allegations also doomed Plaintiffs' claim for failure to provide accurate wage statements. While Plaintiffs "suggest[ed] that they need not identify [any deficient] statements because they do not exist," the Court noted that the SAC "allege[d] that plaintiffs have not received a statement ***with all required information***," which "is different than plaintiffs not receiving a wage statement at all." *Id.* at 12. Finally, the Court dismissed Plaintiffs' UCL claim because

28

"plaintiff[s] fail[ed] to proffer sufficient facts to state a claim based on a predicate violation of" California or federal labor law. *Id.* at 13.

During the pendency of Uber's motion to dismiss the SAC, California voters passed Proposition 22, which established that "[d]rivers and other workers for so-called gig economy companies in California will not become their employees." Kate Conger, *Uber and Lyft Drivers in California Will Remain Contractors*, N.Y. Times (Nov. 4, 2020), https://www.nytimes.com/2020/11/04/technology/california-uber-lyft-prop-22.html. Nevertheless, Plaintiffs filed the operative Third Amended Complaint on January 4, 2021 without even mentioning this development. Instead, Plaintiffs merely added a few factual allegations in response to some of the deficiencies identified by the Court in its order dismissing the SAC. The TAC did not, however, meaningfully explain why Plaintiffs' time waiting for ride requests was compensable for purposes of their minimum wage or overtime claims, nor did it modify or omit the many inconsistent and contradictory allegations that were fatal to the SAC.

## III.   LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint." *Nicholas v. Uber Techs., Inc.*, 2020 WL 4039382, at \*4 (N.D. Cal. July 17, 2020) (*quoting Ileto v. Glock*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face,'" meaning that a plaintiff must "plead[] factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (9th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). While a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted). Similarly, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts follow a two-step approach when evaluating the plausibility of a complaint. First, the court pares all conclusory statements and allegations from the complaint. *Twombly*, 550 U.S. at 555.

Second, the court reviews the complaint's remaining factual allegations to determine whether they "plausibly" entitle the plaintiff to relief, or whether they raise a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 678–80.

## IV.   ARGUMENT

Plaintiffs' Third Amended Complaint does not remedy the myriad pleading deficiencies that infected each of their prior complaints, and voters' approval of Proposition 22 independently requires dismissal in any event.  And because Plaintiffs have failed to state a claim after having had *four* chances to do so, the Court should dismiss the TAC with prejudice—just as it said it would do when it dismissed the SAC.  *See* Dkt. 43 at 19 ("If plaintiffs fail to either correct the various factual deficiencies in those claims or follow the steps outlined above with respect to their minimum wage or overtime claims, the court will dismiss the subject claims with prejudice.").

### A.   The Third Amended Complaint Should Be Dismissed Because Plaintiffs Do Not Plausibly Allege That They Have Been Misclassified.

Each of Plaintiffs' claims is predicated on the assumption that Plaintiffs were misclassified as independent contractors when they were, in fact, employees.  *See* Dkt. 43 at 2 ("[T]he SAC alleges that … defendant has misclassified plaintiffs as 'independent contractors' rather than 'employees.'  Based on that misclassification, plaintiffs allege [their substantive] claims."); TAC ¶ 19 ("Class Members have been treated as independent contractors so that they are not entitled to any of the protections any employee would have under California law.").  But California law is now clear that "an app-based driver is an independent contractor and not an employee or agent with respect to the app-based driver's relationship with a network company."  Cal. Bus. & Prof. Code § 7451.  As a result, Plaintiffs have not adequately alleged that they were Uber's employees for purposes of either California or federal law, and their wage-and-hour claims necessarily fail.  *See Cristler v. Express Messenger Sys., Inc.*, 171 Cal. App. 4th 72, 76 (2009) ("Employers have varying responsibilities with respect to persons performing services on their behalf.  These responsibilities depend, in part, on whether those persons are classified as employees or independent contractors under the Labor Code."); *Faldi v. U.S. Shale Sols., LLC*, 950 F.3d 269, 272 (5th Cir. 2020) ("[I]ndependent contractors are not entitled to overtime under the FLSA.") (citing 29 U.S.C. § 207(a)(1)).

Gibson, Dunn &
Crutcher LLP

1

2

        **1.**       **Plaintiffs Do Not Allege That They Are Employees Under Current California Law, And To The Extent Their Claims Rely On The ABC Test, They Are Abated.**

3

4

5

6

7

8

9

10

11

12

13

14

15

California law provides that "an app-based driver is an independent contractor and not an employee or agent with respect to the app-based driver's relationship with a network company" if (1) "[t]he network company does not unilaterally prescribe specific dates, times of day, or a minimum number of hours" of work, (2) "does not require the app-based driver to accept any specific rideshare service or delivery service request," (3) "does not restrict the app-based driver from performing rideshare services or delivery service through other network companies," and (4) "does not restrict the app-based driver from working in any other lawful occupation or business."  Cal. Bus. & Prof. Code § 7451.  This provision took effect with the passage of Proposition 22, which was specifically designed to "make[] app-based rideshare and delivery drivers independent contractors."  Cal. Sec'y of State, *Proposition 22—Analysis by the Legislative Analyst*, https://voterguide.sos.ca.gov/propositions/22/ analysis.htm.  Although Plaintiffs filed their operative complaint after voters approved Proposition 22 last November, the TAC does not contain any facts from which this Court can infer that Plaintiffs are employees under this test.  In fact, the TAC does not even *mention* Section 7451.

16

17

18

19

20

21

Instead, Plaintiffs assert that they are employees of Uber under the "ABC Test," first adopted by the California Supreme Court in *Dynamex Operations W., Inc. v. Superior Court*, 4 Cal. 5th 903 (2018), and then codified and expanded by the Legislature in Assembly Bill 5 ("AB5").  *See* TAC ¶¶ 25–40.  But because the ABC Test was repealed in November 2020 by Proposition 22, which codified Section 7451, Plaintiffs' claims under the ABC Test fail under the common law doctrine of abatement.

22

23

24

25

26

27

28

The doctrine of abatement holds that "when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, 'a repeal of such a statute without a saving clause will terminate all pending actions based thereon.'"  *Governing Bd. of Rialto Unified Sch. Dist. v. Mann*, 18 Cal. 3d 819, 829 (1977) (quoting *S. Serv. Co. v. Los Angeles County*, 15 Cal. 2d 1, 11–12 (1940)); *see also Younger v. Superior Court*, 21 Cal. 3d 102, 109 (1978) ("[A]n action wholly dependent on statute abates if the statute is repealed without a saving clause before the judgment is final."); *Rankin v. Longs Drug Stores Cal., Inc.*, 169 Cal. App. 4th 1246, 1256 (2009) ("When a pending action seeks

recovery based on a statutorily-based obligation, and that statutory provision is repealed by legislation not containing an express saving clause, the California courts have consistently concluded the pending actions should be abated."). This doctrine recognizes that, although a "new statutory scheme is ordinarily construed to operate prospectively rather than retroactively" when it *prohibits* conduct that was previously permitted, "different considerations are implicated in the limited circumstances in which the Legislature enacts a statute that … effectively *permit[s]* previously prohibited conduct." *Rankin*, 169 Cal. App. 4th at 1253 (emphasis added); *see also Rossetti v. Stearn's Prods., Inc.*, 2016 WL 3277295, at *4 (C.D. Cal. June 6, 2016) (criticizing plaintiff for "focus[ing] on cases discussing whether or not amended statutes can retroactively apply to *impose new or additional liability* on a defendant, not on cases that *expand protections* afforded defendants").

Courts consider four factors in determining whether an action predicated on old law must be abated: (1) "the statutory nature of the plaintiffs' claim"; (2) "the unvested nature of the plaintiffs' claimed rights"; (3) "the timing of the elimination of those rights"; and (4) "the nature of the mechanisms by which the right of action was eliminated." *Zipperer v. County of Santa Clara*, 133 Cal. App. 4th 1013, 1023 (2005). Here, all four elements militate in favor of abatement.

*First*, Plaintiffs' claims are "wholly dependent on statute." *Younger*, 21 Cal. 3d at 109. As Plaintiffs recognize, the ABC Test was codified by the Legislature in AB5, which approved "the soon-to-be-added Labor Code § 2750.3." TAC ¶ 21. And while AB5 expanded upon the California Supreme Court's decision in *Dynamex*, that decision interpreted IWC Wage Orders, recognizing that those Wage Orders "w[ere] intended to be broader and more inclusive than the common law test, under which a worker's freedom from the control of the hiring entity in the performance of the work … was the principal factor in establishing that a worker was an independent contractor rather than an employee." *Dynamex*, 4 Cal. 5th at 958.

*Second*, Plaintiffs have no vested right to benefits under the ABC Test. *See Zipperer*, 133 Cal. App. 4th at 1024 ("Until it is fully enforced, a statutory remedy is merely an 'inchoate, incomplete, and unperfected right,' which is subject to legislative abolition.") (citation omitted). In fact, the California Court of Appeal held that a worker does not have a vested right in his or her employee status in a remarkably similar case. In *Graczyk v. Workers' Compensation Appeals Board*, 184 Cal. App. 3d 997

(1986), a student athlete sought workers' compensation for an injury sustained during a college football game. *Id.* at 1000. During the pendency of his case, the Legislature amended the relevant statute to exclude student athletes from the definition of employees. *Id.* at 1001–02. Although the plaintiff argued that "he had a 'vested right' in employee status under the law existing at the time of his injuries," the Court of Appeal disagreed, explaining that "[t]he right to workers' compensation benefits is 'wholly statutory' … and is not derived from common law." *Id.* at 1002–03 (citations omitted). Because the plaintiff's "[r]ights, remedies and obligations rest on the status of the employer-employee relationship, rather than on contract or tort" (*id.* at 1003), the court held that he "did not have a vested right in employee status at the time of his injury" (*id.* at 1007).

*Third*, Plaintiffs have not obtained a final judgment in this litigation. *See Zipperer*, 133 Cal. App. 4th at 1024 ("Whenever the Legislature eliminates a statutory remedy 'before a judgment becomes final,' the legislative act 'destroys the right of action.'"). "A judgment becomes final when the availability of an appeal and the time for filing a petition for certiorari with the United States Supreme Court have expired." *People v. Buycks*, 5 Cal. 5th 857, 876 n.5 (2018); *see also Younger*, 21 Cal. 3d at 110 ("[T]he order here challenged was not final at the time its statutory authorization was repealed: the Attorney General filed an appeal therefrom on July 16, 1976, and that appeal was still pending on January 1, 1977, when A.B. 3050 took effect."). Here, Plaintiffs have not even progressed beyond the pleading stage.

*Fourth*, and finally, Proposition 22 eliminated Plaintiffs' claims under the ABC Test. Courts "look to the substance of the legislation—not its label—to determine whether it operates as a repeal" of a statutory right, with "[t]he pivotal issue [being] whether the legislation constitutes 'a substantial reversal of legislative policy' that represents 'the adoption of an entirely new philosophy' vis-à-vis the prior enactment." *Zipperer*, 133 Cal. App. 4th at 1025. The answer here is plainly, "yes." The Official Voter Information Guide distributed to Californians in advance of the vote on Proposition 22 explained that "[t]he state recently passed a law that limits the ability of companies to hire workers as independent contractors"—namely, AB5—which the state Attorney General had interpreted to "mean[] rideshare and delivery companies must hire drivers as employees." Cal. Sec'y of State, *Proposition 22—Analysis by the Legislative Analyst*, https://voterguide.sos.ca.gov/propositions/22/analysis.htm. But the Guide

Gibson, Dunn & Crutcher LLP

informed voters that "[t]his measure makes app-based rideshare and delivery drivers independent contractors," such that "[t]he new state law that limits the ability of companies to hire independent contractors would not apply to drivers." *Id.*   The fact that Proposition 22 simply altered the circumstances under which a worker could seek employee benefits (for example, minimum wage and overtime), and did not completely *eliminate* those benefits, is immaterial because "[t]he Legislature need not repeal a statute in its entirety but may instead partially repeal a statute by taking away the right of action in certain situations." *Fitzpatrick v. Tyson Foods, Inc.*, 2016 WL 5395955, at *3 (E.D. Cal. Sept. 27, 2016).   That is precisely what Proposition 22 did—repeal the right of app-based drivers to bring a claim for the denial of employee benefits unless they satisfy one of the four conditions enumerated in Section 7451.

Because Plaintiffs' claims are abated to the extent they rely on the now-abolished ABC Test, and because Plaintiffs have not even attempted to plead that they are employees under Section 7451, the Court should dismiss Counts I, II, III, and VI, which arise under California law.

### 2.        Plaintiffs Do Not Allege That They Are Employees Under Federal Law.

Plaintiffs are no more successful in alleging that they are employees for purposes of the FLSA. *See* TAC ¶¶ 117–62.   "To determine whether an individual is an employee or an individual contractor under FLSA, courts apply the economic reality test: '[E]mployees are those who *as a matter of economic reality are* dependent upon the business to which they render service.'" *Flores v. Velocity Express, LLC*, 250 F. Supp. 3d 468, 478 (N.D. Cal. 2017) (quoting *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979)); *see also* 29 C.F.R. § 795.105(b) ("An employer suffers or permits an individual to work as an employee if, as a matter of economic reality, the individual is economically dependent on that employer for work.   An individual is an independent contractor, as distinguished from an 'employee' under the Act, if the individual is, as a matter of economic reality, in business for him- or herself.") (citation omitted).   Among other things, this test considers "the nature and degree of the alleged employer's control," "the alleged employee's opportunity for profit or loss depending upon his managerial skill," "the alleged employee's investment in equipment or materials required for his task," "whether the service rendered requires a special skill," "the degree of permanency and duration of the working relationship," and "the extent to which the service rendered

is an integral part of the alleged employer's business."  *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1987); *see also* 29 C.F.R. § 795.105(d).  The two "[c]ore factors" are "[t]he nature and degree of control over the work" and "[t]he individual's opportunity for profit or loss."  29 C.F.R. § 795.105(d)(1).

The FLSA's "economic realities" test was distinct from California's worker classification test even before *Dynamex* and AB5.  *See Futrell v. Payday California, Inc.*, 190 Cal. App. 4th 1419, 1435 (2010) ("[T]he FLSA applies a slightly different test than California law."); *Dynamex*, 4 Cal. 5th at 954 ("In applying the economic reality test, federal courts have looked to a list of factors that is briefer than, but somewhat comparable to, the list of factors considered in the pre-*Borello* California decisions and in *Borello* itself.").  The adoption of the ABC Test, however, was a direct *repudiation* of that test.  As the California Supreme Court explained in *Dynamex*, "federal FLSA decisions applying the economic reality standard have held that no one factor is determinative and that the ultimate decision whether a worker is to be found an employee or an independent contractor for purposes of the FLSA should be based on all the circumstances."  *Dynamex*, 4 Cal. 5th at 954.  But citing concerns "regarding the disadvantages, particularly in the wage and hour context, inherent in relying upon a multifactor, all the circumstances standard for distinguishing between employees and independent contractors," the California Supreme Court "conclude[d] it is appropriate, and most consistent with the history and purpose of the suffer or permit to work standard in California's wage orders, to interpret that standard as … requiring the hiring entity … to establish each of the three factors embodied in the ABC test."  *Id.* at 956–57 (emphasis omitted).

Again, Plaintiffs allege that they are employees *only* under the now-defunct ABC Test.  The TAC contains no facts from which the Court can plausibly infer that Plaintiffs are Uber's employees under the "economic realities" test that governs their FLSA claims, and indeed, does not even mention that test.  And as Judge Corley recently found in a similar case, an app-based worker is not subject to the control of a network company where, as here, the company "d[oes] not control how and when" he works and cannot "make him work [or] count on him to work."  *Lawson v. Grubhub, Inc.*, 302 F. Supp. 3d 1071, 1085 (N.D. Cal. 2018).  As a result, the Court should dismiss Counts IV and V, which arise under the FLSA.

**B.      The Third Amended Complaint Should Be Dismissed Because Plaintiffs Do Not Plausibly Allege Violations Of The California Labor Code, FLSA, Or UCL.**

Because Plaintiffs have not adequately alleged that they are employees under California or federal law, the Court may dismiss the TAC without analyzing Plaintiffs' specific wage-and-hour claims.  But even if the Court proceeds to consider those causes of action, it should still dismiss the TAC because Plaintiffs fail to allege any violation of the California Labor Code, FLSA, or UCL.

**1.      Plaintiffs Fail To Allege Facts To Support Their Claim That Uber Did Not Timely Pay Wages (Count I).**

As noted above, this Court dismissed the SAC's claim for failure to timely pay wages because "plaintiffs d[id] not allege that their purported employment relationship with [Uber] has, in fact, been terminated" in light of "[t]he apparent tension between" allegations suggesting that they stopped working in March 2020 and those indicating that "they continue to work as drivers."  Dkt. 43 at 10–11.  The Court also found that Plaintiffs "fail[ed] to proffer any non-conclusory facts showing that defendant acted willfully when allegedly failing to pay plaintiffs' wages." *Id.* at 11.

In response, Plaintiffs make only one material amendment to this claim, adding a single paragraph to the TAC:  "Plaintiff GLINOGA, GONZALEZ, and NEELY stopped working for UBER in approximately March of 2020.  Accordingly, Plaintiffs['] employment relationships with UBER ended in or about March of 2020."  TAC ¶ 81.  But this is insufficient to cure the TAC's deficiencies for at least three reasons.

*First*, this new allegation does not contain any facts from which the Court can plausibly infer that the relationship between Plaintiffs and Uber has actually *ended*.  Although Plaintiffs allege that they "stopped working" in March 2020, one of the benefits of Uber is that it allows drivers to work on their own schedule—including by taking weeks or months off at a time without sacrificing their ability to resume using the Uber App when they are ready.  *See* Tony Pierce, *Despite AB 5, Uber Drivers Would Rather Quit Than Be Employees*, Los Angeleno (Sept. 23, 2019), https://losangeleno.com/people/ab-5-uber-drivers/ ("If you want to take a month, two months, six months off from driving you won't get so much as an email from the companies inquiring into your status.  I should know.  After being an Uber/Lyft driver for over five years, I stopped using the apps almost a year ago and have not heard a peep from either company asking me to return."); Libby Mishkin, *Which drivers do the most*

1   *trips?*, Medium (Sept. 25, 2020), https://medium.com/uber-under-the-hood/which-drivers-do-the-

2   most-trips-9c475e99e071 ("In California, a typical driver is online on Uber's platform less than 20

3   hours a week and drives only 9 out of every 13 weeks in a quarter."). As a result, Plaintiffs' assertion

4   that their "employment relationships with UBER ended in or about March of 2020" (TAC ¶ 81) is a

5   bare legal conclusion unsupported by any facts.

6   *Second*, the TAC does not specify *how* Plaintiffs' relationship with Uber purportedly ended.

7   Although the TAC alleges that "Plaintiffs and Class Members were not properly paid pursuant to the

8   requirements of Labor Code §§ 201 [and] 202" (TAC ¶ 76), those provisions are mutually exclusive,

9   with the former applying where "an employer *discharges* an employee" (Cal. Labor Code § 201

10  (emphasis added)), and the latter governing where "an employee … *quits* his or her employment" (*id.*

11  § 202 (emphasis added)). Courts have dismissed claims for failure to timely pay wages when the

12  complaint fails to specify under which of these provisions the claims arise. *See*, *e.g.*, *Perez v. DNC*

13  *Parks & Resorts at Asilomar, Inc.*, 2019 WL 5618169, at *9 (E.D. Cal. Oct. 31, 2019) ("[P]laintiff

14  alleges merely that 'DEFENDANTS have willfully failed to pay accrued wages and other

15  compensation to PLAINTIFF and CLASS MEMBERS in accordance with California Labor Code

16  §§ 201 and 202 …. [P]laintiff cannot seek relief under both §§ 201 and 202, as plaintiff could not have

17  both resigned and been terminated at the same time.").

18  *Third*, Plaintiffs' new allegation does not even attempt to remedy the SAC's failure to properly

19  allege a *willful* failure to timely pay wages. *Compare* TAC ¶ 82, *with* SAC ¶ 81. The Court should

20  therefore adhere to its prior order dismissing this claim, which is consistent with well-established

21  precedent. *See*, *e.g.*, *Perez v. DNC Parks & Resorts at Sequoia*, 2020 WL 4344911, at *8–9 (E.D. Cal.

22  July 29, 2020) (dismissing claim for failure to pay wages where plaintiffs "allege[d] no factual content

23  to support their claim that defendants 'willfully' failed to pay final wages"); *Soratorio v. Tesoro*

24  *Refining & Marketing Co.*, 2017 WL 8220415, at *3 (C.D. Cal. Sept. 11, 2017) (dismissing claim for

25  willful failure to pay wages where "[t]he SAC offers no information about when Plaintiff and 'certain

26  members of the proposed class' complained, how they complained (e.g., in-person, telephone, email),

27  who they complained to, or the response(s) they received").

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED
COMPLAINT - CASE NO. 4:19-cv-08228-PJH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs have had several opportunities to amend their complaint to properly allege a claim for failure to timely pay wages, yet have repeatedly failed to do so.  Accordingly, this Court should dismiss Count I of the TAC without leave to amend.

### 2.   Plaintiffs Fail To Allege Facts To Support Their Minimum Wage And Overtime Claims (Counts II, IV, and V).

Plaintiffs' claims for failure to pay minimum wages (asserted under California and federal law) and overtime (asserted only under federal law) fare no better.  The TAC confirms that these claims are based not only on time transporting riders, but time spent waiting for a ride request, as well.  For example, Plaintiff Gonzalez admits that he provided transportation for fewer than 40 hours in each of the weeks in which he was allegedly denied overtime, relying on his "online" time to push him over that threshold.  *See* TAC ¶ 98 (alleging that from "July 15 to 22, 2019 he totaled 54h 24m 'online' / 38h 53m 'active'"; from "Oct 21 to 28, 2019 he totaled 44h 10m 'online' / 37h 13m 'active'"; from Dec 2 to 9, 2019 he totaled 50h 7m 'online' / 35h 42m 'active'; and from "Jan 20 to 27, 2020 he totaled 66h 4m 'online' / 39h 15m 'active'").  And although Plaintiffs Glinoga and Neely do not differentiate between their "online" and "active" time, their allegations make clear that they include all of the time logged onto the Uber App in calculating their total hours worked and average pay.  *See, e.g., id.* ¶ 101 ("During these times, Plaintiff GLINOGA had his UBER application set to 'on' while he was either transporting passengers, or waiting for his next customer to request a ride."); *id.* ("Plaintiff NEELY left the application 'on' all day, while he was either transporting passengers, or waiting for his next customer to request a ride.").

But as this Court held in dismissing the SAC, time spent waiting for a ride request may be considered in evaluating Plaintiffs' minimum wage and overtime claims only if that time falls within Wage Order 4's definition of "hours worked" or the FLSA's definition of compensable time.  The Court therefore directed Plaintiffs to (1) "specify which clause under Wage Order 4 serves as the basis for their alleged 'hours worked,'" (2) "identify the authority they rely on to support their position that the time spent waiting between rides qualifies as compensable," and (3) "allege sufficient, non-conclusory facts showing that their alleged waiting time between rides fits within that authority."  Dkt. 43 at 18.  The Court similarly directed Plaintiffs to "follow these exact same steps with respect to

14

Gibson, Dunn & Crutcher LLP

their federal law claims for minimum wage and overtime." *Id.*  Ultimately, Plaintiffs have done none of these things.

*First*, Plaintiffs have failed to specify which of Wage Order 4's clauses they rely on for the proposition that time spent waiting for a ride request is compensable.  As this Court explained, "Wage Order 4 defines the term 'hours worked'" to include "time during which an employee is ***subject to the control of an employer***, and includes all the time the employee is ***suffered or permitted to work***, whether or not required to do so." *Id.* at 7–8 (quoting Wage Order 4, § 2(K)) (emphases in original).  The "'control of an employer' clause and the 'suffered or permitted to work' clause establish 'independent factors, each of which defines whether certain time spent is compensable as hours worked.'" *Id.* at 8 (quoting *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1046 (2020)).

At times, Plaintiffs appear to rely on the "suffered or permitted to work" clause.  *See, e.g.*, TAC ¶ 100 ("The times in which Plaintiffs had their application set to 'on,' Plaintiffs were either waiting for a ride request, driving to or from a customer pick up or drop off location, or driving a customer.  These hours worked are compensable since Plaintiffs were *suffered or permitted to work* during these times, whether or not required to do so.") (emphasis added); *id.* ¶ 91 ("Class Members including Plaintiffs have not been paid minimum wages for all hours *suffered or permitted to work* in violation of the minimum wage provisions of the California Labor Code.") (emphasis added).  Elsewhere, however, Plaintiffs invoke the "subject to the control of an employer" clause in alleging that this time is compensable.  *See, e.g., id.* ¶ 120 ("[F]or Plaintiffs and Class Members to provide the service of an Uber ride for an Uber customer, they must use Uber's application to be connected with that Uber customer…. Ergo, Plaintiff and Class members *are controlled by Uber* (the employer), through Uber's application.") (emphasis added); *id.* ¶ 124 ("Because this waiting time (a.k.a., standby time) on Uber's application is inextricably intertwined [with] Plaintiffs'/Class Members' ability to provide a ride (or customers to solicit a ride) that benefits and *is controlled by Uber*, the time waiting on the app is for the benefit of Uber, and should be compensated as 'hours worked' under California and federal law.") (emphasis added).

*Second*, irrespective of the standard they purport to rely upon, Plaintiffs have failed to identify any authority suggesting that time spent waiting for rides is compensable.  Plaintiffs cite only one case

for the proposition that "on-call waiting time is compensable if it is spent primarily for the benefit of the employer and its business" under California law.  TAC ¶ 119 (citing *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508 (2009)).  But that case makes no mention of Wage Order 4's definition of "hours worked"; rather, it interprets *federal* caselaw applying the *FLSA*.  *See Gomez*, 173 Cal. App. 4th at 523 (citing *Armour & Co. v. Wantock*, 323 U.S. 126 (1944); *Owens v. Local No. 169, Assn. of Western Pulp & Paper Workers*, 971 F.2d 347 (9th Cir. 1992)).  Moreover, the court in that case proceeded to explain that whether waiting time "is spent primarily for the benefit of the employer" turns on "whether the employee was free to engage in personal activities."  *Id.*  Because the workers at issue—medical equipment service representatives who were required to remain on-call to deliver oxygen tanks to patients—were "not unduly restrict[ed] [in their] ability to engage in personal activities" during their waiting time, the court concluded that the waiting time was not compensable.  *Id.* at 524.

While Plaintiffs do not identify it, the relevant California authority is not difficult to find.  A worker is "subject to the control of an employer" "[w]hen an employer directs, commands, or restrains an employee from leaving the work place … and thus prevents the employee from using the time effectively for his or her own purposes."  *Frlekin*, 8 Cal. 5th at 1047 (quoting *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968, 972 (1995)).  And a worker is "suffered or permitted to work" for the employer in "the time during which the employer knew or should have known that the employee was working on its behalf."  *Troester v. Starbucks Corp.*, 5 Cal. 5th 829, 840 (2018).  While this "includes time the employee is working but not under the employer's control, such as unauthorized overtime," it still captures only "tasks or exertion that a manager would recognize as work."  *Hernandez v. Pac. Bell Tel. Co.*, 29 Cal. App. 5th 131, 137, 142 (2018).  Consequently, the California Court of Appeal has held that even when an employee performs tasks for his employer during his non-compensable commute time, he is not entitled to compensation so long as this work "does not add time or exertion to [the] commute."  *Id.* at 137.

Meanwhile, the FLSA standard for determining whether time spent waiting for work is compensable closely mirrors the "subject to the control of an employer" prong of Wage Order 4.  *See Local 1605 Amalgamated Transit Union, AFL-CIO v. Cent. Contra Costa Cnty. Transit Auth.*, 73 F. Supp. 2d 1117, 1121 (N.D. Cal. 1999) ("Early Supreme Court cases interpreting FLSA established

the general rule that an activity is work for FLSA's purposes if it is 'controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer.'").[1]  "Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked." *Gilmer v. Alameda-Contra Costa Transit Dist.*, 2010 WL 289299, at *2 (N.D. Cal. Jan. 15, 2010).

*Third*, Plaintiffs have failed to "allege sufficient, non-conclusory facts showing that their alleged waiting time between rides fits within that authority." Dkt. 43 at 18.  Plaintiffs have not explained how time spent waiting for a ride request restricts their ability to engage in personal activities for purposes of Wage Order 4's "subject to the control of an employer" prong or the FLSA's analogous standard for determining compensable time, especially considering the fact that Plaintiffs are under no obligation to accept a particular ride request if one happens to come in while they are engaged in personal activities.  In fact, Plaintiff NEELY admits that he would log onto the Uber App and wait for a ride during his daily commute, which is clearly *not* compensable under well-established precedent. *See* TAC ¶ 97 ("On Mondays through Fridays, at approximately 5:00 to 6:00 p.m., Plaintiff NEELY would set his Uber application to a 'destination' filter, which allowed the application to find him rides that were heading towards his home."); *see also Hernandez*, 29 Cal. App. 5th at 141 ("Commute time … is not compensable as 'hours worked' under the control test.").  Nor do Plaintiffs allege facts from which this Court can plausibly infer that their time spent waiting for a ride request falls within Wage Order 4's "suffered or permitted to work" prong.  While Plaintiffs allege that "[t]he Uber ride … cannot be effectuated without their participation in Uber's exclusive digital platform" (TAC ¶ 122), this hardly establishes that the time Plaintiffs are logged onto the Uber App is spent on "tasks … that a manager would recognize as work." *Hernandez*, 29 Cal. App. 5th at 142.  On the contrary, based on Plaintiffs' allegations, drivers could simply log onto the Uber App in the morning, ignore or reject every request they receive for the next eight hours, and then log off in the evening without having given a single ride.

---

[1]  As noted above, *Gomez* relied on FLSA cases in considering whether the waiting time in that case was compensable, suggesting that Plaintiffs rely on the "subject to control" prong of Wage Order 4's definition of "hours worked."

Gibson, Dunn &
Crutcher LLP

1

2

3

In short, Plaintiffs have failed to allege that their time waiting for a ride request was compensable and, thus, have failed to allege any minimum wage or overtime violations. Accordingly, the Court should dismiss Counts II, IV, and V without leave to amend.

4

5

       **3.**       **Plaintiffs' Contradictory And Inconsistent Allegations Fail To State A Claim For Failure To Provide Accurate Wage Statements (Count III).**

6

7

8

9

10

11

In its motion to dismiss the SAC's claim for failure to provide accurate wage statements, Uber explained that "Plaintiffs d[id] not identify which wage statements [we]re allegedly deficient, how they were deficient, or what injuries they sustained as a result." Dkt. 39 at 10–11. Although Plaintiffs argued that "they need not identify such statements because they do not exist," the Court rejected this contention because the SAC "allege[d] that plaintiffs have not received a statement ***with all required information***," which "is different than plaintiffs not receiving a wage statement at all." Dkt. 43 at 12 (emphasis in original).

12

13

14

15

16

17

18

Plaintiffs respond by amending the TAC to allege that they "never received any wage statement *at all*, let alone a wage statement with all required information set forth under Labor Code § 226." SAC ¶ 110 (emphasis added). But while Plaintiffs were free to amend their pleading in response to the Court's order dismissing the SAC, caselaw is clear that "[a] party cannot amend pleadings to 'directly contradic[t] an earlier assertion made in the same proceeding.'" *Air Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014). Plaintiffs' new allegation does precisely that.

19

20

21

22

23

24

25

26

27

Even if Plaintiffs' amended pleading were proper (it is not), it is still internally inconsistent. Although Plaintiffs insist that they never received any wage statement from Uber, they specifically allege that only *some* of the information required by Section 226 was missing from their wage statements. In particular, the TAC states that "Defendants violated various provisions of § 226, including but not limited to subdivisions (a)(1), (a)(2), (a)(4), (a)(5), (a)(6), (a)(7), (a)(8), and (a)(9)" (TAC ¶ 111)—making no mention of subdivision (a)(3), which requires a wage statement to provide "the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis" (Cal. Labor Code § 226(a)(3)). Especially in light of Plaintiffs' prior pleadings, the new allegations in the TAC do not state a plausible claim for failure to provide accurate wage statements. *See Hardin v. Mendocino Cast Dist. Hosp.*, 2018 WL 2984834, at *5 (N.D. Cal. June 14, 2018)

28

Gibson, Dunn &
Crutcher LLP

("[W]hen evaluating an amended complaint, the court may also consider the prior allegations as part of its 'context-specific' inquiry … to assess whether an amended complaint plausibly suggests an entitlement to relief.") (quoting *McKenna v. WhisperText*, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015)).

Additionally, Plaintiffs still fail to "allege any facts showing that, even if defendant failed to provide a wage statement, such failure was knowing and intentional." Dkt. 43 at 12.  Plaintiffs allege that "Uber[']s failure to provide wage statements … was willful and intentional after it became on notice in April 2018 when the ABC test first was established through Dynamex" (TAC ¶ 113), but Section 226 requires that a violation be "a result of a *knowing and intentional* failure," not simply a wrong or even negligent one (Cal. Labor Code § 226(e)(1)) (emphasis added).  As a result, so long as Uber had a good-faith belief that drivers were not employees under the ABC Test, it could not be held liable for a knowing and intentional violation of Section 226.  *See Arroyo v. Int'l Paper Co.*, 2020 WL 887771, at *12 (N.D. Cal. Feb. 24, 2020) ("[A]n employer's good faith belief that it is in compliance with § 226 precludes liability under that statute.").  The TAC does not allege any facts suggesting that Uber's belief, which it was actively asserting in numerous cases (including this one), was not held in good faith.

As a result, the TAC fails to state a claim for a knowing and intentional failure to provide accurate wage statements, and Count III should be dismissed without leave to amend.[2]

### 4.    Plaintiffs Fail To Allege A Viable Predicate Violation To Support Their UCL Claim (Count VI).

As noted above, the Court dismissed the SAC's claim under the UCL because "[t]he parties agree[d] that [this] claim rises or falls with the alleged violations of the above-referenced labor laws," but Plaintiff "fail[ed] to proffer sufficient facts to state a claim based on a predicate violation" of those laws.  Dkt. 43 at 13.  Plaintiffs have not made any material alterations to this claim in their TAC.  *See* TAC ¶¶ 164–74.  Because Plaintiffs still fail to adequately plead a predicate violation of the California

---

[2]  Plaintiffs' citation (*see* TAC ¶ 113) to *Patel v. Nike Retail Services, Inc.*, 58 F. Supp. 3d 1032 (N.D. Cal. 2014), is unavailing because that case addresses only the distinction between "initial" and "subsequent" violations of Section 226, and because it makes clear that an employer must be "notified that it is violating a Labor Code provision" and "cannot be presumed to be aware" of a violation.  *Id.* at 1042.  Plaintiffs have not alleged that Uber was ever notified that it was violating the Labor Code.

Gibson, Dunn & Crutcher LLP

1    Labor Code or FLSA, the Court should again dismiss Count VI.  *See Price v. Starbucks Corp.*, 192

2    Cal. App. 4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative UCL

3    and PAGA claims also fail.").

## V.    CONCLUSION

5    The TAC fails to state a viable cause of action because it does not adequately allege that

6    Plaintiffs were employees of Uber for purposes of California or federal law, does not contain sufficient

7    facts to establish a plausible right to relief under the California Labor Code or FLSA, and does not state

8    a predicate violation for purposes of the UCL.  Despite the opportunity to amend, Plaintiffs have not

9    cured the numerous fatal deficiencies in their prior complaints.  The Court should therefore dismiss the

10   TAC with prejudice—just as it said it would do when it dismissed Plaintiffs' SAC.  *See* Dkt. 43 at 19.

12   Dated: January 19, 2021                    GIBSON, DUNN & CRUTCHER LLP

                                                By:    *        /s/ Theane Evangelis        *
                                                        Theane Evangelis

                                                Attorneys for Defendant UBER TECHNOLOGIES, INC.

Gibson, Dunn &
Crutcher LLP

1

### **CERTIFICATE OF SERVICE**

2      I hereby certify that on this 19th day of January 2021, I filed the foregoing document with this

3  Court using the CM/ECF filing system.  This system sends notifications of such filing and service to

4  all counsel of record.

5

6

7                                    GIBSON, DUNN & CRUTCHER LLP

8                              By:        */s/ Theane Evangelis*

9                                          Theane Evangelis

10                              Attorneys for Defendant UBER TECHNOLOGIES, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED
COMPLAINT - CASE NO. 4:19-cv-08228-PJH