Allen Patatanyan (State Bar No. 210586)
Neama Rahmani (State Bar No. 223819)
Ronald L. Zambrano (State Bar No. 255613)
  *ron@westcoasttriallawyers.com*
Melineh Kasbarian (State Bar No. 329033)
  *melineh@westcoasttriallawyers.com*
WEST COAST TRIAL LAWYERS, APLC
350 South Grand Avenue, Suite 3350
Los Angeles, California 90071
Telephone: (213) 927-3700
Facsimile: (213) 927-3701
  *efilings@westcoasttriallawyers.com*

Attorneys for Plaintiffs,
JERICHO NICOLAS and Other Aggrieved Employees

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERICHO NICOLAS an individual, et al., On Behalf of Themselves and All Others Similarly Situated and Aggrieved;<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., a Delaware Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.: 4:19-cv-08228-PJH<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**JUDGE:** Hon. Phyllis J. Hamilton<br>**COURTROOM:** 3<br>**DATE:** February 25, 2021<br>**TIME:** 1:30pm<br><br>Action filed: December 18, 2019<br>Trial date: not set |

Plaintiffs and Other Aggrieved Employees, (hereinafter "Plaintiffs"), hereby respectfully submit this Opposition to Defendant's Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint.

# TABLE OF CONTENTS

**Page**

**I INTRODUCTION .......... 4**

**II. FACTUAL AND PROCEDURAL BACKGROUND .......... 4**

**III. LEGAL STANDARD .......... 7**

**IV. ARGUMENT .......... 8**

**A. Prop 22 Did Not Repeal The ABC Test .......... 8**

**1. *Zipperer* Is Not Persuasive .......... 9**

**2. The Doctrine of Abatement Is Not Applicable .......... 10**

**B. Prop 22 Does Not Apply Retroactively .......... 11**

**C. Plaintiffs' FLSA Claims Are Properly Pled .......... 13**

**D. Plaintiffs Sufficiently Pled Their Claim for Untimely Wages .......... 15**

**E. Plaintiffs' Minimum Wage and Overtime Claims Are Sufficiently Pled .......... 16**

**F. Plaintiffs Sufficiently Pled A Claim Under Labor Code § 226 .......... 18**

**G. Plaintiffs' UCL Claim is Sufficiently Pled .......... 19**

**V. CONCLUSION .......... 19**

...

# TABLE OF AUTHORITIES

**CASES**

*Armour & Co. v. Wantock* (1944) 323 U.S. 126 .......... 16

*Ashcroft v. Iqbal*, (2009) 556 U.S. 662 .......... 7

*Bell Atl. Corp. v. Twombly*, (2007) 550 U.S. 54 .......... 7

*Donovan v. Sureway Cleaners*, (1981) 656 F.2d 1368 .......... 13

*Evangelatos v. Sup. Ct.* (1988) 44 Cal. 3d 1188 .......... 11

*Flores v. Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 171 .......... 8

*Garcia v. McCutchen*, (1997) 16 Cal. 4th 469 .......... 8

*Gomez v. Lincare, Inc.*, (2009) 173 Cal. App. 4th 508, .......... 16

*Governing Bd. of Rialto Unified Sch. Dist. v. Mann* (1977) 18 Cal. 3d 819 .......... 10

*In re White*, (1969) 1 Cal.3d 207 .......... 8

*King v. Rubenstein*, (2016) 825 F.3d 206 .......... 7

*Lee v. City of Los Angeles*, (9th Cir. 2001) 250 F.3d 668 .......... 7

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, (9th Cir. 2008) 519 F.3d 1025 .......... 7

*McClung v. Employment Development Dept.* (2004) 34 Cal. 4th 467 .......... 11

*Mendiola v. CPS Sec. Sols.*, Inc., (2015) 60 Cal. 4th 833 .......... 17

*Owens v. Local No. 169, Ass'n of Western Pulp & Paper Workers* (9th Cir. 1992) 971 F. 2d 347 .......... 16

*Patel v. Nike Retail Services*, Inc. (N.D.Cal.2014) 58 F.Supp.3d 1032 .......... 18

*Rankin v. Longs Drug Stores California, Inc.* (2009), 169 Cal. App. 4th 1246 .......... 12

*Razak v. Uber Techs., Inc.*, (2020) 951 F.3d 137 .......... 13

*Real v. Driscoll Strawberry Assocs., Inc.*, (1979) 603 F.2d 748 .......... 13

*Skidmore v. Swift & Co.* (1944) 323 U.S. 134 .......... 16

*Taylor v. Yee*, (9th Cir. 2015) 780 F.3d 928 .......... 7

*Zipperer v. County of Santa Clara*, (2005) 133 Cal. App. 4th 1013 .......... 9, 10

//

//

**STATUTES**

Bus. & Prof. Code § 7449(d)-(e) ..................................................................................................10

Bus. & Prof. Code §§ 7448-7467 ..................................................................................................7

California's Private Attorney General Act ("PAGA") ..................................................................4

Combat Methamphetamine Epidemic Act of 2005 ("CMA"). ....................................................12

IWC Wage Order No. 4-2001, sec. 2, subsec. (k) .......................................................................15

Labor Code § 226 .........................................................................................................................17

Labor Code § 2750.3 ................................................................................................................4, 8

Labor Code § 2775-2776 ...............................................................................................................8

Labor Code § 2777 ........................................................................................................................8

Solar Shade Control Act ................................................................................................................9

**RULES**

Federal Rule of Civil Procedure ("FRCP") (12)(b)(6) .................................................................7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs cannot blame Uber for seemingly strutting like a plumed peacock in wake of its victory through the passing of Proposition 22.  Its Motion to Dismiss (MTD) is saturated by it.  Still, Plaintiffs' Third Amended Complaint ("TAC") sufficiently alleges plausible non-conclusory allegations that UBER TECHNOLOGIES, INC., (hereinafter referred to as "UBER") committed specific Labor Code violations on and after March 1, 2019, based on the Dynamex decision, prior to its codification in to the Labor Code.  Nevertheless, UBER attacks the claims presently alleged in Plaintiffs' Third Amended Complaint as inadequate.

The particularity of the factual allegations in Plaintiffs' Third Amended Complaint satisfies the requirements of a notice pleading.  Accordingly, Plaintiffs respectfully request the Court to deny UBER's motion and allow Plaintiffs to proceed with discovery and present evidence in support of their claims.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed a class action complaint for wage and hour violations against Defendant UBER on December 18, 2019, alleging UBER misclassified Plaintiffs and similarly situated individuals as independent contractors rather than employees in violation of various federal and state wage and hour laws.  On January 6, 2020, Plaintiffs filed a First Amended Complaint ("FAC") to specifically add a claim under California's Private Attorney General Act ("PAGA") and violation of the newly codified ABC test under Labor Code § 2750.3.

On March 5, 2020, UBER moved to compel arbitration of the claims of 45 Plaintiffs who had entered into two distinct arbitration agreements with UBER.

(Dkt. 17.)  That same day, UBER filed a motion to dismiss Plaintiffs' FAC with respect to three remaining Plaintiffs, Mark Glinoga, Kevin Neely, and Alexis Gonzalez (collectively, the "MTD plaintiffs").  (Dkt. 36 at 3.)

On July 17, 2020, the Court granted UBER's motion to compel arbitration in part, ordering 45 Plaintiffs to arbitration.  (Dkt. 36 at 1.)  The Court also denied UBER's motion to compel arbitration in part, finding that "to the extent the MTC plaintiffs adequately allege a cognizable PAGA claim, such claim was not waived by either TSA's arbitration provision and thus remains properly before this court." (*Id.* at 10.)  Thus, the Court stayed all further litigation of the now-in-arbitration-Plaintiffs' PAGA claim in this Court pending completion of arbitration of Plaintiffs' arbitrable claims.  (*Id.* at 15.)

Moreover, on July 17, 2020, the Court granted UBER's motion to dismiss Plaintiffs' FAC with leave to amend the FAC to allege specific Labor Code Violations occurring post-February 28, 2019.  (Dkt. 36.)  In dismissing the FAC, the Court found that Plaintiffs' allegations were insufficient to state a claim under *Bell Atlantic Corp. v. Twombly*, (2007) 550 U.S. 554.  (Dkt. 36 at 19.)  The Court cited two reasons for this conclusion.  First, "none of the MTD plaintiffs allege[d] that they used the Uber App after February 28, 2019," prior to which all claims were released in the 2019 Class Action Settlement Release ("*O'Connor* Settlement Agreement").  (*Id.*)  Second, "plaintiffs' allegations that defendant failed to pay the requisite wages, overtime, and reimbursements, or to provide the plaintiffs with their final paychecks since February 28, 2019 are insufficient to push the alleged violation from the realm of 'possible' to the 'plausible.'"  (*Id.*)

The Court allowed "the MTD plaintiffs 28 days from the date of this order to file a second amended complaint correcting the deficiencies only in the claims dismissed without prejudice."  (*Id.* at 24.)  Plaintiffs filed a Second Amend Complaint ("SAC") on August 14, 2020, correcting the deficiencies identified in the Court's order.

Despite the stated deficiencies, the Court ruled that "to the extent the MTD plaintiffs can allege that they suffered post-February 28, 2019 Labor Code violations, the MTD plaintiffs' PAGA claims are not subject to dismissal for lack of standing." (*Id.* at 22.)  The Court further ruled that, "to the extent plaintiff premises such claims upon violations occurring after that date, such dismissal is WITHOUT PREJUDICE." (*Id.* at 24.)  Accordingly, the Court allowed Plaintiffs to file a second amended complaint "correcting the deficiencies only in the claims dismissed without prejudice." (*Id.*)

On August 14, 2020, Plaintiffs filed a SAC alleging plausible non-conclusory allegations that UBER committed specific Labor Code violations against Plaintiffs Mark Glinoga (hereinafter "GLINOGA"), Alexis Gonzalez (hereinafter "GONZALEZ"), and Kevin Neely ("hereinafter "NEELY") and Similarly Aggrieved Employees (hereinafter collectively referred to as "Plaintiffs") on and after March 1, 2019.  Plaintiffs' SAC designated the remaining 45 Plaintiffs as "Non-Representative Plaintiffs" who will "seek a remedy for their respective individual claims only and will pursue those claims through arbitration." (Dkt. 37 at 2.)

On August 28, 2020, UBER filed a Motion to Dismiss Plaintiffs' SAC with respect to the three Plaintiffs, GLINOGA, NEELY, and GONZALEZ, on the grounds that the SAC fails to state a plausible claim on which relief can be granted. (Dkt. 39 at 2.)  On December 7, 2020, the Court dismissed Plaintiffs' claims for failure to maintain required records and willful misclassification, as well as Plaintiffs' PAGA claim, without leave to amend. (Dkt. 43 at 19.)  Plaintiffs remaining claims for failure to pay minimum wage and overtime, failure to provide accurate wage statements, failure to pay timely wages, and unlawful business practices under § 17200 were dismissed with leave to amend. *Id.*  Plaintiffs filed a Third Amended Complaint (hereinafter referred to as "TAC") to correct the deficiencies *in conformity with the Court's order*.

On January 19, 2021, UBER filed the instant Motion to Dismiss Plaintiffs' TAC (hereinafter referred to as "Motion" or "MTD") on the grounds that the TAC fails to state a plausible claim on which relief can be granted. Again, UBER erroneously contends that Plaintiffs failed to state any cognizable claim in the TAC. The particularity of the factual allegations in the TAC satisfy the requirements of a notice pleading. Accordingly, Plaintiffs respectfully request the Court to deny UBER's Motion and allow Plaintiffs to proceed with discovery and present evidence in support of their claims.

## III.  LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") (12)(b)(6) tests the legal sufficiency of a party's claim for relief. (*See Lee v. City of Los Angeles*, (9th Cir. 2001) 250 F.3d 668, 688.) A Rule 12(b)(6) motion cannot be used to resolve factual disputes or the merits of a claim. (*King v. Rubenstein*, (2016) 825 F.3d 206, 214.) As such, a Rule 12(b)(6) motion can only be granted where no "cognizable legal theory" exists. (*See Taylor v. Yee*, (9th Cir. 2015) 780 F.3d 928, 935.)

FRCP 8 requires a plaintiff to plead only "enough facts to state a claim to relief that is plausible on its face." (*Bell Atl. Corp. v. Twombly*, (2007) 550 U.S. 544, 570.) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Ashcroft v. Iqbal*, (2009) 556 U.S. 662, 678.) Probability is not required. *See id.* For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] the factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." (*Manzarek v. St. Paul Fire & Marine Ins. Co.*, (9th Cir. 2008) 519 F.3d 1025, 1031.)

Here, Plaintiffs have alleged enough facts to entitle them to relief. The particularity of the factual allegations in the TAC is sufficient to constitute a notice

pleading. Accordingly, Plaintiffs respectfully ask the Court deny Defendant UBER's motion to dismiss.

## IV. ARGUMENT

### A. Prop 22 Did Not Repeal The ABC Test

Uber has declared the ABC Test is repealed or abolished. (MTD at p. 10, ln. 11.) Effective December 16, 2020, Proposition 22 ("Prop 22") was codified in Business and Professions Code §§ 7448-7467, where the word "repeal" is conspicuously absent. The Voter Guide for Prop 22 also has no mention of abolishing or repealing the ABC Test. (See https: //voterguide.sos.ca.gov/propositions/22/ (last accessed Feb. 1, 2021).) Yet Uber triumphantly declares "the ABC Test was repealed in November 2020 by Prop 22" before launching into a thorough, red-herring analysis of the "doctrine of abatement" presuming its declaration to be true. (MTD at p. 7, ln. 19 – p. 10, ln. 13.)

*Dynamex's* ABC Test is currently codified in Labor Code § 2775-2776 (replacing Labor Code § 2750.3 in September 2020) where the legislature specifically exempted bona fide business-to-business contracting relationship from same and instead applies he older *Borello* standard. (*Ibid*.) Effective September 4, 2020, Labor Code § 2777 specifically excluded the relationship from a referral agency and a service provider from the ABC Test and Labor Code § 2778 specifically identified certain "professional services" as exempt from the ABC Test, which did not include app-based drivers or ride-share drivers in the gig economy. (*Ibid*.) The ABC Test is alive and well as the Legislature expressly identified sectors of the workforce where it would not apply starting September 4, 2020. (See Labor Code §§ 2777-2778.)

Uber ostensibly argues that Prop 22 repealed the ABC Test by implication. However "all presumptions are against a repeal by implication." (*Garcia v. McCutchen*, (1997) 16 Cal. 4th 469, 476–77 (citing *Flores v. Workmen's Comp.*

*Appeals Bd.* (1974) 11 Cal.3d 171, 176.) "Absent an express declaration of legislative intent, courts will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes, and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.' " (*Garcia*, *supra*, at 477, (citing *In re White* (1969) 1 Cal.3d 207, 212).) Uber did not and could not explain that the AB5 Test was repealed because it exists in the Labor Code today in sections 2775-2776. Uber also does not argue how or why there is no rational basis to harmonize Labor Code § 2775 and Business and Professions Code § 7451-7463. They do co-exist as of December 16, 2020, where thereafter the terms and conditions of app-based drivers for Uber were determined by former going forward.

### 1. *Zipperer* Is Not Persuasive

Uber's reliance on *Zipperer v. County of Santa Clara* (2005) 133 Cal. App. 4th 1013 is misplaced. *Zipperer* involved the alleged violation by the County of Santa Clara of the Solar Shade Control Act ("Act") which protects owners of solar collectors from shade caused by growing trees. (*Ibid*. at 1021.) This Act allowed for public entities to exempt themselves, which the County of Santa Clara did in 2002; two years before plaintiffs filed suit. (*Id*. at 1021-1022, fn 4.) The plaintiffs argued the exemption should not apply because the trees causing the harm started growing prior to 2002 and continued through filing of their suit for violation of the Act. (*Id.* at 1022). The *Zipperer* court found the exemption did properly apply after considering four factors: the statutory nature of the plaintiffs' claim; the unvested nature of plaintiffs' claimed rights; the timing of the elimination of those rights; and the nature of the mechanism by which the right of action was eliminated. (*Id*. at 1023.) As to the first factor, plaintiff's right against the County could only existed through the Act. (*Id.* at 1024.) As to the second, whatever rights existed prior 2002 ordinance exempting the County were never enforced by the plaintiffs. (*Id*.) As to the third, any statutory rights under the Act were eliminated

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT
9

in 2002, two years prior to plaintiffs suit. (*Id.*) As to the fourth, the court found the exemption provision within the Act itself was a valid mechanism for extinguishing a statutory claim under the same Act, and by operation plaintiffs rights were repealed. (*Id*. at 1026.) With all four factors weighing against the plaintiffs in *Zipperer*, that Court ruled the County was exempt from the Act from which the suit was based and dismissed their claim.

None of the *Zipperer* factors can be reasonably applied against the Plaintiffs here. First, the present action is not purely statutory because Plaintiffs' rely on *Dynamex* for Uber's violation of the ABC Test from March 1, 2019 up until September 2019, when it was codified and signed into law through AB5. Second, Plaintiffs moved to enforce their rights through violation of the ABC Test over a year before the enactment of Prop 22. Third, unlike the dilatory plaintiffs in *Zipperer*, Plaintiffs here commenced this action well before the enactment of Prop 22, even before the enactment of AB5. Finally, unlike the Act in *Zipperer* which allowed exemptions from its inception, neither *Dynamex* nor Labor Code § 2750.3/2775 allowed Uber to exempt itself. In fact, Prop 22's purpose is to extract and distance itself from the ABC Test by way of a new statutory scheme outside the Labor Code. (See Bus. & Prof. Code § 7449(d)-(e).)

Prop 22 neither expressly repealed the ABC Test, nor does so by implication, as set forth more fully above. Based on the foregoing, the ABC Test was not repealed as evidence by its current existence in the Labor Code.

### 2. The Doctrine of Abatement Is Not Applicable

Uber argues the doctrine of abatement results in Plaintiffs' (really any driver's) employment rights extinguished even before December 16, 2020, when Prop 22 to effect. However, such a statement requires this Court to agree that both *Dynamex* and Labor Code § 2750.3/2777 are subject to such a doctrine, and they are not. Uber correctly cites the law, but incorrectly applies it. Abatement can lie where rights are purely statutory. (*Governing Bd. of Rialto Unified Sch. Dist. v.*

*Mann* (1977) 18 Cal. 3d 819, 829.) But Plaintiffs claims derive from the judicial decision in *Dynamex* setting forth the ABC Test as the proverbial law of the land. (See TAC at ¶¶ 19-20.) There is no serious argument, although Uber is implying as such, that Prop 22 repealed *Dynamex*. Such a result would be an unconstitutional overstep of the legislative process on to the exclusive purview of the judiciary.[1]

Regardless, because Plaintiffs claims derive from Dynamex, not purely a statutory basis, the doctrine of abatement does not apply.

### B.  Prop 22 Does Not Apply Retroactively

Since the ABC Test was not repealed, perhaps what Uber is really arguing (without expressly doing so) is that Prop 22 applies to all app-based drivers retroactively. Analogous to the present action, the California Supreme Court declined to give a ballot initiative retroactivity because it was silent on the point. (*Evangelatos v. Sup. Ct.* (1988) 44 Cal. 3d 1188, 1193-1194.) The Supreme Court reasoned:

> It is a widely recognized legal principle . . . that in the absence of a clear legislative intent to the contrary statutory enactments apply prospectively. The drafters of the initiative measure in question, although presumably aware of this familiar legal precept, did not include any language in the initiative indicating that the measure was to apply retroactively to causes of action that had already accrued and there is nothing to suggest that the electorate considered the issue of retroactivity at all . . . [T]he overwhelming majority of prior judicial decisions—both in California and throughout the country— the statute applies prospectively. Reflecting the commonsense notion that it may be unfair to change "the rules of the game" in the middle of a contest, these authorities persuasively demonstrate that the general legal

---

[1] The California Supreme Court has been asked to declare Prop 22 as unconstitutional in *Castellanos v. State of California*, Case Number S266551, with a Petition for Writ of Mandate filed on January 12, 2021.

> presumption of prospectivity applies with full force to a measure, like the initiative at issue here, which substantially modifies a legal doctrine on which many persons may have reasonably relied in conducting their legal affairs prior to the new enactment.

When faced with an amendment to the Fair Employment & Housing Act, the California, the Supreme Court cited *Evangelatos* in that statutes operate prospective only. (*McClung v. Employment Development Dept.* (2004) 34 Cal. 4th 467, 475.)  The Court noted that a "statute may be applied retroactively only if it contains express language of retroactivity or if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application." (*Id.*)  Ultimately, since there was no express statement of retroactivity, the Court found that there was no intent for such application.  (*Id.*)

Uber briefly discuss retroactivity in the context of abatement's applicability. However, the *Rankin* case it cites is inapposite because that plaintiff filed suit for prohibited inquiries of drug-related arrests regardless of convictions under Labor Code § 432.7, where such questions was subsequently permitted under the Combat Methamphetamine Epidemic Act of 2005, ("CMA").  (*Rankin v. Longs Drug Stores California, Inc.* (2009), 169 Cal. App. 4th 1246.)  Prop 22 does not undo the ABC Test, as discussed above.  All it did was create a unique category of worker (not quite employee, nor quite independent contractor) when said workers fit within the definitions of Business & Professions Code § 7463.  Moreover, unlike Rankin's Labor Code § 432.7, Plaintiffs' claim derive from Dynamex from March 1, 2019 till September 2019 when AB5 codified Dynamex.  As alluded to above, Prop 22 is Frankenstein's monster the passage of AB5 never intended. Without AB5, Prop 22 would not been conceived to carve out app-based drivers, as reasonably inferred by the ballot initiative's Declarations found in Business & Professions Code § 7449.  Because the ABC Test comes from *Dynamex* which is

beyond AB5, it is not subject to abatement by Prop 22, nor can the latter retroactively apply to undo *Dynamex's* holding.

Based on the foregoing, Prop 22 cannot be applied retroactively to extinguish plaintiff rights under Dynamex or the applicability of the ABC Test before the enactment of Prop 22.

### C. Plaintiffs' FLSA Claims Are Properly Pled

First, Uber erroneously declares that Plaintiff's claims are based "only under the now – defunct ABC Test. (MTD at p. 11, ln. 21.) As explained above, the ABC Test is not "defunct," and neither are Plaintiffs attempting to shoehorn California's ABC Test to a FLSA analysis. Instead, as a plain and fair reading of the TAC indicates, Plaintiffs allege they are owed minimum wage and overtime under the FLSA because the standby/on-call waiting time required of them to work as ride-share drivers was not compensated by Uber. (TAC at ¶¶ 122-134).

Plaintiffs agree that the economic realities test applies to their FLSA claims, and further argue the TACs allegations are more than enough to satisfy same: the degree to which the employer has the right to control the manner in which work is performed; the degree to which the worker's opportunity for profit or loss depends upon the worker's managerial skill; the worker's investment in equipment or materials required for performance of tasks, or the worker's hiring of helpers; whether the service rendered requires a special skill; the degree of permanence of the working relationship; and whether the service rendered is an integral part of the employer's business.[2] (*Donovan v. Sureway Cleaners*, (1981) 656 F.2d 1368, 1370; *Real v. Driscoll Strawberry Assocs., Inc.*, (1979) 603 F.2d 748, 754.)

In March 2020, the Third Circuit Court of Appeal reversed a district court's

---

[2] Effective March 1, 2021, the Department of Labor will implement new guidance about the economic reality test, identifying that two factors are more probative: The nature and degree of control over the work and the worker's opportunity for profit or loss based on initiative and/or investment. (https://www.dol.gov/agencies/whd/flsa/2021-independent-contractor)

ruling that Uber drivers were not employees under the FLSA's economic realities test. (*Razak v. Uber Techs., Inc.*, (2020) 951 F.3d 137.)  The Court found that triable issues of fact did exist as to the factor of the "right to control the manner to work" recognizing Uber determines how drivers are paid, determines where to drop off customers, determines continued work if drivers fall short of a certain rating. (*Razak* at 146.)  The Third Circuit also found a triable issue of fact as to the "opportunity for profit or loss" factor because "Uber decides (1) the fare; (2) which driver receives a trip request; (3) whether to refund or cancel a passenger's fare; and (4) a driver's territory, which is subject to change without notice." (*Id.* at 147.)

Plaintiffs respectfully ask this Court to recognize there is precedent in a sister Circuit in *Razak* supporting their position the TAC plausibly satisfies the "right to control work" factor of the  economic reality test under the FLSA:  UBER requires minimum vehicle requirements for vehicles; UBER requires minimum cosmetic guidelines for vehicles; UBER determines minimum experience to be a driver in that they all must "meet the minimum age to drive in [their] city; [and] [h]ave at least one year of licensed driving experience in the US (3 years if you are under 23 years old);" UBER requires successfully passing a background check; UBER will not allow a driver to work as its ride-share driver if the background check reveals either of the following: (1) any major moving violations within the last seven years; (2) more than three minor moving violations in the last three years; or (3) a criminal conviction within the last seven years for a felony, violent crime, or sexual offense; UBER requires a vehicle to have a certain level of cleanliness; UBER limits on how long a ride-share driver can drive as an UBER driver before UBER will have the application go "offline" for a driver; UBER requires its drivers to provide a 5-star experience by maintaining high standards of quality that can be taught by UBER approved services.  (TAC at ¶ 25-32.)

Also very similar to the *Razak* plaintiffs, here the TAC plausibly satisfies

the "opportunity for loss or profit" factor of the FLSA's economic reality test because Plaintiffs do not control the price charged to riders, which is predetermined by UBER without Plaintiff's input. (TAC at ¶ 122.)

What more facts are needed to establish a plausible claim that drivers are in fact employees through the FLSA's economic realities test for purposes of establishing a wage and hour claim under federal law?

### D.  Plaintiffs Sufficiently Pled Their Claim for Untimely Wages

The Plaintiffs satisfied the Court's request to allege when the Plaintiffs stopped working for Uber by affirmatively stating they stopped working in March 2020. Violation of Labor Code § 204 is obviously predicated on a finding that the Plaintiffs were employees under California and/or federal law which Plaintiffs argue the facts alleged in the TAC satisfy both the ABC Test and the FLSA's economic realities test. Uber's further attack on this front that "Uber allows drivers to work on their schedule" misses the point. (TAC at ¶ 12, lns. 20-21.) Despite quoting a driver's statements from a local paper, the "benefit of flexibility" does not abrogate whether the employee/employer relationship begins or ends under the law. If an employee says they stopped working, it means they stopped working. If this court requires this sentence to include an affirmation that the Plaintiffs no longer worked for Uber, then Plaintiff asks an opportunity to add that sentence if that will prevent dismissal of their complaint.

Moreover, Plaintiffs alleged that they demanded payment and that Uber still refused to provide that payment. (TAC at ¶ 82). Uber is not arguing that failure to pay after a demand for payment was an accident. Uber just does not address this factual allegation.

Based thereon, Plaintiffs respectfully request the Court find that sufficient facts have been pled to plausibly establish a claim for untimely payment of wages.

//

//

### E.  Plaintiffs' Minimum Wage and Overtime Claims Are Sufficiently Pled

As Paragraph 119 of the TAC fully states:

> California's Wage Order No. 4 of the Industrial Welfare Commission defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." (IWC Wage Order No. 4-2001, sec. 2, subsec. (k).) Under California law, on-call waiting time is compensable if it is spent primarily for the benefit of the employer and its business. (*Gomez v. Lincare, Inc.* (2009) 173 Cal. App. 4th 508, 522  (adopting test set forth in *Owens v. Local No. 169, Ass'n of Western Pulp & Paper Workers* (9th Cir. 1992) 971 F. 2d 347); *Armour & Co. v. Wantock* (1944) 323 U.S. 126, 132; *Skidmore v. Swift & Co.* (1944) 323 U.S. 134.) "Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." (*Armour* at 133.). The relevant factual inquiry is whether an employee is "engaged to wait" or waiting to be engaged. (*Skidmore* at 133.)

Plaintiffs minimum wage and overtime claims are predicated on not being compensated for the substantial amount of standby/on-call time specifically delineated by Wage Order 4. (TAC at ¶¶ 120-134, 146-160). All three Plaintiffs identify time they spent waiting for a ride request with the driver-app on and time spent picking up then dropping of a rider. (*Id.*)  All three drivers allege they worked a forty hour work week, and worked hours in excess of same. (*Id.*)

Uber's dispute as to the applicability of *Gomez v. Lincare* is yet another red-herring.  *Gomez* re-examined the trial court's finding that the plaintiffs were exempt from overtime under Wage Order No. 4.  (*Gomez v. Lincare, Inc.*, (2009) 173 Cal. App. 4th 508, 517.)  Ergo, *Gomez's* subsequent analysis was through the lens of Wage Order No. 4.

Uber's pejorative statement that the relevant California authority "is not

difficult to find" does not go unnoticed. Uber inappropriately relies on *Frlekin v. Apple Inc.*, where plaintiffs were not paid for the time subjected to search before and after clocking out. (Ibid., 8 Cal. 5th 1038, 1044, 457.) Plaintiffs here were not doing anything other than waiting to be called to work, while the *Frlekin* plaintiffs had to use their time for a search that only benefited Apple's security policies. Uber's reliance on *Hernandez v. Pac Bell* is erroneous in light of the specific allegations in this matter. *Hernandez* weighed whether work during a commute home was compensable. (*Ibid*. 29 Cal.App.5th 131.) Plaintiffs are not alleging their claims for unpaid wages and minim wages is for work done during the commute to work. (TAC at ¶ ¶ 120-134, 146-160.) *Troester v. Starbucks Corp.*, is also inapplicable because those employees sought compensation for "off the clock" work. (*Ibid.*, at 5 Cal.5th 829.) Plaintiffs here are not claiming they were somehow providing rides for customers prior to having the app alert them of one.

Perhaps the most germane case is *Mendiola v. CPS Sec. Sols.*, Inc., (2015) 60 Cal. 4th 833, where security guards were required to "reside" in their trailers as a condition of employment and spend on-call hours in their trailers or elsewhere at the worksite. They were obliged to respond immediately if called upon. (*Ibid.* at 841.) Citing *Gomez*, the Supreme Court in *Mendiola* found the guards on-call time to be compensable, even where the guards were allowed to engage in some personal activities. (*Mendiola* at 849.) "The fact that guards could engage in limited personal activities does not lessen the extent of [employer's] control. It is the extent of employer control here that renders on-call time compensable hours worked under Wage Order 4." (*Mendiola* at 842.)

Plaintiffs here and the *Mendiola* Plaintiffs are very similar. Plaintiffs have to respond immediately and are required to have the app on to wait for a ride as a condition of ever getting a ride from which to earn income. Like the *Mendiola* plaintiffs, that Plaintiffs here can engage in some personal activities does not

lessen the extent of Uber's control.  Plaintiffs here specifically assert the nature of how they can ever get notice of a rider is exclusively controlled and dictated by Uber because of the exclusively nature of their app.  (TAC at ¶¶ 120-124.)

### F. Plaintiffs Sufficiently Pled A Claim Under Labor Code § 226

Uber first attached the Labor Code § 226 claim by asserting it is inconsistent.  (MTD at ¶ 18, lns 6-20.)  Plaintiffs have always contended that they did not get a complete wage statement in violation of Labor Code § 226.  This Court found that prior allegations did no sufficiently plead facts to establish Uber's conduct was willful, which led to the current iteration of the claim which added the following paragraph 113:

> Ubers failure to provide wage statements consistent with Labor Code § 226's requirements was willful and intentional after it became on notice in April 2018 when the ABC test first was establish through Dynamex.  At the very least, Uber was on notice that Plaintiffs and Class Members were employees under Labor Code § 2750.3 (a.k.a., "AB5") in September 2019 through the enactment of Prop 22.  After an employer has learned its conduct violates the Labor Code, the employer is on notice that any future violations will be punished just the same as violations that are willful or intentional, i.e., they will be punished at twice the rate of penalties that could have been imposed or that were imposed for the initial violation.  (*Patel v. Nike Retail Services*, *Inc.* (N.D.Cal.2014) 58 F.Supp.3d 1032.) (TAC at ¶ 113.)

Uber does not address this paragraph or its contentions.  This paragraph asserts that Uber's failure to provide wage statements consistent with Labor Code § 226 after it was on notice of the ABC Test in *Dynamex*, and its codification in September 2019, that it knew its drivers were employees under the ABC Test and failing to treat them as such thereafter was willful and intentional.  Based thereon, the TAC sufficiently pleads a claim for violation of Labor Code § 226.

//

### G. Plaintiffs' UCL Claim is Sufficiently Pled

Plaintiff agrees with Uber that their claim under Business and Professions Code § 17200 ("UCL") rises or falls with the violations of FLSA and Labor Code claims upon which it is founded. As discussed above, Plaintiffs assert that the TAC sufficiently pleads each claim asserted therein, and therefore asserts the UCL claim is also sufficiently pled.

## V. CONCLUSION

Based on the forgoing, Plaintiffs TAC sufficiently demonstrated their entitlement to relief for all their claims. The particularity of the factual allegations in the TAC satisfy the requirements of a notice pleading. For the foregoing reasons, Plaintiffs respectfully ask the Court deny Uber's Motion in its entirety. In the alternative, Plaintiffs respectfully seek leave to amend if the Court sustains any part of the Motion.

Dated: February 2, 2021        WEST COAST TRIAL LAWYERS, APLC

By: _____
Ronald L. Zambrano, Esq.
Melineh Kasbarian. Esq.
Attorney for Plaintiffs and Class Members,
NICHOLAS JERICHO, et al.