THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
HEATHER L. RICHARDSON, SBN 246517
  hrichardson@gibsondunn.com
BRANDON J. STOKER, SBN 277325
  bstoker@gibsondunn.com
SAMUEL ECKMAN, SBN 308923
  seckman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERICHO NICOLAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC,<br><br>Defendant. | CASE NO. 4:19-cv-08228-PJH<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>Hearing Date:  February 25, 2021<br>Hearing Time:  1:30 p.m.<br>Hearing Place:  Courtroom 3<br>Judge:  Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................. 2

    A.    Plaintiffs Do Not Allege That They Are Misclassified Under California Or Federal Law ............................................................................................... 2

        1.    Plaintiffs Do Not Allege That They Are Employees Under Current California Law, And To The Extent Their Claims Rely On The ABC Test, They Are Abated. ......................................................................... 2

        2.    Plaintiffs Do Not Allege They Are Employees Under The Federal Economic Realities Test ......................................................................... 6

    B.    The Third Amended Complaint Should Be Dismissed Because Plaintiffs Do Not Plausibly Allege Violations Of The California Labor Code, FLSA, Or UCL. ............................................................................................................. 10

        1.    Plaintiffs Fail To Sufficiently Plead That Uber Did Not Timely Pay Wages (Count I). ........................................................................ 10

        2.    Plaintiffs Fail To Allege Facts To Support Their Minimum Wage And Overtime Claims (Counts II, IV, and V). ....................................... 11

        3.    Plaintiffs' Contradictory And Inconsistent Allegations Fail To State A Claim For Failure To Provide Accurate Wage Statements (Count III). ......... 14

        4.    Plaintiffs Fail To Allege A Viable Predicate Violation To Support Their UCL Claim (Count VI). ......................................................... 15

III. CONCLUSION ......................................................................................................... 15

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014)................................................................................14

*Arroyo v. Int'l Paper Co.*,
2020 WL 887771 (N.D. Cal. Feb. 24, 2020) ........................................................14

*Brinker Rest. Corp. v. Superior Court*,
53 Cal. 4th 1004 (2012) ..........................................................................................3

*Chao v. Mid-Atl. Installation Servs., Inc.*,
16 F. App'x 104 (4th Cir. 2001) ..............................................................................8

*Fitzpatrick v. Tyson Foods, Inc.*,
2016 WL 5395955 (E.D. Cal. Sept. 27, 2016) ........................................................5

*Franze v. Bimbo Bakeries USA, Inc.*,
826 F. App'x 74 (2d Cir. 2020) ...............................................................................9

*Frlekin v. Apple Inc.*,
8 Cal. 5th 1038 (2020) ...........................................................................................12

*Gomez v. Lincare, Inc.*,
173 Cal. App. 4th 508 (2009) ................................................................................12

*Governing Bd. of Rialto Unified Sch. Dist. v. Mann*,
18 Cal. 3d 819 (1977) ..........................................................................................1, 2

*Graczyk v. Workers' Compensation Appeal Bd.*,
184 Cal. App. 3d 997 (1986)....................................................................................4

*Hass v. Citizens of Humanity, LLC*,
2016 WL 7097870 (S.D. Cal. Dec. 6, 2016)............................................................3

*Herman v. Express Sixty-Minutes Delivery Servs., Inc.*,
161 F.3d 299 (5th Cir. 1998)....................................................................................9

*Iontchev v. AAA Cab Serv., Inc.*,
685 F. App'x 548 (9th Cir. 2017) .............................................................................8

*James v. Uber Techs., Inc.*,
2021 WL 254303 (N.D. Cal. Jan. 26, 2021) ...........................................................6

*Local 1605 Amalgamated Transit Union, AFL-CIO v. Cent. Costa Cnty. Transit Auth.*,
73 F. Supp. 2d 1117 (N.D. Cal. 1999) ...................................................................12

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*In re Marriage of Cutler*,
 79 Cal. App. 4th 460 (2000) ............................................................................6

*McClung v. Employment Dev. Dept.*,
 34 Cal. 4th 467 (2004) ....................................................................................3

*Mendiola v. CPS Security Solutions, Inc.*,
 60 Cal. 4th 833 (2015) ..............................................................................12, 13

*Moreau v. Air France*,
 356 F.3d 942 (9th Cir. 2004) ..........................................................................8

*Parrish v. Premier Directional Drilling, L.P.*,
 917 F.3d 369 (5th Cir. 2019) ..........................................................................8

*Partners, LLC v. Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009) ..........................................................................2

*Perez v. DNC Parks & Resorts at Asilomar, Inc.*,
 2019 WL 5618169 (E.D. Cal. Oct. 31, 2019) ...............................................10

*Porch v. MasterFoods, USA, Inc.*,
 685 F. Supp. 2d 1058 (C.D. Cal. 2008) ........................................................11

*Price v. Starbucks Corp.*,
 192 Cal. App. 4th 1136 (2011) ......................................................................14

*Razak v. Uber Techs., Inc.*,
 951 F.3d 137 (3d Cir. 2020)............................................................................9

*Rivers v. Roadwa Express, Inc.*,
 511 U.S. 298 (1994)........................................................................................3

*Rossetti v. Stearn's Prods., Inc.*,
 2016 WL 3277295 (C.D. Cal. June 6, 2016) ..................................................5

*S. Serv. Co. v. Los Angeles County*,
 15 Cal. 2d 1 (1940) ......................................................................................2, 5

*Sec'y of Labor v. Lauritzen*,
 835 F.2d 1529 (7th Cir. 1987)........................................................................7

*Soratorio v. Tesoro Refining & Marketing Co.*,
 2017 WL 8220415 (C.D. Cal. Sept. 11, 2017)..............................................11

*Troester v. Starbucks Corp.*,
 5 Cal. 5th 829 (2018) ....................................................................................12

1

**TABLE OF AUTHORITIES**
(*continued*)

2

Page(s)

3   *United States v. Novak*,
    476 F.3d 1041 (9th Cir. 2017) (en banc) ..................................................................6

4

5   *Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
    --- Cal. 5th ---, No. S258191, 2021 WL 127201 (Cal. Jan. 14, 2021) ...........................3

6

7   *Younger v. Superior Court*,
    21 Cal. 3d 102 (1978) ..................................................................................3

8   *Zipperer v. County of Santa Clara*,
    133 Cal. App. 4th 1013 (2005) ...................................................................3, 4, 5

9

**Statutes**

10

11  Cal. Bus. & Prof. Code § 7451 .......................................................................5, 6

12  Cal. Labor Code § 201(a) ...............................................................................10

13  Cal. Labor Code § 202(a) ...............................................................................10

14  **Other Authorities**

15  Cal. Sec'y of State, *Proposition 22—Analysis by the Legislative Analyst*,
    https://voterguide.sos.ca.gov/propositions/22/analysis.htm.............................................5

16

17  *California Drivers: Set Your Own Fares When You Drive With Uber*, Uber Blog
    (June 25, 2020), tinyurl.com/a7s004ks ................................................................8

18  **Rules**

19  Fed. R. Civ. P. 8(a)(2) ...................................................................................12

20  **Regulations**

21  29 C.F.R. § 795.105(d)(1)(i) ...........................................................................7

22  29 C.F.R. § 795.115(b)(1) ...............................................................................7

23  Cal. Code Regs., tit. 8, § 13520 .......................................................................11

24

25

26

27

28

1

## I.  INTRODUCTION

2

Plaintiffs' Third Amended Complaint ("TAC") alleges that Defendant Uber Technologies, Inc.

3 misclassified them and similarly situated transportation providers as independent contractors rather

4 than employees and, consequently, violated various California and federal wage-and-hour laws.  These

5 are nearly the exact same claims that Plaintiffs unsuccessfully asserted in their First Amended

6 Complaint ("FAC") and Second Amended Complaint ("SAC")—with the exception of several claims

7 that this Court has already dismissed with prejudice.

8

Now on their fourth try, Plaintiffs are no closer to adequately pleading a viable cause of action.

9 Each of Plaintiffs' claims turns on the assumption that they are employees, yet the TAC asserts that

10 Plaintiffs are employees only under the ABC test, which *no longer applies* to rideshare drivers under

11 California law in light of Proposition 22, and which has *never* applied to federal wage-and-hour claims.

12 Plaintiffs contend that Proposition 22 does not affect their claims that arose before its effective date,

13 but the doctrine of abatement holds that "'a repeal of such a statute without a saving clause will

14 terminate all pending actions based thereon.'"  *Governing Bd. of Rialto Unified Sch. Dist. v. Mann*, 18

15 Cal. 3d 819, 829 (1977).  And while Plaintiffs attempt to salvage their federal claims by belatedly

16 invoking the Federal Labor Standards Act's ("FLSA") economic realities test—a test they have never

17 so much as mentioned in any of their four complaints—they only even attempt to show that they satisfy

18 two of the six factors considered under that test.

19

Even apart from this threshold deficiency, Plaintiffs' wage-and-hour claims fail on the merits.

20 With respect to their claim for failure to timely pay wages, Plaintiffs still have not alleged whether they

21 were discharged or quit—a necessary element of such a claim.  With respect to their claims for failure

22 to pay minimum wages (asserted under California and federal law) and overtime (asserted only under

23 federal law), Plaintiffs fail to allege facts from which the Court can plausibly infer that their "on call"

24 time waiting for a ride request is compensable.  With respect to Plaintiffs' claim for failure to provide

25 itemized wage statements, the TAC's allegation that Plaintiffs never received any wage statements *at

26 all* impermissibly contradicts their earlier allegations that they merely received *incomplete* wage

27 statements.  And finally, Plaintiffs' claim under the California Unfair Competition Law ("UCL") fails

28 because each of the predicate claims on which it is based fails.

Gibson, Dunn &
Crutcher LLP

This Court has twice warned Plaintiffs that the consequence of failing to correct the errors in their pleadings will be dismissal with prejudice.  *See* Dkt. 43 at 19 ("If plaintiffs fail to either correct the various factual deficiencies in th[eir] [SAC] or follow the steps outlined above with respect to their minimum wage or overtime claims, the court will dismiss the subject claims with prejudice."); Dkt. 36 at 24 ("Failure to remedy the factual defects in the MTD plaintiffs' [FAC]—including, without limitation, those identified above—will result in their dismissal with prejudice.").  Having failed once again to do so, the Court should now dismiss this action with prejudice.  *See Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'").

## II.  ARGUMENT

### A.  Plaintiffs Do Not Allege That They Are Misclassified Under California Or Federal Law.

Plaintiffs do not dispute that each of their wage-and-hour claims turns on the premise that they were employees, and not independent contractors, under governing law.  But in attempting to satisfy this threshold issue, Plaintiffs allege that they were employees *only* under the ABC test.  This is inadequate to state a claim because the ABC test does not apply in this case:  Claims based on that test are no longer viable in California as a result of Proposition 22, and the ABC test has never applied to federal wage-and-hour law.  As a result, the Court should dismiss the TAC on this ground alone.

### 1.  Plaintiffs Do Not Allege That They Are Employees Under Current California Law, And To The Extent Their Claims Rely On The ABC Test, They Are Abated.

Under the doctrine of abatement, "when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, 'a repeal of such a statute without a saving clause will terminate all pending actions based thereon.'"  *Mann*, 18 Cal. 3d at 829 (quoting *S. Serv. Co. v. Los Angeles County*, 15 Cal. 2d 1, 11–12 (1940)).  Courts consider four factors in determining whether an action predicated on old law must be abated: (1) "the statutory nature of the plaintiffs' claim"; (2) "the unvested nature of the plaintiffs' claimed rights"; (3) "the timing of the elimination of those rights";

and (4) "the nature of the mechanisms by which the right of action was eliminated." *Zipperer v. County of Santa Clara*, 133 Cal. App. 4th 1013, 1023 (2005).[1]  Each of these factors supports abatement.

*First*, Plaintiffs' claims are "wholly dependent on statute."  *Younger v. Superior Court*, 21 Cal. 3d 102, 109 (1978).  Plaintiffs disagree, insisting that "the present action is not purely statutory because Plaintiffs[] rely on *Dynamex* for Uber's violation of the ABC test from March 1, 201[8] up until September 2019."  Opp. at 10; *see also id.* at 11 ("Abatement can lie where rights are purely statutory.  But Plaintiffs['] claims derive from the judicial decision in *Dynamex* setting forth the ABC Test as the proverbial law of the land.").[2]  But as the California Supreme Court confirmed last month, "[t]he *Dynamex* decision constitutes an authoritative judicial interpretation of language—suffer or permit to work—that has long been included *in California's wage order* to define the scope of the employment relationships governed by the wage orders."  *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, --- Cal. 5th ---, No. S258191, 2021 WL 127201, at *3 (Cal. Jan. 14, 2021) (emphasis added).  It is well established that "[t]he IWC's wage orders are to be accorded the same dignity as statutes."  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1027 (2012).  In fact, the California Supreme Court has itself described *Dynamex* as a "judicial construction of a statute."  *Vazquez*, 2021 WL 127201, at *3 (citation omitted).  And the fact that the ABC test was first expressly articulated in a judicial decision, rather than in the text of the wage orders themselves, is immaterial because "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."  *McClung v. Employment Dev. Dept.*, 34 Cal. 4th 467, 474 (2004) (quoting *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994)).

*Second*, Plaintiffs have no vested right to benefits under the ABC test.  *See Zipperer*, 133 Cal. App. 4th at 1024 ("Until it is fully enforced, a statutory remedy is merely an 'inchoate, incomplete,

---

[1] Plaintiffs discuss *Zipperer* and the doctrine of abatement separately.  *Compare* Opp. at 9–10, *with id.* at 10–11.  But *Zipperer* is simply an application of the doctrine of abatement, not a distinct ground for rejecting Plaintiffs' claims.  *See Hass v. Citizens of Humanity, LLC*, 2016 WL 7097870, at *3 (S.D. Cal. Dec. 6, 2016) ("California recognizes the well settled rule that an action wholly dependent on statute abates if the statute is repealed without a saving clause before the judgment is final.  'The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time.'") (quoting *Zipperer*, 133 Cal. App. 4th at 1023).

[2] Plaintiffs do not appear to dispute that any claims after AB5's effective date *are* wholly statutory.

and unperfected right,' which is subject to legislative abolition.") (citation omitted).  In response, Plaintiffs assert that, unlike the plaintiffs in *Zipperer*, they "moved to enforce their rights through violation of the ABC test over a year before the enactment of Prop 22."  Opp. at 10.  This is true, but it is irrelevant to whether those rights have *vested*.  Indeed, *Zipperer* expressly rejected the contention that simply filing an action is sufficient to avoid the doctrine of abatement:  "Repeal of a remedial statute destroys a *pending* statutory action *unless* 'vested or contractual rights have arisen under' the statute.  In this case, no such rights have arisen."  *Zipperer*, 133 Cal. App. 4th at 1024 (emphases added).  Nor did any vested right arise in *Graczyk v. Workers' Compensation Appeal Board*, 184 Cal. App. 3d 997 (1986), where the Legislature amended a statute affecting student athletes' employee status during the pendency of the plaintiff's action for workers' compensation.  *Id.* at 1001–02.  As the court explained, the plaintiff's "inchoate right to benefits under the workers' compensation law is wholly statutory and had not been reduced to final judgment before the Legislature's 1981 addition of subdivision (k) further clarifying the employee status of athletes," such that he "did not have a vested right" in his claims.  *Id.* at 1006.

Third, Plaintiffs have not obtained a final judgment in this litigation.  *See Zipperer*, 133 Cal. App. 4th at 1024 ("Whenever the Legislature eliminates a statutory remedy 'before a judgment becomes final,' the legislative act 'destroys the right of action.'").  Again, Plaintiffs' only response is to distinguish the facts of *Zipperer*:  "[U]nlike the dilatory plaintiffs in *Zipperer*, Plaintiffs here commenced this action well before the enactment of Prop 22, even before the enactment of AB5."  Opp. at 10.  But that distinction is wholly irrelevant; the question is not whether Plaintiffs *commenced* the action prior to the enactment of Proposition 22, but whether they have obtained a *final judgment*.  The answer to that question is plainly "no."

Fourth, Proposition 22 eliminated Plaintiffs' claims under the ABC test.  The Official Voter Information Guide distributed to Californians in advance of the vote on Proposition 22 explained that "[t]he state recently passed a law that limits the ability of companies to hire workers as independent contractors," referencing AB5, which the state Attorney General interpreted to "mean[] rideshare and delivery companies must hire drivers as employees."  Cal. Sec'y of State, *Proposition 22—Analysis by the Legislative Analyst*, https://voterguide.sos.ca.gov/propositions/22/analysis.htm.  But the Guide

informed voters that "[t]his measure makes app-based rideshare and delivery drivers independent contractors," such that "[t]he new state law that limits the ability of companies to hire independent contractors would not apply to drivers." *Id.*

Plaintiffs point out that "the word 'repeal' is conspicuously absent" from the text of Proposition 22. Opp. at 8. But there is no requirement that a statute include the magic word "repeal" for abatement to apply; rather, courts "look to the substance of the legislation—not its label—to determine whether it operates as a repeal." *Zipperer*, 133 Cal. App. 4th at 1025; *see also S. Serv. Co. v. Los Angeles County*, 15 Cal. 2d at 13 ("True, the words of the 1939 statute are not expressly words of repeal without a saving clause, but the effect is the same in so far as the application of the principles is concerned when the legislature by apt expression has withdrawn the right and remedy in particular cases, including all pending actions based thereon.").[3]  And Proposition 22 could not be clearer that it displaced AB5 and the ABC test for app-based workers:  "Notwithstanding any other provision of law …, an app-based driver is an independent contractor and not an employee or agent with respect to the app-based driver's relationship with a network company."  Cal. Bus. & Prof. Code § 7451.

Plaintiffs also argue that Proposition 22 did not repeal the ABC test because that test still "exists in the Labor Code today in sections 2775-2776." *Id.* at 9.  But the fact that the ABC test is still on the books *as to some workers* is irrelevant because it has been abolished *as to these plaintiffs*.  After all, "[t]he Legislature need not repeal a statute in its entirety" to trigger abatement, "but may instead partially repeal a statute by taking away the right of action *in certain situations*." *Fitzpatrick v. Tyson Foods, Inc.*, 2016 WL 5395955, at *3 (E.D. Cal. Sept. 27, 2016) (emphasis added), *aff'd* 714 F. App'x 797 (9th Cir. 2018).  That is precisely what Proposition 22 did, as Judge Chen recently acknowledged: "Prop 22 passed on November 3, 2020, *repealing AB 5 with respect to app-based drivers* and declaring these drivers to be independent contractors, as long as the network company (in this case, Uber)

---

[3]  Plaintiffs spend several pages discussing the doctrine of retroactivity, which *does* require a clear statement.  *See* Opp. at 11–13.  But retroactivity analysis applies where a statute imposes new or different obligations on a party—not where it *removes* obligations.  *See Rossetti v. Stearn's Prods., Inc.*, 2016 WL 3277295, at *4 (C.D. Cal. June 6, 2016) ("It appears to the Court that [plaintiff] focuses on cases discussing whether or not amended statutes can retroactively apply to *impose new or additional liability* on a defendant, not on cases that *expand protections* afforded defendants by way of changes to previous statutory foundations for liability.  The concerns in the two types of situations are fundamentally different.").

provides those driver with specific wage and hour protections." *James v. Uber Techs., Inc.*, 2021 WL 254303, at \*17 (N.D. Cal. Jan. 26, 2021) (emphasis added).  Even the Attorney General has conceded that Proposition 22's "chief point and purpose" was "to carve out app-based transportation and delivery companies from th[e] generally applicable classification standard" of "the ABC test in *Dynamex* and … AB 5."  Answer to Petition at 23, *White v. Padilla*, No. 34-2020-8000-3438 (Cal. Super. Ct. Aug. 3, 2020).

As a final tactic, Plaintiffs fault Uber for "not argu[ing] how or why there is no rational basis to harmonize [the ABC test] with [Proposition 22]."  Opp. at 9.  But there is nothing *to* harmonize.  To be sure, Proposition 22 states that "an app-based driver is an independent contractor and not an employee … *if [four] conditions are met*."  Cal. Bus. & Prof. Code § 7451 (emphasis added).  But those conditions do not overlap with the ABC test, and Section 7451 leaves no room for the operation of that test:  If the specified statutory conditions are satisfied, the workers are independent contractors.  In other words, Proposition 22 replaced the ABC test with an entirely *different* standard for classification of app-based drivers—one that applies "[n]otwithstanding any other provision of law," including the California Labor Code and California wage orders.  *Id.*  "[I]ncluding a 'notwithstanding any other law' provision is a method—akin to an express reference to the superseded statute—by which [a legislature] can demonstrate that it intended to partially repeal an Act."  *United States v. Novak*, 476 F.3d 1041, 1052 (9th Cir. 2007) (en banc) (punctuation omitted); *see also In re Marriage of Cutler*, 79 Cal. App. 4th 460, 475 (2000) (applying a new statute to pending claims because its "notwithstanding any other provision of law" provision "signals a broad application overriding all other code sections").

Moreover, the application of Proposition 22's four conditions are not disputed as to drivers who use the Uber App.  In fact, Plaintiffs do not allege or even argue that Proposition 22 does not apply to them, or that they would be independent contractors under Proposition 22.  For these reasons, Plaintiffs' California claims should be dismissed with prejudice.

### 2. Plaintiffs Do Not Allege They Are Employees Under The Federal Economic Realities Test.

Plaintiffs admit that their FLSA claims turn on whether they are employees under the economic realities test, which is distinct from the ABC test.  *See* Opp. at 13 ("Plaintiffs agree that the economic

realities test applies to their FLSA claims.").  Even though neither the TAC nor any of Plaintiffs'
previous complaints have ever so much as mentioned the economic realities test, Plaintiffs insist that
they are not "attempting to shoehorn California's ABC test [in]to a FLSA analysis" because "a plain
and fair reading of the TAC" shows that its "allegations are more than enough to satisfy" the economic
realities test.  *Id.*  Nothing could be farther from the truth.

Courts look to six factors in evaluating a worker's classification under the economic realities
test: (1) "the nature and degree of the employer's control"; (2) "the alleged employee's opportunity for
profit or loss depending upon his managerial skill"; (3) "the alleged employee's investment in
equipment or materials required for his task"; (4) "whether the service rendered requires a special
skill"; (5) "the degree of permanency and duration of the working relationship"; and (6) "the extent to
which the service rendered is an integral part of the alleged employer's business."  *Sec'y of Labor v.
Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1987).  Plaintiffs argue that they satisfy only the first *two* of
these factors.  *See* Opp. at 14–15 (asserting that "the TAC plausibly satisfies the 'right to control work'
factor of the economic reality test" and "the 'opportunity for loss or profit' factor").  In doing so, they
effectively concede that the other four weigh against employee status under federal law.

More importantly, the two factors on which Plaintiffs rely do not support a plausible inference
that they are employees under the economic realities test.  With respect to the "control" factor, for
example, Plaintiffs contend that Uber "requires minimum vehicle requirements for vehicles"; imposes
"minimum cosmetic guidelines for vehicles"; requires that drivers "must 'meet the minimum age to
drive'" and "'[h]ave at least one year of licensed driving experience in the US'"; requires that drivers
"pass[] a background check for moving violations and certain criminal convictions"; "limits how long
a ride-share driver can drive" at one time; "requires a vehicle to have a certain level of cleanliness";
and "maintain[s] high standards of quality."  *Id.* at 14 (citing TAC ¶¶ 25–32).[4]  Many of these
requirements exist to ensure compliance with applicable law (*e.g.*, that drivers be licensed), and to
protect the safety of drivers and riders (*e.g.*, that drivers pass a criminal background check and not drive
for too many hours without a break).  And under the Department of Labor's regulations, measures

---

[4]  These last two allegations are exceedingly vague as to the "level of cleanliness" required and the
"high standards of quality" imposed.

Gibson, Dunn &
Crutcher LLP

"implemented in order to comply with specific legal obligations and to ensure safety" do "not constitute control that makes the [worker] more or less likely to be an employee under the Act." 29 C.F.R. § 795.115(b)(1). The remaining requirements comprise general quality standards (*e.g.*, that vehicles meet certain requirements and satisfy a minimum level of cleanliness) that are likewise insufficient to establish employee status under Department of Labor regulations. *See id.* § 795.105(d)(1)(i) ("Requiring the individual to comply with specific legal obligations, satisfy health and safety standards, carry insurance, meet contractually agreed-upon deadlines or quality control standards, or satisfy other similar terms that are typical of contractual relationships between businesses (as opposed to employment relationships) does not constitute control that makes the individual more or less likely to be an employee under the Act.").

This is consistent with a long line of federal appellate authority applying the "control" factor of the economic realities test. In *Iontchev v. AAA Cab Service, Inc.*, 685 F. App'x 548 (9th Cir. 2017), for example, the Ninth Circuit held that a taxi company "had relatively little control over the manner in which the Drivers performed their work" where "its disciplinary policy primarily enforced the Airport's rules and regulations governing the Drivers' cab operations and conduct." *Id.* at 550. It did so even though the company *leased* drivers' vehicles to them, and thus had complete control over vehicles' cosmetic and other features, emphasizing that the company, like Uber, "did not maintain attendance logs, establish the Drivers' work schedules, or mandate a minimum number of hours." *Id.* Other cases are in accord. *See, e.g., Moreau v. Air France*, 356 F.3d 942, 951 (9th Cir. 2004) (concluding that an airline's "very specific" standards for ground handlers did not show employee status because the standards were "purportedly to ensure compliance with various safety and security regulations"); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 382 (5th Cir. 2019) (finding that "mandat[es]" designed to ensure that workers provide "good client service" and "safe operations" do not weigh in favor of employee status); *Chao v. Mid-Atlantic Installation Servs., Inc.*, 16 F. App'x 104, 106 (4th Cir. 2001) (holding that requirements to ensure "compl[iance] with various local regulations or with technical specifications" do not show that a worker is an employee).

With respect to the "opportunity for loss or profit" factor, Plaintiffs contend only that "Plaintiffs do not control the price charged to riders, which is predetermined by UBER without Plaintiff's input."

Opp. at 15 (citing TAC ¶ 122).  But this is untrue:  California drivers can modify their preferences in the Uber App to specify the fares at which they are willing to accept rides.  *See California Drivers: Set Your Own Fares When You Drive With Uber*, Uber Blog (June 25, 2020), tinyurl.com/a7s004ks ("To set your own fare, go to your driver app and tap the list menu in the bottom right of your screen to open the Trip Planner, then tap the filter icon in the bottom right of your screen to open Driving Preferences.").  Even if this option did not exist, however, Plaintiffs' allegations still come nowhere close to supporting an inference that Plaintiffs lack a sufficient opportunity for profit or loss based on their own managerial skill because Plaintiffs have complete discretion over when to drive (including during rush hour or when "surge pricing" offers greater profit opportunity) and where to drive (including near airports and downtown areas as compared to suburban neighborhoods).

In *Herman v. Express Sixty-Minutes Delivery Services, Inc.*, 161 F.3d 299 (5th Cir. 1998), the Fifth Circuit held that the "opportunity for loss or profit" factor weighed in favor of independent contractor status, even though the company "control[led] customer volume *and the amount charged to customers*," because "the drivers had the ability to choose how much they wanted to work and the experienced drivers knew which jobs were most profitable."  *Id.* at 304 (emphasis added).  And in *Franze v. Bimbo Bakeries USA, Inc.*, the Second Circuit held that delivery drivers' opportunity for loss or profit favored independent contractor status because, "*even with relatively fixed prices for larger clients*, the overall value of [the drivers'] businesses primarily depended on their own business judgment and foresight in modifying their territories and managing day-to-day costs."  826 F. App'x 74, 77 (2d Cir. 2020) (emphasis added) (citation and internal quotation marks omitted).

Rather than plead facts showing that they are employees under the FLSA, Plaintiffs ask the Court to overlook the deficiencies in the TAC because a *different* court, in a *different* jurisdiction, on a *different* posture, "reversed a district court's ruling that Uber drivers were not employees under the FLSA's economic realities test" based on *different* allegations and *different* facts.  Opp. at 13–14 (citing *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 139 (3d Cir. 2020)).  As an initial matter, that decision merely reversed a summary judgment ruling in favor of Uber, finding disputes of material fact concerning the plaintiffs' classification.  *Razak*, 951 F.3d at 148.  Moreover, that case is easily distinguished from this one because it dealt with a different group of Uber drivers—namely, those "who provide *limousine*

services, now known as Uber*BLACK*." *Id.* at 139 (emphases added).  But more fundamentally, in evaluating Uber's motion to dismiss, the Court must look only to the pleadings and determine whether, if true, they would support a judgment in favor of Plaintiffs.  Whatever may have been alleged in other cases has no bearing on the adequacy of Plaintiffs' allegations here.  And because those allegations do not support a plausible inference that Plaintiffs are employees under the economic realities test, the Court should dismiss Plaintiffs' FLSA claims with prejudice.

**B.    The Third Amended Complaint Should Be Dismissed Because Plaintiffs Do Not Plausibly Allege Violations Of The California Labor Code, FLSA, Or UCL.**

Even if Plaintiffs adequately alleged that they are employees (they do not), the TAC should still be dismissed because they fail to adequately allege any violation of federal or state wage-and-hour law.

**1.    Plaintiffs Fail To Sufficiently Plead That Uber Did Not Timely Pay Wages (Count I).**

As noted in Uber's motion, Plaintiffs' single new allegation in support of their claim for failure to timely pay wages—"'Plaintiff GLINOGA, GONZALEZ, and NEELY stopped working for UBER in approximately March of 2020.  Accordingly, Plaintiff[s'] employment relationships with Uber ended in or about March of 2020'"—does not state a claim for three reasons.  Mot. at 12 (quoting TAC ¶ 81).  Plaintiffs fail to show otherwise in their Opposition.

*First*, Plaintiffs' allegation that they "stopped working" for Uber in March 2020 is not enough to show that their relationship with Uber has ended within the meaning of Labor Code Sections 201 or 202.  Plaintiffs insist that "[i]f an employee says they stopped working, it means they stopped working."  Opp. at 15.  But this misses the point.  Even taking as true that Plaintiffs stopped working—as the Court must on a motion to dismiss—that is *legally* insufficient to state a claim because the California Labor Code permits recovery only if Plaintiffs are discharged or quit.  *See* Cal. Labor Code § 201(a) ("If an employer *discharges* an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.") (emphasis added); *id.* § 202(a) ("If an employee not having a written contract for a definite period *quits* his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless she has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.") (emphasis added).  If Plaintiffs proved at trial that they simply "stopped working," a factfinder would not be

Gibson, Dunn & Crutcher LLP

justified in concluding *either* that they were discharged *or* that they quit.  And because the Uber App permits drivers to stop using it for months at a time without severing their relationship with Uber—or even telling Uber whether they plan to return—the fact that Plaintiffs stopped working says nothing about whether they were entitled to their final pay.  *See* Mot. at 12–13.  As a result, the factfinder could not grant Plaintiffs relief under either Section 201 or Section 202.

*Second*, and relatedly, Plaintiffs improperly assert their claim for failure to timely pay wages under both Section 201 and Section 202.  Because those provisions are mutually exclusive, courts routinely dismiss complaints that allege claims on both grounds indiscriminately.  *See*, *e.g.*, *Perez v. DNC Parks & Resorts at Asilomar, Inc.*, 2019 WL 5618169, at *9 (E.D. Cal. Oct. 31, 2019) ("[P]laintiff cannot seek relief under both §§ 201 and 202, as plaintiff could not have both resigned and been terminated at the same time.").  Notably, Plaintiffs do not even respond to this argument.

*Third*, Plaintiffs' new allegation does not cure their failure to plead willfulness in the SAC.  It is well established that "[a]n employer does not act willfully when there is 'a good faith dispute that any wages are due.'"  *Porch v. MasterFoods, USA, Inc.*, 685 F. Supp. 2d 1058, 1075 (C.D. Cal. 2008) (quoting Cal. Code Regs., tit. 8, § 13520).  That is clearly the case here.  Even when there is no such good faith dispute, a plaintiff must still allege "information about when Plaintiff and 'certain members of the proposed class' complained [about the failure to timely pay wages], how they complained (e.g., in-person, telephone, email), who they complained to, or the response(s) they received."  *Soratorio v. Tesoro Refining & Marketing Co.*, 2017 WL 8220415, at *3 (C.D. Cal. Sept. 11, 2017).  Plaintiffs allege none of these things in the TAC.  Instead, they merely insist, in conclusory fashion, that they have "alleged that they demanded payment and that Uber still refused to provide that payment."  Opp. at 15 (citing TAC ¶ 82).  This is not enough.

For each of these reasons, the Court should dismiss Count I of the TAC without leave to amend.

### 2.  Plaintiffs Fail To Allege Facts To Support Their Minimum Wage And Overtime Claims (Counts II, IV, and V).

In dismissing the SAC's claims for minimum wage and overtime violations, the Court allowed Plaintiffs leave to amend on condition that their amended pleading do three things: (1) "specify which clause under Wage Order 4 serves as the basis for their alleged 'hours worked,'" (2) "identify the

authority they rely on to support their position that the time spent waiting between rides qualifies as compensable," and (3) "allege sufficient, non-conclusory facts showing that their alleged waiting time between rides fits within that authority." Dkt. 43 at 18.  The Court warned that, "[i]f plaintiffs fail to … follow the steps outlined above with respect to their minimum wage or overtime claims, the court will dismiss the subject claims with prejudice." *Id.* at 19.  Plaintiffs did not follow these instructions in the TAC (*see* Mot. at 14–18), and they do not attempt to cure this shortcoming in their Opposition.

*First*, Plaintiffs have not identified which clause of Wage Order 4—"the 'control of an employer' clause [or] the 'suffered or permitted to work' clause" (Dkt. 43 at 8)—they rely on in asserting that their time logged onto the Uber App waiting for a ride is compensable.  *Compare* TAC ¶ 100 ("These hours worked are compensable since Plaintiffs were *suffered or permitted to work* during these times, whether or not required to do so.") (emphasis added), *with id.* ¶ 120 ("Plaintiff and Class members *are controlled by Uber* (the employer), through Uber's application.") (emphasis added).  In their Opposition, Plaintiffs only obscure matters further:  "Plaintiffs['] minimum wage and overtime claims are predicated on not being compensated for the substantial amount of standby/on-call time specifically delineated *by Wage Order 4*."  Opp. at 16 (emphasis added).  Because they double-down on *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508 (2009), in their Opposition (*see* Opp. at 16), and because *Gomez* evaluated the compensability of waiting time under the FLSA, which closely mirrors the "control of an employer" clause (*see Local 1605 Amalgamated Transit Union, AFL-CIO v. Cent. Costa Cnty. Transit Auth.*, 73 F. Supp. 2d 1117, 1121 (N.D. Cal. 1999) ("[A]n activity is work for FLSA's purposes if it is 'controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer.'")), perhaps Plaintiffs are relying on the "control of an employer" clause of Wage Order 4.  But the TAC must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), and nothing about the TAC is "short" and "plain" with respect to the Court's first directive.

*Second*, Plaintiffs fail to identify the authority they rely on for their assertion that their on-call time is compensable under California law because the only case cited in the TAC, *Gomez*, interpreted federal caselaw applying the FLSA.  *See* Mot. at 15–16.  In their Opposition, Plaintiffs speculate that "the most germane case is *Mendiola v. CPS Security Solutions, Inc.*, [60 Cal. 4th 833 (2015)]" (Opp.

Gibson, Dunn &
Crutcher LLP

1  at 17), but that case is not cited anywhere in the TAC.  Although Uber offered the relevant standards

2  in its motion to dismiss, Plaintiffs' failure to do so in the TAC merits dismissal under this Court's order

3  dismissing the SAC.  *See* Dkt. 43 at 19.[5]

4       *Third*, Plaintiffs fail to "allege sufficient, non-conclusory facts showing that their alleged

5  waiting time between rides fits within that authority."  Dkt. 43 at 18; *see also* Mot. at 17.  In their

6  Opposition, they argue only that they are "very similar" to the workers in *Mendiola* because they "have

7  to respond immediately and are required to have the app on to wait for a ride."  Opp. at 17.  But this is

8  simply untrue.  Nowhere in the TAC do Plaintiffs allege that they have to respond immediately to a

9  ride request; on the contrary, they are free to decline any ride request they want—whether because they

10  want to grab a bite to eat, run a personal errand, or simply don't feel like taking another ride.  In fact,

11  Plaintiffs couldn't be more different than the on-site security guards in *Mendiola*, who, in Plaintiffs'

12  own telling, were "required to 'reside' in their trailers as a condition of employment," to "spend on-

13  call hours in their trailers or elsewhere at the worksite," and "to respond immediately if called upon."

14  *Id*. (citing *Mendiola*, 60 Cal. 4th at 841, 849).  In contrast, drivers who use the Uber App are free to

15  accept or decline rides as they wish, to provide transportation services in any geographic location, to

16  conduct as much or as little personal business between rides as they choose, and to go days, weeks, or

17  months without even using the Uber App.  It strains credulity to think such workers are under the same

18  level of control as on-site security guards.

19       In short, Plaintiffs fail to state either a minimum wage or an overtime claim because those

20  claims turn on the compensability of their on-call time, and Plaintiffs have not adequately alleged that

21  such time is compensable under California or federal law.  Moreover, Plaintiffs fail to comply with the

---

[5] As Uber explained, "[a] worker is 'subject to the control of an employer' under California law '[w]hen an employer directs, commands, or restrains an employee from leaving the work place … and thus prevents the employee from using the time effectively for his own purposes.'"  Mot. at 16 (quoting *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1047 (2020)).  A "worker is 'suffered or permitted to work' under California law in 'the time during which the employer knew or should have known that the employee was working on its behalf.'"  *Id.* (quoting *Troester v. Starbucks Corp.*, 5 Cal. 5th 829, 840 (2018)).  Plaintiffs fault Uber for citing these cases on the ground that they are distinguishable (*see* Mot. at 16–17), but Uber simply cited them for the relevant legal standard— and did so only because Plaintiffs failed to, notwithstanding the Court's Order.

1   Court's order in amending the SAC.  For each of these reasons, the Court should dismiss Counts II, IV,

2   and V with prejudice.

3           **3.      Plaintiffs' Contradictory And Inconsistent Allegations Fail To State A Claim For**
            **         Failure To Provide Accurate Wage Statements (Count III).**
4

5           The Court's order dismissing the SAC found that Plaintiffs had not adequately stated a claim

6   for failure to provide accurate wage statements because "plaintiffs fail[ed] to identify the deficient

7   statements at issue."  Dkt 43 at 12.  In doing so, it expressly rejected Plaintiffs' assertion that "such

8   statements … do not exist" because the SAC "allege[d] that plaintiffs have not received a statement

9   *with all required information*."  *Id.* (emphasis in original).

10          Now, Plaintiffs commit another error by alleging that they "never received any wage statement

11  at all, let alone a wage statement with all required information set forth under Labor Code § 226."  TAC

12  ¶ 110.  As the Ninth Circuit has held, "[a] party cannot amend pleadings to 'directly contradic[t] an

13  earlier assertion made in the same proceeding.'"  *Air Aromatics, LLC v. Opinion Victoria's Secret*

14  *Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (citation omitted).  Yet that is precisely

15  what Plaintiffs have done.  And while Plaintiffs insist that they "have always contended that they did

16  not get a complete wage statement" (Opp. at 18), the Court has already found to the contrary, noting

17  that the allegations contained in Plaintiffs' SAC are "different than plaintiffs not receiving a wage

18  statement at all."  *Id.*

19          Additionally, Plaintiffs have again failed to "allege any facts showing that, even if defendant

20  failed to provide a wage statement, such failure was knowing and intentional."  Dkt. 43 at 12.  Although

21  the SAC alleges in conclusory fashion that this purported violation was "willful and intentional" (TAC

22  ¶ 113), "an employer's good faith belief that it is in compliance with § 226 precludes liability under

23  that statute."  Mot. at 19 (quoting *Arroyo v. Int'l Paper Co.*, 2020 WL 887771, at *12 (N.D. Cal. Feb.

24  24, 2020)).  Plaintiffs provide no response in their Opposition, instead falsely asserting that "Uber [did]

25  not address [TAC ¶ 113] or its contentions."  Opp. at 18.  Because Plaintiffs have failed to allege any

26  facts that would support a plausible inference that Uber did not hold a good faith belief that it was in

27  compliance with Section 226, Plaintiffs' claim for a knowing and intentional failure to provide accurate

28  wage statements must fail.

1

Accordingly, the Court should dismiss Count III with prejudice.

2

**4.      Plaintiffs Fail To Allege A Viable Predicate Violation To Support Their UCL Claim (Count VI).**

3

4

Plaintiffs concede that "their claim under Business and Professions Code § 17200 ('UCL') rises

5

or falls with the violations of FLSA and Labor Code claims upon which it is founded."  Opp. at 19.

6

Because those predicate claims fail, the Court should dismiss their claim under the UCL, as well.  *See*

7

*Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1147 (2011) ("Because the underlying causes of

8

action fail, the derivative UCL and PAGA claims also fail.").

9

**III.  CONCLUSION**

10

Because Plaintiffs have failed to allege facts from which the Court can plausibly infer that they

11

are employees or that they have suffered any wage-and-hour violations, the Court should dismiss the

12

TAC for failure to state a claim.  And because this is Plaintiffs' fourth failure to adequately plead their

13

case, the Court should dismiss the TAC with prejudice—just as it has repeatedly warned Plaintiffs it

14

would do.  *See* Dkt. 43 at 19 ("If plaintiffs fail to either correct the various factual deficiencies in th[eir]

15

[SAC] or follow the steps outlined above with respect to their minimum wage or overtime claims, the

16

court will dismiss the subject claims with prejudice."); Dkt. 36 at 24 ("Failure to remedy the factual

17

defects in the MTD plaintiffs' [FAC]—including, without limitation, those identified above—will

18

result in their dismissal with prejudice.").

19

20

Dated: February 9, 2021                         GIBSON, DUNN & CRUTCHER LLP

21

By:      _____/s/ Theane Evangelis_____

22

Theane Evangelis

23

Attorneys for Defendant UBER TECHNOLOGIES, INC.

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on this 9th day of February, 2021, I filed the foregoing document with

3

this Court using the CM/ECF filing system.  This system sends notifications of such filing and

4

service to all counsel of record.

5

6

7

GIBSON, DUNN & CRUTCHER LLP

8

By:        */s/ Theane Evangelis*
                    Theane Evangelis

9

Attorneys for Defendant UBER TECHNOLOGIES, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP