1   Aaron David Kaufmann (CA Bar No. 48580)
    Leonard Carder, LLP
2   1999 Harrison St, Suite 2700
    Oakland, CA 94612-3500
3   (510) 272-0169
4   akaufmann@leonardcarder.com

5   Peter S. Rukin (CA Bar No. 178336)
    Rukin Hyland & Riggin LLP
6   201 Mission Street #1250
7   San Francisco, CA 94105
    (415) 421-1800
8   prukin@rukinhyland.com

9   Benjamin S. Beach (CA Bar No. 226383)
    Partnership for Working Families
10  1305 Franklin St., Suite 501
    Oakland, CA 94612
11  (510) 201-0081
12  bbeach@forworkingfamilies.org

13  *Attorneys for Amici*

14              **UNITED STATES DISTRICT COURT**

15             **NORTHERN DISTRICT OF CALIFORNIA**

16                  **OAKLAND DIVISION**

17

18  JERICHO NICOLAS, individually and on        Case Nos.:     4:19-cv-08228-PJH
    behalf of all others similarly situated,
19                                               **MEMORANDUM OF LAW OF *AMICI***
20              Plaintiffs,                       ***CURIAE* IN SUPPORT OF**
                                                 **PLAINTIFFS' OPPOSITION TO**
21      v.                                       **DEFENDANT'S MOTION TO DISMISS**

22  UBER TECHNOLOGIES, INC.,

23                                               Hon. Phyllis J. Hamilton
              Defendant.
24

25

26

27

28

1

**STATMENT OF INTEREST**

2  The Partnership for Working Families ("PWF") is a 501c3 non-profit organization

3  dedicated to ensuring justice for low-income workers, their families, and their communities. The

4  California Employment Lawyers Association ("CELA") is an organization of California attorneys

5  whose members primarily represent employees in a wide range of employment cases, including

6  individual, class, and representative actions enforcing California's employment laws. CELA has a

7  substantial interest in protecting the statutory and common law rights of California workers and

8  ensuring the vindication of the public policies embodied in California employment laws.

9  Both organizations have extensive experience in employee-rights issues, including support

10  for strong worker protections. *Amici* advocate for limiting the reach of Prop 22 to its text and

11  purpose.

12

**INTRODUCTION**

13  Defendant Uber Technologies, Inc. ("Uber") seeks extraordinary and unprecedented relief

14  from this Court. Uber claims that Proposition 22 ("Prop 22"), which became effective on December

15  16, 2020, eliminates Plaintiffs'—and all other app-based drivers'—right to seek relief for Uber's

16  wage and hour violations *before* that date. ECF Dkt. 46 ("Motion"). Uber's position is unsupported

17  by any record and contrary to well settled principles on retroactivity. The relief Uber seeks –

18  dismissal – would have far-reaching and extreme consequences for tens of thousands of "app-based

19  drivers" who are covered by Prop 22 and would expand legal doctrines far from their origins. Prop

20  22 did not repeal existing protections of the California Labor Code, and Uber's attempt to eliminate

21  liability for Plaintiffs must be denied. Because Uber's position is an affirmative defense, its Motion

22  is not ripe; the Court cannot determine at this stage of the litigation whether it even meets the

23  elements of the defense. In short, Uber's position is contrary to law, improper on this record, and

24  premature in any event.

25

**SUMMARY OF THE ARGUMENT**

26  Uber fails to meet the elements of the "statutory repeal" doctrine, for several reasons. First,

27  Prop 22 did not expressly or impliedly repeal the statutory provisions Plaintiffs invoke; it merely

28  added a *new* standard for determining whether a company has violated those provisions. Plaintiffs

1   seek to vindicate common law, vested rights, which cannot be abated. And most importantly, Uber

2   has presented no evidence, and can present no evidence, sufficient to overcome the settled

3   presumption against retroactivity and demonstrate that the voters and Legislature intended the result

4   Uber seeks here: that Proposition 22 would provide app-based drivers certain protections going

5   forward, but leave those drivers out in the cold with no relief for Uber's past violations under the

6   Labor Code, the Wage Orders, or Prop 22. At a minimum, this lack of evidence makes dismissal

7   premature.

8        Second, the "statutory repeal" doctrine is inapplicable to common-law claims for unpaid

9   wages and misclassification upon which Plaintiffs base their case, a settled principle left

10  unaddressed by Uber's authorities.

11       Finally, Uber's construction of Prop 22 creates an avoidable Constitutional conundrum.

12  Were Prop 22 to be construed as having retroactive effect it would violate the Due Process Clause

13  by eliminating wage claims (considered vested property rights under California law) and as a result,

14  this Court would be required to find Prop 22 invalid in its entirety given its non-severability clause.

15  The doctrine of constitutional avoidance requires prospective application in order to avoid this

16  pitfall.

17       These issues are of critical importance to previously misclassified workers who seek back

18  pay and expense reimbursement before judges and arbitrators across California. Any retroactive

19  application of Prop 22 necessarily threatens those claims brought by low-wage workers, many of

20  which are still proceeding through arbitration. *See e.g.* Order re: Claimant's Mot. Summ. J. at 1–7,

21  *Antonio Bonila v. Postmates, Inc.* (Feb. 9, 2021); Order re: Claimant's Mot. Summ. J. at 2-3, *Jeison*

22  *Reyesbobadilla v. Postmates, Inc.* (Nov. 25, 2020); (attached hereto as Exhibits "A" and "B"

23  respectively).

24  ## BRIEF HISTORY OF PROP 22

25       A brief examination of the developments which brought about Prop 22 is instructive. In

26  2018, the California Supreme Court held that the definition of "employee" in California's Wage

27  Orders is governed by the ABC test. *See Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903,

28  916 (2018). Effective January 1, 2020, Assembly Bill 5 ("AB5") codified that test. *See* Cal. Lab.

Code § 2775(b)(1). Declarative of existing law, the ABC test presumes that a worker is an employee of the company she works for. The company can only classify the worker as an independent contractor if it can show, among other factors, that the worker "performs work that is outside the usual course of the hiring entity's business," *Dynamex*, 4 Cal. 5th at 955–56. In other words, the company must show that the worker's job is "merely incidental to" and not "an integral part of" the company's business. *Id.* at 961 n.29. If a company cannot satisfy all three prongs of the ABC test, the worker is entitled to the protections afforded employees by the California Labor Code and California Wage Orders, such as a minimum wage and overtime pay. An employee who does not receive those benefits may sue her employer under the Labor Code and Wage Orders, as Plaintiffs have done here.

Since *Dynamex*, Uber and its gig-economy brethren have faced a rising tide of decisions holding that they cannot satisfy the ABC test. Court after court and arbitrator after arbitrator have concluded that these companies' drivers and delivery couriers are integral to their transportation and delivery businesses – and are thus employees. *See, e.g.*, *Rogers v. Lyft, Inc.*, No. 20-CV-01938-VC, 2020 WL 1684151, at p. 1 (N.D. Cal. Apr. 7, 2020) ("While the status of Lyft drivers was previously uncertain, it is now clear that drivers for companies like Lyft must be classified as employees."); *see also People v. Uber Techs., Inc.*, 56 Cal. App. 5th 266, 317, (2020) (affirming Order Affirming Prelim. Inj., which cited five cases holding Uber's and Lyft's drivers to be employees under California law, and concluding that "[Uber's] position cannot survive even cursory examination. Far from 'merely incidental' to Defendants' transportation network businesses, drivers' work–the work of transporting customers for compensation–is 'an integral part' of those businesses."); Order re: Claimant's Mot. Summ. J. at 6–7, *Jeison Reyesbobadilla v. Postmates, Inc.* (Nov. 25, 2020) ("Without selling or delivering, Postmates doesn't have a business and its employees have no purpose . . . here, the work provided by [Claimant] is not merely incidental to Postmates' business. It is an integral part of its business.") (attached as Exhibit "B").

California's Attorney General agrees; on May 5, 2020, he accused Uber of misclassifying its drivers as independent contractors, explaining that rather than complying with AB5, Uber "worked relentlessly to find a work-around," including by trying to force drivers to sign arbitration

agreements waiving their ability to pursue class actions in court. Compl. ¶ 116, *People v. Uber Techs., Inc.* (Cal. Super. Ct. May 5, 2020). As the California Superior Court stated last year, when requiring another gig-economy company (Instacart) to reclassify its delivery couriers as employees,

> The policy of California is unapologetically pro-employee (in the several senses of that word). *Dynamex* is explicitly in line with this policy. While there is room for debate on the wisdom of this policy, and while other states have chosen another course, it is noteworthy that all three branches of California have now spoken on this issue. The Supreme Court announced *Dynamex* two years ago. The decision gave rise to a long debate in the legal press and in the Legislature. The Legislature passed AB 5 last fall. The Governor signed it. To put it in the vernacular, the handwriting is on the wall.

Ruling on Mot. Prelim. Inj., *California v. Maplebear Inc.*, No. 37-2019-00048731 (Cal. Super. Ct. Feb. 13, 2020).

Given the writing on the wall, Uber realized it could not avoid liability forever. So, rather than complying with the law, it attempted to rewrite it. Uber and several other app-based, gig-economy companies drafted a ballot initiative containing a new legal framework for determining whether an app-based driver is an employee or an independent contractor, and together they spent $206 million to pass that initiative.

Prop 22 does not eliminate the California Labor Code and Wage Orders in place for app-based drivers before 2021. Rather, for those companies which meet the four-part test articulated by Prop 22, Prop 22 adjusts the protections afforded by the Labor Code. For example, instead of being guaranteed a minimum wage for all hours worked (including wait-time), workers covered by Prop 22 are entitled to more than minimum wage for specific hours worked. Cal. Bus. & Prof. Code § 7453. While regular employees are entitled to a "reasonable" reimbursement of their mileage expenses, workers covered by Prop 22 are guaranteed a reimbursement of 30 cents per mile for eligible miles driven. *Id.* And while workers covered by Prop 22 will not have a right to overtime or sick time under Prop 22, they are guaranteed health care credits and insurance. *Id.* § 7454. Thus, Prop 22 limited certain Labor Code protections and expanded others. As Uber sold Prop 22 to the voting public, these changes were supposed to benefit app-based drivers going forward, by giving them important protections in a format that afforded them greater flexibility than they would have

without Prop 22. *See* Prop 22 Voter's Guide, Arguments and Rebuttals, available at http://kl.link/3jHmODn (arguing Prop 22 "PROTECTS the choice of app-based drivers to work as independent contractors" and "IMPROVES app-based work by requiring companies to provide new benefits.").

When Uber drafted Prop 22 it could easily have included a provision expressly making Prop 22 retroactive, wiping out past Labor Code and Wage Order liability under the ABC test established by *Dynamex* and AB5. But Uber did not make Prop 22 expressly retroactive, presumably because it knew voters would not want to pass a statute that would leave gig-economy workers with no right to relief for years of unpaid wages and unfurnished benefits. Uber's instincts were right; despite spending more to advertise Prop 22 than had ever been spent on a ballot initiative, Prop 22 passed with only 58% of the vote. Uber gave up the chance at a grand slam—a retroactive statute that would wipe all liability under the law as it existed before 2021—to hit a home run—a statute that may protect its independent contractor-based business model going forward. *Cf. Evangelatos v. Superior Court*, 44 Cal. 3d 1188, 1212 (1988) ("Since the drafters declined to insert [a retroactivity] provision in the proposition—perhaps in order to avoid the adverse political consequences that might have flowed from the inclusion of such a provision—it would appear improper for [a] court to read a retroactivity clause into the enactment at this juncture.").

But having appeased voters by selling Prop 22 as prospective, Uber is now attempting a bait-and-switch. It makes the remarkable claim that the voters gave Uber what it did not dare ask for directly; that Prop 22 simultaneously prevents its drivers from seeking relief under the law governing their employment status before 2021, and that Uber need not have complied with Prop 22's requirements before 2021 because the statute is not expressly retroactive. Luckily, for both voters—the victims of Uber's attempted bait-and-switch—and Uber's drivers, Uber's attempt to wipe its slate clean runs afoul of the well-established framework governing statutory repeals.

Legislation applies prospectively unless it expressly provides otherwise or extrinsic evidence leaves no doubt. *See Evangelatos*, 44 Cal. 3d at 1209 (1988) (holding that a party claiming a statute is retroactive must show it was "very clear" that "voters must have intended a retroactive application"). Prop 22 has no retroactive effect because it does not state it is retroactive. And the

text of the Voter Guide and other sources on which Uber relies merely explains that the authors of Prop 22 thought the law should be changed; these sources say absolutely nothing about applying Prop 22 retroactively. As the California Supreme Court has explained, virtually every statutory amendment reflects dissatisfaction with the prior state of the law. Statements that the law should be changed therefore cannot overcome the presumption that those changes will apply only prospectively. *Id.* at 1213.

Apparently recognizing that Prop 22 is not retroactive (and that if Prop 22 is retroactive, the company has not provided its drivers the benefits Prop 22 requires), Uber invokes the "statutory repeal" doctrine, which holds that a complete repeal of the statute on which a claim is based may retroactively "abate" that claim. But that argument fails for several reasons.

First, Prop 22 does not repeal the Labor Code or Wage Order provisions on which Plaintiffs base their claims. Prop 22 contains no express repeal language. Uber has not made the showing necessary to overcome the strong presumption against an implied repeal.

Second, the statutory framework Prop 22 modifies contains a general savings clause that California Courts hold precludes application of the statutory repeal doctrine. *See* Bus. & Prof. Code, § 4; *see also Sobey v. Molony*, 40 Cal. App. 2d 381, 388 (1940) (finding that Section 4 "was intended to cover situations, either where the codification made a substantial change in the law, or where the legislature at that or subsequent sessions amended the law in a substantial manner."); *Arias v. Superior Ct.*, 46 Cal. 4th 969, 983, 209 P.3d 923, 931 (2009) ("… by virtue of subdivision (a)' s "notwithstanding" clause, only those provisions of law that conflict with the act's provisions—not, as defendants contend, every provision of law—are inapplicable to actions brought under the act.").

Third, the "statutory repeal" doctrine does not apply to claims for unpaid wages and misclassification like those asserted by Plaintiffs, which are based on the common law. *Sims v. AT & T Mobility Servs. LLC*, 955 F. Supp. 2d 1110, 1117 (E.D. Cal. 2013) ("The Labor Code's minimum wage and overtime provisions simply defined what that reasonable amount was, but they did not create the underlying right of an employee to be paid at a fair rate for his labor or the right of that employee to sue for reasonable compensation if he was not."); *S. G. Borello & Sons, Inc. v.*

1    *Dep't of Indus. Rels.*, 48 Cal. 3d 341, 350 (1989). The cases Uber cites are inapposite because they

2    do not address claims grounded in common law. For the same reason, Plaintiffs' rights to unpaid

3    wages have already vested, and the statutory repeal doctrine cannot abate vested rights.

4        <u>Fourth</u>, to the extent Prop 22 did have retroactive effect—under the "statutory repeal"

5    doctrine or otherwise—it would violate the Due Process Clause by eliminating wage claims, which

6    are a vested property right under California law, *Cortez v. Purolator Air Filtration Products Co.*,

7    23 Cal. 4th 163, 168, 178 (2000). And because Prop 22 contains an express non-severability clause,

8    this Court would be required to hold that Prop 22 is invalid in its entirety. Accordingly, even if

9    Prop 22 were arguably retroactive (which it is not), the doctrine of constitutional avoidance would

10   require that the law be given only prospective effect in order to avoid the serious constitutional

11   questions raised by the retroactive elimination of vested property rights.

12       In light of the above, it is no surprise that every tribunal to address the retroactivity of Prop

13   22—under the traditional retroactivity framework or the "statutory repeal" doctrine—has held that

14   the law has only prospective effect. *See Christopher James, et al. v. Uber Techs.*, No. 19-CV-

15   06462-EMC, 2021 WL 254303, at *17 (N.D. Cal. Jan. 26, 2021) ("[T]he Court concludes that Prop

16   22 does not apply retroactively."); *People v. Uber Techs.*, No. CGC-20-584402 (Cal. Super. Ct.

17   Aug. 10, 2020) ("[E]ven if the ballot initiative passes, it would not moot out the People's prayer

18   for remedies for past violations."); Ex. 2, Supplemental Order re: Claimant's Motion for Partial

19   Summary Judgment, *Reyesbobadilla v. Postmates*, No. 01-19-0004-6418, at *2 ("Postmates argues

20   that Proposition 22 should be applied retroactively, even without an express retroactivity provision,

21   because it is clear from extrinsic sources that the Legislature and voters intended it to be retroactive.

22   . . . Having reviewed [Postmates's evidence,] I disagree."). Indeed, just last month an arbitrator

23   held:

24       …[t]he voters did not take away the right of action itself…Instead, they declared
         app-based workers independent contractors if they satisfy the enumerated criteria.

25       In other words, they changed the proof or test requirements to treat app-based
         drivers as independent contractors…The voters did not "declare something once

26       unlawful now lawful"…it remains unlawful in California not to provide employees
         the wage and rights conferred by the Labor Code and wage orders; rather, through

27

28

Prop 22, the voters changed how tribunals should decide post-Prop 22 if app-based drivers fall within those protections.

Ex. 1, Order on Prop 22 Retroactivity, *Bonilla v. Postmates*, 01-20-0002-3191, at *7 (Feb. 9, 2021).

This Court should likewise hold that Prop 22 has no impact on Plaintiffs' claims for Uber's conduct before Prop 22's effective date of December 16, 2020.

## ARGUMENT

Under the "statutory repeal" doctrine, courts consider four factors in determining whether an action predicated on an older law impacted by a newly enacted law must be abated: (1) "the statutory nature of the plaintiffs' claim"; (2) "the unvested nature of the plaintiffs' claimed rights"; (3) "the timing of the elimination of those rights"; and (4) "the nature of the mechanisms by which the right of action was eliminated." *Zipperer v. County of Santa Clara*, 133 Cal. App. 4th 1013, 1023 (2005). The doctrine does not apply where the statute in question contains a savings clause. *See Rio Linda Union Sch. Dist. v. Workers' Comp. Appeals Bd.*, 131 Cal. App. 4th 517, 528 (2005) ("The unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them."). Uber takes great pains to explain that this doctrine is different than the question of whether Prop 22 is retroactive, *see* ECF Dkt. 46, 48 (Uber Mtn. at 8; Uber Repl. at 5, n.3, an analysis described by the California Supreme Court in *Evangelatos*. Presumably, this is because if Prop 22 were retroactive Uber would need to have met Prop 22's requirements before 2021—an impossible task, given that Uber provided its drivers no employment benefits whatsoever.

But regardless of the legal framework Uber invokes, it seeks to apply Prop 22 retroactively to Plaintiffs' claims for pre-Prop 22 conduct. And the question of whether a statute has retroactive effect under any framework ultimately turns on the same question: Did the Legislature (or voters) intend the revised law to have retroactive effect? *See, e.g.*, *Rio Linda*, 131 Cal. App. 4th at 529 (applying statutory repeal doctrine because "[t]he language 'regardless of the date of injury' clearly reflects the understanding and intent of the Legislature that SB 899 would be applicable to pending workers' compensation cases and not just to new compensable injuries occurring after April 19, 2004."). Stated differently, the statutory repeal doctrine arises from cases in which courts have

1    concluded that the Legislature so clearly and completely repealed a law, that it must have intended

2    that prior liabilities be extinguished. *See Sekt v. Justice's Court of San Rafael Twp.*, 26 Cal. 2d 297,

3    304 (1945) (the statutory repeal doctrine "is based on presumed legislative intent, it being presumed

4    that the repeal was intended as an implied legislative pardon for past acts"); *see also Zipperer*, 133

5    Cal. App. 4th at 2015 ("The pivotal issue is whether the legislation constitutes 'a substantial

6    reversal of legislative policy' that represents 'the adoption of an entirely new philosophy' vis-à-vis

7    the prior enactment."). The doctrine is not a mechanism through which the judiciary is able to attach

8    unintended consequences to legislative enactments.

9        Uber plainly cannot satisfy the statutory repeal doctrine because Prop 22 did not repeal the

10   provisions of the Labor Code and other provisions on which Plaintiffs rely. Rather, Prop 22 adjusted

11   the particular obligations that apply to app-based companies under the Labor Code. And nothing in

12   the text, operation, or extrinsic discussions of Prop 22 would support the idea that the voters

13   intended Prop 22 to impose new burdens on gig companies retroactively, or to strip workers entirely

14   of all protections in the name of helping them obtain greater flexibility. Uber's arguments for

15   application of the statutory repeal doctrine fail to satisfy the most basic element of the doctrine.

16       **A.  Proposition 22 did not repeal the statutory provisions on which Plaintiffs rely.**

17       California courts only apply the statutory repeal doctrine when the Legislature creates a

18   cause of action by statute and subsequently repeals that statute. *See, e.g.*, *Younger v. Superior Court*,

19   21 Cal. 3d 102, 110 (1978) (subsequent statute revoked the court's statutory jurisdiction over the

20   matter); *Dep't of Soc. Welfare v. Wingo*, 77 Cal. App. 2d 316, 318 (1946) (subsequent statute

21   reduced the penalty for receiving benefits in excess of the amount allowed by statute). But Prop 22

22   did not repeal any of the statutory causes of action on which Plaintiffs rely, even as they relate to

23   app-based drivers. Indeed, there is no language in Prop 22 expressly repealing any existing

24   California statute. *See, e.g.*, *Younger*, 21 Cal. 3d at 110 ("'[A]n express repeal requires that

25   Congress overtly state with specificity that the subsequent statute repeals a portion of the earlier

26   statute.'"). By its text, Prop 22 merely establishes a new exception to AB-5 with its own

27   requirements.

28

1    Nor can Uber show that Prop 22 repealed any statute by implication. Repeals by implication

2  are strongly disfavored by California courts. *See Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,

3  17 Cal. 4th 553, 556 (1998), overturned by statute (Bus. & Prof. C., former § 17204, as amended

4  by Stats.1993, ch. 926, § 2, p. 5198) ("The law shuns repeals by implication. In fact, the

5  presumption against implied repeal is so strong that, to overcome the presumption, the two acts

6  must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent

7  operation."); *People v. Conner*, 229 Cal. App. 2d 716, 718 (1964). "[A]ll presumptions are against

8  a repeal by implication." *W. Oil & Gas Assn. v. Monterey Bay Unified Air Pollution Control Dist.*,

9  49 Cal. 3d 408, 419 (1989).

10    The court in *Western Oil* set forth the stringent elements that must be shown to overcome

11  the presumption against implied repeals:

12    The presumption against implied repeal is so strong that, 'To overcome the
     presumption the two acts must be irreconcilable, clearly repugnant, and so
13    inconsistent that the two cannot have concurrent operation. The courts are
     bound, if possible, to maintain the integrity of both statutes if the two may
14    stand together.' [Citation.] There must be '*no possibility* of concurrent
     operation.' [Citation.] Courts have also noted an implied repeal should not be
15    found unless '. . . the later provision gives *undebatable evidence* of an intent to
     supersede the earlier . . .'
16

17  *Western Oil*, 49 Cal.3d at pp. 419-420 (italics in original). In this case, Uber cannot meet either of

18  the necessary elements of an implied repeal because (1) there is no "undebatable evidence" that

19  Prop 22 intended to supersede AB 5, and (2) the two statutes operate concurrently.

20             **1.  There is no "undebatable evidence" here.**

21    Uber has pointed to no evidence, let alone <u>undebatable</u> evidence, that the electorate intended

22  to strip Plaintiffs of their right to wage protections for work already performed while

23  simultaneously guaranteeing wage protections for future work. Indeed, Uber cites a total of <u>two</u>

24  pieces of extrinsic evidence, neither of which is relevant. Uber notes that the Secretary of State's

25  Legislative Analyst stated that (a) "[t]he state recently passed a law that limits the ability of

26  companies to hire workers as independent contractors" (and the ballot materials did not mention or

27  refer to AB5 at all), and (b) Prop 22 would "make[] app-based rideshare and delivery drivers

28

independent contractors," such that "[t]he new state law that limits the ability of companies to hire independent contractors would not apply to drivers." ECF Dkt. 46 (Uber Mot. to Dismiss at 9–10 (quoting Cal. Sec'y of State, *Proposition 22—Analysis by the Legislative Analyst*, https://voterguide.sos.ca.gov/propositions/22/ analysis.htm).

The evidence required to overcome this presumption is the same type of evidence used to overcome the presumption against retroactive application of a statute. "The fundamental test in all cases [of repeal by implication] is the intention of the Legislature; and an important factor in determining such legislative intent is the purpose or object sought to be achieved by the subject legislation." *People v. Clark*, 241 Cal. App. 2d 775, 779 (1966). "An interpretation which is repugnant to the purpose of the initiative would permit the very 'mischief' the initiative was designed to prevent." *McLaughlin v. State Bd. of Educ.*, 75 Cal. App. 4th 196, 223 (1999) citing *Santa Barbara Cty. Taxpayers Assn. v. Cty. of Santa Barbara*, 194 Cal. App. 3d 674, 68 (1987)).

In reviewing Uber's implied repeal argument, then, this Court must examine the voters' intent and "the purpose or object sought to be achieved" by the passage of Prop 22, and the Court must determine if that intent and purpose suggest repeal. They do not. As described above, Prop 22 adjusted prospectively the protections afforded app-based drivers. Stated simply: the voters intended that app-based drivers would receive certain benefits after Prop 22's effective date. It is implausible to suggest that the voters intended either (a) that Uber would go back in time and provide app-based drivers with the new benefits of Prop 22 retroactively (an outcome Uber seeks to avoid here for self-evident reasons) or (b) that Prop 22 would actually leave those drivers out in the cold, with neither the old protections nor the new protections of the Labor Code for conduct before 2021. This latter result is the exact opposite of the stated purpose of Uber's Prop 22 ballot measure, which conditions Prop 22's new legal test for gig-economy workers on the promise that the gig-economy companies will provide workers with 120% of minimum wage, a reimbursement of 30 cents per mile driven, health subsidies, and other benefits. *See* Cal. Bus. & Prof. Code §§ 7453–7455.

Given the dearth of evidence, Uber is forced to rely upon irrelevant filings by the California Attorney General, which stated that Prop 22 has the "point and purpose" to carve app-based drivers

out of the classification standard existing before Prop 22's effective date. *See* ECF Dkt. 48 (Uber Rep. at 6). As the *Reyesbobadilla* Tribunal noted when reviewing similar "evidence": "The language certainly expresses dissatisfaction with the current state of the law, but does not mention retroactivity at all, much less clearly evidence such an intent." Ex. 1 at 2. Put simply, extrinsic evidence showing a dissatisfaction with prior law is entirely unremarkable and says nothing about retroactive intent. The California Supreme Court's discussion of this point is instructive:

> Most statutory changes are, of course, intended to improve a preexisting situation and to bring about a fairer state of affairs, and if such an objective were itself sufficient to demonstrate a clear legislative intent to apply a statute retroactively, almost all statutory provisions and initiative measures would apply retroactively rather than prospectively. In light of the general principles of statutory interpretation set out above . . . the contention is clearly flawed.

*Evangelatos*, 44 Cal. 3d at 1213.[1]

And again, it is particularly disingenuous for Uber to claim voters wanted Prop 22 to have retroactive effect when Uber and the other gig-economy companies that drafted the measure did not dare ask voters expressly to pass a retroactive law. Having made that decision, it blinks reality for Uber to now claim the voters intended that Prop 22 have retroactive effect. *See id.* at 1211–12 ("Because at least one of the principal institutional proponents and drafters of Proposition 51 was very much involved in the post-MICRA litigation, it appears inescapable that . . . the drafters of Proposition 51 would have included a specific provision providing for retroactive application of the initiative measure if such retroactive application had been intended.).

### 2. AB 5 and Prop 22 do not conflict since they operate concurrently.

Uber also cannot satisfy its burden to meet the second test for implied repeal, which requires that the "two acts [be] so inconsistent that there is no possibility of concurrent operation . . . ." *Prof'l Engineers in California Gov't v. Kempton*, 40 Cal. 4th 1016, 1038 (2007). But because "the law shuns repeal by implication . . . if possible, courts must maintain the integrity of both

---

[1] For the same reason, the fact that Section 7451 now imposes independent contractor status on app-based drivers whose work meets the Section's criteria, "notwithstanding" other Labor Code provisions, Uber Opp'n at 5, says nothing about whether the Legislature intended that language to apply retroactively.

provisions." *Sutter's Place Inc. v. Superior Court*, 161 Cal. App. 4th 1370, 1382 (2008). Courts have specifically examined this rule in the context of overlapping general and specific statutes:

> It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. Where the special statute is later it will be regarded as an exception to or qualification of the prior general one…

*People v. Breyer*, 139 Cal. App. 547, 550 (1934); *see also Med. Bd. of California v. Superior Court*, 88 Cal. App. 4th 1001, 1004 (2001) (finding that a specific statute that overlapped with a general statute did not impliedly repeal the general statute).

Prop 22, a specific statute, is an exception to the general statutory scheme governing employment rights for most California workers; the scheme that governed app-based drivers' rights before Prop 22's passage. Thus, Prop 22—the specific statute—does not effectuate a repeal of the Labor Code and Wage Orders—the general statutes upon which Plaintiffs rely for claims based on conduct before Prop 22's passage. Prop 22 sets a specific set of criteria a company must meet going forward, in order to be subject to a specific set of wage and hour requirements. These criteria are a four-part test that is an alternative to the ABC test applied to other workers. *See* Cal. Bus. & Prof. Code § 7451. Thus, there is nothing in Prop 22 that prevents it from having concurrent operation with *Dynamex*, AB5, the Labor Code, and the Wage Orders. In fact, it is clear from the text of Prop 22 that if an app-based company fails to meet any one of the criteria of the four-part test under Section 7451, an app-based driver is no longer presumed to be an independent contractor. In that instance, the causes of action and remedies available to other employees would be available to an app-based driver. Common sense dictates the same outcome because § 7451 is not mandatory. Thus, a company that voluntarily chooses not to adopt the standards set forth in § 7451 would be bound by the law created by AB5. Prop 22 plainly is a "special statute [that should be] regarded as an exception to or qualification of the prior general one." *Breyer*, 139 Cal. App. at 550. It therefore cannot be said to impliedly repeal the pre-existing statutory scheme such that rights secured prior to Prop 22's enactment are wiped away. In fact, AB5 and Prop 22 operate concurrently.

Given that framework and the facts here, even a brief examination of the cases relied on by Uber shows that the statutory repeal doctrine addresses situations entirely different from this case.

In *Graczyk v. Workers' Compensation Appeals Board*, the California Court of Appeal considered whether a student-athlete was entitled to workers' compensation benefits for an injury suffered while the employment status of student-athletes—under California's worker's compensation regime—was "in flux," and before the Legislature amended the workers' compensation statute to expressly exclude student-athletes from employment status. *See Graczyk v. Workers' Comp. Appeals Bd.*, 184 Cal. App. 3d 997, 1005–07 (1986). The court affirmed the Workers' Compensation Board's determination that the statutory amendment abated the plaintiff's right to worker's compensation benefits. *Id.* at 1009. But that decision was based on <u>express language</u> in the statutory amendment stating that the amendment applied retroactively. *Id.* at 1007. When the Legislature amended the statute it stated its intent to apply that amendment retroactively:

> The Legislature finds and declares that the provisions of law set forth in Sections 8, 9, and 10 of this act, which respectively amend Sections 3352 and 3852 of the Labor Code and add Section 3706.5 to the Labor Code, do not constitute a change in, but are declaratory of, the existing law. These provisions <u>shall apply to all claims filed for injuries occurring prior to the effective date of this act</u>.

*Graczyk v. Workers' Comp. Appeals Bd.*, 184 Cal. App. 3d 997, 1005–06 (1986) (emphasis added).

In *Zipperer v. County of Santa Clara*, the California Court of Appeal held that the plaintiffs had no right of action against their local government for violations of the Solar Shade Control Act, even violations occurring before the government had passed an ordinance exempting itself from the Act. *Zipperer*, 133 Cal. App. 4th at 496. But again, the court held the Legislature had intended any such ordinance retroactive "by apt expression.": "[A]t the very time that the Legislature created the statutory right of action under the Solar Shade Control Act, it expressly empowered cities and counties to foreclose such actions against them." *Id.* at 495.

Uber's other authority fares no better. Those cases dealt with statutes which expressly replaced a cause of action with a right, *see Fitzpatrick v. Tyson Foods, Inc.*, No. 2:16-cv-00058-JAM-EFB, 2016 WL 5395955, at *2 (E.D. Cal. Sept. 16, 2016) ("California shifted from a strict prohibition on domestic origin labeling to one that exempts sellers for selling products that were

1   made in the United States but contain up to a certain percentage of foreign sourced components.");

2   *Rankin v. Longs Drug Stores California, Inc.*, 169 Cal. App. 4th 1246, 1262 (2009) ("Congress has

3   replaced California's prohibition against asking about a certain class of prior convictions with an

4   express right to ask about those convictions."), or eliminated a court's jurisdiction over a matter,

5   *see Younger*, 21 Cal. 3d 102 ("[T]he Legislature has revoked the statutory grant of jurisdiction for

6   this proceeding, and has vested it in no other court."). Remarkably, Uber also relies upon Judge

7   Chen's statement in *James* that Prop 22 "repeal[ed]" AB5 with respect to app-based drivers. *See*

8   Uber Opp'n at 5–6. But Judge Chen's colloquial use of "repeal" in that decision is of no help to

9   Uber; Judge Chen went on to conclude that "Prop 22 does not apply retroactively, at most it

10  forecloses damages in this case for conduct that occurred after December 16, 2020," Prop 22's

11  effective date. *James*, 2021 WL 254303, at *18.

12          Here, on the other hand, Prop 22 did not eliminate the protections afforded employees under

13  California law, which Plaintiffs invoke, and it did not remove employees' right to sue for those

14  protections. Prop 22 merely added a new set of protections and a new test to determine whether a

15  worker is subject to those new protections or the existing set. And Uber presents no evidence that

16  the Legislature or the voters wanted to eliminate all employment protections for app-based drivers

17  during the period prior to Prop 22's effective date. Uber's statutory repeal argument thus collapses

18  under its own weight. To use a hypothetical, imagine if the Legislature passed a law stating that,

19  effective January 1, 2021, all restaurant workers would be entitled to a lower minimum wage, but

20  would be given additional health insurance and would be statutorily entitled to keep all of their tips.

21  Would that law eliminate the right of restaurant workers to sue for minimum wage violations that

22  occurred prior to January 1, 2021? Of course not. And for the same reason, Prop 22 does not

23  eliminate the ability of app-based drivers to pursue claims based on rights that Prop 22 left

24  untouched.

25          To overcome the presumption of prospective application and the presumption disfavoring

26  implied repeal, there must be a clear declaration of intent by the electorate in this case. Uber has

27  not and cannot point to any such clear expression of intent to apply Prop 22 retroactively.

28

**B.  The Business and Professions Code has a general savings clause that precludes application of the statutory repeal doctrine.**

The statutory repeal doctrine does not apply where the statute in question contains a savings clause. *See Rio Linda*, 131 Cal. App. 4th at 528 ("The unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them."). Uber glosses over this requirement, assuming without analysis that Prop 22 lacks such a clause. That assumption is wrong.

The Business and Professions Code, to which Prop 22 added entirely new sections, has a savings clause designed to prevent the very outcome Uber seeks: "No action or proceeding commenced before this code takes effect, and no right accrued, is affected by the provisions of this code, but all procedure thereafter taken therein shall conform to the provisions of this code so far as possible." Bus. & Prof. Code § 4; *see also Sobey*, 40 Cal. App. 2d 381, 388 (1940) (finding that Section 4 "was intended to cover situations, either where the codification made a substantial change in the law, or where the legislature at that or subsequent sessions amended the law in a substantial manner"). This savings clause applies to Prop 22 by virtue of Business and Professions Code Section 12, which provides that "[w]henever such reference is made to any portion of this code or any other law of this State, such reference shall apply to all amendments and additions thereto now or hereafter made." (Emphasis added.) The California Supreme Court has held that "a general saving clause in the general body of the law is as effective as a special saving clause in the particular section." *Peterson v. Ball*, 211 Cal. 461, 475 (1931). Accordingly, the general savings clause of Section 4 must be given the same effect as would "a special saving clause in [Prop 22]," *id.*, and the statutory repeal doctrine is inapplicable.

**C.  The statutory repeal doctrine does not apply to statutory claims with origins in the common law.**

Finally, as Uber concedes, ECF Dkt. 46, 48 (Uber Mot. at 7; Rep. at 2), a newly enacted statute may only abate a pending action if that pending action "rests solely on a statutory basis." *Governing Bd. v. Mann*, 18 Cal. 3d 819, 829 (1977) (emphasis added). By contrast, the statutory repeal doctrine "does not apply to an existing right of action which has accrued . . . by virtue of a statute codifying the common law." *Callet v. Alioto*, 210 Cal. 65, 68 (1930) (emphasis added). In

that situation, "the cause of action is a vested property right which may not be impaired by legislation. In other words, the repeal of such a statute or of such a right, should not be construed to affect existing causes of action." *Id.* (emphasis added).[2]

It is well settled under California law that "[e]arned but unpaid salary or wages are vested property rights, claims for which may not be properly characterized as actions for monetary damages." *Loehr v. Ventura Cty. Cmty. Coll. Dist.*, 147 Cal. App. 3d 1071, 1080 (1983). The vesting of these rights can be traced back to their origins at common law:

> "[E]mployees were entitled to recover unpaid wages and overtime compensation at common law . . . The Labor Code did establish minimum wages for regular compensation and overtime compensation, but under the common law, an employee was entitled to recover a reasonable amount for labor performed in quantum meruit or in an action for breach of contract . . . The Labor Code's minimum wage and overtime provisions simply defined what that reasonable amount was, but they did not create the underlying right of an employee to be paid at a fair rate for his labor or the right of that employee to sue for reasonable compensation if he was not."

*Sims*, 955 F. Supp. 2d at 1117 (emphasis added); *see also Bonilla* at *5 ("Unlike worker compensation benefits, which arise wholly and exclusively from a statutory scheme, California's wage and hour laws represent a mix of common law doctrine and statutory protections."). Because an employee's right to be paid a fair rate for his labor was not created by the statute, it cannot be repealed by statute.

Uber pulls this thread, but does not pull it far enough: It is true that *Dynamex* and AB5 interpreted the protections afforded by the California Labor Code and Wage Orders. But the Labor Code and Wage Orders, in turn, merely clarified every worker's common law right to reasonable compensation for work performed. For that reason, Uber's reliance on *Zipperer* and *Graczky* are again misplaced because neither case involved rights grounded in common law. *Zipperer* involved rights under a statute intended to protect solar panels from shade. *See Zipperer*, 133 Cal. App. 4th

---

[2] Other jurisdictions with ABC tests amended by statute have applied those amendments *prospectively* and held such amendments did *not* terminate pending actions. See *Families, Inc. v. Dir., Dept. of Workforce Services Employer Contribution Unit,* 505 S.W.3d 217, 219-220 (Ark.Ct.App. 2016); *Sinclair Builders, Inc. v. Unemployment Ins. Com.*, 73 A.3d, 1061, 1064, fn. 1 (Me. 2013); *Burns v. Labor & Industrial Relations Com.*, 845 S.W.2d 553, 557 (Mo. 1993); *Midwest Property Recovery v. Job Service of N.D.*, 475 N.W.2d 918, 921-922 (N.D. 1991).

at 494 ("Plaintiffs' claim is wholly statutory, arising as it does from defendant's asserted violation of the Solar Shade Control Act . . . It derives from special remedial legislation." (internal citations and quotation marks omitted)). And *Graczyk* involved an employment benefit—workers' compensation—which lacks the common law foundation of the rights Plaintiffs seek to vindicate here. *See also Graczyk*, 184 Cal. App. 3d at 1005–06 ("The right to workers' compensation benefits is wholly statutory and is not derived from common law." (internal citations and quotation marks omitted)).

Because Plaintiffs have a common law right to, and vested interest in, fair compensation for their past work, the statutory repeal doctrine is inapplicable.

### D.  Retroactive application of Prop 22 would violate the Due Process Clause, and should therefore be rejected under the doctrine of constitutional avoidance.

Finally, to the extent Prop 22 did apply retroactively, it would violate the Due Process Clause. In California, unpaid wages are the employee's property once they are earned and payable. *See Reyes v. Van Elk, Ltd.*, 148 Cal. App. 4th 604, 612 (2007). Unpaid wages thus constitute a vested property right, and a claim for those wages is a vested right as well. *See Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 168, 178 (2000) ("unlawfully withheld wages are property of the employee within the contemplation of the UCL" because "[o]nce earned, [they] became property to which the employees were entitled").[3] Applying Prop 22 retroactively to eliminate Plaintiffs' vested rights would violate the Due Process Clause. *In re Marriage of Buol*, 39 Cal. 3d 751, 763 (1985) (retroactive application of a new rule to govern the division of marital assets was unconstitutional because it "substantially impair[ed] [the wife's] vested property right

---

[3] Applying Prop 22 retroactively will cause app-based work to exist in a statutory vacuum. Prior to the enactment of Prop 22, an Uber driver was entitled to reimbursement of 58.5 cents per mile under the Labor Code. Conversely, Prop 22, codified as Bus. and Prof. Code § 7453(d)(4)(B)(ii), provides "[a]fter the effective date of this chapter [December 16, 2020] and for the 2021 calendar year, the per-mile compensation for vehicle expenses shall be thirty cents ($0.30) per engaged mile." The clear language of section 7453 only provides a right to seek mileage reimbursement on a prospective basis. Uber's logic, taken to an extreme degree, would provide reimbursement of 30 cents per mile to a driver on December 16, 2020 and no reimbursement whatsoever to a driver the day before. It seems unlikely that Prop 22 would have enjoyed the support of the public had it intended to deprive drivers of the right of any reimbursement. Without said mileage reimbursement, the paltry wages paid by Uber are easily offset by the substantial costs of fuel and vehicle maintenance, resulting in negative pay for drivers. For obvious reasons, this would be repugnant to the public policy of California and should not be read into the law.

without due process of law"). Under Section 7467(b), if Prop 22's definition of app-based drivers as independent contractors is held invalid for any reason, "no provision of [Prop 22] shall be deemed valid or given force of law." Accordingly, if this Tribunal concludes that Prop 22 applies retroactively and violates the Due Process Clause, it must hold that Prop 22 is invalid in its entirety.

Of course, as described above, Prop 22 is not even arguably retroactive. However, to the extent a retroactive interpretation were available, the doctrine of constitutional avoidance would require that this Court reject it. "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of [the legislature.]" *People v. Garcia*, 2 Cal. 5th 792, 804, (2017) (quoting *DeBartolo Corp. v. Fla. Gulf Coast Trades Council*, 485 U.S. 568, 575 (1988)). Here, retroactive application of Prop 22 would, at a minimum "raise serious constitutional problems," *id.* And giving Prop 22 only prospective effect would not conflict with any clear expression of legislative intent. Accordingly, the doctrine of constitutional avoidance provides yet another ground on which Uber's position should be rejected.

## CONCLUSION

Based on the foregoing, Amici respectfully request that this Court enter an order finding that Proposition 22 has not abated Plaintiffs' claims.

Dated: March 10, 2021                    Respectfully submitted,

CALIFORNIA EMPLOYMENT LAWYERS
ASSOCIATION

By:
/s/ *Aaron Kaufmann*
Aaron David Kaufmann (CA Bar No. 48580)
Leonard Carder, LLP
1999 Harrison St, Suite 2700
Oakland, CA 94612-3500
(510) 272-0169
akaufmann@leonardcarder.com

Peter S. Rukin (CA Bar No. 178336)
Rukin Hyland & Riggin LLP
201 Mission Street #1250
San Francisco, CA 94105
(415) 421-1800
prukin@rukinhyland.com

PARTNERSHIP FOR WORKING FAMILIES

/s/ *Benjamin S. Beach*

Benjamin S. Beach (CA Bar No. 226383)
Partnership for Working Families
1305 Franklin St., Suite 501
Oakland, CA 94612
(510) 201-0081
bbeach@forworkingfamilies.org

# EXHIBIT A



## ORDER ON PROP 22 RETROACTIVITY

Case Number: 01-20-0002-3191

Antonio Bonilla
 -v-
Postmates, Inc., Bastian Lehmann, Kristin Schaefer, Vivek Patel, Sean Plaice, San Street, Scott Banister, and Kristen Reinke

The Arbitrator issued her amended order on the applicable legal test to apply in this case on January 14, 2021. See Amended Order, dated 1/14/21. In that order, the Arbitrator reserved decision Prop 22's prospective application pending the parties' decision to brief its retroactivity or accept its prospective application for purposes of this case. The parties elected to brief the question. The parties submitted their opening briefs on January 21, 2021 and their responsive briefs on February 8, 2021. Neither party requested a hearing. The Arbitrator now addresses the issue of whether Prop 22 applies prospectively or retrospectively.

## Prop 22 Retroactivity

On November 3, 2020, California passed Proposition 22 characterizing app-based drivers as independent contractors upon satisfaction of certain criteria. Codified as Sections 7448-7467 of the California Business & Professions Code, the initiative became effective on December 16, 2020, five days after the state certified the election results on December 11, 2020. See Cal. Const. art. II § 10(a). Section 7451 declared "an app-based driver is an independent contractor and not an employee or agent" if the hirer satisfies "four conditions."  Cal. Bus. & Prof. Code § 7451. Once effective, all workers who satisfy Section 7451's conditions will be statutorily deemed independent contractors. The parties dispute Section 7451's effective application date: respondents assert that it applies retrospectively to claimant, and claimant argues that it applies prospectively only and that its retroactive application would violate the constitution.

Unlike judicial decisions which generally apply retroactively absent an exception, statutes apply prospectively unless they explicitly provide otherwise. See Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994); United States v. Sec. Indus. Bank, 459 U.S. 70, 79-80 (1982) ("The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student...retrospective operation will not be given to a statute which interferes with antecedent rights...unless such be the unequivocal and inflexible import of the terms, and the manifest intention of the legislature"); Cal. Civ. Code § 3 (statutes only apply retroactively if "expressly so declared"); Myers v. Philip Morris Companies, Inc., 28 Cal. 4th 828, 840 (2002); Tapia v. Superior Court, 53 Cal. 3d 282 (1991); Evangelatos v. Superior Court, 44 Cal. 3d 1188, 1209, 1214 (1988); see also Cal. Bus. & Prof. Code § 4 (No action or proceeding commenced before this code takes effect, and no right accrued, is affected by the provisions of this code, but all procedure thereafter taken therein shall conform to the provisions of this code so far as possible.); Cal. Lab. Code § 4 (same).

Here, Section 7451 contains no express declaration of retroactivity and thus applies prospectively

unless an exception applies. See Evangelatos, 44 Cal. 3d at 1212 (the drafters declined to insert retroactivity provision perhaps to avoid the adverse political consequences). Respondents argue that the California Supreme Court recognizes an exception to prospective statutory application and will apply a statute retroactively even without an express retroactivity provision when "it is clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application." See id. at 1208–09. Respondents then posit that the extrinsic sources here support retroactivity.

In Evangelatos, the California Supreme Court held that propositions, like other statutes, presumptively apply prospectively and not retroactively. Id. at 1214. It further held that extrinsic evidence can overcome this presumption if "it is very clear" that the voters must have intended retroactive application. Id. at 1194, 1209. The Court considers the statute's language, purpose, context, and voter materials in determining if the proposition applies retroactively even in the absence of an express declaration of retroactivity. See, e.g., id.; see also In re Marriage of Bouquet, 16 Cal. 3d 583, 587 (1976).

Statutory Language

Examining the statute's language, respondents point out that Section 7451 uses the present tense "is an independent contractor," suggesting a current and even backward looking intent when classifying gig economy workers in contrast to its other provisions, which use "shall," indicating a future looking intent. Respondents interpret this deliberate language choice as evidence of voter intent to preserve gig workers' already existing status as independent contractors and to overturn AB 5, which would arguably takeaway that status and convert them to employees.

However, before Section 7451, gig economy worker status as independent contractors remained far from clear, hence this arbitration and many more like it. AB 5 did not declare such workers employees but instead replaced the Borello test with the ABC test. Thus, Section 7451 changed the law rather than preserved pre- AB 5 conditions because Section 7451 did not reinstate the Borello test but rather defined such workers as independent contractors upon satisfaction of enumerated conditions. Moreover, the statute's language is susceptible to different interpretations and is thus ambiguous: it could be as respondents suggest or it could simply be a declaratory sentence. Since the new provision adds a definitional component to the code, the voters could just as easily have used the to be verb "is" to define the workers' classification, without any retroactive intent behind it. See Strauss v. Horton, 46 Cal. 4th 364, 471 (2009), modified (June 17, 2009), and abrogated, Obergefell v. Hodges, 576 U.S. 644 (2015) (present tense not clear demonstration of retroactive intent); see also McClung v. Employment Dev. Dep't, 34 Cal. 4th 467, 471 (2004) (statute not retroactive despite present tense); Myers, 28 Cal. 4th at 842 (same). For these reasons, the statute's language cannot overcome the presumption of its prospective application because the California Supreme Court requires a retroactive intent to be "manifest," "unequivocal," and "unavoidable" before it will apply an initiative retroactively in the absence of an express retroactivity clause. Evangelatos, 44 Cal. 3d at 1207 (quoting United States v. Security Indus. Bank, 459 U.S. 70, 79-80 (1982)).

Statutory Purpose

Respondents also argue that Section 7451 must apply retroactively to serve its remedial purpose, citing People v. Superior Court (Lara), 4 Cal. 5th 299 (2018). In Lara, the California Supreme Court applied a ballot measure retroactively because the voters demonstrated

2

an intent to lessen severe criminal punishment. Id. at 307. Section 7451 does not implicate criminal punishment. Accordingly, the Arbitrator finds Lara distinguishable.

Moreover, in the civil context, the California Supreme Court rejected this argument as circular: voters usually adopt initiatives to improve the law; otherwise, they would presumably vote against the measure. Consequently, the Court found the remedial purpose insufficient to demonstrate a retroactive intent:

> a remedial purpose does not necessarily indicate an intent to apply the statute retroactively. Most statutory changes are, of course, intended to improve a preexisting situation and to bring about a fairer state of affairs, and if such an objective were itself sufficient to demonstrate a clear legislative intent to apply a statute retroactively, almost all statutory provisions and initiative measures would apply retroactively rather than prospectively.

Evangelatos, 44 Cal. 3d at 1213. As claimant emphasizes, a desire to change the law does not itself equate to retroactive intent or else all new laws would apply retroactively.

Further, Prop 22 did more than enshrine app-based gig driver status as independent contractors: it afforded them modified Labor Code protections, such as a flat fee mileage reimbursement for "engaged miles," a guaranteed "net earnings floor" for "engaged hours," health care credits, and other benefits traditionally not available to independent contractors, who instead must provide their own protections as independent entrepreneurs. See Cal. Bus. & Prof. Code Sections 7453-7455. Yet, the voters did not manifest their intent to require the hiring entities of app-based gig drivers to retroactively afford such drivers these new modified benefits. But arguably, hiring entities would be required to do so if Prop 22 applied retroactively. Such a retroactive application, however, would create jurisprudential difficulties as tribunals and courts struggle with unwinding the clock and retroactively determining who would be entitled to which new benefits for work already performed and for what period of time. In short, the Arbitrator finds this interpretation impractical as well as inconsistent with Evangelatos. While Section 7451 may "protect" couriers "from the threat of AB 5," it does so prospectively.

Statutory Context

Respondents also look to Section 7451's legislative history and voter information in support of their retroactivity argument. See Strauss, 46 Cal. 4th at 472 (ballot pamphlet supplies potentially informative extrinsic source of voter intent). The California Supreme Court examined such sources in deciding a measure's retroactivity. For example, in Mannheim, the Court applied the statute retrospectively because it incorporated by reference a separate statutory scheme which had expressly been made retroactive. Mannheim v. Superior Court, 3 Cal. 3d 678, 686-87 (1970). The Court reasoned that the Legislature must have intended the second statute to operate in the same manner as the first statute upon which the Legislature based it. Id. Similarly, in In re Marriage of Bouquet, the Court applied the statute retroactively because the Legislature adopted a resolution declaring its retroactive intent, shortly after the statute's enactment. In re Marriage of Bouquet, 16 Cal. 3d 583, 588-91 (1976).

Here, while respondents cite to the Voter Guide generally explaining Prop 22 and to a single legislator's tweet warning of retroactivity, they have not cited to any proclamation or other reference in the election materials which provides evidence comparable to that the Court found persuasive in Mannheim and Marriage of Bouquet. Quite the opposite, the legislative history and

3

voter materials here do not suggest the voters even thought about retroactivity, much less intended it. As the Court held in <u>Evangelatos</u>, there is no "reason to believe that the electorate harbored any specific thoughts or intent with respect to the retroactivity issue at all." 44 Cal. 3d at 1212. Accordingly, the Arbitrator holds that Section Prop 22 applies prospectively. <u>Accord</u> <u>James v. Uber Technologies</u>, No. 19-CV-06462-EMC, 2021 WL 254303, at *17 (N.D. Cal. Jan. 26, 2021). In light of this ruling, the Arbitrator declines to reach the issue of the constitutionality of Prop 22's retroactive application.

<u>Civil Penalties</u>

Separately from complete retroactivity, respondents argue that, at a minimum, they should not be subject to civil penalties for allegedly misclassifying claimant. They proffer that the California Supreme Court extended the <u>Estrada</u> rule beyond the criminal penalties context to prevent the imposition of civil penalties and forfeitures based upon violations subsequently overturned by voter initiative. <u>See</u> <u>People v. Durbin</u>, 64 Cal. 2d 474, 479 (1966). Respondents are correct: while the <u>Estrada</u> rule originated in the criminal context, courts have extended it to civil penalties as well.  <u>Durbin</u>, 64 Cal. 2d at 479 (the <u>Estrada</u> rule "equally applies to the reduction or elimination of civil penalties or forfeitures").

The difference here is that Prop 22 did not eliminate or reduce any civil penalties. Sections 7448-7467 did not address civil penalties at all. All Labor Code and ICW Order civil penalties remain in effect. Prop 22 simply changed the ease with which certain workers will be apply to invoke them. Accordingly, the Arbitrator holds that Prop 22 does not retroactively preclude civil penalties, if applicable, in this case.

**<u>The Abatement Doctrine</u>**

Respondents also assert the abatement doctrine as a separate basis for extinguishing claimant's claims. Claimant responds that respondents use "abatement" improperly as merely their retroactivity arguments disguised in statutory repeal clothing. While the theories share commonalities, such as an examination of the nature of the underlying rights involved and legislator or voter intent in terminating those rights, abatement operates as a separate doctrine from retroactivity. <u>See</u> <u>Physicians Comm'n for Responsible Med. v. Tyson Foods, Inc.</u>, 119 Cal. App. 4th 120, 125 (2004). As California courts have explained, statutes have retroactive effect when they "substantially" change the legal consequences of past events, whereas statutes abate nonfinal claims in their entirety when they repeal the statutory source of those claims without a savings clause. <u>Id.</u>  In applying the abatement doctrine, the courts examine the following factors: (1) the finality of the claims; (2) the basis of the claims; (3) the vested nature of the claims; (4) the intended elimination of the right of action or remedy; and (5) the mechanism used to eliminate the right. <u>See</u> <u>Fitzpatrick v. Tyson Foods, Inc.</u>, 2016 WL 5395955, at *3 (E.D. Cal. Sept. 27, 2016); <u>Zipperer v. County of Santa Clara</u>, 133 Cal. App. 4th 1013, 1023 (2005).

<u>Finality of Claims</u>

Abatement only applies to nonfinal claims. Claims still existing, even on appeal after judgment, remain subject to statutory repeal or abatement. <u>Physicians</u>,119 Cal. App. 4th at 125. Respondents easily satisfy this requirement as the Arbitrator has not yet finally adjudicated claimant's claims in this arbitration.

4

<u>Savings Clause</u>

Abatement does not apply where the statute in question contains a savings clause. <u>See</u> <u>Rio Linda Union Sch. Dist. v. Workers' Comp. Appeals Bd.</u>, 131 Cal. App. 4th 517, 528 (2005). Claimant argues that the Business & Professions Code Section 4 operates as a general savings clause which Section 12 renders applicable to Prop 22. The Arbitrator disagrees. <u>See</u> <u>Palmer v. Stassinos</u>, 419 F. Supp. 2d 1151, 1157 (N.D. Cal. 2005). Section 4 can save laws existing at the time the legislature enacted Section 4 but not necessarily those which add entirely new provisions, rather than amend existing laws. The Arbitrator rules that neither Prop 22 nor the Business & Professions Code generally contain a savings clause applicable here and that respondents therefore satisfy this factor as well.

<u>Basis of the Claims</u>

The underlying claims must be solely statutorily based for abatement to apply. <u>See</u> <u>Brenton v. Metabolife Int'l Inc.</u>, 116 Cal. App. 4th 679, 691 (2004) (claim authority "rests solely" on statutory grounds revoked by subsequent statute); <u>accord</u> <u>Younger v. Superior Court</u>, 21 Cal. 3d 102, 109 (1978) (new statute abates claim "wholly dependent" on prior repealed statute). Respondents maintain that all of claimant's claims are grounded in the statutory scheme Prop 22 repealed because worker classification tests are all "wholly creatures of statute." <u>See, e.g.</u>, <u>Graczyk v. Workers' Comp. Appeals Bd.</u>, 184 Cal. App. 3d 997, 1002–03 (1986). Claimant responds that abatement does not apply when the claims rest on common law principles or when the legislature based the statute, here the Labor Code and ICW Orders, on common law principles. <u>See</u> <u>Sims v. AT & T Mobility Servs. LLC</u>, 955 F. Supp. 2d 1110, 1117 (E.D. Cal. 2013)

Respondents misinterpret <u>Graczyk</u>. In that case, the court did, as respondents assert, reject Graczyk's allegation that he had a vested right in his employee status under the legal test applicable at the time of his injuries, a status he argued the legislature could not repeal by later amendment. <u>Graczyk</u>, 184 Cal. App. 3d at 1002. Yet, the court never held that worker classification tests are wholly creatures of statute. The court did examine the basis and nature of his claim; but in doing so, it analyzed the basis and source of workers compensation claims and held the right to workers' compensation benefits to be "wholly statutory." <u>Id.</u> It then went on to explain that the Code created an entirely new statutory scheme that displaced all prior statutory and common law remedies to become the exclusive avenue of redress for such injuries. <u>Id.</u> at 1003. Finally, the court relied upon the later amendment's express retroactivity clause:

> These provisions shall apply to all claims filed for injuries occurring prior to the effective date of this act.

<u>Id.</u> at 1006. Ultimately, the court held that the later amendment repealed the prior statute because "the right of action did not exist at common law" and Graczyk's claims were still pending. <u>Id.</u> at 1006-07. The court never addressed the basis of worker classification tests or other worker rights.

Unlike worker compensation benefits, which arise wholly and exclusively from a statutory scheme, California's wage and hour laws represent a mix of common law doctrine and statutory protections. The Labor Code and the ICW Orders are both statutory in nature, but the right to compensation for work performed stems from the common law principles of quantum meruit, contract, and unjust enrichment. <u>See</u> <u>Sims</u>, 955 F. Supp. 2d at 1116-18. Accordingly, the Arbitrator finds that the underlying claims here are not solely statutorily based and that this factor

operates against the application of the abatement doctrine in this case.

<u>Vested Rights</u>

Abatement only applies if the underlying statutory rights have not yet vested. <u>Physicians</u>, 119 Cal. App. 4th at 125; <u>see also</u> Cal. Gov't Code Section 9606 (Any statute may be repealed at any time, except when vested rights would be impaired). Claimant urges that he already has a vested property right in compensation for work already performed. <u>See</u> <u>Cortez v. Purolator Air Filtration Products Co</u>., 23 Cal. 4th 163, 168, 178 (2000); <u>see also</u> <u>Loehr v. Ventura Cty. Cmty. Coll. Dist</u>., 147 Cal. App. 3d 1071, 1080 (1983) (under California law earned but unpaid wages are vested property rights). Respondents counter, citing <u>Graczyk</u>, that claimant has no such vested property right because they have already paid claimant based upon the parties' contract and that any additional compensation would only be due if the tribunal finds claimant worked as an employee, rather than an independent contractor.

In <u>Graczyk</u>, an injured student-athlete argued that he had a vested right to "employee status under the law existing at the time of his injuries," and thus an amendment to the applicable statutory classification test—an amendment specifically excluding athletes from the definition of "employee"—did not apply to his pending claims. 184 Cal. App. 3d at 1001.  The court rejected his argument, finding no vested rights under the statutory benefits scheme applicable to employees. <u>Id</u>. at 1006–07; <u>see, e.g.</u>, <u>Angelotti Chiropractic, Inc. v. Baker</u>, 791 F.3d 1075, 1081–82 (9th Cir. 2015) (a "property interest" does not "vest" where it is "contingent and uncertain"). Basically, the court found that the legislature could, and did, deliberately change the definition of employee to exclude athletes. Importantly, the court also found that the legislature expressly stated its desire to apply the new definition retroactively, thus barring Graczyk's claims.

Here, as explained above, the Arbitrator finds no voter intent to apply a new definition of independent contractor for app-based drivers retroactively. Moreover, the claimant's right, if any, to additional wages is not uncertain: the right already exists if claimant worked as an employee. The work has already been performed. Claimant has an existing right to be paid for that work. The only dispute is the amount. If claimant worked as an independent contractor, then the amount already paid by respondents would presumably suffice. If he worked as an employee, then it would not. Claimant either worked as an employee or he did not – whatever the applicable test. If he did, then he has a vested property right to specific minimum wages for work performed as an employee. If respondents did not pay him those wages, then he has a property right to claim them. The Arbitrator finds <u>Graczyk</u> distinguishable.

<u>Statutory Repeal of those Rights</u>

Respondents maintain that Prop 22 repealed AB 5 as to app-based gig drivers because it declared those drivers independent contractors "notwithstanding any other provision of law." <u>See</u> <u>James</u>, 2021 WL 254303, at *17 (Prop 22 repealed AB 5 as to app-based drivers). Claimant naturally contends that Prop 22 repealed nothing but instead created a narrow exception for specific types of drivers. Respondents acknowledge that Prop 22 did not repeal AB 5 in its entirety but only as to app-based drivers when they satisfy specific criteria. Nevertheless, they correctly point out that repeal may be partial. <u>See</u> <u>Zipperer</u>, 133 Cal. App. 4th at 1023-25.

Abatement operates when a new statute expressly or impliedly repeals a prior statute before final judgment. Here, Prop 22 did not by its terms expressly repeal AB 5 in whole or in part. <u>See</u> Cal.

6

Bus. & Prof. Code Sections7448-7467; Younger, 21 Cal. 3d at 110 (express repeal requires overt statement).  Thus, abatement in this case must rest on repeal by implication.

California courts strongly disfavor implied repeal. People v. Conner, 229 Cal. App. 2d 716, 718 (1964). A repeal by implication can only be found if the inconsistency between two statutes prohibits their concurrent operation. Prof'l Engineers in California Gov't v. Kempton, 40 Cal. 4th 1016, 1038 (2007). Indeed, courts must endeavor to maintain both statutes' integrity if possible. Sutter's Place Inc. v. Superior Court, 161 Cal. App. 4th 1370, 1382 (2008). Although disfavored, when a subsequently enacted specific statute directly conflicts with an earlier, more general provision, the subsequent legislation can effectuate a limited repeal of the former statute to the extent that the two are irreconcilable. Mann, 18 Cal. 3d at 828. Respondents argue that Prop 22 took away claimant's rights. Relying again on Graczyk and other cases, respondents argue that the legislature defined claimant's status and rendered it irreconcilable with AB 5.

But, unlike in the cases cited by respondents, the voters here did not "take away the right of action itself." See Fitzpatrick, 2016 WL 5395955, at *3. Instead, they declared app-based workers independent contractors if they satisfy the enumerated criteria. In other words, they changed the proof or test requirements to treat app-based drivers as independent contractors. Now, the hiring entity must prove Section 7451's foundational prerequisites instead of the ABC prongs or the Borello factors. Basically, the voters changed the presumption and the test, making it easier for companies engaging app-based drivers, to contract with them as independent contractors; but they did not eliminate the underlying "right of action" because even app-based drivers working after December 16, 2020, contractually labeled as independent contractors, and statutorily presumptively declared independent contractors, can still prove that the tribunal should reclassify them as employees entitled to bring wage and hour claims if they can prove that the hiring entity did not meet Section 7451's foundational requirements. The voters did not declare "something once unlawful now lawful:" it remains unlawful in California not to provide employees the wages and rights conferred by the Labor Code and wage orders; rather, through Prop 22, the voters changed how tribunals should decide post-Prop 22 if app-based drivers fall within those protections. Compare Rankin v. Longs Drug Stores California, Inc., 169 Cal. App. 4th 1246, 1253 (2009). Accordingly, after examining in detail all the relevant factors, the Arbitrator concludes that Prop 22 did not impliedly repeal AB5 and does not abate or extinguish claimant's claims in this arbitration.

## Order and Scope of this Order

The Arbitrator holds that Prop 22 applies prospectively only, does not remove the availability of civil penalties, if applicable, and does not abate claimant's claims. This Order does not decide whether claimant performed services for respondents as an employee or independent contractor under California law. The Arbitrator reserves decision on that issue. This is not a final award.

This Order shall continue in effect unless and until amended by subsequent order of the Arbitrator.

February 9, 2021

/s/ Janice L. Sperow
Janice L. Sperow, Arbitrator

7

# EXHIBIT B

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

## AAA Case # 01-19-0004-6418

Jeison Reyesbobadilla

    **Claimant**

v.

Postmates, Inc.

    **Respondent**

### Supplemental Order re: Claimant's Motion for Partial Summary Judgment

Claimant filed his Motion for Partial Summary Judgment Under Federal Rule of Civil Procedure 56 on May 29, 2020. I granted that Motion on November 25, 2020 and ordered the following:

> This Order applies to any claim arising out of interpretation of §§ 2775, 2776, 2777 and California's wage orders. Counsel are directed to verbally meet and confer to discuss the application of this Order to Claimant's claims and to provide a joint status report on that issue no later than December 1, 2020. To the extent the Parties disagree about the scope of this Order to Claimant's claims, I will promptly schedule a hearing to resolve any such disputes.

The Parties were unable to agree on the application of the Order to the Claimant's claims. Following the Parties' Joint Status Report, the Parties filed briefs on that issue on December 14, 2020 and reply briefs on December 30, 2020.

A hearing took place via Zoom meeting on January 4, 2021. Ms. Knowles appeared on behalf of the Claimant. Mr. Iradjpanah, Ms. Goldberg and Ms. Manso appeared on behalf of Respondent. Counsel further responded to an inquiry of the Arbitrator on January 7, 2021.

Pursuant to the extensive briefing and the arguments of counsel and being otherwise fully advised, the Arbitrator finds and orders as follows:

In my summary judgment Order, I found that Claimant is an employee and not an independent contractor for "any claim arising out of the interpretation of [Cal. Labor Code] §§ 2775, 2776, 2777 and California's wage orders." Order, p. 7. At issue here is how that finding affects Claimant's remaining claims for relief. Those claims are:

      1.     Cal. Labor Code § 1194 and Industrial Welfare Commission, Wage Order 9 (failure to provide a minimum wage),

      2.     Los Angeles Municipal Code Sec. 1, Art 7, Sec 187, *et seq.*, and

      3.     Cal. Labor Code § 226 (a) and (c) (failure to provide proper wage statement and provide access to personnel records).

Claimant withdrew his claims arising under:

      1.     Los Angeles County Municipal Code Ch. 8, Sec. 100, *et seq.*,

      2.     Pasadena Municipal Code Ch. 5, Art. 9, Sec. 2 (payment of a city-wide minimum wage), and

      3.     Cal. Bus. & Prof. Code § 17200 (unfair and unlawful business practices).

      Postmates argues that my Order does not apply to any of the Claimant's claims because: 1) California recently passed Proposition 22 which makes workers such as Claimant independent contractors and Proposition 22 should be applied retroactively; 2) The basis for my prior analysis – AB5 and AB2257 – are unconstitutional; and 3) the Federal Aviation Administration Act ("FAAAA") preempts the ABC test set forth in AB5 and AB2257.

Proposition 22

      Postmates argues that Proposition 22 should be applied retroactively, even without an express retroactivity provision, because it is clear from extrinsic sources that the Legislature and voters intended it to be retroactive. Mr. Reyesbobadilla argues that there is no mention of retroactivity in Proposition 22 and it would be improper to imply such an intent. Both sides agree that the analysis of the retroactivity determination is guided by *Evangelatos v. Superior Court*, 44 Cal. 3d 1188 (Cal. 1988).

      In *Evangelatos*, the California Supreme Court held that propositions, like other statutes, are presumptively prospective and not retroactive. *Id.* at 1214 ("The presumption of prospectivity assures that reasonable reliance on current legal principles will not be defeated in the absence of a clear indication of a legislative intent to override such reliance.") Here, Respondent has not provided clear evidence of legislative intent to make the Proposition retroactive.

      Respondent cites language in the Proposition and the Voter Guide that it claims evidences an intent to apply the Proposition retroactively. Having reviewed the language, I disagree. The language certainly expresses dissatisfaction with the current state of the law, but does not mention retroactivity at all, much less clearly evidence such an intent. Nor can I take seriously a politician's posting of an opinion on Twitter.

      Finally, Postmates argues that because the Proposition should "be liberally construed in order to effectuate its purposes", it should be applied retroactively, citing *People v. Superior Court (Lara)*, 4 Cal. 5th 299 (Cal. 2018). However, *Lara* is easily distinguished. In *Lara*, the California Supreme Court considered whether or not a proposition that required juveniles to be charged in the first instance in juvenile court rather than adult court was to be applied retroactively. In that case, the Court specifically relied on the principle that when the Legislature amends a statute to provide lesser criminal punishment (what the Court referred to as "ameliorative changes"), it is an "inevitable inference" that the Legislature intended retroactivity. *Lara* at 307, citing *In re Estrada* (1965) 63 Cal.2d 740 (Cal.1965). Proposition 22, of course, has nothing to do with lessening criminal punishment.

Perhaps more importantly, the *Lara* court held that the phrase "be liberally construed in order to effectuate its purposes" was not "not alone decisive". *Lara* at 309.

For the foregoing reasons, I find that Proposition 22 will not be applied retroactively. I likewise decline Respondent's request to stay this matter until the retroactivity issue is resolved by the California courts. That would likely take years and would deny the parties a timely decision in this case.

Constitutionality of AB5 and AB2557

Postmates argues that AB5 and AB2257 violates the U.S. and California Constitutions, including the Equal Protection and Contract Clauses. It is currently challenging the constitutionality of these statutes in *Olson v. Becerra*, 2:19-cv-10956 (C.D. Cal.)

It is undisputed that Respondent was aware of this argument from the outset of this case. It is raised as an affirmative defense in its Answering Statement. It could have made this argument in response to Claimant's Motion for Partial Summary Judgment, but for reasons known only to Respondent, did not. As such, I find that Respondent waived this argument.

Even if the argument was not waived, it fails on the merits. The *Olson* court has already denied Postmate's Motion for Preliminary Injunction in that case, finding that Respondent is unlikely to succeed on the merits. Because the issues in *Olson* are constitutional issues, where the material facts are not likely to change before trial, I find the Court's reasoning in *Olson* to be persuasive here.

For the foregoing reasons, I find that the defense that AB5 and AB2557 are unconstitutional has been waived and, even if not waived, fails on the merits.

FAAAAA Preemption

Respondent next argues that Mr. Reyesbobadilla's claims are barred because it is a "motor carrier" under the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501, and the claims are connected with and/or refer to Respondent's prices, routes or services. Under the FAAAA, a "motor carrier" is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102.

This issue has been decided by the California Court of Appeals, which has held that the FAAAA does not preempt the ABC test, *Dynamex* or its codification in AB2257. *People v. Superior Court*, 57 Cal.App.5th 619 (2020) (Littler Mendelson appearing on behalf of Amicus Curiae).

For the foregoing reasons, I find that the FAAAAA does not preempt Claimant's claims.

Cal. Labor Code § 1194 and Industrial Welfare Commission, Wage Order 9 (failure to provide a minimum wage)

This claim arises under Wage Order 9. However, Respondent argues that this claim should nonetheless should not be subject to my summary judgment order because in his damage calculation, "Claimant used the IRS mileage reimbursement rate to calculate Claimant's reasonable business expenses . . .". Respondent interprets this as a claim under Cal. Labor Code § 2802 ("An employer shall indemnify his or her employee for all necessary expenditures or

losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."). Postmates argues, without citation to legal authority, that because mileage reimbursement is an "essential piece" of the wage claim, the claim ceases to be governed by Wage Order 9 and AB2557.

AB2257, codified as Cal. Labor Code § 2775, *et. seq.*, provides: "**For purposes of this code** and the Unemployment Insurance Code, and for the purposes of wage orders of the Industrial Welfare Commission, a person providing labor or services for remuneration shall be considered an employee rather than an independent contractor unless the hiring entity demonstrates that all of the following conditions are satisfied:" § 2775(b)(1). (emphasis added). "The code" then goes on to provide in § 2802 that "An employer shall indemnify his or her employee for all necessary expenditures . . . ". Therefore an "employee" under section 2775 is and "employee" under § 2802.

While the parties disagree about whether or not the provisions of AB5/AB2257 should be applied retroactively to non-wage order claims for work performed on or after January 1, 2020, that distinction is irrelevant for this claim because it is a wage order claim. Whether *Dynamex*, AB5 or AB2557 applies, Respondent failed to meet the requirements of Prong B.

For the foregoing reasons, Mr. Reyesbobadilla is an employee for purposes of this claim.

Los Angeles Municipal Code Sec. 1, Art 7, Sec 187, et seq.

Like the first claim for relief, this is also a wage order claim. The Los Angeles Municipal Code defines an employee as a person who works for at least two hours a week in the city and "any individual who: 2. Qualifies as an Employee entitled to payment of a minimum wage from any Employer under the California minimum wage law, as provided under Section 1197 of the California Labor Code and wage orders published by the California Industrial Welfare Commission." LAMC § 187.01(C)

For the reasons set forth above, Mr. Reyesbobadilla is an employee for purposes of the Los Angeles Municipal Code for any week that he performed more than two hours of work in the city.

Because I have not yet determined any damages or penalties under the LAMC, I take no position on the constitutionality of any aspect of the damages award. Those arguments can be raised again by Respondent in the pre-hearing briefs and at the hearing.

Cal. Labor Code § 226 (a) and (c) (failure to provide proper wage statement and provide access to personnel records).

Cal. Labor Code § 226 (a) requires employers to provide employees an accurate itemized wage statement when wages are paid. After the passage of AB5, Mr. Reyesbobadilla is clearly an employee for purposes of this section of "the code". Prior to the passage of AB5, Mr. Reyesbobadilla is an employee because the wage statement provision of the Code is "rooted in" Wage Order 9. *Gonzales v. San Gabriel Transit, Inc.*, 40 Cal. App. 5th 1131 (Cal. App. 2019) (ABC test applied to all claims "rooted in one or more wage orders")

Cal. Labor Code § 226 (c) requires employers to permit inspection of employment records upon request of an employee. These employee records relate to wages but also many

aspects of the employment relationship that have nothing to do with wages. For this reason, they are not "rooted in" a wage order. Because they are not rooted in a wage order, Mr. Reyesbobadilla is employee for purposes of the statute only for work performed on or after January 1, 2020, the effective date of AB5. Mr. Reyesbobadilla is an employee for work performed before that date only if he is an employee under *Borello*. The holding in *Dynamex* was limited to wage order claims and I find nothing in the language of AB5 that would make this provision retroactive absent specific language providing for that in the statute.

This is an order and not a final award. It is subject to modification at any time prior to the final award and is not subject to confirmation or vacature proceedings.

Dated:  January 8, 2021

_____
David M. Tenner, Arbitrator