1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JERICHO NICOLAS, et al.,

              Plaintiffs,

    v.

UBER TECHNOLOGIES, INC.,

              Defendant.

Case No.  19-cv-08228-PJH

**ORDER GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Re: Dkt. No. 46

Defendant Uber Technologies, Inc.'s ("defendant") motion to dismiss plaintiffs' Mark Glinoga ("Glinoga"), Alexis Gonzalez ("Gonzalez"), and Kevin Neely ("Neely") (collectively, "plaintiffs") third amended complaint (Dkt. 46) came on for hearing before this court on February 25, 2021.  Plaintiffs appeared through their counsel, Ron Zambrano and Melineh Kasbarian.  Defendant appeared through its counsel, Theane Evangelis.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby **GRANTS** defendant's motion.

## BACKGROUND

This case is a putative wage and hour class action premised on the alleged violation of various California and federal labor laws.  Defendant develops and maintains a technology platform that connects riders with ride-share drivers through a mobile-device application (the "Uber App").  Dkt. 44 (Third Amended Complaint ("TAC")) ¶ 15. Plaintiffs seek to represent a class comprising all persons who have worked as drivers for defendant within California.  Id. ¶ 1.

The instant order reflects the court's third consideration of plaintiffs' pleadings.  On

United States District Court
Northern District of California

July 17, 2020, the court dismissed all claims alleged in plaintiffs' first amended complaint ("FAC"). Dkt. 36 (the "July 17, 2020 order") at 24. To the extent plaintiffs premised any such claim on a labor law violation that occurred on or after March 1, 2019, the court permitted leave to amend. Id. Otherwise, to the extent plaintiffs premised a claim on a violation that occurred before March 1, 2019, the court dismissed any such claim with prejudice. Id. The court reasoned that any claim resting on a pre-March 1, 2019 violation was precluded pursuant to a class settlement reached in an action before Judge Chen, O'Connor v. Uber Techs., Inc., 13-cv-03826-EMC. Id. at 17-20.

In that same order, the court compelled the claims for 45 of the 48 plaintiffs named in the FAC to individual arbitration. Id. at 7-15. With respect to those 45 plaintiffs, the court stayed further litigation of their Labor Code § 2698 claim under California's Private Attorney General Act ("PAGA") pending completion of their arbitrations. Id. at 13-15. It appears that those arbitrations remain ongoing.

On August 14, 2020, plaintiffs filed their second amended complaint ("SAC"). Dkt. 37. On December 7, 2020, the court again dismissed all claims in that pleading. Dkt. 43 (the "December 7, 2020 order") at 19. The court dismissed the following three claims with prejudice:

1. Violation of California Labor Code ("Labor Code") § 1174.5 and the Industrial Welfare Commissions ("IWC") Wage Order No. 4 ("Wage Order 4") § 7 premised on defendant's failure to maintain required records. Id. at 18-19.

2. The Labor Code § 2698 claim seeking civil penalties as an "aggrieved employee" for the above-referenced violations of the California Labor Code. Id.

3. Violation of Labor Code § 2750.3 for misclassification of plaintiffs' employment status. Id.

The court permitted plaintiffs leave to amend their remaining six claims. Dkt. 43 at 18. The court directed plaintiffs to correct all factual deficiencies in those claims and follow certain instructions when amending their minimum wage and overtime claims. Id. at 19. In its analysis below, the court will detail the deficiencies identified and steps

2

United States District Court
Northern District of California

outlined per claim in its December 7, 2020 order.

On January 4, 2021, plaintiffs filed their operative TAC.  Dkt. 44.  In it, plaintiffs maintain substantively identical background and class allegations to those proffered in the SAC.  Dkt. 45 ¶¶ 1-69 (redline comparing TAC with SAC).

Critically, plaintiffs continue to allege that, since the California Supreme Court's decision in Dynamex Operations West v. Superior Court, 4 Cal. 5th 903 (2018) (Dynamex) and the California state legislature's passage of Assembly Bill 5 (A.B. 5) (previously codified at Labor Code § 2750.3 but subsequently recodified at Labor Code § 2775), defendant has misclassified plaintiffs as "independent contractors" rather than "employees."  TAC ¶¶ 21-54.  Based on that purported misclassification, plaintiffs allege claims for the following:

1. Violation of Labor Code §§ 201-04, 218.5, and 218.6 premised on defendant's failure to pay timely earned wages during employment and on separation of employment.  Id. ¶¶ 70-85.

2. Violation of Labor Code §§ 1182.12, 1194, 1194.2, 1197, and Wage Order 4 § 3(A) premised on defendant's failure to pay minimum wages.  Id. ¶¶ 86-107.

3. Violation of Labor Code § 226 premised on defendant's failure to provide accurate wage statements.  Id. ¶¶ 108-16.

4. Violation of the Fair Labor Standards Act ("FLSA"), Title 29 U.S.C. § 206 premised on defendant's failure to pay minimum wages.  Id. ¶¶ 117-38.

5. Violation of Title 29 U.S.C. § 207 and Title 29 C.F.R. § 778.106 premised on defendant's failure to pay overtimes wages.  Id. ¶¶ 139-62.

6. Violation of California Business and Professions Code §§ 17200 (§ 17200), et. seq. premised on the above-referenced violations.  Id. ¶¶ 163-74.

In their TAC, plaintiffs add allegations to the first through fifth claims.  Dkt. 45 ¶¶ 70-163 (redline showing modifications per claim).  The court will detail those additional allegations in its analysis below.

On January 19, 2021, defendant filed the instant motion.  Dkt. 46.  In it, defendant

asks the court to dismiss all remaining claims brought by plaintiffs with prejudice.  Id.

DISCUSSION

**A.  Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Rule 8 requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under Rule 12(b)(6), dismissal "is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007).

**B.  Analysis**

In its opening brief, defendant advances two major arguments.  As its first major argument, defendant asserts that the remaining claims fail because plaintiffs do not plausibly allege that they are "employees" under current California law or the FLSA.  Dkt. 46 at 13-19.  Defendant did not advance this argument in its prior motions challenging plaintiff's FAC or SAC.  Instead, for purpose of those motions, defendant assumed that plaintiffs qualified as employees under both sets of laws.

But something changed between the time that the parties completed their briefing on the prior motion to dismiss and when defendant filed the instant motion—namely, in November 2020, California voters approved a ballot measure known as Proposition 22.  On December 16, 2020, California enacted that proposition.  It is now codified at California Business & Professions Code § 7451.  According to defendant, that section makes it "clear" that an "app-based driver" is an "independent contractor"—***not*** an employee—vis a vis a "network company" such as defendant.  Dkt. 46 at 13.

4

1    Armed with this new law, defendant attempts a critical move.  Citing California's

2    doctrine of abatement, defendant asserts that Business & Professions Code § 7451

3    extinguishes any state law claim alleged by plaintiffs that relies on a statutory law that is

4    now inconsistent with Business & Professions Code § 7451's purported determination

5    that plaintiffs are independent contractors, not employees.  According to defendant, such

6    an underlying law includes the so-called "ABC" test at issue in Dynamex and later

7    codified at Labor Code § 2775.  In a separate but similar vein, defendant asserts that, for

8    purposes of their federal law claims, plaintiffs do not qualify as employees under the

9    FLSA's economic realities test.

10    As its second major argument, defendant renews its attack on the sufficiency of

11    the TAC's allegations.  Dkt. 46 at 19-27.  Defendant chiefly asserts that plaintiffs fail to

12    remedy the defects identified in the December 7, 2020 order.  Id.

13    At this time, the court need not and will not weigh-in on defendant's first major

14    argument concerning abatement.  Instead, for purposes of this order only, the court will

15    assume that plaintiffs qualify as employees when asserting their claims.  Even with the

16    benefit of that assumption, plaintiffs nonetheless fail to proffer sufficient facts to state a

17    claim against defendant.  The court explains why per claim below.

18       **1.    Claims for Failure to Pay Minimum Wage and Overtime**

19    In relevant part, California Labor Code § 1194 provides the following:

20       Notwithstanding any agreement to work for a lesser wage, any
         employee receiving less than the legal minimum wage or the
21       legal overtime compensation applicable to the employee is
         entitled to recover in a civil action the unpaid balance of the full
22       amount of this minimum wage or overtime compensation,
         including interest thereon, reasonable attorney's fees, and
23       costs of suit. Cal. Lab. Code § 1194(a).

24    Under federal law, Title 29 U.S.C. § 206 and § 207 similarly "set a national

25    minimum wage . . . and requires overtime pay of one and a half times an employee's

26    hourly wage for every hour worked over 40 hours in a week."  Landers v. Quality

27    Commc'ns, Inc., 771 F.3d 638, 640 (9th Cir. 2014), as amended (Jan. 26, 2015).

28    / / /

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9

United States District Court
Northern District of California

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### a.    The Federal and State Law Minimum Wage Claims

In its December 7, 2020 order, the court identified two deficiencies in the claims for failure to pay minimum wage.  Dkt. 43 at 6-9.  First, the court found that plaintiffs failed to explain how they calculated the hours that they allegedly worked.  Id. at 6-9.  The court emphasized that such explanation is critical to the extent plaintiffs rely on the time spent waiting for ride requests between rides (i.e., ***not*** actively engaged in picking-up or dropping off riders) to support their minimum wage claims.  Id. at 6.  After cataloging the relevant law for defining whether certain time spent qualifies as compensable, id. at 7-8, the court expressly instructed plaintiffs that they comply with the following three steps:

1) Specify which clause under Wage Order 4's definition of "hours worked" supports their position that the subject waiting time qualifies as compensable under California law.  The court noted two potentially applicable clauses—(i) the "subject to control" clause and (ii) the "suffered or permitted to work" clause.

2) Identify the authority they rely on to support their position that the time spent waiting between rides qualifies as compensable.

3) Allege sufficient, non-conclusory facts showing that their alleged waiting time between rides fits within that authority.  Id. at 18.

The court directed plaintiffs to follow similar steps when alleging their federal minimum wage claim.  Id.

Turning to the second deficiency, the court found that plaintiffs failed to allege the amount they were paid for the time worked.  Id. at 9.  The court observed that plaintiffs alleged only the hours for which they were paid and the hours that they worked.  Id.  The court explained that those sums do not compel the inference that plaintiffs earned less than minimum wage for all hours at issue.  Id.

In their TAC, plaintiffs add 11 allegations to support their claim for failure to pay minimum wage under California and federal law.  TAC ¶¶ 95-102, ¶¶ 119-24, ¶¶ 126-34.[1]

---

[1] Technically, plaintiffs add 22 allegations in support of this claim.  Eleven of them, however, are duplicative.  TAC ¶¶ 101-02 (repeating paragraphs 96-97); Id. ¶¶ 126-34

6

Plaintiffs' additions fall far short of clear.  That said, from what the court can tell, plaintiffs add the following non-conclusory facts:

- Between March 1, 2019 and March 2020, defendant paid plaintiffs for only a fraction of the time they worked per week.  Id. ¶ 95.

    o   Defendant paid Glinoga for 30 of the 60 hours worked per week.  Id.

    o   Defendant paid Gonzalez for 40-42 of the 50-60 hours worked per week. Id.

    o   Defendant paid Neely for only 25 of the 55 hours worked per week.  Id.

- When working, Glinoga had his Uber App "set to 'on'" while he was either transporting passengers or waiting for his next customers to request a ride. Glinoga turned his Uber application 'on' at the start of his day and left the app on the entire time, with the exception of his one or two-hour breaks."  Id. ¶ 96. Glinoga earned approximately $700 per week.  Id.

- When working, Neely "left the application 'on' all day, while he was either transporting passengers, or waiting for his next customer to request a ride.  . . . Neely regularly turned the Uber application 'off' for approximately one hour . . . to eat something and rest."  Id. ¶ 97.  Near the end of his work, Neely would "set his Uber application to a 'destination' filter, which allowed the application to find him rides that were heading towards his home."  Id.  Neely earned approximately $85 to $120 for each of the six days he worked per week.  Id.

- When working between Monday and Thursday, Gonzalez would turn "the Uber application 'on' at approximately 5:00 am to 10:00 am."  Id. ¶ 98.  When working between Friday and Sunday, Gonzalez "left the application 'on' from 3:00 pm to 3:00 pm [sic], with rare breaks during slower times."  Id.  Gonzalez does not allege how much money she earned per week on average.

- Gonzalez identifies the time that she spent in the Uber App on either the "online"

---

(repeating paragraphs 96-99).

or "active" modes for the following four particular workweeks:

   o    Between July 15 and July 22, 2019, Gonzalez spent 54 hours and 24 minutes "online" and 38 hours, 53 minutes "active." <u>Id.</u> ¶ 98.

   o    Between October 21 and October 28, 2019, Gonzalez spent 44 hours 10 minutes "online" and 37 hours 13 minutes "active." <u>Id.</u>

   o    Between December 2 to December 9, 2019, Gonzalez spent 50 hours 7 minutes "online" and 35 hours 42 minutes "active." <u>Id.</u>

   o    Between January 20 to January 27, 2020, Gonzalez spent 66 hours 4 minutes "online" and 39 hours 15 minutes "active." <u>Id.</u>

- Plaintiffs allege that the "times in which [they] had their application set to 'on,'" they "were either waiting for a ride request, driving to or from a customer pick-up or drop-off location, or driving a customer." <u>Id.</u> ¶ 100.  Plaintiffs further allege that "[t]hese hours worked are compensable since plaintiffs were suffered or permitted to work during these times, whether or not required to do so." <u>Id.</u>

- To provide rides, plaintiffs were required to use the Uber App. <u>Id.</u> ¶ 120. Defendant controls how and when plaintiffs were notified of a ride request. <u>Id.</u> Plaintiffs had no other way to connect with prospective riders. <u>Id.</u> ¶¶ 121-22.

- Defendant "incentivizes" plaintiffs "to wait for a rider notification with surge pricing during events that Uber anticipates will lead to high demand for Uber rides." <u>Id.</u> ¶ 121.  Because the Uber App is the sole method for connecting plaintiffs with passengers, the "practical and indisputable" reality is that plaintiffs are "engaged to wait" on the Uber App for the benefit of defendant. <u>Id.</u> ¶ 122-24.

Separate from the above-listed additions, plaintiffs maintain their SAC's allegations pertaining to defendant's control over how they conduct their work. <u>Id.</u> ¶¶ 24-54.  In relevant part, plaintiffs allege that defendant sets a limit on how long a driver can provide rides before the Uber App goes "offline." <u>Id.</u> ¶ 31.

The court concludes that plaintiffs still fail to allege a cognizable state or federal law minimum wage claim.  Critically, plaintiffs continue to rely on their time logged onto

the Uber App waiting for requests between rides when asserting an average effective

wage rate that falls below the state and federal minimum.  However, plaintiffs fail to

satisfy the court's instruction that they allege facts plausibly showing that such time

qualifies as compensable under either the subject to control or suffered or permitted to

work clause in Wage Order 4's "hours worked" definition or the FLSA.  The court

analyzes plaintiffs' allegations under each potentially applicable standard in turn below.

### i.        Subject to the Control Clause

As used in Wage Order 4, the term "hours worked" includes "the time during which

an employee is subject to the control of an employer."  Cal. Code Regs. tit. 8, § 11040

(Wage Order 4).  The California Supreme Court has explained that an employee is

subject to the control of its employer when such employer "directs, command, or restrains

an employee from leaving the workplace . . . and thus prevents the employee from using

the time effectively for his or her own purposes."  Mendiola v. CPS Sec. Sols., Inc., 60

Cal. 4th 833, 840 (2015).  In Mendiola, the California Supreme Court identified the

following factors as relevant to determine whether an employer maintains control over an

employee during his or her on-call time:

- Whether there was an on-premises living requirement.

- Whether there were excessive geographical restrictions on employee's
  movements.

- Whether the frequency of calls was unduly restrictive.

- Whether a fixed time limit for response was unduly restrictive.

- Whether the on-call employee could easily trade on-call responsibilities.

- Whether use of a pager could ease restrictions.

- Whether the employee had actually engaged in personal activities during call-in
  time.

- Whether the on-call waiting time . . . is spent primarily for the benefit of the
  employer and its business. Id. at 841.

Recently, in Frlekin v. Apple Inc., 8 Cal. 5th 1038 (2020), reh'g denied (May 13,

2020), the California Supreme Court expanded on the above factors.  It found that additional indication of employer control includes the following: (1) whether some employee activity is "mandatory in nature"; and (2) whether the activity is "enforced through disciplinary measures."  Id. at 1056.

Plaintiffs fail to allege sufficient facts showing that they are subject to the control of defendant when logged onto the Uber App and waiting for requests between rides.  First, plaintiffs do not allege that defendant requires them to wait for requests between rides.  The court understands plaintiff's position that, because the Uber App serves as the only means for them to connect with passengers, they must wait for requests to provide rides.  TAC ¶¶ 120-22.  Perhaps.  But the critical flaw in that position is that plaintiffs may **choose** whether (or not) to wait for the next request.  As plaintiffs themselves acknowledge, they could turn the Uber App "on" and "off" at will.  Id. ¶¶ 96-98.  That choice confers plaintiffs with certain volition that precludes the court from inferring that the subject wait time is "mandatory in nature."

That said, plaintiffs' allegation that defendant limits how long a driver can provide rides before the Uber App goes "offline," id. ¶ 31, might suggest some control generally.  However, aside from noting this allegation in a single string cite in support of their position on the FLSA's economic realities test, Dkt. 47 at 15, plaintiffs do not materially argue this allegation in their opposition.  But even if they did, the court does not see how a limit on the total time that plaintiffs may use the Uber App affects their volition on whether to wait for a request while the application remained accessible to them.

Second, plaintiffs do not allege that defendant imposes any disciplinary measure on them in the event they either turn off their Uber App or deny a request.  The court notes that, at oral argument, plaintiff's counsel stated that drivers cannot repeatedly deny requests.  That eleventh-hour representation by counsel is not a verified allegation.  The court need not and will not now consider it.

Third, with respect to the first and second Mendiola factors, plaintiffs fail to identify any geographical restrictions imposed on them by defendant when logged onto the Uber

United States District Court
Northern District of California

1  App and awaiting requests.  To the contrary, plaintiffs acknowledge that they could freely

2  set a "destination" filter connecting them with a passenger traveling in the direction that

3  they themselves want to go.  Id. ¶ 97.

4      Fourth, with respect to the seventh Mendiola factor, plaintiffs do not allege that

5  defendant requires them to perform any task on its behalf when they wait for requests

6  between rides.  Plaintiffs also fail to allege that defendant prevented them from

7  conducting any personal affairs during such waiting periods.

8      Fifth, with respect to the remaining third through sixth Mendiola factors, plaintiffs

9  fail to proffer any relevant allegation.  The court notes that, with respect to the fourth

10 Mendiola factor, plaintiffs assert in their opposition that they must "respond immediately"

11 to requests on the Uber App.  Dkt. 47 at 18-19.  However, plaintiffs do not allege that fact

12 in their TAC.  Again, the court will not consider it when evaluating the instant motion.

13     Sixth, with respect to the eighth Mendiola factor, plaintiffs fail to allege that

14 defendant **primarily** benefits from their waiting for requests between rides.  Id. ¶¶ 123-

15 24.  To be sure, plaintiffs do allege that defendant "charges" riders a fee and "uses a

16 portion of the money collected" to pay plaintiffs.  Id. ¶ 16.  Thus, the court can reasonably

17 infer that defendant necessarily receives **some** benefits from the wait time because it

18 profits from every additional ride provided.  That said, plaintiffs also receive money when

19 they provide rides.  Plaintiffs do not explain how defendant benefits **more** than they do

20 from waiting for the next ride.  Absent that, plaintiffs cannot establish that the eighth

21 Mendiola factor supports an inference of control.  For the above reasons, the court

22 concludes that plaintiffs may not assert that the waiting time at issue is compensable on

23 the basis of the subject to control clause.

24          **ii.       Suffered or Permitted to Work Clause**

25     Wage Order 4's "hours worked" also "includes all the time the employee is

26 suffered or permitted to work, whether or not required to do so."  Cal. Code Regs. tit. 8, §

27 11040.  The California Supreme Court has explained that this clause extends to "the time

28 during which the employer knew or should have known that the employee was working

1

2

3

4

5

6

7

on its behalf." <u>Troester v. Starbucks Corp.</u>, 5 Cal. 5th 829, 840 (2018), <u>as modified on denial of reh'g</u> (Aug. 29, 2018) (citing <u>Morillon v. Royal Packing Co.</u>, 22 Cal. 4th 575, 588 (2000), <u>as modified</u> (May 10, 2000)).  Recently, the Central District of California has explained that "the standard of 'suffered or permitted to work' is met when an employee is engaged in certain tasks or exertion that a manager would recognize as work."  <u>Taylor v. Cox Commc'ns California, LLC</u>, 283 F. Supp. 3d 881, 890 (C.D. Cal. 2017), <u>aff'd,</u> 776 F. App'x 544 (9th Cir. 2019).

8

9

10

11

12

13

14

15

California state appellate courts have endorsed the <u>Taylor</u> court's construction of the suffered or permitted to work clause.  <u>Hernandez v. Pac. Bell Tel. Co.</u>, 29 Cal. App. 5th 131, 142, 239 Cal. Rptr. 3d 852, 860 (2018), <u>review denied</u> (Feb. 13, 2019) ("Applying <u>Morillon</u>, the [<u>Taylor</u>] court concluded 'the standard of suffered or permitted to work is met when an employee is engaged in certain tasks or exertion that a manager would recognize as work. . . . . We agree with this construction of the 'suffer or permit to work' test.").  Given that endorsement, the court will treat the <u>Taylor</u> court's interpretation of the suffered or permitted to work clause as authoritative.

16

17

18

19

20

21

22

23

24

25

26

Here, the court concludes that plaintiffs fail to allege sufficient facts showing that their time logged onto the Uber App and waiting for requests between rides comes within the scope of the suffered or permitted to work clause.  Critically, plaintiffs do not allege or otherwise explain how waiting for a ride request qualifies as a task that a manager would recognize as work.  Again, plaintiffs do not allege that they are required to accept rides.  Thus, as defendant argue, plaintiffs could, conceivably, "log onto the Uber App in the morning, ignore or reject every request they receive for the next eight hours, and then log off in the evening without having given a single ride."  Dkt. 46 at 24.  Plaintiffs fail to proffer any response to that argument in their opposition.   The court itself does not see one.  Accordingly, the court concludes that plaintiffs may not assert that the subject waiting time is compensable on the basis of the suffered or permitted to work clause.

27

28

### iii.    FLSA Control Standard

The "FLSA does not define what activities constitute 'hours worked' under the act."

United States District Court
Northern District of California

Local 1605 Amalgamated Transit Union, AFL-CIO v. Cent. Contra Costa Cty. Transit Auth., 73 F. Supp. 2d 1117, 1121 (N.D. Cal. 1999).  "In the absence of a statutory definition of what constitutes compensable work, the courts have developed standards to determine whether an activity constitutes work under FLSA."  Id.  "Early Supreme Court cases interpreting FLSA established the general rule that an activity is work for FLSA's purposes if it is 'controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer.'"  Id.  The United States Supreme Court has "also counseled that the determination of whether an activity constitutes work depends on the circumstances of each case."  Id. (citing Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944) and Skidmore v. Swift & Co., 323 U.S. 134, 136-37 (1944)).

Courts have also observed that "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked."  Gilmer v. Alameda-Contra Costa Transit Dist., 2010 WL 289299, at *2 (N.D. Cal. Jan. 15, 2010) (citing 29 C.F.R. § 785.16).  "Each case is fact-specific: "Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all the facts and circumstances of the case."  Id.

In its opening brief, defendant cites the above-referenced authority as providing "the FLSA standard for determining whether time spent waiting for work is compensable."  Dkt. 46 at 23-24.  In their opposition, plaintiffs do not contest that assertion.  See Dkt. 47 at 17-19.  Given that, the court will treat Local 1605's and Gilmer's statement of the waiting time compensability standard under FLSA as controlling for purpose of the federal law claims.  Those cases show that the FLSA and Wage Order 4's subject to control clause employ a similar analysis on the compensability issue.  As just decided, plaintiffs fail to allege that, under California law, they are subject to defendant's control when they are logged onto the Uber App and waiting for requests between rides.  Accordingly, plaintiffs similarly fail to allege that such waiting time is compensable under the FLSA.

*       *       *

In short, the court concludes that plaintiffs fail to allege sufficient facts showing that

13

1    their time logged onto the Uber App and waiting for requests between rides are

2    compensable under state or federal law.  Given that, plaintiffs may not rely on such time

3    for purpose of their minimum wage claims.

4        Based on the court's review of the TAC, it appears that plaintiffs alleged average

5    effective pay rate requires that they include the subject wait time to fall below either the

6    state or federal minimum wage.  TAC ¶¶ 56-59, 94-107, 119-36.  In both their TAC and

7    opposition, plaintiffs fail to proffer any allegation or advance any reason showing that this

8    claim can survive **without** accounting for such waiting time.  Accordingly, the court

9    dismisses the claims for failure to pay minimum wage.

10                    **b.    Federal Law Claim for Failure to Pay Overtime**

11        In <u>Landers</u>, the Ninth Circuit articulated the following conditions for a plaintiff to

12    state a claim for failure to pay overtime under the FLSA:

- A plaintiff must allege that he or she worked more than 40 hours in a given

13
14           workweek without being compensated for the overtime hours worked during that

15           workweek.  771 F.3d at 644-45.

- A plaintiff may allege an estimate of the length of her average workweek during

16
17           the applicable period, the average rate at which she was paid, the amount of

18           overtime wages she believes she is owed, or any other facts to support the

19           plausibility of plaintiff's claim.  <u>Id.</u> at 645.

20    • A plaintiff is not required to estimate the total number of overtime hours at issue.

21           <u>Id.</u>

22        In its December 7, 2020 order, the court identified three deficiencies in plaintiffs'

23    claim for failure to pay overtime.  Dkt. 43 at 9-10.  First, plaintiffs failed to identify a "given

24    workweek" that they worked over 40 hours without special compensation.  <u>Id.</u> at 9.

25    Second, similar to the deficiencies in their minimum wage claims, plaintiffs failed to

26    explain how they calculated the total hours that they allegedly worked.  <u>Id.</u> at 9-10.  Third,

27    plaintiffs failed to allege the other sorts of permissible details (e.g., how much plaintiffs

28    were paid for the time at issue or the amount of overtime they believe they are owed) that

14

the Ninth Circuit in <u>Landers</u> indicated may support the plausibility of a claim for failure to pay overtime.  <u>Id.</u> at 10.

In their TAC, plaintiffs add a single allegation uniquely in support of this claim.[2]  In it, plaintiffs allege that they:

> [F]ondly recall working well over forty (40) hours in a seven-day workweek during the holiday season.  <u>Id.</u> ¶ 159.

The court concludes that plaintiffs again fail to state a claim for failure to pay overtime.  First, both Glinoga and Neely fail to identify a "given workweek" ***after*** March 1, 2019 in which they worked over 40 hours without special compensation.  The particular holidays that these plaintiffs fondly recall working over occurred ***before*** March 1, 2019. <u>Id.</u> ("For example, Plaintiff NEELY recalls working over forty (40) hours per week during the time from December 19, 2017 through January 2, 2018. Plaintiff GLINOGA also recalls working over forty (40) hours per week during the time from December 19, 2017 through January 2, 2018, as well as the week of October 31, 2016, and the week of November 21, 2016.").  Only Gonzalez comes potentially close to alleging an actionable workweek.  <u>Id.</u> ¶¶ 98, 149 (identifying four workweeks with over 40 hours of "online" Uber App time).

Second, as just decided, plaintiffs fail to allege that they are under defendant's control when waiting for requests on the Uber App between rides.  Thus, Gonzalez may not rely on only her "active" (as opposed to "online") time to support this claim.  As noted above, Gonzalez alleges that she was "active" on the Uber App for the four identified workweeks for only 35 to 39 hours.  <u>Id.</u>  Given that, Gonzalez likewise fails to satisfy <u>Landers</u> minimum requirement to state this claim.  Accordingly, the court dismisses the claim for failure to pay overtime.

---

[2] Technically, plaintiffs add eight allegations in support of this claim.  TAC ¶¶ 146-49, 155, 158-60.  Seven, however, are materially similar (some, copied/pasted) from the allegations added in support of the claims for failure to pay minimum wage.  <u>Compare</u> <u>Id.</u> ¶¶ 146-49, ¶ 155 <u>with</u> <u>id.</u> ¶¶ 95-99; <u>Compare</u> <u>Id.</u> ¶¶ 158-59 <u>with</u> <u>id.</u> ¶¶ 96-97.  The court notes that TAC paragraphs 150 through 154 are mysteriously missing from the pleading.

### 2.      Claim for Failure to Timely Pay Wages

In relevant part, California Labor Code § 201 requires that:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201(a).

This requirement also applies in the event an employee resigns from his or her employment.  Id. § 202(a).  If an employer "willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid" for a maximum of 30 days. Id. § 203(a).

In its December 7, 2020 order, the court identified two deficiencies in this claim.  Dkt. 43 at 10-11.  First, plaintiffs failed to allege that their "employment relationship with defendant has, in fact, been terminated."  Id. at 10.  Second, plaintiffs failed to allege "any non-conclusory facts showing that defendant acted willfully when allegedly failing to pay plaintiffs' wages."  Id. at 11.

In their TAC, plaintiffs add a single allegation to this claim.  In it, they allege that they "stopped working for Uber in approximately March of 2020."  TAC ¶ 81.  Based on that allegation, plaintiffs allege that their "employment relationship with [defendant] ended in or about March of 2020."  Id.

The court finds that this claim fails for three reasons.  First, plaintiffs' allegation that they "stopped" working for defendant does not establish that defendant "discharged" them or that they "quit" working for defendant.  By their plain terms, Labor Code §§ 201-02 require one of the latter.  The former allegation is simply too vague.

Second, to establish willfulness, plaintiffs rely on the exact same allegation at paragraph 82 as that proffered in the SAC.  Dkt. 45 ¶ 82 (redline showing allegation unchanged).  At paragraph 82, plaintiffs allege that "[d]efendants willfully failed to pay plaintiffs' wages in the form of minimum wage and overtime . . . after plaintiffs' demands . . . defendants did this with the intent to secure for themselves a discount on their indebtedness and/or with the intent to annoy, harass, oppress, hinder, delay, and/or

16

defraud plaintiffs." TAC ¶ 82. As previously determined, Dkt. 43 at 11, this allegation is insufficient to support a plausible inference of willfulness.

Third, independent of such insufficiency, plaintiffs proffer the allegations in paragraph 82 on the basis of information and belief. TAC ¶ 82 ("Plaintiffs . . . are informed and believe . . . that defendants willfully failed . . ."). By definition, plaintiffs must know whether (or not) they demanded payment from defendant. Because plaintiffs failed to verify that allegation, the court will not consider it. Given the above, the court dismisses the claim for failure to timely pay wages.

### 3. Claim for Failure to Provide Accurate Wage Statements

California Labor Code § 226 requires an employer to periodically provide its employee with an accurate itemized statement in writing that details various categories of information. Cal. Lab. Code § 226(a). Such categories include: (1) gross wages earned; (2) total hours worked; (3) applicable deductions; (4) net wages earned; and (5) all applicable hourly rates in effect during the pay period. Id.

To state a claim under California Labor Code § 226, a plaintiff must allege an injury that resulted from the employer's knowing and intentional failure to comply with the above requirements. Id. § 226(e)(1). An employee suffers an injury if the employer fails to provide a wage statement. Id. § 226(e)(2)(A).

In its December 7 order, the court identified two deficiencies in this claim. Dkt. 43 at 11-12. First, plaintiffs failed to identify the deficient statements at issue. Id. at 12. The court explained that plaintiffs' allegation that they had not received a statement "with all required information" does not establish that they did not receive any statement at all. Id. Second, plaintiffs failed to allege that defendant's purported failure to provide a wage statement was knowing and intentional. Id.

In their TAC, plaintiffs amend their claim for failure to provide an accurate wage statement to assert that they "never received any wage statement *at all*, let alone a wage statement with all required information . . ." TAC ¶¶ 110, 112. Plaintiffs further allege that defendant's failure to provide such statement was willful and intentional because, as

United States District Court
Northern District of California

of California Labor Code § 2775's passage, defendant was "on notice" that its "conduct" violated the Labor Code.  Id. ¶ 113.

In its opening brief, defendant asserts that it maintained a "good-faith belief" that drivers like plaintiffs did not qualify as employees under California law and that that belief effectively immunizes it from liability for a knowing and intentional violation of Labor Code § 226.  Dkt. 46 at 26.  To support that argument, defendant relies on Arroyo v. Int'l Paper Co., 2020 WL 887771 (N.D. Cal. Feb. 24, 2020).  Id.  In Arroyo, Judge Freeman surveyed a host of authority construing Labor Code § 226.  2020 WL 887771 at *12. After doing so, she concluded "that an employer's good faith belief that it is in compliance with § 226 precludes liability under that statute."  Id.

The court concludes that this claim fails for two related reasons.  First, in their opposition, plaintiffs fail to proffer any objection to Arroyo's validity or application to this case.  Second, in their TAC, plaintiffs themselves acknowledge that prior to Labor Code § 2775's passage, defendant publicly indicated a belief that "just because the ABC test is hard does not mean Uber will not be able to pass it."  TAC ¶ 22 (brackets removed).  The court finds such indication a sufficient ground to infer defendant's good-faith belief that plaintiffs do not qualify as employees.  Accordingly, the court dismisses the claim for failure to provide accurate wage statements.

### 4.    Business & Professions Code § 17200 Claim

Plaintiffs agree that their § 17200 claim rises or falls with their state and federal law claims.  Dkt. 47 at 20.  As decided above, plaintiffs fail to allege a predicate violation of the above-referenced labor laws.  Accordingly, the court dismisses the § 17200 claim.

### 5.    The Court Denies Further Leave to Amend

The TAC represents the fourth iteration of plaintiffs' operative pleading.  The court has analyzed the merits of both plaintiffs' FAC and SAC.  Dkt. 36; Dkt. 43.  In its July 17, 2020 order, the court identified numerous pleading deficiencies in the FAC.  Dkt. 36 at 17-20.  The court permitted plaintiffs the opportunity to "remedy the factual defects" in their claims, "including, without limitation" those defects specifically identified in the July

18

17, 2020 order.  Id. at 24.  Plaintiffs failed to do so.  Dkt. 43 at 4-13.

In its December 7, 2020 order, the court identified, listed, and extensively discussed the legion of deficiencies in the SAC.  Id. at 4-13.  The court provided plaintiffs another the opportunity to correct those deficiencies.  Id. at 17-19.  Still, the court went further—it provided plaintiffs specific, concrete instructions for curing certain deficiencies. Id. at 18.  Despite that guidance, plaintiffs again failed to cure their claims' deficiencies.

In light of plaintiffs' repeated failures to cure their complaints' deficiencies, the court finds that further leave to amend would be futile.  Given that finding, the court dismisses all remaining claims brought by plaintiffs with prejudice.

## CONCLUSION

For the above reasons, the court **GRANTS** defendant's motion to dismiss.  Dkt. 46.  The court understands that its decision to stay the Labor Code § 2698 (PAGA) claims of the 45 plaintiffs whose claims the court compelled to arbitration remains in effect pending those arbitrations.  The court **ORDERS** the parties to file a joint status report **within 14 days** of the completion of all such arbitrations.  In that report, the parties must propose a method for adjudicating the remaining PAGA claims.  Once the court has adjudicated all such claims, it will enter judgment with respect to all 48 plaintiffs.

**IT IS SO ORDERED.**

Dated: May 20, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge